IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| DEFENSE DISTRIBUTED and § <br> SECOND AMENDMENT FOUNDATION, INC., § <br> § <br> Plaintiffs, § <br> § <br> v. § <br> § <br> U.S. DEPARTMENT OF STATE; JOHN F. KERRY, § <br> in his official capacity as Secretary of State; § <br> DIRECTORATE OF DEFENSE TRADE CONTROLS, § <br> Department of State Bureau of Political Military Affairs; § <br> KENNETH B. HANDELMAN, individually and in his § <br> official capacity as Deputy Assistant Secretary, Defense § <br> Trade Controls, Bureau of Political Military Affairs, § <br> Department of State; C. EDWARD PEARTREE, § <br> individually and in his official capacity as Director, § <br> Office of Defense Trade Controls Policy, Bureau of § <br> Political Military Affairs, Department of State; § <br> SARAH J. HEIDEMA, individually and in her official § <br> capacity as Division Chief, Regulatory and Multilateral § <br> Affairs, Office of Defense Trade Controls Policy, § <br> Bureau of Political Military Affairs, Department of State; § <br> and GLENN SMITH, individually and in his official § <br> capacity as Senior Advisor, Office of Defense Trade § <br> Controls, Bureau of Political Military Affairs, § <br> Department of State, § <br> § <br> Defendants. § <br> _____§ | Case No. _1:15-cv-372___ <br><br> COMPLAINT |

COMPLAINT

COME NOW the Plaintiffs, Defense Distributed and Second Amendment Foundation, Inc., by and through undersigned counsel, and complain of Defendants as follows:

1

INTRODUCTION

"Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity." *Bantam Books, Inc.* v. *Sullivan*, 372 U.S. 58, 70 (1963). The prior restraint system challenged here cannot overcome its presumption of invalidity.

Contrary to the Justice Department's warning that such actions are unconstitutional, Defendants unlawfully apply the International Traffic in Arms Regulations, 22 C.F.R. Part 120 *et seq*. ("ITAR") to prohibit and frustrate Plaintiffs' public speech, on the Internet and other open forums, regarding arms in common use for lawful purposes. Defendants' censorship of Plaintiffs' speech, and the ad hoc, informal and arbitrary manner in which that scheme is applied, violate the First, Second, and Fifth Amendments to the United States Constitution. Plaintiffs are entitled to declaratory and injunctive relief barring any further application of this prior restraint scheme, and to recover money damages to compensate for the harm such application has already caused.

*The Parties*

1. Plaintiff Defense Distributed is a Texas corporation organized under the laws of the State of Texas, whose headquarters are located in Austin, Texas, and whose principal place of business is located in Austin, Texas. Defense Distributed was organized and is operated for the purpose of defending the civil liberty of popular access to arms guaranteed by the United States Constitution through facilitating global access to, and the collaborative production of, information and knowledge related to the three-dimensional ("3D") printing of arms; and to publish and distribute, at no cost to the public, such information and knowledge on the Internet in promotion of the public interest.

2. Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in

Bellevue, Washington. SAF has over 650,000 members and supporters nationwide, including Texas. The purposes of SAF include promoting the exercise of the right to keep and bear arms; and education, research, publishing and legal action focusing on the constitutional right to privately own and possess firearms, and the consequences of gun control. SAF brings this action on behalf of its members.

3. Defendant the United States Department of State is an executive agency of the United States government responsible for administering and enforcing the ITAR under the authority of the Arms Export Control Act of 1976, 22 U.S.C. § 2778, *et seq*. ("AECA").

4. Defendant John F. Kerry is sued in his official capacity as the Secretary of the Department of State. In this capacity, he is responsible for the operation and management of the Department, and this includes the operation and management of the Directorate of Defense Trade Controls ("DDTC") and administration and enforcement of the ITAR.

5. Defendant DDTC is a subordinate unit within the Department of State Bureau of Political and Military Affairs responsible for administering and enforcing the ITAR.

6. Defendant Kenneth B. Handelman is sued individually and in his official capacity as the Deputy Assistant Secretary of State for Defense Trade Controls in the Bureau of Political-Military Affairs. In his official capacity, Handelman is responsible for the operation and management of DDTC, and this includes administration and enforcement of the ITAR.

7. Defendant C. Edward Peartree is sued individually and in his official capacity as the Director of the Office of Defense Trade Controls Policy Division. In his official capacity, he is responsible for administration of the ITAR, including ITAR's commodity jurisdiction procedures; implementation of regulatory changes as a result of defense trade reforms; and providing guidance to industry on ITAR requirements.

8. Defendant Sarah Heidema is sued individually and in her official capacity as the Division Chief, Regulatory and Multilateral Affairs, Office of Defense Trade Controls Policy. In her official capacity, she is responsible for administration of the ITAR, implementation of regulatory changes as a result of defense trade reforms, and providing guidance to industry on ITAR requirements.

9. Defendant Glenn Smith is sued individually and in his official capacity as the Senior Advisor, Office of Defense Trade Controls. At times relevant to this Complaint, Smith served as the Chief of the DDTC Enforcement Division. In that official capacity, Smith was responsible for enforcing ITAR requirements.

JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, and 2202.

11. Venue lies in this Court pursuant to 28 U.S.C. § 1391(e)(1)(B) and (C), as a substantial part of the events and omissions giving rise to the claim occurred, and the Plaintiff resides, within the Western District of Texas.

STATEMENT OF FACTS

*Defendants' Prior Restraint Scheme*

12. The AECA affords the President limited control over the export of "defense articles." 22 U.S.C. § 2778(a)(1). Although the AECA does not expressly authorize control over "technical data," the ITAR, which implements the Act, includes "technical data" within its definition of "defense articles." 22 C.F.R. § 120.6.

13. The ITAR broadly defines "technical data" as information "required for the design, development, production, manufacture, assembly, operation, repair, testing, maintenance or

4

modification of defense articles." 22 C.F.R. § 120.10. This includes "information in the form of blueprints, drawings, photographs, plans, instructions or documentation" and "software" "directly related to defense articles." *Id*.

14. The ITAR requires advance government authorization to export technical data. Criminal penalties for unauthorized exports of technical data and other violations of the ITAR include, inter alia, prison terms of up to twenty (20) years and fines of up to $1,000,000 per violation. 22 U.S.C. § 2778(c). Civil penalties include fines of up to $500,000 per violation. 22 U.S.C. § 2778(e).

15. The scope of technical data subject to ITAR control, as described on the U.S. Munitions List ("USML"), 22 C.F.R. § 121.1, is vague, ambiguous, and complex. Defendants constantly change, without notice, their views of what this scope entails.

16. Accordingly, Americans have submitted thousands of written requests, known as "commodity jurisdiction requests," to Defendant DDTC, operated by the individual Defendants, for official determinations as to ITAR's scope.

17. From 1969 to 1984, Footnote 3 to former ITAR Section 125.11 implied that the ITAR imposed a prepublication approval requirement on publications of privately generated ITAR-controlled technical data, stating that "[t]he burden for obtaining appropriate U.S. Government approval for the publication of technical data falling within the definition in § 125.01, including such data as may be developed under other than U.S. Government contract, is on the person or company seeking publication."

18. Beginning in 1978, the U.S. Department of Justice's Office of Legal Counsel issued a series of written opinions advising Congress, the White House, and the Department of State that the use of the ITAR to impose a prior restraint on publications of privately generated unclassified

information into the public domain violated the First Amendment of United States Constitution (the "Department of Justice memoranda"). Defendants Handelman, Peartree, and Heidema were aware of these memoranda at all times relevant to this Complaint.

19. In 1980, the Department of State Office of Munitions Control, the predecessor to Defendant DDTC, issued a official guidance providing that "[a]pproval is not required for publication of data within the United States as described in Section 125.11(a)(1). Footnote 3 to Section 125.11 does not establish a prepublication review requirement."

20. Thereafter, the Department of State removed Footnote Number 3 from the ITAR, expressly intending to address First Amendment concerns. *See* 49 Fed. Reg. 47,682 (December 6, 1984). As such, to the extent ITAR imposed any prepublication approval requirement on private, non-classified speech, the requirement was ostensibly removed in 1984.

*The Published Files*

21. Posting technical data on the Internet is perhaps the most common and effective means of creating and disseminating information. A cursory search on Google and other Internet search engines evidences that ITAR technical data is freely published in books, scientific journals, and on the Internet.

22. Plaintiff Defense Distributed publishes files on the Internet as a means of fulfilling its primary missions to promote the right to keep and bear arms and to educate the public, and also to generate revenue with which to sustain itself.

23. Defense Distributed privately generated technical information regarding a number of gun-related items, including a trigger guard, grips, two receivers, a magazine for AR-15 rifles, and a handgun (the "Published Files").

24. In December 2012, Defense Distributed began posting the Published Files on the Internet for free, at no cost to the public. That publication inherently advanced Defense Distributed's educational mission, and also generated advertising revenue. At the time Defense Distributed posted the Published Files, there was no publicly known case of Defendants enforcing a prepublication approval requirement under the ITAR.

25. Notwithstanding the Department of Justice memoranda, the 1980 guidance, the 1985 ITAR amendment, and Defendants' failure to previously enforce a prepublication approval requirement under the ITAR, on May 8, 2013, acting alone or in concert with other government actors, the Defendants sent Defense Distributed a letter that warned:

> DTCC/END is conducting a review of technical data made publicly available by Defense Distributed through its 3D printing website, DEFCAD.org, the majority of which appear to be related to items in Category I of the USML. Defense Distributed may have released ITAR-controlled technical data without the required prior authorization from the Directorate of Defense Trade Controls (DDTC), a violation of the ITAR.

26. At the time it posted the Published Files, Defense Distributed did not know that the Defendants would demand to pre-approve public speech. Defense Distributed believed, and continues to believe, that the United States Constitution guarantees a right to share truthful speech—especially speech concerning fundamental constitutional rights—in open forums. Nevertheless, for fear of criminal and civil enforcement, Defense Distributed promptly complied with Defendants' demands and removed all of the Published Files from its servers.

27. The DDTC letter further directed Defense Distributed to submit the Published Files to DDTC for review using the DDTC "commodity jurisdiction" procedure, the ITAR procedure "used with the U.S. Government if doubt exists as to whether an article or service is covered by the U.S. Munitions List." 22 C.F.R. § 120.4(a). Defense Distributed complied with Defendants' request and filed ten (10) commodity jurisdiction requests covering the Published Files on June 21, 2013.

28.     Defendants identify the Department of Defense Office of Prepublication Review and Security ("DOPSR") as the government agency from which private persons must obtain prior approval for publication of privately generated technical information subject to ITAR control. Neither the Code of Federal Regulations nor any other public law establishes a timeline for decision, standard of review, or an appeals process for DOPSR public release determinations. Worsening this situation, DOPSR refuses to review information that it deems is not clearly subject to the ITAR.

29.     Nearly two years having passed since Defense Distributed submitted its commodity jurisdiction requests for the Published Files, Defendants have still not responded to those requests.

*The "Ghost Gunner" Files*

30.     On September 25, 2014, Defense Distributed sent DOPSR a request for prepublication approval for public release of files containing technical information on a machine, named the "Ghost Gunner," that can be used to manufacture a variety of items, including gun parts (the "Ghost Gunner Files").

31.     On October 1, 2014, DOPSR sent Defense Distributed a letter stating that it refused to review Defense Distributed's request for approval because DOPSR was unsure whether the Ghost Gunner was subject to the ITAR. Also in its letter, DOPSR recommended that Defense Distributed submit another commodity jurisdiction request to the Defendants.

32.     Defense Distributed submitted another commodity jurisdiction request for the Ghost Gunner to Defendants on January 2, 2015.

33.     On April 13, 2015, Defendant DDTC determined that the Ghost Gunner machine is not subject to ITAR, but that "software, data files, project files, coding, and models for producing a defense article, to include 80% AR-15 lower receivers, are subject to the jurisdiction of the Department of State in accordance with [ITAR]." Defense Distributed did not seek a determination

with respect to such files, but it did seek a determination as to whether the software necessary to build and operate the Ghost Gunner machine is ITAR-controlled. Defendant DDTC subsequently clarified that such software is, like the machine itself, not subject to ITAR controls, but reiterated its ruling with respect to software related to the production of a "defense article."

*Prior Restraint on CAD Files*

34. Since September 2, 2014, Defense Distributed has made multiple requests to DOPSR for prepublication review of certain computer-aided design ("CAD") files.

35. On December 31, 2014, nearly four months after Defense Distributed submitted the first of the CAD review requests, DOPSR sent Defense Distributed two letters dated December 22, 2014, stating that it refused to review the CAD files. DOPSR's decision was made, in whole or in part, with specific direction from Defendant Smith.

36. The DOPSR letter directed Defense Distributed to the DDTC Compliance and Enforcement Division for further questions on public release of the CAD files. However, because this is not the DDTC division responsible for issuing licenses or other forms of DDTC authorization, on January 5, 2015, Defense Distributed sent a written request to Defendants for guidance on how to obtain authorization from DDTC Compliance for release of the CAD files.  To date, Defendants have not responded to Defense Distributed's request for guidance.

*Prior Restraint on Other Files*

37. Defense Distributed has and will continue to create and possess other files that contain technical information, to include design drawings, rendered images, written manufacturing instructions, and other technical information that Defense Distributed intends to post to public forums on the Internet. Many of these files are described in the USML.

38.     Plaintiff SAF's members, including, e.g., Conn Williamson and Peter Versnel, have a keen interest in accessing, studying, sharing, modifying, and learning from Defense Distributed's various files, as well as similar 3D printing files related to firearms that they or others have created. But for Defendants' prepublication approval requirement on such files, SAF would expend its resources to publish and promote, on the Internet, the distribution of Defense Distributed's various files, and similar files generated by its members and others.

*Great, Irreparable, and Continuing Harm*

39.     But for Defendants' impositions upon the distribution of the Published Files, Ghost Gunner Files, CAD Files, and Defense Distributed's other files (collectively, the "Subject Files"), Plaintiffs would freely distribute the Subject Files. Plaintiffs refrain from distributing the Subject Files because they reasonably fear that Defendants would pursue criminal and civil enforcement proceedings against Plaintiffs for doing so.

40.     Defendants' acts have thus caused irreparable injury to Plaintiffs, their customers, visitors, and members, whose First, Second, and Fifth Amendment rights are violated by Defendants' actions. Defendants' acts have further caused Defense Distributed to suffer monetary loss as a result of its inability to publish the Subject Files.

COUNT ONE
ULTRA VIRES GOVERNMENT ACTION

41.     Paragraphs 1 through 40 are incorporated as though fully set forth herein.

42.     The Defendants' imposition of the prepublication requirement, on any non-classified privately-generated speech, including on (but not limited to) the Subject Files, lies beyond any authority conferred upon them by Congress under the AECA, as confirmed by the 1985 ITAR amendment. Accordingly, Defendant' imposition of the prepublication approval requirement is ultra

vires and Plaintiffs are entitled to injunctive relief against Defendants' application of the prepublication approval requirement.

COUNT TWO
RIGHT OF FREE SPEECH—U.S. CONST. AMEND. I

43.     Paragraphs 1 through 42 are incorporated as though fully set forth herein.

44.     Defendants' prepublication approval requirement is invalid on its face, and as applied to Plaintiffs' speech, as an unconstitutional prior restraint on protected expression.

45.     Defendants' prepublication approval requirement is invalid on its face, and as applied to Plaintiffs' speech, as overly broad, inherently vague, ambiguous, and lacking adequate procedural protections.

46.     Defendants' prepublication approval requirement is invalid as applied to Defense Distributed's posting of the Subject Files, because Defendants have selectively applied the prior restraint based on the content of speech and/or the identity of the speaker.

47.     Defendants' interruption and prevention of Plaintiffs from publishing the subject files, under color of federal law, violates Plaintiffs' rights under the First Amendment to the United States Constitution, causing Plaintiffs, their customers, visitors and members significant damages. Plaintiffs are therefore entitled to injunctive relief against Defendants' application of the prior restraint.

COUNT THREE
RIGHT TO KEEP AND BEAR ARMS—U.S. CONST. AMEND. II

48.     Paragraphs 1 through 47 are incorporated as though fully set forth herein.

49.     The fundamental Second Amendment right to keep and bear arms inherently embodies two complimentary guarantees: the right to acquire arms, and the right to make arms. See, *e.g. Mance* v. *Holder*, 2015 WL 567302 *15 n. 8, 2015 U.S. Dist. LEXIS 16679 *25 n.8 (N.D.

Tex. Feb. 11, 2015) ("the Court finds that operating a business that provides Second Amendment services is generally protected by the Second Amendment, and prohibitions on firearms sales are subject to similar scrutiny.").

50. If one cannot acquire or create arms, one cannot exercise Second Amendment rights. Infringing upon the creation and acquisition of arms of the kind in common use for traditional lawful purposes violates the Second Amendment. *District of Columbia* v. *Heller*, 554 U.S. 570, 627 (2008).

51. By maintaining and enforcing the prepublication approval requirement and forbidding Plaintiffs' from publishing the subject files, which concern the lawful manufacture of firearms, Defendants are violating the Second Amendment rights of Plaintiffs, their customers, members, and visitors. Plaintiffs are therefore entitled to injunctive relief against Defendants' application of the prior restraint.

COUNT FOUR
RIGHT TO DUE PROCESS OF LAW—U.S. CONST. AMEND. V

52. Paragraphs 1 through 51 are incorporated as though fully set forth herein.

53. The Due Process Clause of the Fifth Amendment to the United States Constitution requires the Government to provide fair notice of what is prohibited, prohibits vague laws, and prevents arbitrary enforcement of the laws.

54. On its face, Defendants' prepublication approval requirement is overly broad, vague, arbitrary, and lacks adequate procedural safeguards. Plaintiffs are therefore entitled to injunctive relief against Defendants' application of the prior restraint.

55. As applied to Defense Distributed, Defendants' imposition of the prepublication approval requirement, continuing refusal to advise Defense Distributed of what speech requires prior

approval, and failure to provide a process for timely review of Defense Distributed's speech have deprived Defense Distributed of its right to fair notice of what is required under the law and adequate process, in violation of the Fifth Amendment. Defense Distributed is therefore entitled to injunctive relief against Defendants' application of the prior restraint.

COUNT FIVE

VIOLATION OF CONSTITUTIONAL RIGHTS—*BIVENS* ACTION

56. Paragraphs 1 through 55 are incorporated as though fully set forth herein.

57. By maintaining and enforcing the prepublication approval requirement and forbidding Defense Distributed from publishing the Subject Files, Defendants are propagating customs, policies, and practices that are unlawful under clearly established law and that violate Defense Distributed's individual rights and those of its patrons under the First, Second and Fifth Amendments to the United States Constitution.

58. As a direct cause of Defendants Handelman, Peartree, Heidema, and Smith's violations of Defense Distributed's rights and the rights of its patrons, Defense Distributed suffered financial losses, entitling Defense Distributed to recover compensatory damages from Defendants Handelman, Peartree, Heidema, and Smith.

59. Defendants Handelman, Peartree, Heidema, and Smith acted with evil motive, actual malice, oppression, intent to injure, or reckless or callous disregard for Defense Distributed's rights, such that punitive and exemplary damages are appropriate.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendants as follows:

1.     A declaration that Defendants' prepublication approval requirement for privately generated unclassified information is, on its face and as applied to Plaintiffs' speech, null and void, and of no effect, as an unconstitutional Ultra Vires government action.

2.     A declaration that Defendants' prepublication approval requirement for privately generated unclassified information, on its face and as applied to Plaintiffs' posting of the Subject Files, violates the First Amendment to the United States Constitution;

3.     A declaration that Defendants' prepublication approval requirement for privately generated unclassified information, on its face and as applied to Plaintiffs' posting of the Subject Files, violates the Second Amendment to the United States Constitution;

4.     A declaration that Defendants' prepublication approval requirement for privately generated unclassified information, on its face and as applied to Plaintiffs' posting of the Subject Files, violates the Fifth Amendment to the United States Constitution;

5.     An order permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing the prepublication approval requirement against privately generated unclassified information;

6.     An order permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing the prepublication approval requirement against Plaintiffs' publication of the Subject Files;

7.     An award of compensatory and punitive and exemplary damages to Defense Distributed against Handelman, Peartree, Heidema, and Smith in an amount according to proof at trial, owing to their direct actions that caused or contributed to Defense Distributed's injuries;

8. Attorney fees and costs pursuant to 28 U.S.C. § 2412; and

9. Any other further relief as the Court deems just and appropriate.

PLAINTIFF DEFENSE DISTRIBUTED DEMANDS TRIAL BY JURY ON THE ISSUE OF DAMAGES.

Dated: May 6, 2015                                    Respectfully submitted,

GURA & POSSESSKY, PLLC                                FISH & RICHARDSON P.C.

Alan Gura                                             */s/ William B. Mateja*
Virginia Bar No. 68842*                               William T. "Tommy" Jacks
Gura & Possessky, PLLC                                Texas State Bar No. 10452000
105 Oronoco Street, Suite 305                         William B. Mateja
Alexandria, Virginia 22314                            Texas State Bar No. 13185350
703.835.9085 / Fax 703.997.7665                       David S. Morris
alan@gurapossessky.com                                Texas State Bar No. 24032877
                                                      FISH & RICHARDSON P.C.
Matthew Goldstein                                     One Congress Plaza, Suite 810
D.C. Bar No. 975000*                                  111 Congress Avenue
Matthew A. Goldstein, PLLC                            Austin, Texas 78701
1012 14th Street NW, Suite 620                        (512) 472-5070 (Telephone)
Washington, DC 20005                                  (512) 320-8935 (Facsimile)
202.550.0040/Fax 202.683.6679                         jacks@fr.com
matthew@goldsteinpllc.com                             dmorris@fr.com
                                                      mateja@fr.com
Josh Blackman
Virginia Bar No. 78292*
1303 San Jacinto Street
Houston, Texas 77002
202.294.9003/Fax: 713.646.1766
joshblackman@gmail.com

*Admission pro hac vice pending