IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED and<br>SECOND AMENDMENT FOUNDATION, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF STATE, et al.,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 15-CV-372-RP |

PLAINTIFFS' MOTION TO STAY PROCEEDINGS PENDING APPEAL
AND REQUEST FOR EXPEDITED BRIEFING SCHEDULE

Plaintiffs move the Court to stay further proceedings pending resolution of their interlocutory appeal.[1]

PROCEDURAL STATUS

On August 4, 2015, this Court denied Plaintiffs' Motion for Preliminary Injunction. (Dkt. 43). Plaintiffs timely appealed from that order (Dkt. 45), and their appeal is now pending at the Fifth Circuit under Case No. 15-50759.

The Defendants, acting in their official capacity, have agreed to stay further proceedings in this Court pending the appeal's resolution. But in their individual capacity, the Defendants insist on proceeding in this Court, having filed a Renewed Motion to Dismiss (Dkt. 61) asking this Court to find, among other things, that their prior restraint is not unconstitutional.

---

[1] Pursuant to Local Rule of CV-7(i), the undersigned discussed this motion with opposing counsel for both official and individual party defendants, who stated that Defendants collectively oppose the requested relief.

1

APPLICABLE LEGAL STANDARD

"The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58 (1982) (per curiam), superseded by rule on other grounds. When one aspect of a case is before the appellate court on interlocutory review, the district court is divested of jurisdiction over that aspect of the case. *Taylor v. Sterrett*, 640 F.2d 663, 667 (5th Cir. 1981). "However, where an appeal is allowed from an interlocutory order, the district court may still proceed with matters not involved in the appeal." *Id.* at 667-68.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In deciding whether a stay is warranted for proceedings on matters not directly involved in an appeal, district courts consider four factors: (1) whether the movant has made a showing of likelihood of success on the merits; (2) whether the movant has made a showing of irreparable injury if the stay is not granted; (3) whether the granting of the stay would substantially harm the other parties; and (4) whether the granting of the stay would serve the public interest. *United States v. Baylor Univ. Medical Center*, 711 F.2d 38, 39 (5th Cir. 1983); *United States v. McKenzie*, 697 F.2d 1225, 1226 (5th Cir. 1983).

Courts do not apply the four factors in a rigid, mechanical fashion. *Baylor*, 711 F.2d at 39. For example, in *Ruiz v. Estelle* the Fifth Circuit held that the movant "need only present a substantial case on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting the stay." 650 F.2d 555, 565 (5th Cir.1981).

ARGUMENT

I.   CORE ISSUES PRESENTED IN THE INDIVIDUAL DEFENDANTS' RENEWED MOTION TO DISMISS ARE SUBJECT TO THE EXCLUSIVE JURISDICTION OF THE COURT OF APPEALS.

In their Renewed Motion to Dismiss, the individual capacity Defendants argue that this Court must reject Defense Distributed's *Bivens* claims because "Defense Distributed has failed to show that the application of arms-export regulations to its electronic files violated any clearly established First Amendment right" (Dkt. 61 at 12), "failed to show that it was selectively regulated in violation of any clearly established First Amendment right" (Dkt. 61 at 15), "failed to show a violation of any clearly established Second Amendment right" (Dkt. 61 at 18), and because "Defense Distributed has failed to show a violation of any clearly established Fifth Amendment right." Dkt. 61 at 20.  Each of these arguments concern issues now within the Fifth Circuit's exclusive jurisdiction during Plaintiffs' interlocutory appeal.

Further asking this Court to encroach upon the Court of Appeals' jurisdiction in their Renewed Motion to Dismiss, the individual defendants ask this Court to reject Defense Distributed's *Bivens* claims because of "the alternative processes already available to challenge applications of arms-export regulations," which Defendants characterize as an "existing process for protecting the interest." Dkt. 61 at 6. The inadequacy of these alleged procedural protections underlying Defendants' system of censorship is an issue before the Court of Appeals. Accordingly, this Court must stay any proceedings on Defendants' pending motion until a final decision by the Court of Appeals completely resolves these issues.

II.   PLAINTIFFS SATISFY EACH FACTOR FOR ISSUANCE OF A STAY.

A.   PLAINTIFFS PRESENT A SUBSTANTIAL CASE ON THE MERITS OF ITS APPEAL.

The first factor of the test for issuance of a stay requires an evaluation of "whether the

3

movant has made a showing of likelihood of success on the merits." *Baylor*, 711 F.2d at 39. This factor does not require a district court to conclude that its decision was in error, or find even a probability of success on the merits. Instead, the moving party need only present "a substantial case on the merits when a serious legal question is involved and show that the balance of the equities [i.e., consideration of the other three factors] weighs heavily in favor of granting a stay." *Id.*; *see also Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981) ("If a movant were required in every case to establish that the appeal would probably be successful, the Rule would not require as it does a prior presentation to the district judge whose order is being appealed."); *see also Washington Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977) (noting that a court "may grant a stay even though its own approach may be contrary to movant's view of the merits").

In the present case, there is a substantial likelihood of success on appeal because (1) the Court of Appeals may apply the Supreme Court's recent holding in *Reed v. Town of Gilbert* differently than this Court did; (2) the Court of Appeals may find the prior restraint unconstitutional as-applied because Defendants only impose it against Defense Distributed; (3) even if the Court of Appeals does not apply strict scrutiny, undisputed facts establish that Defendants did not provide adequate procedural protections; and (4) because the case presents a complex legal issue.

        1.    THE COURT OF APPEALS MAY APPLY THE SUPREME COURT'S HOLDING IN *REED* DIFFERENTLY THAN THIS COURT DID.

In *Reed v. Town of Gilbert*, the Supreme Court held that "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." 135 S. Ct. 2218, 2227 (2015). Under *Reed*, a law that is content-based on its face will be subject to strict scrutiny even though it does not favor one viewpoint

over another and regardless of whether the legislature acted with benign motivations when it adopted the law. The Court explained "[i]nnocent motives do not eliminate the danger of censorship presented by a facially content-based statute, as future government officials may one day wield such statutes to suppress disfavored speech."). *Id.* at 2229-30.

Since *Reed* was issued on June 18, 2015—only six days before Plaintiffs filed their Reply (Dkt. 37 at 14)—the federal courts have begun to take stock of how the opinion altered our First Amendment jurisprudence. On reconsideration after *Reed* was decided, the Seventh Circuit reversed itself, finding that the City of Springfield's anti-panhandling ordinance was now unconstitutional. *Norton v. City of Springfield, Ill.*, No. 13-3581, 2015 WL 4714073, at *2 (7th Cir. Aug. 7, 2015). Judge Easterbrook, writing for the court, explained that "[t]he majority opinion in *Reed* effectively abolishes any distinction between content regulation and subject-matter regulation. Any law distinguishing one kind of speech from another by reference to its meaning now requires a compelling justification." *Id.* Other courts have reached similar conclusions, and many others will undoubtedly follow their lead.[2]

This Court's August 4, 2015 Order finding that ITAR "unquestionably regulates speech concerning a specific topic," yet is still constitutional, relies on precedents that were abrogated by *Reed*. For example, this Court relies on *Ward v. Rock Against Racism* to reject Plaintiffs' argument that the regulation is content based. (Dkt. 43 at 12, 113 citing 491 U.S. 781, 791 (1989)). *See also Asgeirsson v. Abbott*, 696 F.3d 454, 459 (5th Cir. 2012). However, As Judge

---

[2] *Cahaly v. Larosa,* 796 F.3d 399, 405 (4th Cir. 2015) (4th Cir. Aug. 6, 2015) ("Because of these facial content distinctions, we do not reach the second step to consider the government's regulatory purpose."); *Thomas v. Schroer*, No. 2:13-CV-02987-JPM, 2015 WL 5231911, at *5 (W.D. Tenn. Sept. 8, 2015) (The concurrence's unsupported conclusions ring hollow in light of the majority opinion's clear instruction that "a speech regulation targeted at specific subject matter is content based even if it does not discriminate among viewpoints within that subject matter."); *Rideout v. Gardner*, No. 1:14-cv-00489-PB, 2015 WL 4743731, at *9 (D.N.H. August 11, 2015) ("[L]ike the sign code at issue in *Reed*, the law under review here is subject to strict scrutiny even though it does not discriminate based on viewpoint and regardless of whether the

Manion noted in his concurring opinion in *Norton*, "*Reed* injected some much-needed clarity into First Amendment jurisprudence and, in doing so, should eliminate the confusion that followed from *Ward*." *Norton*, at *2. Specifically, "*Reed* saw what *Ward* missed—that topical censorship is still censorship." *Id.* at *3. This Court did not address the impact of *Reed* on *Ward*.

Further, this Court relies on the so-called "secondary effects" doctrine. (Dkt. 43 at 12 citing *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47–48 (1986)). However, the *Reed* Court "never mentions 'secondary effects' or cites *Renton* or any of the other secondary effects cases," creating a "conflict that lower courts will have to struggle with."[3] This Court failed to acknowledge *Reed's* impact on both *Ward* and *Renton*. These are both core inquiries that are necessary to resolve the case, and the Fifth Circuit will soon decide on appeal.

Contrary to the reasoning adopted by this Court's August 4, 2015 Order, the Court of Appeals may well adopt the reasoning of other federal courts applying *Reed*, which interpret the Supreme Court's holding to mean that a content-based prior restraint is subject to strict scrutiny regardless of the government's underlying motive.

2. THE RESTRAINT IS ONLY APPLIED AGAINST DEFENSE DISTRIBUTED.

The Court's August 4, 2015 Order does not address the undisputed fact that Defendants only enforce their prior restraint against Defense Distributed. The Court of Appeals may consider this fact and other parts of the record as establishing that Defendants impose their prior restraint against Defense Distributed's speech based on disagreement with the message it conveys. Here, the complete failure of Defendants to enforce their prior restraint against countless other persons posting ITAR-controlled technical data on the Internet speaks for itself.

---

legislature acted with good intentions when it adopted the law.")
   [3] Eugene Volokh, *Supreme Court reaffirms broad prohibition on content-based speech restrictions, in today's Reed v. Town of Gilbert decision*, THE VOLOKH CONSPIRACY (June 18,

6

      3.      THE LACK OF SUFFICIENT PROCEDURAL SAFEGUARDS IS UNDISPUTED.

Relevant and undisputed portions of the record establish that Defendants do not maintain the necessary procedural protections required by *Freedman v. Maryland*, 380 U.S. 51 (1965); s*ee also Fantasy Ranch, Inc. v. City of Arlington*, 459 F.3d 546, 563 (5th Cir. 2006).

The regulations do not set any concrete deadline for decisions,[4] do not place the burden on Defendants to go court to suppress the speech, and do not require that Defendants bear the burden of proof in court as required by *Freedman*. Moreover, instead of providing for judicial review of license determinations, as required under *Freedman*, the ITAR altogether prohibits judicial review.

Further evidence that Plaintiffs have a substantial likelihood of success on the merits is that a federal court in *Bernstein v. Dep't. of State*, 945 F. Supp 1279 (N.D. Cal. 1996), has already found that the regulations fail to provide necessary procedural safeguards. *See Id.* at 1289 ("The ITAR scheme, a paradigm of standardless discretion, fails on every count.").

      4.      THE CASE PRESENTS COMPLEX CONSTITUTIONAL QUESTIONS.

The first prong also favors a stay because of the intricate interactions between the First and Second Amendments. Indeed, other district courts have stayed or refrained from further proceedings where a pending appeal serves to resolve complex constitutional questions, particularly in the Second Amendment area. *See, e.g., Wrenn v. District of Columbia*, D.D.C. No.

---

2015), https://goo.gl/5OTo8t.

[4] The Court's August 4, 2015 Order notes the "regulations include a ten day deadline for providing a preliminary response, as well as a provision for requesing [sic] expedited processsing [sic]" (Dkt. 43 at 16). Plaintiffs respectfully point out that the "preliminary response" is merely an agency email acknowledging receipt of a request (Exhibit 1) and, while submitters can request expedited determinations, final agency determinations take months and sometimes a year or more—a fact which is undisputed by the parties. Further, while the Order states that a Presidential directive requires a license decision within 60 days of receipt, the Federal Register notice implementing that requirement contains broad national security exceptions, which provide Defendants with unbridled discretion to override the deadline.

1:15-CV-162-FJS, Dkt. 29 (June 24, 2015); *Ezell v. City of Chicago*, N.D. Ill. No. 1:10-CV-5135, Dkt. 19 (April 8, 2011); *Pena v. Cid*, 2:09-CV-1185- FCD-KJM, Dkt. 28 (August 9, 2010); *Pena v. Cid*, 2:09-CV-1185-FCD-KJM, Dkt. 24 (Oct. 2, 2009).

    B.    DEFENDANTS WILL BE IRREPARABLY INJURED ABSENT A STAY.

Without a stay, Plaintiffs will suffer the extreme prejudice of simultaneously having to litigate the same issues in two courts, to say nothing of the potential complications that might arise if further litigation in the district court generated a second interlocutory appeal.

Further, a requisite element of Distributed's *Bivens* claims is the violation of constitutional rights. Forcing Plaintiffs to litigate other issues closely-related to the *Bivens* claims will waste this Court's time and resources, as well as the parties' resources. These issues will likely be decided, one way or another, by the Fifth Circuit on an expedited basis.

    C.    DEFENDANTS WILL NOT BE SUBSTANTIALLY HARMED BY A STAY.

The third prong of the test—whether granting the stay would substantially harm the other parties—also favors a stay because a stay will have little, if any, detrimental effect on the individual party defendants. To the contrary, following this Court's August 4, 2015 Order, all of the individual party defendants' defenses remain. Nothing stands in the way of Defendants from imposing their prior restraint on thousands of people who appear to be currently publishing ITAR-controlled technical data on the Internet and other public forums.

Indeed, absent a stay, the individual defendants could suffer substantial harm in incurring substantial time and costs in litigating issues that will be moot if the Fifth Circuit rules in the government's favor. A stay thus serves the interests of all parties to the pending appeal by preserving the existing state of affairs and avoiding the waste of limited resources.

Moreover, Plaintiffs have not sought to delay this proceeding, but have acted promptly in timely filing their Notice of Appeal. The appeal of the Court's order is not likely to be lengthy. A limited delay in proceedings at this early point in the case does not constitute a substantial injury sufficient to outweigh the factors favoring Plaintiffs. *See CBS Emp. Fed. Cr. U. v. Donaldson, Lufkin*, 716 F. Supp. 307, 310 (W.D. Tenn. 1989) (Court finding that delay in trial does not constitute a substantial injury under test for issuance of a stay).

    D.    THE PUBLIC INTEREST IS BEST SERVED BY A STAY

The ITAR does not contain any prepublication approval requirement for public speech on privately generated technical data. Rather, it was only after the Motion for Preliminary Injunction was filed on May 11, 2015 that Defendants published a notice of proposed rulemaking in the Federal Register that would amend the ITAR to add a prepublication approval requirement on public speech. *See* 80 Fed. Reg. 31,525 (June 3, 2015).

Defendants' proposal received over 9,000 public comments, the vast majority of which vigorously oppose Defendants' creation of a prior restraint under the ITAR. Other public comments, submitted by respected members of industry and public universities, argue that the proposed restraint is unconstitutional and respectfully request the Defendants not to impose it. Many of these comments come from organizations with no involvement in Second Amendment advocacy, including General Electric Corporation (Exhibit 2), International Business Machines (Exhibit 3), and many public universities.

- The General Electric Corporation's comment raises constitutional concerns and recommends that the restraint be narrowed "to apply only to specific types of information, such as government-funded or classified information." Exhibit 2 at p. 7.

- The Semiconductor Industry Association's comment notes: "The DDTC prepublication review requirement would operate as a *prior restraint on free speech* that applies to all would-be publishers of ITAR technical data, including to print and electronic news media outlets, engineering journals, public libraries, publishing houses, trade shows, and conference organizers. It also applies to persons who post information to electronic

9

bulletin boards, company websites, and other online public forums." Exhibit 4 at p. 11 (emphasis added).

- The comment by the Association of American Universities et al., which is adopted by reference in the comments submitted by Harvard and many other universities, notes: "the scope [of the restraint] is not limited to government funding, and could apply to a very wide range of unclassified information from many different sources" and urges the defendants "to withdraw it or substantially limit its scope." Exhibit 5 at p. 4.

- Texas A&M University's comment notes, "Without the 'significantly and directly related to [a defense article]' qualifier, we believe the definition of defense services is unduly broad, and may interfere with *First Amendment protected expression*.." Exhibit 6 at p. 6 (emphasis added).

Many groups, including the Ad Hoc Coalition for Effective Export Control Reform, a coalition of attorneys with specialized experience in the ITAR, commented that Defendants' proposal represents a significant change by seeking to add a prior restraint that does not yet exist in the ITAR. Exhibit 7 at pp. 20-22. *See also* Public comments from Computing Technology Industry Association, Exhibit 8 at p. 3; William Root, former State Department East/West Trade Bureau Director, App. Exhibit 9 at p. 1. These comments demonstrate how this Court's order altered the status quo. The large number and broad scope of public opposition to Defendants' prior restraint presented in public comments establishes that the public interest is best served by allowing the litigants to focus their time, energy, and resources on resolving constitutional issues rather than proceeding to *Bivens* claims and other issues that may follow.

CONCLUSION AND REQUEST FOR EXPEDITED BRIEFING SCHEDULE

For the foregoing reasons, further proceedings on Plaintiffs' claims should be stayed pending appeal.

To facilitate the orderly consideration of the issues before the Court, and, if necessary, to allow the parties sufficient time to prepare their briefings on the individual defendants' motion to dismiss, Plaintiffs respectfully request an expedited briefing schedule on this Motion.

A proposed form of Order is attached.

Dated: September 22, 2015                                Respectfully submitted,

GURA & POSSESSKY, PLLC                       FISH & RICHARDSON P.C.

/s/ Alan Gura*                                           /s/ William B. Mateja
Virginia Bar No. 68842                                   William T. "Tommy" Jacks
Gura & Possessky, PLLC                                   Texas State Bar No. 10452000
105 Oronoco Street, Suite 305                            William B. Mateja
Alexandria, Virginia 22314                               Texas State Bar No. 13185350
703.835.9085 / Fax 703.997.7665                          David S. Morris
alan@gurapossessky.com                                   Texas State Bar No. 24032877
                                                         FISH & RICHARDSON P.C.
/s/ Matthew Goldstein*                                   One Congress Plaza, Suite 810
D.C. Bar No. 975000                                      111 Congress Avenue
Matthew A. Goldstein, PLLC                               Austin, Texas 78701
1012 14th Street NW, Suite 620                           (512) 472-5070 (Telephone)
Washington, DC 20005                                     (512) 320-8935 (Facsimile)
202.550.0040/Fax 202.683.6679                            jacks@fr.com
matthew@goldsteinpllc.com                                dmorris@fr.com
                                                         mateja@fr.com

Josh Blackman
Virginia Bar No. 78292
1303 San Jacinto Street
Houston, Texas 77002
202.294.9003/Fax: 713.646.1766
joshblackman@gmail.com

*Admitted pro hac vice

CERTIFICATE OF SERVICE

    The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on September 22, 2015, and was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(b)(1).

        /s/ Matthew A. Goldstein
        Matthew A. Goldstein