EXHIBIT 11

1

July 15, 2015

To:         DDTCPublicComments@state.gov
              publiccomments@bis.doc.gov

From:      Bill Root, waroot23@gmail.com; tel. 517 333 8707

Subject:    ITAR Amendment - Revisions to Definitions: Data Transmission and Storage
              EAR Revisions to Definitions - RIN 0694-AG32

The June 3, 2015 proposed rules from the State and Commerce Departments are intended to harmonize and clarify ITAR and EAR definitions while improving national security. These comments describe many respects in which they go in the opposite direction. The six most important ones are those numbered 1 to 6 below. Those numbered 7 to 10, while less important, are still significant. At the end is an analysis of what could happen if no changes are made.

1.    <u>Prior Restraint of Public Domain Exclusion from Export Controls</u>
The ITAR proposed requirement for USG authorization to put information into the "public domain" in 120.11(b) is a reversal of actions 30 years ago to comply with the free speech first amendment to the Constitution. EAR proposals would change "are already published or will be published" to "are published" in what is "not subject to the EAR" in  734.3(b)(3)(i) and delete "The EAR do not cover technology ... that is made public by the transaction in question" now in 734 Supplement 1. So, ITAR would explicitly challenge the Constitution and EAR would remove language which now complies with the Constitution. Remedies: <u>Delete 120.11(b); do not revise 734.3(b)(3)(I); and do not delete 734 Supplement 1.</u>

2.    <u>Deletion of Clarifications</u>
The many clarifying questions and answers concerning publicly available information in EAR 734 Supplement 1 would be deleted. Remedies: <u>Do not delete 734 Supplement 1</u> (a few revisions to update that Supplement are included in #10 below).

3.    <u>Over-riding "Required"</u>
ITAR 120.46 would add the EAR and Wassenaar definition of "required" as
        "only that portion of technical data that is peculiarly responsible for achieving or
        exceeding the controlled performance levels, characteristics, or functions."
However, per proposed Note 3, those words would ambiguously be met if technical data are for development, production, or use of a defense article unless subject to three releases now in the definition of "specially designed." EAR would add to 772.1 a definition of "peculiarly responsible" having the same effect as ITAR Note 3. "Peculiarly responsible" wording now appears not only in the definition of "required" but also in the definition of "specially designed." So, the June 3 proposals largely over-ride the substance of the "required" definition in ITAR and in the hundreds of existing uses of "required" and "specially designed" in the EAR. Remedy: <u>Limit 120.46 Note 3 and 772.1 definition of "peculiarly responsible" to License Exceptions</u> (for details see #10 below).

2

4.    <u>Violations of NSDD 189</u>

A 1985 National Security Decision Directive (NSDD) 189 specifies:

> "where the national security requires control, the mechanism for control of information generated during federally-funded fundamental research in science, technology and engineering at colleges, universities and laboratories is classification. ... No restrictions may be placed upon the conduct or reporting of federally-funded fundamental research that has not received national security classification ..."

The June 3 120.49, 734.8, and 734.11 proposals expand  existing pre-publication review restrictions on federally-funded fundamental research other than classification. Remedy: <u>Delete all restrictions on federally-funded fundamental research in 120.49, 734.8, and 734.11</u> (for details see #10 below).

5.    <u>Inadequate Control of Munitions Production</u>

Instead of expanding unconstitutional and unenforceable controls on what is publicly available and increasing ambiguity on what technology is controlled, the United States should comply with the vastly more important multilateral controls on munitions production (WA ML 22.b.1) and missile production (MTCR 1.B.1). Several decades ago, a UK firm, Matrix Churchill, after consulting with the UK government, exported to Iraq, without a license, equipment not requiring a license but used to produce munitions. Parliamentarians severely criticized the UK government, which survived a motion of no confidence by just one vote. The UK had failed to include on its control list the following COCOM Munitions List item 22.b.1, which remains on the Wassenaar Munitions List to this day:

> Design of, assembly of components into, and operation, maintenance, and repair of complete production installations for Munition List items even if the components of such production installations are not specified.

ITAR 120.9 defense services cover "furnishing assistance to foreign persons in the production of defense articles."  This is relevant. But, in 1980, DOD concluded that such general wording was insufficient. So, I led a negotiation which added ML 22.b.1. The Matrix Churchill case proved that DOD was right. Even so, in the intervening 35 years, neither State nor Commerce has seen fit to incorporate into a U.S. export control list WML 22.b.1, b.2, or b.5. WML 22.b.2 reads:

> Technology required for development or production of small arms even if used to produce reproductions of antique small arms.

WML 22.b.5 reads:

> Technology required exclusively for incorporation of biocatalysts specified in ML7.i.1 into military carrier substances or military materials.

In 1987, the Missile Technology Control Regime was established. Its main objective was to control production of missiles. Once again, ITAR defense services language was relevant.  But U.S. negotiators wanted something more specific, called "production facilities," defined as:

> Production equipment and specially designed software therefor integrated into installations for development or for one or more phases of production.

Item 1.B.1, "production facilities" for missiles, has been on the MTCR list for almost three decades.  But it still has not made it onto a U.S. export control list.

3

Remedies: <u>add new ECCN 9B110 "Production facilities" for "development" or "production" of "missiles"; revise 9E018 heading to read "Technology" from Wassenaar Munitions List; and add 9E018 sub-items for WML 22.b.1, b.2, and b.5.</u>

6.     <u>Discrepancies in prohibited countries between ITAR and EAR</u>
The ITAR list of prohibited countries in 126.1 is supposed to be replicated in EAR Country Group D:5. A footnote to D:5 states that, if there are any discrepancies between the two lists, the State Department list shall be controlling. On January 29, 2015, BIS added an embargo of Crimea to EAR 746.6, except for food and medicine, but did not add Crimea to D:5.  DDTC has not yet added Crimea to 126.1.  It makes no sense to prohibit to Crimea toothpaste and paper clips, but not items on the USML. On May 29, 2015, the State Department removed Fiji from 126.1. D:5 still includes Fiji. Remedies: <u>add Crimea to 126.1 and to 740 Supplement 1 Country Group D:5 and delete Fiji from D:5.</u>

7.     <u>Establish new ITAR sections of part 120</u> to read:

**Subject to ITAR**
(a)     Except for items excluded in paragraph (b) of this section, the following items are subject to the ITAR:
(1)     All USML-controlled  "commodities," software, and "technology" (*i.e.*, all "defense articles" and "defense services") located in the United States, including in a U.S. Foreign Trade Zone or moving in-transit through the United States from one foreign country to another; and
(2)     All U.S.-origin "defense articles" and "defense services" wherever located;
(b)     The following are not subject to the ITAR:
(1,2,3,4)     (From proposed 120.6(b)(3)(i, ii, iii, iv), re public domain, fundamental research changing 120.46 to 120.49), scientific principles, and patents, and delete 120.6 Note to paragraph (b).
         (a) and (b)(1-4) would harmonize with EAR 734.3(a)(1), (a)(2), and (b)(3).)
(5)     Basic marketing information on function, purpose, or general system descriptions of defense articles;
(6)     Telemetry data per XV Note 3.
         ((b)(5) and (6) would harmonize with 120.10(b) exclusions from "technical data.")

**Commodity**
*Commodity* means any item except software or technology.
         (This would harmonize with the EAR definition of "commodity.")

**Technology**
*Technology* means "technical data" or "defense services"
         (This would harmonize with EAR and Wassenaar.)

4

8.      Revise ITAR 120.6, 120.9, and 120.46 and EAR 772.1 definition of "peculiarly
        responsible," as follows:


120.6 **Defense article, revise to read:**
*Defense article* means any commodity, software, or technical data controlled on the United
States Munitions List.


120.9 **Defense services:**
In (a)(1) change "directly related to" to "required for";
In Note 1 to paragraph (a)(1) change "directly related to" to "required for" (twice).
        (This would harmonize with EAR and Wassenaar.)


120.46 **Required:**
In (a), change "technical data" to "technology" (three times);
In Note 2 to paragraph (a):
        change "technical data" to "technology" (twice);
        change "enumerated" to "controlled";
        change "to which it is directly related" to "for which it is required"; and
        change"directly related to" to "required for";
Revise Note 3 to paragraph (a) to read:
        "Technology" "peculiarly responsible for achieving or exceeding the controlled
        performance levels, characteristics, or functions" is, nevertheless, not controlled if:
        (1, 2, 3, 4, 5 from proposed Note 3)
                (Recommended changes in paragraph (a), in Note 2 to paragraph (a), and
                to remove from Note 3 that technical data for a defense article is controlled
                regardless of the performance level, characteristic, or function would harmonize
                with EAR and Wassenaar.
                Changing "enumerated" to "controlled" in Note 2 would retain on the
                USML technical data specifically described there using catch-all language
                excluded from enumerated.
                The   recommended retention in Note 3 of decontrol parameters would
                harmonize with the recommended portion of the BIS proposed definition of
                "peculiarly responsible.")


772.1 peculiarly responsible, revise to read:
        "Technology" "peculiarly responsible for achieving or exceeding the controlled
        performance levels, characteristics, or functions" is, nevertheless, not controlled if:
        (1, 2, 3, 4, 5, 6 from proposed definition)


9.      In subcategories for technical data and defense services on the USML, change
                Technical data (see 120.10 of this subchapter) and defense services (see 120.9 of
                this subchapter) directly related to the defense articles described in ...
        to

5

Software "specially designed" for  and "technology" "required" for "commodities" (and software) controlled by ...

10.   Revise ITAR 120.11 and 120.49 and EAR 734.3, 734.7, 734.8, 734.11, Supplement 1 to part 734, and 740.9(c), as follows:

120.11 public domain:
In (a) insert following new (a)(1) and renumber (2) through (5) as (3) through (6):
(1)     Sales at a price not exceeding the cost of reproduction and distribution;
Delete 120.11(b)

120.49 fundamental research
In (a)(1), delete "located"
Add the following new Note 3 to paragraph (a):
          Pursuant to NSDD 189, where the national security requires control of information generated during federally-funded fundamental research in science, technology, and engineering at colleges, universities, and laboratories, the mechanism for control is classification. No restrictions may be  placed upon the conduct or reporting of federally-funded fundamental research that has not received national security classification.
Delete and Reserve 120.49(b) (on prepublication review) and delete the three Notes to paragraph (b)
          (Proposed Note 2 to paragraph (a) provides adequate guidance for privately sponsored fundamental research. Recommended Note 3 to paragraph (a) provides adequate guidance for federally-funded fundamental research.)

734.3(b)(3)(i):
 change "Are "published",," to "Are already published, or will be published"; and
add:     "(the EAR do not cover technology that is already publicly available, as well as technology that is made public by the transaction in question)"

734.7 Published
In (a) insert following new (a)(1) and renumber (2) through (5) as (3) through (6):
(1)     Sales at a price not exceeding the cost of reproduction and distribution;

734.8 fundamental research
after the semi-colon at the end of (b)(1), add "or"
at the end of (b)(2), change "; or" to a period
delete (b)(3); delete Note 2 to paragraph (b); insert following new (c), reletter (c) to (d)
(c)     Pursuant to NSDD 189, where the national security requires control of information generated during federally-funded fundamental research in science, technology, and engineering at colleges, universities, and laboratories, the mechanism for control is classification. No restrictions may be  placed upon the

6

conduct or reporting of federally-funded fundamental research that has not
received national security classification.

734.11 Government-sponsored research covered by contract controls
   Delete

734 Supplement 1 Questions and answers - technology and software subject to the EAR
   Retain, rather than delete as proposed
   Delete Question A(4) Research under DOE grant requiring prepublication DOE clearance
   Delete Answer to A(6) and substitute:
         No, provided that:
      the government has not classified any of its content;
      you did not include, or otherwise use, any classified information in its
      preparation;
      your intent is to make it available generally to the public;
      during its preparation, you agreed to no private pre-publication review; and
      you have not sold it, or advertised it for sale, at a price exceeding the cost of
      reproduction and distribution.
   Delete Answer to D(11) and substitute:
      Yes, provided that:
      the government has not classified any of its content;
      you did not include, or otherwise use, any classified information in its
      preparation;
      your intent is to make the research available generally to the public;
      during its preparation, you agreed to no private pre-publication review; and
      you have not sold it, or advertised it for sale, at a price exceeding the cost of
      reproduction and distribution.
   Delete Answer to E(1) and substitute:
         Pursuant to 120.49 Note 3 to paragraph (a) and 734.8(c) (as recommended
         above), the only permissible restriction on federally-funded fundamental research
         is classification. You should ask the DOD sponsor to withdraw the prepublication
         review requirement.

Delete 740.9(c) beta test software
   (The expressions "intended for distribution to the general public" and "free-of-charge or
   at a price that does not exceed the cost of reproduction and distribution" make this "not
   subject to the EAR," so that no license exception is needed.)

<u>Analysis</u>

Imagine you are a journalist writing a story on the impact of U.S. bombers in Iraq and Syria. You
read in Note 1 to paragraph (a) of 120.46, on "required," that "any technical data, regardless of
significance, peculiar to making an aircraft a bomber" is controlled. Almost anything you write
about a bomber could be construed as somehow related to making it. You clearly intend to put

7

your story in the public domain. But you note removal of sales at newsstands from the definition of public domain. Moreover, you read in 120.11(b): "Technical data or software, whether or not developed with government funding, is not in the public domain if it has been made available to the public without authorization from (a U.S. government official)." So you seek such authorization.  You then discover that, for similar reasons, not only newspapers in general but also other media, advertising agencies, and academic researchers are also seeking such authorizations, often for their entire content, out of an abundance of caution.  The government is overwhelmed and cannot respond within the deadlines demanded by the applicants. Moreover, the courts cannot cope with the deluge of lawsuits alleging unconstitutional prior restraint of free speech. So, reporters, advertisers, and researchers, not wishing to stop their vocations nor to significantly delay publishing, advertising, or sharing research results with the public, feel obliged to make their information publicly available without government authorization. They would thereby incur the risk of  "administrative, civil, and possible criminal penalties under other law," per 734 Supplement 1 E(2). This quotation would be deleted but would probably still be applicable.

The proposed 772.1 definition of "peculiarly responsible" would ambiguously over=ride the substance of the existing Wassenaar and EAR definition of "required" and a key part of the EAR definition of "specially designed." Those terms are used in hundreds of places in the CCL. The ambiguities would cause incredible confusion in industry. Exporters would inevitably make varying interpretations. These are national security rules. Such confusion would be a significant threat to national security.  That threat can easily be avoided by simply retaining the existing definitions of "required" and "specially designed" unchanged.