# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED ET AL., | § § § | |
| Plaintiff, | § § | C.A. NO. 1:15-CV-00372-RP |
| v. | § § | JURY DEMANDED |
| UNITED STATES DEPT. OF STATE, ET AL, | § § § | |
| Defendants. | § | |

**MEMORANDUM OF LAW IN SUPPORT OF JOINT EMERGENCY
MOTION TO INTERVENE BY INTERVENORS THE BRADY CAMPAIGN
TO PREVENT GUN VIOLENCE, EVERYTOWN FOR GUN SAFETY
<u>ACTION FUND, INC. AND GIFFORDS</u>**

TO THE HONORABLE COURT:

Pursuant to Fed. R. Civ. P. 24, The Brady Campaign to Prevent Gun Violence ("Brady"), Everytown for Gun Safety Action Fund, Inc. ("Everytown") and Giffords (collectively "Proposed Intervenors") respectfully and urgently move the Court to:

A. Permit the Proposed Intervenors to intervene in this litigation and file the Complaint in Intervention annexed as **Exhibit B**;[1] and

B. Grant such other and further relief as may be appropriate.

If the Court grants intervention, Proposed Intervenors also request by separate motion, filed contemporaneously with this motion, a temporary restraining order and preliminary injunction. Injunctive relief is necessary to prevent the irreparable harm to the security of the United States and its citizens that will result from the performance of the Settlement Agreement (attached as **Exhibit C**) and Defense Distributed's publication of Weapon Schematics on the Internet.

## BACKGROUND

This case began because the United States government correctly found that the publication on the internet of Defense Distributed's blueprints for the 3-D printing of certain weapons threatened national security. As stated by the Fifth Circuit:

> The crux of the district court's decision is essentially its finding that the government's exceptionally strong interest in national defense and national security outweighs Plaintiff-Appellants very strong constitutional rights under these circumstances…[o]rdinarily, of course, the protection of constitutional rights *would* be the highest public interest at issue in a case. That is not necessarily true here, however, because the State Department has asserted a very strong public interest in national defense and national security."

*Defense Distributed v. United States Dep't of State*, 838 F.3d 451, 458 (5th Cir. 2016).

---

[1] If this Court determines that the Proposed Intervenors do not satisfy the test for intervention under Fed. R. Civ. P. 24, the Proposed Intervenors request leave to file the proposed complaint in intervention as a new, related action in this Court, and further request that the Court preserve the status quo pending such filing (which would similarly seek immediate injunctive relief).

With no justification whatsoever and in violation of the Administrative Procedure Act ("APA") and the constitutionally-mandated Separation of Powers, the Government has capitulated to plaintiffs' position and agreed to completely abandon the numerous valid reasons it had asserted for blocking the export of Defense Distributed's plans. This Court previously found that the Government's position was likely to succeed. It is shocking, therefore, that the Government has abdicated the correct position it took concerning national security. The Settlement Agreement raises very serious national and international security concerns and would cause immediate and irreparable harm to the United States and its citizens and the global community.

Plaintiffs and the Government have agreed to settle all issues in this litigation by August 4, 2018. The terms of the Settlement Agreement allow Defense Distributed to publicly upload blueprints of firearms and firearm components to the Internet, so that any terrorist group or individual in the world with access to the Internet and a three-dimensional ("3D") printer can create guns and gun components, with modifications that make these weapons untraceable and undetectable. Specifically, the Settlement Agreement permits Defense Distribution to begin publishing these files on July 27, 2018, even though the parties are not set to enter a stipulation of dismissal until August 4, 2018.

Most alarmingly, the Government, which up until a few months ago was vigorously defending this suit and fighting to prevent Defense Distributed from publishing these files, has suddenly done a complete about-face and contractually obligated itself to exempt Defense Distributed's files from the International Traffic in Arms Regulations, 22 C.F.R Part 120 et seq. ("ITAR"), despite the State Department's official determination in 2015 that the disputed files are subject to ITAR. Due to the nature of the modern Internet, the harm from Defense Distributed's publication of these files is irreversible. A temporary restraining order and preliminary injunction

3

139718.00601/110549050v.6

to enjoin Defense Distributed and the Government are not merely necessary forms of relief, but quite simply the *only* available forms of relief that will prevent these files from becoming publicly available worldwide and jeopardizing the national security of the United States and its citizens.

Proposed Intervenors are asking the Court to preserve the status quo and simply seek to continue down the sensible path that the Government, until recently, was advocating and this Court found was likely to succeed.

The procedural and factual record relied upon is attached as Appendix 1.

## POINT ONE
## INTERVENORS HAVE STANDING TO INTERVENE

### A. Standard for intervention.

FRCP 24 establishes the criteria for intervention, and is to be liberally construed. *See Wal-Mart Stores, Inc. v. Tex. Alcoholic Bev. Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016) (citing *Texas v. United States*, 805 F.3d 653, 656 (5th Cir. 2015)). Courts "should allow intervention when no one would be hurt and the greater justice could be attained." *Id.* Rule 24 establishes two kinds of intervention: intervention of right and permissive intervention. *See* FED. R. CIV. P. 24(a)-(b).

Federal Rule of Civil Procedure 24(a)(2) provides that, upon timely application, a party shall be permitted to intervene as a matter of right when the party:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

FED. R. CIV. P. 24(a)(2).

Under this standard, four criteria must be satisfied to support intervention as of right: (1) the motion to intervene must be timely; (2) the applicant must have a cognizable interest in the action; (3) the applicant must be so situated that the disposition of the action may, as a practical

4

matter, impair or impede his ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit. *See Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015); FED. R. CIV. P. 24(a). "'Rule 24 is to be construed liberally . . . and doubts resolved in favor of the proposed intervenor.'" *See Poynor v. Chesapeake Energy Ltd. P'ship (In re Lease Oil Antitrust Litig.)*, 570 F.3d 244, 248 (5th Cir. 2009) (internal citations omitted). Proposed Intervenors satisfy these requirements and should be permitted to intervene.

    1.   The Motion to Intervene is timely.

Proposed Intervenors have taken prompt action to intervene and file this Motion shortly after acquiring the full text of the Settlement Agreement from the Internet on or about July 19, 2018. Proposed Intervenors had not intervened here previously because they agreed with the Government's position. The Fifth Circuit has held, as is the case here, that by filing of a motion to intervene, "less than one month after learning of their interest in [the] case, [movants] discharged their duty to act quickly." *See Ford v. City of Huntsville*, 242 F.3d 235, 240 (5th Cir. 2001) (quoting *Stallworth v. Monsanto Co.*, 558 F.2d 257, 267 (5th Cir. 1977)).

With respect to the second factor, the Fifth Circuit has emphasized that the relevant prejudice is that created by the intervenor's *delay* in seeking to intervene after it learns of its interest, not prejudice to existing parties if intervention is allowed. *See Ceres Gulf v. Cooper,* 957 F.2d 1199, 1203 (5th Cir. 1992). As noted, the Proposed Intervenors did not unduly delay the filing of this Motion, and acted promptly after learning of its need to defend its interest in this matter. Prior to obtaining a copy of the Settlement Agreement, which revealed the parties current intentions, Proposed Intervenors were operating under the information and belief, supported by the Court docket and pleadings filed in this matter, that the Government defendants had been and were representing their interests and national security.

Under the third factor, the Proposed Intervenors would be severely prejudiced and suffer irreparable harm if not allowed to intervene. Importantly, once Defense Distributed weapon's data is released to the internet, the damage to national security will be irreversible.

Lastly, there are no unusual circumstances here which weigh against intervention. Rather, the Government's sudden abandonment of its longstanding position and the national security issues that are at stake, are both unusual circumstances that weigh heavily in favor of intervention.

2. The Proposed Intervenors have a cognizable interest in the instant litigation.

The inquiry under the second requirement of Rule 24(a), "turns on whether the intervenor has a stake in the matter that goes beyond a generalized preference that the case come out a certain way." *See Texas*, 805 F.3d at 657 (5th Cir. 2015). Accordingly, an interest that is "concrete, personalized, and legally protectable is sufficient to support intervention." *Id.* at 658. Specifically, the Fifth Circuit has concluded that a party has "a legally protectable interest in the regulatory scheme" when the party or their membership are the "intended beneficiaries" of the policy under challenge." *See Wal-Mart*, 834 F.3d at 566-67 (5th Cir. 2016). The Fifth Circuit has also held that "public spirited" civic organizations that successfully petition adoption of a law may intervene to vindicate their "particular interest" in protecting that law. *Id.* (citing *City of Houston v. Am. Traffic Solutions, Inc.*, 668 F.3d 291, 294 (5th Cir. 2012)). Proposed Intervenors meet this test.

The Plaintiffs have declared that because of the Settlement Agreement, the work that Proposed Intervenors are dedicated to will be imeasureably more difficult, if not impossible. Proposed Intervenors and their members work to pass and enforce gun safety laws in Congress and throughout the country. Upon publication of the Settlement Agreement, Cody Wilson, the president of Defense Distributed announced that "common sense gun reforms" would no longer be possible and posted a picture of a tombstone in the ground, with the phrase "American Gun

6

Control." Plaintiff Second Amendment Foundation declared that that Settlement Agreement is a "a devastating blow to the gun prohibition lobby[.]" Proposed Intervenors have a concrete, personalized, and legally protectable interest in this litigation because the intent of the Plaintiffs, through the Settlement Agreement, is to make Proposed Intervenors' work untenable. As a result of the Settlement Agreement, Proposed Intervenors will be forced to expend additional resources to protect their respective missions. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (where defendant's alleged conduct "perceptibly impaired" an organizational plaintiff's ability to carry out its mission and caused a "drain on the organization's resources – there can be no question that the organization has suffered the requisite injury in fact."); *Am. Civ. Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 788 (W.D Tex. 2015) ("An organization can demonstrate injury 'by [alleging] that it had diverted significant resources to counteract the defendant's conduct; hence, the defendant's conduct significantly and perceptibly impaired the organization's ability to provide its 'activities—with the consequent drain on the organization's resources.'") (quoting *N.A.A.C.P. v. City of Kyle, Tex.*, 626 F.3d 233, 238 (5th Cir. 2010)). In this case, because Proposed Intervenors assert a "procedural interest" to protect their "concrete interest," they "can assert that right without meeting all the normal standards for redressbility and immediacy" required for standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572 n. 7 (1992).

3. <u>The Disposition of the action threatens to create a practical impediment to the Proposed Intervenors' ability to protect its members' interest.</u>

Proposed Intervenors would be seriously prejudiced if this Motion is not granted, as the implementation of the Settlement Agreement would undermine their stated mission statements and seriously impact members' interest and safety. The release of Defense Distributed's weapon's data via the internet, once permitted, cannot be reversed, mitigated, or undone, and would cause direct, substantial, and irreversible harm to the Proposed Intervenors and its members.

As the Government has advocated throughout this matter, the dissemination of such information will negatively impact the national security of the United States and its citizens. Therefore, because Proposed Intervenors' and their members' interests would be practically impeded if the Settlement Agreement were implemented, Proposed Intervenors should be permitted to intervene at this juncture.

4. <u>No existing party adequately represents the Proposed Intervenors' interest.</u>

Clearly the Government no longer adequately represents the Proposed Intervenors' interest.

**B. Alternatively, permissive intervention is warranted under Rule 24(b).**

If this Court decides that Proposed Intervenors are not entitled to intervene as of right, they should be permitted to intervene under Rule 24(b). Under Rule 24(b)(1)(B), the Court may, in its discretion, permit intervention on a timely motion when the potential intervenor "has a claim or defense that shares with the main action a common question of law or fact." *See Graham v. Evangeline Par. Sch. Bd.*, 132 F. App'x 507, 511 (5th Cir. 2005). The "claim or defense" portion of Rule 24(b)(2) has been construed liberally by the Fifth Circuit. *See Newby v. Enron Corp.*, 443 F.3d 416, 422 (5th Cir. 2006). Moreover, "it is settled law in this circuit that permissive intervention is 'wholly discretionary with the [district] court.'" *See United States v. Tex. E. Transmission Corp.*, 923 F.2d 410, 416 (5th Cir. 1991) (internal citation omitted). Proposed Intervenors satisfy these factors, and this Court is within its discretion to permit them to intervene.

**C. Proposed Intervenor's are not required to establish independent standing to intervene.**

The Fifth Circuit has ruled that "Article III does not require intervenors to independently possess standing where the intervention is into a ***subsisting*** and ***continuing*** Article III case or controversy and the ultimate relief sought by the intervenors is also being sought by at least one

8

subsisting party with standing to do so." *See Steward v. Abbott*, 189 F. Supp. 3d 620, 625 (W.D. Tex. 2016) (emphasis added) (internal citations omitted); *see also Newby v. Enron Corp.*, 443 F.3d 416, 422 (5th Cir. 2006); *Ruiz v. Estelle*, 161 F.3d 814, 832 (5th Cir. 1998) (agreeing with "the better reasoning in cases which hold that Article III does not require intervenors to possess standing"). This Court has acknowledged it is "tasked with safeguarding separation of powers" and held that "[p]rovided that such a case or controversy exists, it is immaterial to the court's jurisdiction whether an intervening party, proceeding alone, could have satisfied the requirements of Article III." *Steward*, 189 F. Supp. 3d at 626 (W.D. Tex. 2016) (internal citation omitted). Accordingly, "[o]nce a valid Article III case-or-controversy is present, the court's jurisdiction vests," and "[t]he presence of additional parties, although they alone could independently not satisfy Article III's requirements, does not of itself destroy jurisdiction already established." *See Ruiz*, 161 F.3d at 832 (5th Cir. 1998) (rejecting argument that intervenor required standing to invoke the court's jurisdiction to decide the merits of their claims, reasoning that "[t]he court's jurisdiction in [the] case ha[d] already been invoked by the original parties").[2]

---

[2] Even if this Court were to require Proposed Intervenors to prove independent standing to intervene, Proposed Intervenors are able to establish the necessary elements of injury, causation, and redressability. *See LULAC v. City of Boerne*, 659 F.3d 421, 428 (5th Cir. 2011) ("The three well-known components of standing are injury in fact, causation, and redressability"). "For an issue to be ripe for adjudication, a plaintiff must show that he 'will sustain immediate injury'" and "that such injury would be redressed by the relief requested,'" *See Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994) (*citing Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 81, 98 S. Ct. 2620, 2635, 57 L. Ed. 2d 595 (1978)).

Here, as described above, the Proposed Intervenors would be immediately and irreparably injured by the implementation of the Settlement Agreement and the dissemination of Defense Distributed's weapons data via the internet, as once the information is released online, it cannot be reversed, nor can its potential effects be mitigated, or undone. *Def. Distributed*, 838 F.3d at 461 (5th Cir. 2016) (emphasis added). In spite of the Government's prior strong defense of this matter, the Settlement Agreement now abandons those same pressing national security concerns raised by the possibility of foreign nationals or terrorists acquiring Defense Distributed's weapons files. Accordingly, Proposed Intervenors' injury would be directly caused by the implementation of the recent Settlement Agreement reached by the parties. *Id.* at 431 (5th Cir. 2011) ("[t]he

9

## CONCLUSION

The Court should enter an order permitting Proposed Intervenors to file a Complaint in Intervention.

---

causation element does not require a party to establish proximate causation, but only requires that the injury be 'fairly traceable,'" to the parties and/or the conduct at issue); Dkt. 32-1. Additionally, it is clear that the intervention and the requested injunction, if granted, will prevent the immediate and irreparable harm to the Proposed Intervenors, among others, caused by the possibly illegal implementation of the Settlement Agreement and the irreversible dissemination of Defense Distributed's blueprints for untraceable lethal weapons via the internet. *Id*.

Proposed Intervenors may also establish associational standing to intervene on behalf of their individual members. An organizational plaintiff may have Article III standing either in its own right, "if it meets the same standing test that applies to individuals[,]" or associational standing on behalf of its members, if "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Steward*, 189 F. Supp. 3d at 630-31 (W.D. Tex. 2016) (internal citations omitted). Here, Proposed Intervenors' members are American citizens and the intended beneficiaries of gun control and anti-terror laws enacted by this country. By virtue of the Settlement Agreement, and the online publishing of Defense Distributed's weapons files, the security and safety of Proposed Intervenors' members is directly threatened. As the Government has previously cited, Proposed Intervenors' members will be subjected to increase risk from terroristic and violent threats, at home, in public places, and while traveling abroad if Defense Distributed's data is released. *See* Dkt. 32, 32-1. Second, the interests that Proposed Intervenors and their individual members seek to protect relate to the prevention of gun violence, which is germane to each organization's purpose, and which is essential to each of their individual members. Finally, it is undisputed that the interests which Proposed Intervenors and their individual members seek to assert do not require direct participation by the individual members in the lawsuit. The Government defendants have previously and adequately represented the individual members' interests in this litigation for over three (3) years without the members' direct participation in this case. Proposed Intervenors will represent the interests of their individual members that have now been abandoned by the Government defendants by virtue of the Settlement Agreement.

139718.00601/110549050v.6

Dated: July 25, 2018                                    Respectfully submitted,

                                         /s/ David Cabello  
                                        J. David Cabello  
                                        Blank Rome LLP  
                                        Texas State Bar No. 03574500  
                                        717 Texas Avenue  
                                        Suite 1400  
                                        Houston, TX 77002  
                                        Telephone: (713) 228-6601  
                                        Facsimile: (713) 228 6605  
                                        E-mail: dcabello@blankrome.com

                                        John D. Kimball (pending *pro hac vice*)  
                                        Blank Rome LLP  
                                        N.Y. Bar No. 1416031  
                                        The Chrysler Building  
                                        405 Lexington Ave.  
                                        New York, NY 10174  
                                        (212) 885-5000

                                        **Attorneys for The Brady Campaign to Prevent Gun Violence, Everytown for Gun Safety Action Fund, Inc., and Giffords**

## CERTIFICATE OF SERVICE

       The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on July 25, 2018, and was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(b)(1).

                                         /s/M'Liss Hindman  
                                        M'Liss Hindman  
                                        Paralegal