# Exhibit B

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED, SECOND AMENDMENT FOUNDATION, INC., and CONN WILLIAMSON, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| BRADY CAMPAIGN TO PREVENT GUN VIOLENCE, EVERYTOWN FOR GUN SAFETY ACTION FUND, INC.,  and GIFFORDS, | ) ) ) ) | CIVIL ACTION NO: 1:15-cv-372-RP |
| | ) | |
| Plaintiffs-Intervenors, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES  DEPARTMENT OF STATE; MICHAEL R. POMPEO, in his official capacity as Secretary of State; DIRECTORATE OF DEFENSE TRADE CONTROLS, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## COMPLAINT IN INTERVENTION

Plaintiffs-Intervenors Brady Campaign to Prevent Gun Violence, Everytown for Gun Safety Action Fund, Inc., and Giffords (hereinafter "Intervenors") submit this Complaint in Intervention and allege, upon information and belief, the following:

### INTRODUCTION

1.      "At issue in this litigation is the United States' ability to control the export of weapons – a system of laws and regulations that seeks to ensure that articles useful for warfare or terrorism are not shipped from the United States to other countries (or otherwise provided to foreigners) without authorization, where, beyond the reach of U.S. law, they could be used to threaten U.S. national security, U.S. foreign policy interests, or international peace and stability." Defendants' Motion to Dismiss Second Amended Complaint at 1, filed Apr. 6, 2018 (ECF No. 92) ("Motion to Dismiss").

2.      Defense Distributed develops Computer Aided Design ("CAD") files for the purpose of enabling anyone to automatically manufacture guns on 3-D printers.  The company's stated objective is to ensure global, unrestricted access to firearms by postings its files online. Due to the Government's recent about-face in this case, Defense Distributed is set to do just that:



3.      According to the Government's previous submissions to this Court, making Defense Distributed's CAD files "available online through unrestricted access to the Internet would provide any [terrorist organization] with defense articles, including firearms, at its convenience, subject only to its access to a 3D printer, an item that is commercially available. Terrorist groups and other actors could then potentially manufacture and use such weapons against the United States or its allies."  Declaration of Lisa V. Aguirre, ¶ 35(b), Exhibit A to Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction, filed June 10, 2015 (ECF Nos. 32, 32-1) ("Aguirre Decl.").

4.      As recently as April of this year, the Government stressed to this Court the potentially devastating national security implications if Defense Distributed's files were made available online.  The Government represented to this Court that the CAD files at issue "can unquestionably facilitate the creation of defense articles abroad" and that "the Department of State has consistently and reasonably concluded that it is not possible to meaningfully curtail the overseas dissemination of arms if unfettered access to technical data essential to the production of those arms is permitted."  Motion to Dismiss at 3,7.

5.      However, mere weeks after the Government urged this Court to dismiss this lawsuit citing the national security concerns raised by the possibility of foreign nationals or terrorists acquiring the Plaintiffs' CAD files, they offered a settlement agreement to the Plaintiffs (the "Settlement Agreement") which gave the Plaintiffs everything they asked for, and more.

6.      Pursuant to the terms of the Settlement Agreement, in exchange for dismissing the lawsuit, the Government has agreed to: (i) draft and fully pursue a notice of rulemaking and a final rule to remove the files at issue from the jurisdiction of the International Traffic in Arms Regulations ("ITAR"); (ii) temporarily modify Category I of the United States Munitions List

("USML") to exclude the files at issue from ITAR; (iii) issue a letter to the Plaintiffs that their files are exempt from ITAR; (iv) permit "any United States person" to "use, reproduce or otherwise benefit" from the files at issue; and (v) pay the Plaintiffs almost $40,000.

7.      As a direct consequence of the Settlement Agreement, Defense Distributed has announced that it will relaunch its repository of files on August 1, 2018.  According to news reports, in addition to the older gun models, the Defense Distributed website will contain a repository of firearm blueprints for "more exotic DIY semi-automatic weapons." "The relaunched site will be open to user contribution, too; [founder Cody] Wilson hopes it will soon serve as a searchable, user-generated database of practically any firearm imaginable." According to Wilson: "What's about to happen is a Cambrian explosion of the digital content related to firearms." Wilson says: "All this Parkland stuff, the students, all these dreams of 'common sense gun reforms'? No. The internet will serve guns, the gun is downloadable . . . No amount of petitions or die-ins or anything else can change that."



8.      The Government entered into the Settlement Agreement in contravention of the statutes and regulations which govern the export designation process.  Among other things, upon information and belief, the State Department: (i) has not provided the relevant Congressional committees with the 30 days-notice to "temporarily" modify the munitions lists; (ii) has not received the concurrence of the Secretary of Defense to "temporarily" change the designation of the files at issues; and (iii) has not followed established commodity jurisdiction procedures before agreeing to temporarily exempt the CAD files at issue from ITAR.

9.      The "temporary modification" of USML Category I is especially troubling because it involves making Defense Distributed's files available on the internet, which largely overrides the later need to formally modify the relevant rules.  Moreover, the Settlement Agreement covers not only the files that were developed by Defense Distributed at the beginning of this litigation, but also new files that have been developed since that time – which the Government has presumably not even seen.

10.     In addition, the Government has acted in an arbitrary and capricious manner, and has abused its discretion, by (i) failing to consider evidence relevant to ITAR jurisdiction over the CAD files; (ii) drastically changing long-established practice and policy without any explanation; and (iii) failing to study the national security implications of exempting the CAD files from ITAR.  The Settlement Agreement does not make any reference whatsoever to a determination by the Government regarding the national security implications of the agreement.

11.     Tellingly, even the notices of proposed rules, which the Departments of State and Commerce published on May 24, 2018 to amend the ITAR, make no mention of the dangers posed by the files falling into the hands of terrorist organizations, insurgent groups, transnational organized criminal organizations, or states subject to the U.S. or U.N. arms embargoes.

12.     For all these reasons, and others detailed below, the Government Defendants have violated the Administrative Procedure Act ("APA") and the constitutionally-mandated Separation of Powers.   This complaint seeks to declare the Settlement Agreement invalid, and to enjoin the Plaintiffs and Government Defendants from giving effect to the agreement, to the extent it permits Defense Distributed to make its files available online.

**JURISDICTION AND VENUE**

13.     This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 28 U.S.C. § 1331, 2201 and 2202.

14.     Venue is premised on the principal place of business for Plaintiff Defense Distributed, which is located within the Western District of Texas.

**PARTIES**

15.      Plaintiff Defense Distributed is a Texas corporation, whose principal place of business is located in Austin, Texas.  Defense Distributed develops CAD files to enable anyone to automatically manufacture firearms on 3-D printers.  The company also manufactures and sells a "computer-controlled milling machine" called the "Ghost Gunner," which is "designed to allow its owner to carve gun parts out of [ ] aluminum."  Defense Distributed is a party to the Settlement Agreement.

16.     Defense Distributed was started by Cody Wilson, a self-proclaimed anarchist, who believes that "governments should live in fear of their citizenry."  The company's objective is for everyone in the world to have access to guns and to make gun regulations impossible. After publicizing the Settlement Agreement, Wilson said that "common sense gun reforms" would no longer be possible and posted a picture of a tombstone in the ground, with the phrase "American Gun Control."

17.     Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington.  It is a party to the Settlement Agreement.  In a press release announcing the settlement, SAF founder Alan M. Gottlieb declared it to be "a devastating blow to the gun prohibition lobby[.]"

18.     Upon information and belief, Conn Williamson is a natural person and a citizen of the United States and the State of Washington.  He is a party to the Settlement Agreement.

19.     Defendant the United States Department of State  ("State Department") is an executive agency of the United States government responsible for administering and enforcing the ITAR under the authority of the Arms Export Control Act ("AECA").   The State Department is a party to the Settlement Agreement in this case.

20.     Defendant Michael R. Pompeo is sued in his official capacity as the Secretary of State.  In this capacity, he is responsible for the operation and management of the United States Department of State, and this includes the operation and management of the Directorate of Defense Trade Controls ("DDTC") and administration and enforcement of the ITAR.   The Secretary of State is a party to the Settlement Agreement in this case.

21.     Defendant DDTC is a subordinate unit within the Department of State Bureau of Political and Military Affairs responsible for administering and enforcing the ITAR. The DDTC is a party to the Settlement Agreement in this case.

22.     Plaintiff-Intervenor the Brady Campaign to Prevent Gun Violence ("The Brady Campaign") is a nation-wide gun violence prevention organization with members spread across all fifty states and the District of Columbia, and established membership groups in Austin, TX and Houston, TX. The Brady Campaign is headquartered in Washington, DC and was founded in

1974 as the National Council to Control Handguns. The Brady Campaign took its current name in 2001, in honor of former White House Press Secretary Jim Brady, who was shot during the assassination attempt on Ronald Reagan, and his wife Sarah Brady.

23.     The Brady Campaign seeks a safer future for every American where hundreds of gun injuries and deaths a day are no longer normal. It focuses on three impact-driven solutions to further its mission of reducing gun deaths: 1) Strengthening gun laws, with a particular focus on the national background check system; 2) reducing the flow of crime guns to urban communities most impacted by gun violence; and 3) meaningfully communicating to gun owners about the dangers of loaded, unlocked guns in the home. The Brady Campaign's sister organization, The Brady Center to Prevent Gun Violence, is a non-profit organization dedicated to reducing gun violence through education, research, and direct legal advocacy on behalf of victims and communities affected by gun violence.  It filed an amicus brief in this case on February 18, 2016. In addition, the Brady Campaign and Brady Center submitted comments to the proposed rule changes implicated in the Settlement Agreement. The Brady Campaign also filed a Freedom of Information Act request with the federal government immediately upon learning of the Settlement Agreement.

24.     Plaintiff-Intervenor Everytown for Gun Safety Action Fund, Inc. is a nation-wide gun violence prevention organization, with members spread across all fifty states.  Everytown is headquartered in New York, NY. It was founded in 2014 as the combined effort of Mayors Against Illegal Guns, a national, bipartisan coalition of mayors combating illegal guns and gun trafficking, and Moms Demand Action for Gun Sense in America, an organization formed after the murder of twenty children and six adults in an elementary school in Newtown, Connecticut.  Currently, the mayors of 8 Texas cities are part of the Mayors Against Illegal Guns

coalition.   Everytown and its members and supporters work in all 50 states and in Congress to support the passage and enforcement of gun safety laws that, among other things, help keep guns out of the hands of prohibited persons and other individuals with dangerous histories and help law enforcement apprehend and prosecute those who violate U.S. and state gun laws.  Immediately upon learning of the Settlement Agreement in this case, Everytown submitted a federal Freedom of Information Act request seeking disclosure of documents pertaining to the settlement.

25.     Plaintiff-Intervenor Giffords is a 501(c)(4) gun violence prevention organization founded by former Congresswoman Gabrielle Giffords and her husband, Captain Mark Kelly, a retired Navy combat veteran and NASA astronaut.   Headquartered in Washington, D.C., Giffords researches, writes, and proposes policies that make Americans safer and mobilizes voters and lawmakers in support of safer gun laws.  Its mission is to address the issue of gun violence in communities across the country, and to that end, Giffords works to affect legislation, shape the national dialogue, and reduce gun violence.  Since its founding after the Sandy Hook Elementary School shooting in Newtown, Connecticut, Giffords has been involved in the passage of more than 200 new strong gun laws in 45 states and Washington, D.C.

26.     Giffords and its sister 501(c)(3) organization, Giffords Law Center to Prevent Gun Violence, recently submitted public comments on the proposed rule changes by the State Department and Commerce Department that would deregulate the publication of computerized blueprints for the production 3D printed guns. In that comment, Giffords opined that the proposed changes "would represent a dramatic change in the regulatory structure governing firearm experts," and that they "may not adequately address our national security, foreign policy, international crime, or terrorism threats," and expressed concern that the changes "will result in

an increase in the number of untraceable firearms in circulation." *See* Giffords comment re Docket Nos. DOS-2017-0046, BIS-2017-0004 (July 9, 2018), *available at* http://www.forumarmstrade.org/uploads/1/9/0/8/19082495/giffords_exports_letter_7-9-18.pdf.

### FACTS

***The Statutory and Regulatory Framework***

27.     The Arms Export Control Act ("AECA"), 22 U.S.C. § 2751 *et seq*., authorizes the President, "[i]n furtherance of world peace and the security and foreign policy of the United States . . . to control the import and the export of defense articles and defense services." 22 U.S.C. § 2778(a)(1). The purpose of the AECA is to reduce the international trade in arms and avoid destabilizing effects abroad through arms exports. 22 U.S.C. § 2751.

28.     Under the AECA, "[t]he President is authorized to designate those items which shall be considered as defense articles and defense services for the purposes of this section and to promulgate regulations for the import and export of such articles and services." 22 U.S.C. § 2778(a)(1). Items designated as defense articles or services constitute the United States Munitions List ("USML"). *Id*. at § 2778(a)(1). Category I of the USML lists articles, services, and related technical data for "Firearms, Close Assault Weapons and Combat Shotguns."

29.     Among other things, Category I of the USML includes all firearms up to .50 caliber, and all technical data directly related to such firearms. *See* 22 C.F.R. § 121.1(I)(a). "Technical data" is information that "is required for the design, development, production, manufacture, assembly, operation, repair, testing, maintenance or modification of defense articles." *Id.* § 120.10(a). Technical data includes information in the form of blueprints, drawings, photographs, plans, instructions or documentation," and exempts information already in the public domain, as defined in Section 120.11. *Id.* § 120.10.

30. "[T]he 'technical data' provisions serve the purpose of limiting the export of detailed information needed to manufacture, maintain, or operate defense articles controlled on the USML. Such export limitations advance the purposes of the AECA by limiting the ability of foreign powers to design, develop, and produce defense articles in lieu of being able to obtain those articles directly. Absent the inclusion of technical data in the ITAR, the ITAR's limits on arms transfers would be of negligible practical effect because the ITAR would leave unregulated the exportation of the fundamental technology, know-how, blueprints, and other design information sufficient for foreign powers to construct, produce, manufacture, maintain, and operate the very same equipment regulated in its physical form by the ITAR." Aguirre Decl. ¶ 14.

31. Pursuant to Executive Order 13637, the President has delegated his AECA authority to the State Department. In turn, the State Department has promulgated the ITAR, which is administered by the DDTC. *See* 22 C.F.R. §§ 120-130. Among other things, the DDTC is tasked with maintaining, reviewing and clarifying the USML.

32. Pursuant to Executive Order 13637, §1(n), "[d]esignations including changes in designations, by the Secretary of items or categories that shall be considered as defense articles and defense services subject to export control under section 38 ( 22 U.S.C. 2778) shall have the concurrence of the Secretary of Defense."

33. In addition, the Executive Branch must give notice to the International Relations Committee of the House of Representatives and to the Committee on Foreign Relations of the Senate at least 30 days in advance of removing an item from the USML. 22 U.S.C. § 2778(f)(1). Such notification must be made in accordance with the procedures applicable to reprogramming notifications under § 634A(a) of the Foreign Assistance Act of 1961 [22 USCS § 2394-1]. *Id.*

34.     ITAR allows the Deputy Assistant Secretary for Defense Trade Controls to order the temporary modification of any ITAR regulation.  However, it may do so only "in the interest of the security and foreign policy of the United States."  22 C.F.R. § 126.2.

35.     For situations where there is doubt that a particular item to be exported falls on the USML, ITAR contains a commodity jurisdiction "CJ" procedure.  22 C.F.R. § 120.4.  Upon written request, the DDTC will provide a determination as to whether a certain item, service, or data is within the scope of ITAR.  *Id.*

36.     The "CJ" determination "entails consultation among the Department of State, Defense, Commerce and other U.S. Government agencies and industry in appropriate cases."  *Id.*  Assessments are made on a case-by-case basis, evaluating whether the article is covered by the USML, is functionally equivalent to an article on the USML, or has substantial military or intelligence application.  *Id.*  A determination made pursuant to the commodity jurisdiction process takes into account "(i) [t]he form and fit of the article; and (ii) [t]he function and performance capability of the article."  Aguirre Decl. ¶ 20.

37.     22 C.F.R. § 120.4(f) requires that "State, Defense and Commerce will resolve commodity jurisdiction disputes in accordance with established procedures.  State shall notify Defense and Commerce of the initiation and conclusion of each case."

### The Computer Files at Issue

38.     In or around early May 2013, Defense Distributed posted a number of CAD Files on DefCad.org, a website it created to serve as an open-source repository for weapons designs, including data to automatically manufacture the "Liberator" pistol.  The Liberator is a plastic firearm which contains 6-oz piece of steel, which can be easily removed, enabling it to avoid detection in walk-through metal detectors.

39.     These CAD files are "data files" that are "essentially blueprints that can be read by CAD software."  Letter from Jahna M. Hartwig on behalf of Defense Distributed to the DDTC, dated June 21, 2013.  They are "indispensable to a three-dimensional ("3-D") printing process used to create firearms and their components."  Motion to Dismiss at 1.

40.     On May 8, 2013, the Office of Defense Trade Controls Compliance, which is responsible for compliance with and civil enforcement of the AECA and ITAR, sent Defense Distributed a letter noting that "it is unlawful to export any defense article or technical data for which a license or written approval is required without first obtaining the required authorization from the DDTC."

41.     The letter explained that "disclosing (including oral or visual disclosure) or transferring foreign data to a foreign person, whether in the United States or abroad, is considered an export under § 120.17 of the ITAR."  It requested that Defense Distributed remove ten specific CAD files from public access "immediately" and submit them for CJ determination. Defense Distributed filed a request for CJ determinations for these files on June 21, 2015.

42.     In January 2015, while consideration of Defense Distributed's original CAD file submission was ongoing, Defense Distributed submitted a CJ request for the "Ghost Gunner," an automated firearms metal milling machine.  In April 2015, the DDTC determined that the Ghost Gunner was not subject to the jurisdiction of the State Department, but that the "project files and data files for producing a defense article on a 3D printer or similar device constituted technical data on that defense article that would be subject to ITAR regulation."  Aguirre Decl. ¶ 28.

43.     The DDTC completed its review of Defense Distributed's original requests on June 4, 2015 and determined that six of the files were subject to ITAR control: (i) the Liberator

pistol; (ii) the .22 caliber electric pistol; (iii) the 5.56/.223 muzzle brake; (iv) the Springfield XD-40 tactical slide assemble; (v) the sub-caliber insert;  and (vi) the VZ-58 front sight.

44.     In making its CJ determination, the DDTC noted that the CAD files at issue "can be used to 'automatically find, align, and mill' a defense article such as a firearm on a 3D printer or other manufacturing device. Manufacture of a defense article in this way requires considerably less know-how than manufacture in reliance on conventional technical data, which merely *guides* the manufacture of a defense article and requires additional craftsmanship, know-how, tools, and materials."  Aguirre Decl. ¶ 29(c).

***The Current Lawsuit***

45.     The Plaintiffs filed this action in May 2015, alleging that the Government Defendants' actions violated the First, Second and Fifth Amendments.  In addition, the Plaintiffs alleged that the Government Defendants had engaged in *ultra vires* conduct.   Among other things, the Plaintiffs sought an injunction to prevent the Government Defendants and "all persons in active concert with them" from barring Defense Distributed's export of CAD files.

46.     In response to the Plaintiffs' motion for a preliminary injunction, the Government Defendants argued, *inter alia,* that they were "particularly concerned that [the] proposed export of undetectable firearms technology could be used in an assassination, for the manufacture of spare parts by embargoed nations, terrorist groups, or to compromise aviation security overseas in a manner specifically directed at U.S. persons." Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction, filed June 10, 2015 (ECF No 32).

47.     The Government Defendants argued that "[t]he CAD files are 'technical data' that are regulated by the ITAR because, absent such regulation, providing the CAD designs to a

foreign person or foreign government would be equivalent to providing the defense article itself, enabling the complete circumvention of ITAR's export regulations." *Id*. at 7.

48.     Along with its opposition to Plaintiffs' preliminary injunction motion, the Government Defendants submitted an affidavit from Lisa V. Aguirre, the Director of the Office of Defense Trade Controls Management.  Among other things, Director Aguirre concluded that: (i) "[t]he 'Liberator' firearm included in DD's CAD designs presents a specific and unique risk to the national security and foreign policy interests of the United States"; (ii) making the CAD files available online would provide terrorist organizations with firearms, which could be used against the United States or its allies; and (iii) "[a]cess to weapons technology coupled with the uncontrolled ubiquitous means of productions . . . could contribute to armed conflict, terrorist or criminal acts, and seriously undermine global export control and non-proliferation regimes designed to prevent the dangerous and destabilizing spread and accumulation of weapons and related technologies."  Aguirre Decl. ¶ 35.

49.     Accepting the Government's arguments, this Court denied the Plaintiffs' motion for a preliminary injunction, finding among other things that the public interest in national defense and national security outweighed any countervailing interests.   *Def. Distributed v. United States Dep't of State*, 121 F. Supp. 3d 680 (W.D. Tex. 2015).  This Court found that "[f]acilitating global access to firearms undoubtedly increases the possibility of outbreak or escalation of conflict."  *Id*. at 691 (internal quotations omitted).  In addition, this Court noted that the Plaintiffs had "not shown a substantial likelihood of success on the merits of their claim under the First Amendment.

50.     On appeal, the Fifth Circuit upheld this Court's preliminary injunction ruling.  *Def. Distributed v. United States Dep't of State*, 838 F.3d 451 (5th Cir. 2016).  In so doing, the

Fifth Circuit focused on the national security implications and the permanent nature of the internet, explaining that:

> Even if Plaintiffs–Appellants eventually fail to obtain a permanent injunction, the files posted in the interim would remain online essentially forever, hosted by foreign websites such as the Pirate Bay and freely available worldwide . . . ***Because those files would never go away***, a preliminary injunction would function, in effect, as a permanent injunction as to all files released in the interim. ***Thus, the national defense and national security interest would be harmed forever***.

*Id.* at 461 (emphasis added).

51.     On January 8, 2018, the Supreme Court denied the Plaintiffs' petition for a writ of certiorari.  *Def. Distributed v. Dep't of State*, 138 S. Ct. 638 (2018).

52.     After the Supreme Court denied certiorari, this Court lifted the stay on proceedings and entered a scheduling order, pursuant to which the Plaintiffs filed a Second Amended Complaint on March 16, 2018.  *See* ECF Nos. 77, 88 and 90.

53.     On April 6, 2018, the Government Defendants filed a motion to dismiss the complaint, arguing that the CAD files at issue "can unquestionably facilitate the creation of defense articles abroad" and that "the Department of State has consistently and reasonably concluded that it is not possible to meaningfully curtail the overseas dissemination of arms if unfettered access to technical data essential to the production of those arms is permitted." Motion to Dismiss at 3,7.

54.     The Government Defendants explained to the Court that the files at issue "directly facilitate the manufacture of weapons" through "automated processes."  *Id.* at 1, 9.

55.     The Government Defendants urged this Court to dismiss the Plaintiffs' lawsuit because:

> At issue in this litigation is the United States' ability to control the export of weapons – a system of laws and regulations that seeks to ensure that articles useful for warfare or terrorism are not shipped from the United

- 16 -

> States to other countries (or otherwise provided to foreigners) without authorization, where, beyond the reach of U.S. law, they could be used to threaten U.S. national security, U.S. foreign policy interests, or international peace and stability.

*Id.* at 1.

56.     Mere weeks after the Government stressed the critical national security reasons for prohibiting the export of Defense Distributed's automated blueprints, the parties informed the Court that they had "reached a tentative settlement agreement" in the matter, "subject to formal approval by Government officials with appropriate approval authority."  Plaintiffs' Unopposed Motion to Stay Proceedings to Complete Settlement, filed Apr. 30, 2018 (ECF No. 93).

57.     According to news reports containing first-hand accounts from the plaintiffs, "the government surprised the plaintiffs by suddenly offering them a settlement with essentially everything they wanted."  Andy Greenberg, "A Landmark Legal Shift Opens Pandora's Box for DIY Guns, Wired (July 10, 2018*), available at* https://www.wired.com/story/a-landmark-legal-shift-opens-pandoras-box-for-diy-guns/.

58.     On June 28, 2018, the parties filed a status report with the Court, indicating that they "expect to conclude the agreement and submit a stipulation for dismissal on or before August 4, 2018."  (ECF No. 95).

59.     As of the date of this filing, the parties have not yet filed a stipulation of dismissal with this Court.

***The Settlement Agreement***

60.     The Settlement Agreement was executed by both parties on June 29, 2018 and was made public on July 10, 2018 via a media blitz orchestrated by the Plaintiffs.

61.     What appears to be an accurate copy of the agreement is now available on the internet. *See* https://www.exportlawblog.com/docs/Defense%20Distributed%

20Settlement%20Agreement.pdf.  A  copy  of  the  posted  agreement  is  provided  with  this

Complaint as **Exhibit C.**

62.     Pursuant  to  the  Settlement  Agreement,  in  consideration  for  the  Plaintiffs'

dismissing the action, the Government Defendants have agreed to:

a.  "[C]ommit[  ] to draft and to fully pursue, to the extent authorized by law (including
    the Administrative Procedure Act), the publication in the Federal Registrar of a notice
    of proposed rulemaking and final rule, revising USML Category I to exclude the
    technical data that is the subject of this Action."

b.  "[A]nnounc[e],  while  the  above-referenced  final  rule  is  in  development,  [  ]  a
    temporary modification consistent with the International Traffic in Arms Regulation
    (ITAR), 22 C.F.R. § 126.2, of USML Category I to exclude the technical data that is
    the  subject  of  the  Action.   The  announcement  will  appear  on  the  DDTC  website,
    www.pmddtc.state.gov, on or before July 27, 2018."

c.  "[I]ssu[e] [ ] a letter to Plaintiffs on or before July 27, 2018 . . . advising that the
    Published Files, Ghost Gunner Files, and CAD Files are approved for public release
    (i.e. unlimited distribution) in any form and are exempt from the export licensing
    requirements  of  the  ITAR  because  they  satisfy  the  criteria  of  22  C.F.R.  §
    125.4(b)(13)."

d.  "[A]cknowledg[e] and agree[ ] that the temporary modification of USML Category I
    permits any United States person . . . to access, discuss, use, reproduce, or otherwise
    benefit from the technical data that is the subject of the Action, and that the letter to
    Plaintiffs  permits  any  such  person  to  access,  discuss,  use,  reproduce  or  otherwise
    benefit from the Published Files, Ghost Gunner Files, and CAD Files."

e.  Pay $39,581.00 to the Plaintiffs.

Settlement Agreement¶ 1(a)-(e).

63.     Importantly,  par.  1(a),  (b)  and  (d)  cover  the  broad  category  of  files  referred  to  as

"the technical data that is the subject of this Action."   This term is defined in the Settlement

Agreement to include "Other Files," as long as those files "regard items exclusively: (a) in

Category I(a) of the [USML], as well as barrels and receivers covered by Category I(g) of the

USML that are components of such items; or (b) items covered by Category I(h) of the USML

solely by reference to Category I(a), excluding Military Equipment."  *Id*. ¶ 12.

- 18

64.     "Other Files" are those that "Defense Distributed has and will continue to create and possess . . . that contain technical information, to include design drawings, rendered images, written manufacturing instructions[.]"   Second Amended Complaint, ¶ 44, filed Mar. 6, 2018 (ECF No. 90).  In other words, they are files that the Government has presumably not seen yet.

65.     Under the Settlement Agreement, the Department of Justice is prohibited from filing a stipulation of dismissal any earlier than five business days after announcement of the "temporary" modification to the USML Category I and issuance of a letter to Plaintiffs that their files are approved for public release in any form and exempt from ITAR.   *Id.* ¶ 2.  In other words, if the Parties hue to their planned schedule, the Government cannot file a dismissal with the Court until August 3, 2018.

66.     The Settlement Agreement does not indicate that any analysis, study or determination was made by the Government Defendants, in consultation with other agencies, before the Government Defendants agreed to remove the CAD Files from the USML Category I. In fact, the Settlement Agreement states that it "does not reflect any agreed-upon purpose other than the desire of the Parties to reach a full and final conclusion of the Action, and to resolve the Action without the time and expense of further litigation."

67.     Upon information and belief, neither the House Committee on Foreign Relations (formerly known as the International Relations of the House of Representatives), nor the Committee on Foreign Relations of the Senate received the required 30-days advance notice of the "temporary modifications" described in pars. 1(b) or (d) of the Settlement Agreement.

68.     In addition, there is no indication in the Settlement Agreement that the Secretary of Defense has concurred in the changes to designation agreed to in the Settlement Agreement, as required by Executive Order 13637.   There is also no indication that the Government

Defendants have followed the established procedures for making a CJ determination before allowing Defense Distributed to export its data.

69.     Upon publicizing the Settlement Agreements, the Plaintiffs have repeatedly and adamantly made claims about the impact of the agreement on all gun violence prevention efforts. Among other things, Cody Wilson tweeted a photo of a tombstone announcing the death of "gun control," and stated that "[a]ll this Parkland stuff, the students, all these dreams of 'common sense gun reforms'? No. The internet will serve guns . . .No amount of petitions or die-ins or anything else can change that."

***The Notices of Proposed Rulemaking***

70.     As promised, on May 24, 2018, the government published notices of proposed rulemaking by the State and Commerce Departments, which would remove Plaintiffs' CAD files from the USML Category I.  *See* International Traffic in Arms Regulations: U.S. Munitions List Categories I, II, and II, 83 Fed. Reg. 24,198 (May 24, 2018); Control of Firearms, Guns, Ammunition and Related Articles the President Determines No Longer Warrant Control Under the United States Munitions List (USML), 83 Fed. Reg. 24,166 (May 24, 2018).

71.     According to the Department of State's Notice of Proposed Rule, it "is engaged in an effort to revise the U.S. Munitions List so that its scope is limited to those defense articles that provide the United States with a critical military or intelligence advantage or, in the case of weapons, are inherently for military end use."  According to the State Department, the articles that would be removed from the list "do not meet this standard."    For this reason, the notice proposes to remove all non-automatic firearms up to .50 caliber (and any related technical data) from the USML under the jurisdiction of the State Department, and move jurisdiction over these

products over to the Commerce Department, which, due to its looser export controls,[1] do not typically take action to prohibit the publication of the data.

72.      The Department of Commerce's Proposed Rule, filed the same day, describes how its Export Administration Regulations ("EAR") will apply to items no longer controlled under the USML. Although the Department of Commerce would not comprehensively restrict the export of technology related to firearms, it would have authority to impose a restriction on a case-by-case basis if it determines the export would be contrary to the national security or foreign policy interests of the United States, the promotion of human rights, or regional stability. *See* 15 C.F.R. § 742.6.   But the Department of Commerce cannot restrict the export of technology already in the public domain, including through posting on publicly available sites on the Internet.   *See* 15 C.F.R. §§ 734.3(b)(3), 734.7(a)(4).   If the terms of the Settlement Agreement take effect and Defense Distributed makes its repository of files available online, the Department of Commerce will be unable to make an independent determination about whether national security or other concerns warrant restricting the unlimited dissemination of those files in accordance with the EAR.

73.      The public comment period for both notices concluded on July 9, 2018, the day before the Plaintiffs went public with the Settlement Agreement.

---

[1]      ITAR requires any exporter of  items of the Munitions List to register with the State Department, *see* 22 C.F.R. 122.1(a), but Commerce  Department regulations include no similar registration requirement.

## CAUSES OF ACTION

### COUNT I
VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT –
*ULTRA VIRES* CONDUCT
(Against Plaintiffs[2] and Defendants)

74.      Intervenors repeat and reallege paragraphs 1-73.

75.      Under the Administrative Procedure Act ("APA"), a court must set "aside agency action that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

76.      The Government Defendants' agreement to and execution of the Settlement Agreement constitutes a final agency action and is *ultra vires* conduct which should be set aside by the Court.

77.      The Government Defendants may only exercise the authority conferred to them by statute.  However, neither the AECA nor ITAR confer upon the Government Defendants the power to modify the USML Category I, temporarily or otherwise, without 30 days-notice to the relevant Congressional committees and without concurrence of the Defense Department.

78.      Here, upon information and belief, the Government Defendants did not provide advance notice of the proposed temporary removal to the House Committee on Foreign Affairs and to the Committee on Foreign Relations of the Senate, and did not receive the concurrence of the Secretary of Defense.

79.      According to Rep. Engel, Ranking Member of the House Committee on Foreign Affairs, notice of the terms of the settlement has not been provided by the President or the State Department.  *See* "Engel Decries State Department Policy to Allow 3-D Gun Printing," Press

---

[2]      For this, and all other counts in this Complaint in Intervention, the Intervenors name the Plaintiffs pursuant to Rule 19(a) of the Federal Rules of Civil Procedure for the limited purpose of ensuring that a full remedy may be ordered.

Release (July 20, 2018), *available at* https://democrats-foreignaffairs.house.gov/news/press-releases/engel-decries-state-department-policy-allow-3-d-gun-printing.

80.     The Government Defendants also lack statutory authority to determine that the Plaintiffs' CAD files should be removed from the Category I list without following the "established procedures" for commodity jurisdiction.  This is especially relevant here, because, in effect, the "temporary modifications" at issue will negate – in large part – the need for final rulemaking with respect to the data at issue, because once the data is on the internet, the damage to national security concerns will be irreparable.

81.     In addition, although ITAR allows the Deputy Assistant Secretary for Defense Trade Controls to order the temporary modification of any ITAR regulation, it may do so only "in the interest of the security and foreign policy of the United States." 22 C.F.R. § 126.2.

82.     Here, the temporary modification agreed to by the Settlement Agreement is not in the interest of the security and foreign policy of the United States, and, upon information and belief, the Government Defendants have made no determination otherwise.

83.     In addition, the Government Defendants lack statutory authority to allow "any United States person" to "access, discuss, use, reproduce, or otherwise benefit" from Defense Distributed's automated blueprints.  *See* Settlement Agreement, ¶ 1(d).

84.     Neither the terms "use" nor "otherwise benefit" are defined in the Settlement Agreement.  However, the ordinary meaning of these terms implies that this provision purports to allow "any United States person" to manufacture, sell and possess firearms made from the files.  If so, this provision can be interpreted to violate numerous provisions of the federal Gun Control Act, including 18 U.S.C. § 922(x)(2) (prohibitions on the possession of handguns by

minors) and § 922(g) (prohibition on possession of firearms by felons, domestic abusers, etc.). It also violates numerous analogous state criminal statutes.

85.     The Government Defendants do not have the statutory authority to amend, rescind or waive any portion of the Gun Control Act, or analogous state statutes.

86.     For these reasons, pursuant to 5 U.S.C. § 706 and 28 U.S.C. § 2201, Intervenors are entitled to a declaration that the Settlement Agreement is unlawful insofar as it purports to allow Defense Distributed to post its files online.  Intervenors are also entitled to an injunction to prevent the Plaintiffs and Defendants from putting the Settlement Agreement into effect to the extent it purports to permit Defense Distributed to make its files available online.

**COUNT II**
**VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT –**
**AGENCY ACTION NOT IN ACCORDANCE WITH LAW**
(Against Plaintiffs and Government Defendants)

87.     Intervenors repeat and reallege paragraphs 1-86.

88.     Under the APA, a court must set "aside agency action" that is "not in accordance with law." 5 U.S.C. § 706(2)(A).

89.     As alleged above, upon information and belief, the Government Defendants did not give 30 days-notice to the required Congressional Committees or receive concurrence from the Secretary of Defense before agreeing, through the Settlement Agreement, to temporarily modify USML Category I to remove the data files at issue from ITAR regulation.  *See* Settlement Agreement, ¶¶1(b), (d).

90.     In addition, upon information and belief, the Government Defendants did not follow established procedures before granting the Plaintiffs an exception to ITAR jurisdiction.

91.     Furthermore, the Government Defendants cannot permit "any United States person" to "access, discuss, use, reproduce, or otherwise benefit" from Defense Distributed's

automated blueprints, because "use" or "otherwise benefit" may be read to allow prohibited individuals to possess, manufacture or sell firearms made from the computer files at issue. *See* Settlement Agreement, ¶ 1(d); Gun Control Act, 18 U.S.C. 921 *et seq*.

92.     For these reasons, pursuant to 5 U.S.C. § 706 and 28 U.S.C. § 2201, Intervenors are entitled to a declaration that the Settlement Agreement is unlawful, insofar as it purports to allow Defense Distributed to post its files online.  Intervenors are also entitled to an injunction to prevent the Plaintiffs and Defendants from putting the Settlement Agreement into effect to the extent it purports to permit Defense Distributed to make its files available online.

### COUNT III
#### VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT – ARBITRARY AND CAPRICIOUS AGENCY ACTION
(Against Plaintiffs and Government Defendants)

93.     Intervenors repeat and reallege paragraphs 1-92.

94.     Under the APA, a court must set "aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," 5 U.S.C. § 706(2)(A).

95.     A court may hold that an agency action is arbitrary and capricious when an agency has failed to consider relevant evidence or articulate a satisfactory explanation for its action.  In addition, an agency's departure from prior practice can serve as an additional basis for finding an agency's interpretation to be arbitrary and capricious.

96.     Here, upon information and belief, the Government Defendants have provided no explanation for their shift in policies, which they have repeatedly articulated to this Court. They have released no reports, no studies or analysis in connection with the Settlement Agreement to explain why the files at issue should be removed from ITAR regulation.  It appears that the

Government Defendants have also entirely failed to consider or to acknowledge the serious national security concerns created by the export of the CAD files.

97.     In fact, according to par. 5 of the Settlement Agreement, the agreement "does not reflect any agreed-upon purpose other than the desire of the Parties to reach a full and final conclusion of the Action, and to resolve the Action without the time and expense of further litigation."

98.     Here, the Government Defendants have agreed to (i) draft and fully pursue a notice of rulemaking and a final rule to remove the files at issue from ITAR regulation; (ii) temporarily modify the USML Category I list to exclude the files at issue from ITAR regulations; and (iii) permit "any United States person" to "use, reproduce or otherwise benefit" from the files at issue."

99.     These agency actions are arbitrary and capricious because the Government Defendants have not offered a reasoned explanation for ignoring or countermanding their earlier factual determinations or representations to this Court, the Fifth Circuit and the United States Supreme Court.  They are also arbitrary and capricious because they are contrary to the purposes of the AECA which requires the State Department to administer the AECA to reduce the international trade in arms and avoid destabilizing effects abroad through arms export.  *See*  22 U.S.C. § 2751.

100.     For these reasons, pursuant to 5 U.S.C. § 706 and 28 U.S.C. § 2201, Intervenors are entitled to a declaration that the Settlement Agreement is unlawful, insofar as it purports to allow Defense Distributed to post its files online.  Intervenors are also entitled to an injunction to prevent the Plaintiffs and Defendants from putting the Settlement Agreement into effect to the extent it purports to permit Defense Distributed to make its files available online.

**COUNT IV**
VIOLATION OF SEPARATION OF POWERS
(Against Plaintiffs and Government Defendants)

101.     Intervenors repeat and reallege paragraphs 1-100.

102.     The Constitution vests the power to legislate to Congress, not the Executive Branch

103.     Here, in the Settlement Agreement, the Government Defendants have agreed to temporarily modify the USML Category I to permit "any United States person" to "access, discuss, use, reproduce, or otherwise benefit" from Defense Distributed's automated blueprints.

104.     Because neither the terms "use" nor "otherwise benefit" are defined in the Settlement Agreement, this provision may be interpreted to allow "any United States person" to manufacture, sell and possess firearms made from the files.  If so, this provision violates numerous provisions of the federal Gun Control Act, including 18 U.S.C. § 922(x)(2) (prohibitions on the possession of handguns by minors) and § 922(g) (prohibition on possession of firearms by felons, domestic abusers, etc.).  As discussed above, the Government Defendants do not have the power to nullify or amend the provisions of the Gun Control Act.

105.     For these reasons, pursuant to 5 U.S.C. § 706 and 28 U.S.C. § 2201, Intervenors are entitled to a declaration that the Settlement Agreement is unlawful, insofar as it purports to allow Defense Distributed to post its files online.  Intervenors are also entitled to an injunction to prevent the Plaintiffs and Defendants from putting the Settlement Agreement into effect to the extent it purports to permit Defense Distributed the Plaintiffs to make its files available online.

## **REQUESTED RELIEF**

WHEREFORE, Intervenors pray that this Court:

a)       Declare the Settlement Agreement unlawful to the extent it permits Defense Distributed to make its files available online;

b)       Enjoin the Plaintiffs and Defendants from putting any provision of the Settlement Agreement into effect to the extent that such permission purports to permit Defense Distributed to make its files available online;

c)       Enjoin the Plaintiffs from making their files available online; and

d)       Grant such other relief as the Court may deem just and proper.


Dated: July 25, 2018                                       Respectfully Submitted,

                                                                         _/s/ J. David Cabello_
                                                                         BLANK ROME LLP
                                                                         J. David Cabello
                                                                         Texas Bar No. 03574500
                                                                         717 Texas Avenue
                                                                         Suite 1400
                                                                         Houston, TX 77002
                                                                         (713) 632-8696
                                                                         dcabello@blankrome.com

                                                                         John D. Kimball (pending _pro hac vice_)
                                                                         N.Y. Bar No. 1416031
                                                                         The Chrysler Building
                                                                         405 Lexington Ave.
                                                                         New York, NY 10174
                                                                         (212) 885-5000