IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED ET AL., | § | |
| | § | |
| Plaintiff, | § | |
| | § | C.A. NO. 1:15-CV-00372-RP |
| v. | § | JURY DEMANDED |
| | § | |
| UNITED STATES DEPT. OF STATE, ET AL, | § | |
| | § | |
| Defendants. | § | |

**JOINT EMERGENCY MOTION FOR TEMPORARY RESTRAINING
ORDER AND FOR PRELIMINARY INJUNCTION BY PROPOSED INTERVENORS
THE BRADY CAMPAIGN TO PREVENT GUN VIOLENCE,
<u>EVERYTOWN FOR GUN SAFETY ACTION FUND, INC., AND GIFFORDS</u>**

Pursuant to Fed. R. Civ. P. 65 Proposed Intervenors The Brady Campaign to Prevent Gun Violence ("Brady" or "Brady Campaign"), Everytown for Gun Safety Action Fund, Inc. ("Everytown") and Giffords ("Giffords"), (collectively "Proposed Intervenors") respectfully and urgently moves the Court to:

A. Enter a temporary restraining order enjoining Defendants from performing under the Settlement Agreement (**Exhibit A**) discussed below, as this would cause immediate and irreparable harm to United States national security directly affecting the safety of individual U.S. citizens;

B. Enter a temporary restraining order enjoining the Plaintiffs from publishing the Published Files, Ghost Gunner Files, CAD Files, and Other Files (the "Weapon Schematics"), as defined in the Settlement Agreement, in order to prevent the immediate and irreparable harm that would result from publishing these files;

C. Enter a preliminary injunction enjoining the parties from performing the settlement agreement; and

D. Grant such other and further relief as may be appropriate.

In support of their motion, Proposed Intervenors would respectfully show the Court as follows:

## INTRODUCTION AND BACKGROUND

The factual and procedural background of this case have been briefed in the Appendix to Proposed Intervenors' Joint Emergency Motion to Intervene, which was filed contemporaneously with this Motion.

# LEGAL STANDARD FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER AND MOTION FOR SAME

To establish the need for a temporary restraining order and preliminary injunction pursuant FRCP 65, the movant has to show: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any prejudice the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest. *Janvey v. Alguire*, 628 F.3d 164, 174 (5th Cir. 2010).

**A. Proposed Intervenors are likely to succeed on the merits; the Proposed Intervenors satisfy the requisite elements of a claim under the APA.**

To make out an APA violation, the Plaintiffs must show that rulemaking through the terms of the settlement are arbitrary and capricious. 5 U.S.C.A. § 706(2)(A); *Taylor v. Fed. Aviation Admin.*, No. 16-1302, 2018 WL 3320874 (D.C. Cir. July 6, 2018). To obtain APA standing, a party must show that its grievance falls within the zone of interests protected by the Arms Export Control Act. In addition, the party will need to show that it would suffer an injury-in-fact to obtain standing under Article III of the U.S. Constitution. See *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81, 120 S. Ct. 693, 145 L.Ed.2d 610 (2000).

1. <u>The Proposed Intervenors have standing.</u>

The APA allows a person adversely affected by an agency action, including new rulemaking, to challenge that action. The court will set aside new regulations that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The APA provides a cause of action to "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute . . ." 5 U.S.C. § 702. Only final agency actions can be challenged. 5 U.S.C. § 704.

Proposed Intervenors are adversely affected by the temporary removal of small arms and associated technology from the USML because (1) the removal will allow for the release of

3

firearms technology by Defense Distributed that enable violations of state and federal law that impact public safety, (2) the safety and security of state residents is compromised by the proliferation of unregistered firearms within the state, and (3) the safety and security of state residents who travel abroad is compromised by the proliferation of small arms and associated technology to produce small arms in other countries. In addition, according to the Plaintiffs, implementation of the Settlement Agreement will directly undermine the work of Proposed Intervenors.

We understand that as matter of judicial self-governance, courts review prudential considerations with regard to standing to limit parties to those which are directly affected by an action. Prudential standing in an APA claim looks to whether "the interest sought to be protected by the complainant must be arguably within the zone of interests to be protected by the statute in question." *Nat'l Credit Union Admin. v. First Nat. Bank & Trust Co.*, 522 U.S. 479, 488 (1998). That is to say, the party's interest must have a "rough correspondence" with the purpose of the underlying statute. *Ass'n of Pub. Agency Customers v. Bonneville Power Admin.*, 733 F.3d 939 (9th Cir. 2013). Thus, at least to some degree, the interests of a party must line up with the purpose of the AECA.

In this regard, it is noteworthy that the "zone of interests" test is not meant to be "especially demanding." *Match-E-Be-Nash-She-Wish-Band of Pottawatomi Indians v. Patchak*, 132 S. Ct. 2199, 2210 (2012) (quoting *Clarke v. Securities Industry Assn.*, 479 U.S. 388, 399 (1987)). The test forecloses suit only when a plaintiff's "interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot be reasonably assumed that Congress intended to permit the suit." Hence, the zone of interest test only "requires some indicia – however slight – that the litigant before the court was intended to be protected, benefited or

regulated by the statute under which suit is brought." *Public Citizen v. FTC*, 869 F.2d 1541, 1547 (D.C. Cir. 1989); see *Autolog Corp. v. Regan*, 731 F.2d 25, 29-30 (D.C. Cir. 1984) ("Courts should give broad compass to a statute's 'zone of interests' in recognition that this test was originally intended to expand the number of litigants able to assert their rights in court").

Here, the Proposed Intervenors clearly meet this test, as associations promoting gun safety laws to minimize violence and injuries with members who would be directly affected by release of this information in the United States and when traveling abroad. The Proposed Intervenors are vulnerable to the precise sort of harm that ITAR's assault on international terrorism is intended to shield.

2. <u>The temporary removal of items from the USML through the settlement is arbitrary and capricious.</u>

The Proposed Intervenors can satisfy the above-delineated requirements to state a claim under APA Section 7, because the consequences of allowing the Settlement Agreement to become effective include: (1) direct contradiction of the legislative intent underlying the AECA and amending the AECA to codify the then-existing classifications of items of on the USML, (2) State Department and other agencies' failure to study or otherwise consider the national security and international stability effects of these actions, in violation of the purpose of the AECA, (3) release of this information to the Internet as a result of the settlement before completing its APA rulemaking after receiving comments on the NPRM, and (4) inexplicable, unjustified reversal of the position of the U.S. Government with regard to the national security ramifications of allowing the online distribution of files to enable the 3-D printing by reference to the Weapons Schematics.

    i. <u>Violation of AECA purpose.</u>

The AECA requires the State Department to administer the AECA to reduce the international trade in arms and avoid destabilizing effects abroad through arms exports. 22 U.S.C.

§ 2751. Neither the settlement agreement nor the proposed rulemaking to finalize the reclassification of small arms technology off of the USML address how these rule changes will impact the international trade in arms or potentially destabilizing effects. This total lack of consideration of the central purpose of the AECA demonstrates that the government's action was ill-considered: "Deference is not owed when the agency has completely failed to address some factor of consideration of which was essential to [making an] informed decision." *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782, 798 (9th Cir. 2005) (internal quotation marks and citation omitted).

      ii.    <u>Failure to study.</u>

In previous rulemakings removing certain items from the USML, the Department of State undertook significant efforts to understand the ramifications to national security interests. For example, before removing certain Global Position System receivers from the USML, the State Department headed an interagency working group to review the regulation of commercial satellites and related technology and whether removal would jeopardize national security interests. Amendment to the ITAR, 57 Fed. Reg. 41,077 (Sept. 9, 1992). An agency's rulemaking is arbitrary and capricious if the agency cannot explain a connection between the logic of the rule and its purported factual basis. *See We Who Care, Inc. v. Sullivan*, 756 F. Supp. 42, 46-47 (D. Me. 1991) (finding that revised regulation establishing $1,500 as the maximum equity in an automobile that an individual could have to obtain benefits under the Aid to Families with Dependent Children program was arbitrary and capricious because the survey on which the change was based was unavailable and the agency was unable to provide basic information about how the survey was conducted). "Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to

consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

        iii.    <u>Failure to follow procedural requirements.</u>

The AECA requires the President to report to Congress at least 30 days in advance of removing an item from the USML. 22 U.S.C. § 2778(f)(1) ("The President may not remove any item from the Munitions List until 30 days after the date on which the President has provided notice of the proposed removal to the Committee on International Relations of the House of Representatives and to the Committee on Foreign Relations of the Senate in accordance with the procedures applicable to reprogramming notifications under section 634A(a) of the Foreign Assistance Act of 1961 [22 USCS § 2394-1]. Such notice shall describe the nature of any controls to be imposed on that item under any other provision of law."). According to Elliot Engel, Ranking Member of the House Committee on Foreign Affairs (formerly known as the Committee on International Relations), notice of the terms of the settlement has not been provided by the President or the State Department.

Although ITAR allows the Deputy Assistant Secretary for Defense Trade Controls to order the temporary modification of any ITAR regulation, they may do so only "in the interest of the security and foreign policy of the United States." 22 C.F.R. § 126.2. As Congressman Engel noted: "[i]t stretches credulity to believe that release of this information is in the U.S. interest." Engel Decries State Department Policy to Allow 3-D Gun Printing, Press Release (July 20, 2018),

*available at* https://democrats-foreignaffairs.house.gov/news/press-releases/engel-decries-state-department-policy-allow-3-d-gun-printing.

Here, the release of the information as a result of the settlement, prior to the completion of the required APA rulemaking process, essentially circumvents the entire rulemaking process, without providing any justification for such action, and is thus clearly tantamount to arbitrary and capricious action in contravention of the APA.

Indeed, an agency's reversal of its position may be arbitrary and capricious if the agency offers no reasoned explanation for ignoring or countermanding its earlier factual findings. *Standing Rock Sioux Tribe v. United States Army Corps of Eng'rs*, 255 F. Supp. 3d 101, 141 (D.D.C. 2017). Where an agency makes a determination to remove a protection from a regulatory scheme, an adequate basis and explanation for that rescission is expected. *See* 15 U.S.C.A. §§ 1381 et seq., 1392(a), (b), (f)(1,3,4); 5 U.S.C.A. § 706; *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 103 S. Ct. 2856 (1983).

Here, the terms of the settlement directly contradict the arguments made by the U.S. Government parties in seeking to dismiss Defense Distributed's challenge.

    iv.    <u>The terms of the settlement are a final agency action.</u>

The APA authorizes judicial review of final agency actions. 5 U.S.C. § 704. Agency action is "final" if two conditions are met. First, the action must mark the end of the agency's decision-making process. Second, the action must be one by which "rights or obligations have been determined," or from "which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997); *see also Minard Run Oil Co. v. United States Forest Serv.*, 670 F.3d 236, 247 (3d Cir.

2011). [1] A settlement agreement can qualify as final agency action. *United States v. Carpenter*, 526 F.3d 1237, 1241-42 (9th Cir. 2008).

The executive branch cannot hide behind Presidential powers to achieve a particular domestic objective. When it does so, the executive branch exceeds the statutory authority granted to it by Congress. *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 587-88 (1952) ("The President's order does not direct that a congressional policy be executed in a manner prescribed by Congress -- it directs that a presidential policy be executed in a manner prescribed by the President."); *Ramirez de Arellano v. Weinberger*, 745 F.2d 1500 (D.C. Cir. 1984) (en banc), vacated and remanded on other grounds, 471 U.S. 1113 (1985) ("The Court in Youngstown was therefore concerned with whether injunctive relief may appropriately issue to restrain the executive's unlawful action with respect to domestic affairs where the domestic problem might have a secondary effect on foreign affairs."); *Int'l Refugee Assistance Project v. Trump*, 883 F.3d 233, 296 (4th Cir. 2018) ("In sum, the President claims the authority to indefinitely set his own

---

[1] In *Minard*, an oil company obtained a preliminary injunction against implementation of a settlement agreement between the Forest Service and environmental groups. That settlement required the Forest Service to conduct an environmental analysis before issuing a "Notice to Proceed" ("NTP") to mineral rights owners in the Alleghany National Forest. An NTP is required to proceed with extraction activity. In implementing the settlement, the Forest Service placed a moratorium on issuance of NTPs. The Third Circuit found that the moratorium constituted a final agency action, while the settlement agreement itself was an "intermediate agency action", which, under the APA, is "subject to review on the review of the final agency action." *Id.* at 249, n. 7 (quoting 5 U.S.C. § 704). The Third Circuit found that the Forest Service had failed to abide by APA rulemaking requirements in implementing its new policy on issuing NTPs. *Id.* The Third Circuit upheld the district court's preliminary injunction: the district court's injunction enjoined the Forest Service from requiring the environmental analysis before issuing NTPs, ended the moratorium, and prevented further implementation of the settlement agreement. *See Minard Run Oil Co. v. United States Forest Serv.*, No. 09-125, 2009 U.S. Dist. LEXIS 116520 (W.D. Pa. Dec. 15, 2009). Here, the settlement action must be considered final agency action, because the settlement will have immediate and substantial effect through release of the information to the internet. As noted by the Fifth Circuit in affirming this Court's denial for a preliminary injunction, the files would be "freely available worldwide…Thus, the national defense and national security interest would be harmed forever."

9

immigration and travel policies with respect to every foreign nation and class of immigrants, under any circumstances, exigent or not, that he sees fit. Such authority is dangerously similar to lawmaking and intrudes on Congress's plenary power over immigration").

**3. There is a threat of irreparable injury if the injunction is denied.**

The threat of irreparable injury to the United States and its citizens has been briefed in the Motion to Intervene and accompanying Appendix 1. If the Government is permitted to perform under the Settlement Agreement, despite the numerous and blatant APA violations in the Settlement Agreement, United States national security will suffer irreparable injury.

**4. The threatened injury outweighs any prejudice the injunction might cause the parties.**

This Court has already found that the Plaintiff's interest in protecting its constitutional rights does not outweigh "the public's keen interest in restricting the export of defense articles." *Defense Distributed v. United States Dep't of State*, 121 F. Supp. 3d 680, 690 (W.D. Tex. 2015).

**5. The injunction will not disserve the public interest.**

An injunction will not disserve the public interest. On the contrary, the primary aim of the injunction is to serve the public interest by enjoining plaintiffs and defendants from taking action that will irreparably harm the security of the United States and its citizens. *See id.* ("Plaintiffs' contention that the grant of an injunction permitting them to post files that Defendants contend are governed by the AECA and ITAR would not bar Defendants from controlling 'export' of such materials stands in sharp contrast to Defendants' assertion of the public interest.").

## CONCLUSION

For these reasons, Proposed Intervenors respectfully request the Court grant a temporary restraining order and schedule a hearing concerning the motion for preliminary injunction.

| | |
|---|---|
| Dated:  July 25, 2018 | Respectfully submitted, |

                                                     */s/* David Cabello
                                                J. David Cabello
                                                Blank Rome LLP
                                                Texas State Bar No. 03574500
                                                717 Texas Avenue
                                                Suite 1400
                                                Houston, TX 77002
                                                Telephone: (713) 228-6601
                                                Facsimile: (713) 228 6605
                                                E-mail: dcabello@blankrome.com

                                                John D. Kimball (pending *pro hac vice*)
                                                Blank Rome LLP
                                                N.Y. Bar No. 1416031
                                                The Chrysler Building
                                                405 Lexington Ave.
                                                New York, NY 10174
                                                (212) 885-5000

                                                **Attorneys for Proposed Intervenors**

## CERTIFICATE OF SERVICE

      The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on July 25, 2018, and was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(b)(1).

                                                */s/M'Liss Hindman*
                                                M'Liss Hindman
                                                Paralegal