# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED; SECOND AMENDMENT FOUNDATION, INC; and CONN WILLIAMSON, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 1:15-cv-372-RP |
| UNITED STATES DEPARTMENT OF STATE; MICHAEL POMPEO, in his official capacity as Secretary of State; DIRECTORATE OF DEFENSE TRADE CONTROLS; MIKE MILLER, in his official capacity as Acting Deputy Assistant Secretary of Defense Trade Controls ; SARAH J. HEIDEMA, in her official capacity as Acting Director, Office of Defense Trade Controls Policy, Bureau of Political Military Affairs, Department of State, | § § § § § § § § § § § § § | |
| Defendants. | § | |

**Plaintiffs' Rule 59 Motion to Alter or Amend a Judgment
or, Alternatively, Rule 60(b) Motion for Relief from a Judgment.**

Plaintiffs Defense Distributed, Second Amendment Foundation, Inc., and Conn Williamson submit this Rule 59 Motion to Alter or Amend a Judgment. *See* Fed. R. Civ. P. 59. Alternatively, Plaintiffs submit this as a Rule 60 Motion for Relief from a Judgment. *See* Fed. R. Civ. P. 60(b).

**Summary**

All of the parties to this case thought that it had been resolved properly. On June 29, 2018, the Plaintiffs and Defendants entered into a settlement agreement, and on July 27, 2018, they filed a Rule 41(a)(1)(A) stipulation of dismissal. Dkt. 112. Three days later, this Court entered a final judgment based on that stipulation. Dkt. 113. The stipulation is the judgment's *only* basis.

Today, both the Plaintiffs and Defendants remain committed to the settlement agreement's obligations. But nineteen states and the District of Columbia are not. To the contrary, they asked the Western District of Washington to enter a nationwide injunction against the settlement agreement's implementation. Moreover, the plaintiff states fashioned that suit in such a way that Plaintiffs could not enforce their rights under the settlement agreement in that suit. That court—which lacks personal jurisdiction over the Plaintiffs—has now entered a nationwide preliminary injunction that bars the Defendants from fulfilling their end of the settlement agreement.

The injunction is more than just incorrect as a matter of law. It violates the United States Constitution's First Amendment, Second Amendment, Supremacy Clause, and Article III. And because of the controversy's public nature, the resulting injustice tramples not just the Plaintiffs' and Defendants' rights, but those of the entire citizenry.

This situation is largely unprecedented. Unforeseeable events have jeopardized the settlement agreement and the legitimacy of the stipulation that depends upon it. Neither the Plaintiffs nor the Defendants want to upend the settlement agreement. They both wish to honor it. Reopening the case will let them to do so most effectively, in ways that the current judgment does not allow for. So, in light of extraordinary circumstances and in order to prevent a manifest injustice, Plaintiffs hereby withdraw the stipulation of dismissal and request that the Court vacate its judgment and reopen the case under Rules 59 and 60.

**Argument**

Rule 59 gives the Court authority to "alter or amend" a judgment. Fed. R. Civ. P. 59(e). Rule 59 warrants relief here. The Court should permanently vacate the current judgment and reopen the proceedings. Alternatively, if the Court has doubts about that course of action, the Court should temporarily alter the current judgment and conduct a complete inquiry before deciding whether or not to let the original disposition become final. In addition to Rule 59, Rule 60(b)'s authority to "relieve a party . . . from a final judgment" warrants the same result.

**I.  To avoid manifest injustice, the order of stipulated dismissal should be vacated.**

Currently, the Court's final decision orders that the action is dismissed with prejudice because of a Rule 41(a)(1)(A)(ii) stipulation. Dkt. 113. The stipulation triggering this was filed jointly by the Plaintiffs and Defendants. Dkt. 112. The stipulation was made pursuant to a settlement agreement and pursuant to Rule 41(a)(1)(A)(ii), *id.*, which provides:

> a)  Voluntary Dismissal.
>
> (1)  *By the Plaintiff.*
>
> (A)  *Without a Court Order.* Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:
> . . .
> (ii)  a stipulation of dismissal signed by all parties who have appeared.

Fed. R. Civ. P. 41(a)(1)(A)(ii).

After Plaintiffs filed the stipulation, this Court entered an order dismissing the action with prejudice, allocating costs, and closing the case. Dkt. 113. That order constituted the final judgment. *See Harvey Specialty & Supply, Inc. v. Anson Flowline Equip. Inc.*, 434 F.3d 320, 324-35 (5th Cir. 2005). However, it was the stipulation and not the order that constituted the dismissal. *See, e.g., SmallBizPros, Inc. v. MacDonald*, 618 F.3d 458, 461-63 (5th Cir. 2010).

The stipulation's force is what makes the final judgment correct. If the stipulation deserves to be withdrawn, the resulting dismissal of the Plaintiffs' case should also be no more; and if the Plaintiffs' case is no longer dismissed, the judgment should be vacated to reopen the action. *See, e.g.*, *Littman v. Bache & Co.*, 246 F.2d 490, 492 (2d Cir. 1957) (Hand, J.) ("order 'vacating' the plaintiff's 'notice of dismissal,' . . . reopens the case for consideration upon the merits").

### A. Plaintiffs withdraw their stipulation of dismissal.

Stipulations are not set in stone. They can be withdrawn at a party's behest in extraordinary circumstances, such as "manifest injustice":

> The trial court has not only the right, but the duty to relieve counsel from pretrial stipulations where necessary to *avoid manifest injustice* and adjudications based on the sporting theory.

*United States v. Texas*, 680 F.2d 356, 370 (5th Cir. 1982) (citation omitted) (emphasis added). Under this well-established rule, the "court always has the responsibility to cut a litigant from the snares and tangles of a procedural trap, whether it be created by his own or another's doings in order to prevent manifest injustice." *Assoc. Beverages Co. v. P. Ballantine & Sons*, 287 F.2d 261, 263 (5th Cir. 1961).[1]

---

[1] *Accord Rice v. Glad Hands, Inc.*, 750 F.2d 434, 438 (5th Cir. 1985) ("Care must be taken to assure, considering the peculiar circumstances of a given case, that a rigid enforcement of the stipulation does not lead to an injustice."); *Equitable Life Assur. Soc. of U.S. v. MacGill*, 551 F.2d 978, 984 (5th Cir. 1977) ("a party may be relieved of a stipulation 'to prevent manifest injustice' so long as 'suitable protective terms or conditions are imposed to prevent substantial and real harm to the adversary"); *Cent. Distributors, Inc. v. M. E. T., Inc.*, 403 F.2d 943, 946 (5th Cir. 1968) ("A stipulation of counsel originally designed to expedite a trial should not be rigidly adhered to when it becomes apparent that it may inflict manifest injustice upon one of the subscribers thereto."); *Logan Lumber Co. v. C.I.R.*, 365 F.2d 846, 855 (5th Cir. 1966) ("a party may be relieved of a stipulation 'to prevent manifest injustice' so long as 'suitable protective terms or conditions are imposed to prevent substantial and real harm to the adversary'"); *see also Carnegie Steel Co. v. Cambria Iron Co.*, 185 U.S. 403, 444 (1902) ("[U]pon giving notice in sufficient time to prevent prejudice to the opposite party, counsel may repudiate any fact inadvertently incorporated therein.

Under this doctrine, trial courts are not just *allowed* to accept appropriate withdrawals of stipulations. It is their duty to do so. Precedents like *Laird v. Air Carrier Engine Services, Inc.*, 263 F.2d 948 (5th Cir. 1959), explain that each court "does have the right, and it *should never fail to exercise it*, to relieve counsel of stipulations to prevent manifest injustice." *Id.* at 953 (emphasis added).[2] Here, the Court should approve Plaintiffs' withdrawal of the stipulation of dismissal.

### B. Unforeseeable Ninth Circuit litigation produced an injunction that jeopardizes the settlement agreement to the detriment of both Plaintiffs and Defendants.

This litigation entailed a serious dispute between the Plaintiffs and the Defendants—mainly the State Department—about the applicability of "certain laws governing the export of unclassified technical data relating to prohibited munitions." *Def. Distributed v. U.S. Dep't of State*, 838 F.3d 451, 460 (5th Cir. 2016). But now that dispute no longer exists. The Plaintiffs and Defendants are in complete agreement about the right way to resolve that matter.

---

This practice has been frequently upheld in this and other courts"); *Waldorf v. Shuta*, 142 F.3d 601, 617–18 (3d Cir. 1998) (on factors defining exceptional circumstances).

[2] Precedent rightly recognizes that Rule 41 does *not* abrogate the inherent authority "necessarily vested in courts to manage their own affairs." *Link v. Wabash R. Co.*, 370 U.S. 626, 630 (1962); *accord Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379 (1994); *see also United States v. Colomb*, 419 F.3d 292, 299 (5th Cir. 2005) ("A district court has inherent power 'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). *Cf. Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) ("a federal district court can rescind a discharge order and recall a jury in a civil case as an exercise of its inherent powers"). Hence, courts entertain post-judgment requests to withdraw stipulations of dismissal regularly, in both the Rule 59 and Rule 60 contexts. *See, e.g.*, *Kabbaj v. Am. Sch. of Tangier*, 445 F. App'x 541, 543 (3d Cir. 2011); *Yeldon v. Crouch*, No. No. 9:12-CV-1564, 2016 WL 4126384, at *1 (N.D.N.Y. Apr. 4, 2016), *report and recommendation adopted sub nom. Yeldon v. Caulkin*, No. 9:12-CV-1564 (N.D.N.Y. Aug. 2, 2016); *Kinney v. United States Gov't USDA Forest Serv.*, No. 1:12-CV-01008, 2014 WL 12788960, at *2 (D.N.M. Aug. 14, 2014); *Domestic Fabrics Corp. v. Sears, Roebuck & Co.*, 325 F. Supp. 2d 612, 613 (E.D.N.C. 2003).

The Plaintiffs and Defendants settled their dispute by entering into the Settlement Agreement of June 29, 2018. Ex. A; Dkt. 97-1. As the State Department's own court filings correctly acknowledged, "[p]ursuant to the settlement and as relevant here, the Government agreed to the following":

> (a) Defendants' commitment to draft and to fully pursue, to the extent authorized by law (including the Administrative Procedure Act), the publication in the Federal Register of a notice of proposed rulemaking and final rule, revising USML Category I to exclude the technical data that is the subject of the Action.
>
> (b) Defendants' announcement, while the above-referenced final rule is in development, of a temporary modification, consistent with the . . . (ITAR), 22 C.F.R. § 126.2, of USML Category I to exclude the technical data that is the subject of the Action. The announcement will appear on the DDTC website, www.pmddtc.state.gov, on or before July 27, 2018.
>
> (c) Defendants' issuance of a letter to Plaintiffs on or before July 27, 2018, signed by the Deputy Assistant Secretary for Defense Trade Controls, advising that the Published Files, Ghost Gunner Files, and CAD Files are approved for public release (i.e., unlimited distribution) in any form and are exempt from the export licensing requirements of the ITAR because they satisfy the criteria of 22 C.F.R. § 125.4(b)(13). . . .
>
> (d) Defendants' acknowledgment and agreement that the temporary modification . . . permits any United States person, to include DD's customers and SAF's members, to access, discuss, use, reproduce, or otherwise benefit from the technical data that is the subject of the Action, and that the letter to Plaintiffs permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files.

Ex. B at 5-6 (W.D. Wash. Dkt. 64) (footnotes omitted).

After the stipulation, the Defendants complied with the settlement agreement in part, at least for a short period. *See id.* at 6. The rulemaking began, the temporary modification was issued, the license was issued, and the acknowledgement occurred. *See id.*

Meanwhile, opposing organizations attempted to intervene. They asked this Court to enjoin the State Department from continuing to carry out the settlement agreement. Dkts. 96, 97, 98, 103, 109. The Court found that those organizations lacked standing, and denied the motion to

intervene. Dkt. 111 at 5-7 ("Because the Movants cannot establish an injury in fact, they lack Article III standing to intervene in this action.").

The stipulation of dismissal with prejudice was signed by both sides and was filed on the evening of Friday, July 27, 2018. Dkt. 112 at 1. On Monday, July 30, this Court entered a final judgment that acknowledged the stipulated dismissal, taxed costs to the party incurring them, and ordered that the "case is DISMISSED WITH PREJUDICE." Dkt. 113 at 1. Then the matter took a turn for the unexpected.

In the evening of Monday, July 30, 2018, Washington and other states filed suit against this action's Defendants and Plaintiffs in the Western District of Washington. Ex. C (W.D. Wash. Dkt. 1). The state plaintiffs' complaint alleged that, by entering into the settlement agreement and carrying out its obligations, the State Department had "violated the Administrative Procedure Act (APA) and the Tenth Amendment of the U.S. Constitution." *Id.* at 7. The suit—which would ultimately include nineteen states and the District of Columbia—sought a nationwide injunction to bar the State Department from performing its obligations under the settlement agreement. *Id.*

The Plaintiffs here opposed the States' injunction request and defended the settlement agreement's obligations as perfectly lawful. Ex. D, E, F (W.D. Wash. Dkts. 8, 11, 14). Critically, the State Department defended the settlement agreement as well. Ex. G (W.D. Wash. Dkt. 16).

The State Department pointed out the States' extraordinary request—"[t]hey ask the Court to suspend and enjoin enforcement of actions already taken by the Government pursuant to its obligations under the Settlement Agreement"—and argued that the States lacked standing, were wrong on the merits, and had failed to demonstrate an injunction's other prerequisites such as irreparable harm. *Id.* at 8-18.

Nevertheless, on July 31, 2018, the Western District of Washington issued a nationwide temporary restraining order. In no uncertain terms, the restraining order enjoined the State Department from fulfilling its obligations under the settlement agreement:

> For all the foregoing reasons, plaintiffs' motion for temporary restraining order is GRANTED. The federal government defendants and all their respective officers, agents, and employees are hereby enjoined from implementing or enforcing the "Temporary Modification of Category I of the United States Munitions List" and the letter to Cody R. Wilson, Defense Distributed, and Second Amendment Foundation issued by the U.S. Department of State on July 27, 2018, and shall preserve the status quo *ex ante* as of the modification had not occurred and the letter had not been issued.

Ex. H (W.D. Wash. Dkt. 23). The States amended their complaint, Ex. I (W.D. Wash. Dkt. 29), and moved for a preliminary injunction based on essentially the same argument as before, Ex. J (W.D. Wash. Dkt. 43); *see* Exs. K, L, M, N (W.D. Wash. Dkts. 63, 64, 68, 69) (briefs). Once again, the Plaintiffs and Defendants here agreed. But once again, our arguments were unsuccessful.

Today, the Western District of Washington issued a preliminary injunction. Ex. P (W.D. Wash. Dkt. 95). Just like the TRO, it enjoins the State Department from fulfilling its settlement agreement obligations. Three facets of the decision warrant special emphasis.

First, the decision warps Article III and the Supremacy Clause by granting the states standing to sue for a takeover of the federal government. But states have no right to make federal law. Only Congress and the President do. And yet this decision holds that the states' interest in such commandeering is a right that Article III exists to adjudicate. Politicians rightly care about their constituents' health and well-being. But those concerns are political, not legal. "*Parens patriae*" is what the law calls this—the "quasi-sovereign interest in the health and well-being" of residents—and a "State does not have standing as *parens patriae* to bring an action against the Federal Government." *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 610 n.1 (1982). The Western District of Washington should not have decided this case at all.

8

Second, the decision renders an extreme holding on the merits: The First Amendment can be "abridged" so long as it is not "abrogated." Op. at 25. This holding is truly extraordinary, not just for the obvious reason—"Congress shall make no law . . . *abridging* the freedom of speech," U.S. Const. amend. I (emphasis added)—but also because of a key principle that the opinion had to acknowledge. *Without breaking any law*, the computer files at issue here "can be emailed, mailed, securely transmitted, or otherwise published within the United States." Op. at 25.

The court had to embrace this proposition because both the States and State Department conceded it, and rightly so. The State Department correctly takes the position that "even if the Court [in Washington] were to grant plaintiffs every ounce of relief that they seek in this case, *Defense Distributed could still mail every American citizen in the country the files that are at issue here*." Ex. O at 27 (emphasis added). Likewise, the state plaintiffs conceded that Defense Distributed could "hand the[ files] around domestically" and break no law. Ex. O at 23.

In this way, the issue was essentially reduced to the question of whether states are entitled to wall off disfavored parts of the internet because of what people there talk about. That ought to trigger the most serious First Amendment analysis. But instead of doing any, the preliminary injunction decision said that it need not "wade through" First Amendment issues because the First Amendment is merely being "abridged" and not "abrogated":

> The Court declines to wade through these issues based on the limited record before it and instead presumes that the private defendants have a First Amendment right to disseminate the CAD files. *That right is currently abridged, but it has not been abrogated*. Regulation under the AECA means that the files cannot be uploaded to the internet, but they can be emailed, mailed, securely transmitted, or otherwise published within the United States. The Court finds that the irreparable burdens on the private defendants' *First Amendment rights are dwarfed* by the irreparable harms the States are likely to suffer if the existing restrictions are withdrawn and that, overall, the public interest strongly supports maintaining the status quo through the pendency of this litigation.

*Id.* at 25 (emphasis added).

Most importantly for present purposes, the Western District of Washington's decision addresses its relationship to this action. It does not do so indirectly. It does so directly. It says that, even if the preliminary injunction "impinges on the federal defendants' ability to perform under their settlement agreement," the Ninth Circuit litigation will *not* adjudicate the legal relationship of this case's Plaintiffs and Defendants. Op. at 12. "The dismissal of the Texas litigation is not under attack," the preliminary injunction says, because the States in the Washington case are merely "challenging the adequacy of agency action":

> If, as plaintiffs allege, the federal defendants exceeded their authority in entering into the settlement agreement with the private defendants, they are entitled to file suit under the APA and seek appropriate redress. *If the remedy afforded in this litigation impinges on the federal defendants' ability to perform under their settlement agreement with the private defendants, the latter may have a breach of contract claim against the former*, but there is no jurisdictional bar to this litigation in the circumstances presented here. The dismissal of the Texas litigation is not under attack: rather, the States are .

*Id.* at 12 (emphasis added).

At bottom, the decision enjoins the Defendants with an injunction of the same scope as the temporary restraining order. It enjoins the State Department from "implementing or enforcing" the settlement agreement's two key components—the temporary modification and the licensing letter:

> For all of the foregoing reasons, plaintiffs' motion for a preliminary injunction is GRANTED. The federal defendants and all of their respective officers, agents, and employees are hereby enjoined from implementing or enforcing the "Temporary Modification of Category I of the United States Munitions List" and the letter to Cody R. Wilson, Defense Distributed, and the Second Amendment Foundation issued by the U.S. Department of State on July 27, 2018, and shall preserve the status quo ex ante as if the modification had not occurred and the letter had not been issued until further order of the Court.

*Id.* The decision takes effect immediately.

### C. Exceptional circumstances warrant withdrawal of the Plaintiffs' stipulation.

When the Plaintiffs and Defendants here entered the stipulation of dismissal, it was inconceivable that another federal court would allow states to mount a collateral attack on this Court's judgment. This is not a run-of-the-mill case where one side has reneged on a settlement agreement. Rather, this is the extraordinary case where a settlement agreement that is completely supported by both parties—one of whom is the United States of America—has been rendered a legal nullity by third parties that lack any justiciable stake in the matter whatsoever. This situation is unprecedented.

In the more ordinary situation—one party breaching a settlement agreement and the other insisting on its enforcement—courts may deny the latter's request to withdraw a stipulation of dismissal. But the reasons for doing that do not apply here. In such a case, the two sides disagree about whether to carry out the settlement agreement; and in such a case, the aggrieved party can sue the opponent for breach of the settlement agreement. Not so here. In this case, both sides *agree* about the need to fulfill the settlement agreement; and in this case, a breach-of-contract suit would not necessarily supply such relief. Why? The federal court in Washington has enjoined the State Department from performing the settlement agreement no matter what.

This issue arose during oral arguments before the Western District of Washington. Both the District Court and counsel for the states made clear that the Ninth Circuit litigation will never address the issue of the settlement agreement's enforcement:

> [States' Counsel]: We are attacking the government's decision to allow these 3D guns to be readily available, and the administrative process there. We're not attacking the settlement agreement itself.
>
> THE COURT: There may be contractual issues between Defense Distributed and the federal government, based on the settlement agreement. ***But it's not in front of me and it's not part of this lawsuit is what you're saying?***

| [States' Counsel]: | ***That's correct, Your Honor.*** |
| --- | --- |
| THE COURT: | ***I agree with that.*** But I'm glad to have [Defense Distributed's Counsel] and his client here to express a point of view that obviously the federal government isn't willing to go that far. So it's very useful to have him here. But I agree with you, ***I'm not touching any contract issue in the case.*** |

Ex. O at 46-47 (W.D. Wash. Preliminary Injunction Hearing Transcript) (emphasis added).

Hence, today's preliminary injunction decision does not hide from these implications. To its credit, the decision speaks of them candidly. Even though the injunction "impinges on the federal defendants' ability to perform under their settlement agreement," the Western District of Washington will decidedly *not* adjudicate anything about the State Department's fulfillment of obligations under the settlement agreement. Ex. P at 12. Given that the Western District of Washington believes that the "Texas litigation is *not* under attack," *id.* (emphasis added), it will never come to the defense of the instant judgment's integrity.

The Plaintiffs have exhausted every possible avenue of relief in the court that is causing the legal jeopardy. And so it is that the Plaintiffs respectfully return to this Court now, to withdraw the stipulation of dismissal and have the current judgment vacated. Withdrawals of stipulations are allowed when necessary to avoid "manifest injustice." This is the rare case in point.

Importantly, the "manifest injustice" showing does *not* require proof that the States and/or the State Department have been acting with malice or any other bad motive. Rather, the decision to "reopen a case" because of a stipulation gone awry can be justified because the parties proceeded under an "honest mistake." *Russell-Miller Mill. Co. v. Todd*, 198 F.2d 166, 169 (5th Cir. 1952). The Plaintiffs and Defendants simply assumed that a settlement would resolve the dispute without the need for a judgment codifying its obligations. The stipulation was premised on that honest and reasonable assumption. Under the Fifth Circuit's precedents, relief is warranted.

Moreover, the Plaintiffs' right to withdraw this stipulation is supported by the dispositive nature of the dismissal. Unlike minor evidentiary stipulations that merely *shape* a merits determination, dispositive stipulations such as dismissal preclude a merits determination altogether. Cases like *Central Distributors, Inc. v. M. E. T., Inc.*, 403 F.2d 943 (5th Cir. 1968), make this distinction important: withdrawal is required where, as here, denying withdrawal would "effectively bar[] a meaningful examination of the only real issues present." *Id.* at 946.

Furthermore, the Plaintiffs' right to withdraw their stipulation is supported by the Defendants' identity. Whatever may be said about trust amongst opposing private parties, all Americans are entitled to trust that the United States of America itself will deliver on the promises it makes in litigation. *See, e.g.*, *United States v. Camp*, 723 F.2d 741, 745–46 (9th Cir. 1984) ("Appellants had every reason to rely on the factual representation made in this regard by the federal prosecutor.").

Additionally, no prejudice will result from withdrawing this stipulation. As a general matter, prejudice may result when the opposing party is denied an opportunity to present its defense's merits. *See e.g.*, *Stavroudis v. United States*, 309 F.2d 480, 481 (2d Cir. 1962). Here, no such disability exists.

Indeed, the equitable balance tips strongly in the Plaintiffs' favor, for "it is inequitable for a party to withdraw his burdens under a contract or stipulation without forfeiting the benefits derived under that agreement." *Stephens Inst. v. N.L.R.B.*, 620 F.2d 720, 725 (9th Cir. 1980). The Defendants were temporarily freed from the settlement's burdens, albeit involuntarily. They cannot now complain about being temporarily detached from its benefits until a new, more appropriate judgment is produced.

Finally, the Plaintiffs' right to withdraw this stipulation is supported by the substantial public importance of this case's constitutional questions. In such cases, district courts have even wider latitude to permit the right to withdraw the stipulation. *See United States v. State of Tex.*, 680 F.2d 356, 370 (5th Cir. 1982).

At bottom, this case presents extraordinary circumstances. Unless the stipulation can be withdrawn, the Plaintiffs will suffer a manifest injustice. "The Rules of Civil Procedure were adopted in an effort to put an end to the sporting theory of justice." *Cent. Distributors, Inc. v. M. E. T., Inc.*, 403 F.2d 943, 946 (5th Cir. 1968). If the stipulation cannot be withdrawn, the result in this case would have "precisely the opposite effect: the sporting theory of justice is resurrected and revitalized." *Id.*

## II. The Dismissal Should Also be Vacated under Rule 60(b).

To the extent that Rule 59 does not supply sufficient authority to grant the Plaintiffs' requested relief, Plaintiffs request that the Court do so pursuant to Federal Rule of Civil Procedure 60(b). A dismissal under Rule 41(a)(1)(A) qualifies as a "proceeding" for purposes of Rule 60(b) "proceeding." This Court's judgment is therefore subject to vacatur under Rule 60(b). *See Nat'l City Golf Fin. v. Scott*, No. 17-60283, 2018 WL 3767318 (5th Cir. Aug. 9, 2018).

In substance, the standard for relief under Rule 60(b) is essentially the same as the standard for relief under Rule 59: the Plaintiffs must show that permitting the judgment to stand would result in "manifest injustice" *Yesh Music v. Lakewood Church*, 727 F.3d 356, 363 (5th Cir. 2013). With the situation presented here, the two inquiries dovetail harmoniously as one in the same. *See Celtic Marine Corp. v. James C. Justice Companies, Inc.*, No. 11-3005, 2013 WL 2390018, at *1 (E.D. La. May 30, 2013).

For the same reasons that relief here is warranted under Rule 59, *supra* Part II.C, relief here is warranted under Rule 60(b). Precedent supporting that conclusion comes both from this Circuit, *see Yesh Music*, 727 F.3d at 361-64; *Stipelcovich v. Sand Dollar Marine, Inc.*, 805 F.2d 599, 605 (5th Cir. 1986) ("When the settlement agreement was breached Stipelcovich had two remedies available. She could have brought an action to collect the $150,000 due under the settlement, or she could have made a rule 60(b)(6) motion to vacate the prior dismissal and reinstate the case."), and others, *Keeling v. Sheet Metal Workers Int'l Assn.*, 937 F.2d 408, 410 (9th Cir. 1991) ("Repudiation of a settlement agreement that terminated litigation pending before a court constitutes an extraordinary circumstance, and it justifies vacating the court's prior dismissal order."); *Fairfax Countywide Citizens Ass'n v. Fairfax County, Va.*, 571 F.2d 1299, 1302–03 (4th Cir. 1978) ("[U]pon repudiation of a settlement agreement which had terminated litigation pending before it, a district court has the authority under Rule 60(b)(6) to vacate its prior dismissal order and restore the case to its docket").

## III. __Further Proceedings Should Occur Soon, with Flexibility.__

After vacating the current judgment, the Court will retain wide latitude to craft future proceedings in a way that is fair to all sides. *See Central Distributors*, 403 F.2d at 945 ("the court is responsible for seeing that suitable protective terms are imposed to prevent substantial and real harm to the adverse party"). Specifically, the Court will have at least two paths available to it.

First, the Court can permanently vacate the current judgment. This is the most appropriate outcome because there is no need, for example, to wait and see how the Western District of Washington's injunction pans out on appeal to the Ninth Circuit. The current state of affairs is enough to warrant both permanently vacating the existing judgment and immediately preceding to a new resolution.

Second, if the Court has doubts about that course of action, it should at least *temporarily* vacate the current judgment. This approach would allow the Court to conduct a complete inquiry into the circumstances before deciding whether or not to let the original disposition become final. At that point, the Court would have the authority to either re-enter a judgment of dismissal (if it is justified) or adhere to this vacatur decision and proceed to a merits resolution.

In either case, the critical first step is to vacate the current judgment because the Plaintiffs no longer stipulate to it. The Plaintiffs and Defendants have bound themselves to a settlement agreement. But this matter is nonetheless far from settled. The dismissal order entered on July 30, 2018 should not be this Court's final judgment. The case should be reopened.

**Conclusion**

The motion should be granted and the Court should vacate the July 30, 2018 Order.

Respectfully submitted,

| | |
|---|---|
| FARHANG & MEDCOFF | BECK REDDEN LLP |
| By /s/Matthew Goldstein | By /s/ Chad Flores |
| Matthew Goldstein* | Chad Flores** |
| D.C. Bar No. 975000 | Texas Bar No. 24059759 |
| 4801 E. Broadway Blvd., Suite 311 | cflores@beckredden.com |
| Tucson, AZ 85711 | Mary Kate Raffetto |
| (202) 550-0040 | Texas Bar No. 24098296 |
| mgoldstein@fmlaw.law | mkraffetto@beckredden.com |
| | Dan Hammond** |
| By /s/Josh Blackman | Texas Bar No. 24098886 |
| Josh Blackman | dhammond@beckredden.com |
| Virginia Bar No. 78292 | 1221 McKinney St., Suite 4500 |
| joshblackman@gmail.com | Houston, TX 77010 |
| 1303 San Jacinto Street | (713) 951-3700 |
| Houston, TX 77002 | |
| (202) 294-9003 | |
| | |
| *Admitted *pro hac vice* | **Admission *pro hac vice* pending |
| | |
| Attorneys for Plaintiffs Defense Distributed, Second Amendment Foundation, Inc., and Conn Williamson | Attorneys for Plaintiff Defense Distributed |

## CERTIFICATE OF SERVICE

       I hereby certify that a true and correct copy of the above and foregoing document was served to all counsel of record through the Court's CM/ECF system on this 27th day of August, 2018.

                                               /s/ Mary Kate Raffetto
                                               Mary Kate Raffetto