# EXHIBIT D

**Josh Blackman**
Josh@JoshBlackman.com | 202-294-9003 | 1303 San Jacinto Street, Houston, TX 77002

July 31, 2018

Dear Judge Lasnik:

The Attorneys General of eight states and the District of Columbia have styled this case as a mundane administrative law matter. Their proposed remedy sounds innocuous enough, and perhaps even a little familiar: enjoin the current administration from reversing a position taken by the prior administration. However, that description of the case is dangerous window dressing. This case implicates foundational principles of free speech.

Simply put, the States demand a prior restraint of constitutionally protected speech that is *already* in the public domain. We know that "[a]ny system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity."[1] That presumption of liberty is even heavier where, as here, the speech is *already* available on the internet, and has been available for years. In *The Pentagon Papers Case*, Justice White remarked that when "publication has *already* begun," the "efficacy of equitable relief . . . to avert anticipated damages is doubtful at best."[2] Yet, nine Attorneys General, who swore an oath to the Constitution, failed to even mention the First Amendment in their emergency pleadings. Such a careless disregard for the Bill of Rights fails to meet the "heavy burden" needed to justify a prior restraint.[3]

Moreover, the prior restraints in this case would not be restricted to the named defendants: nine Attorneys General seek to infringe the liberties of *all* Americans. The settlement under siege expressly protects the rights of "*any* United States person" to "access, discuss, use, reproduce, or otherwise benefit from the technical data."[4] *Any* means *all*. Granting the proposed injunctive relief would not only silence the three named Defendants, but it would immediately censor over three hundred million Americans. Today, the validity of nationwide injunctions is subject to a robust debate. But never before has any court entertained a global injunction on the freedom of speech of *all* Americans.

The constitutional principles at stake in this case are simple enough. Yet, the facts are admittedly perplexing—especially for a Court asked to grant an emergency temporary restraining order. The most straightforward way to understand this complicated case is to trace the three documents that were generated by the State Department on July 27, 2018: (1) the license, (2) the temporary modification, and (3) the settlement agreement. They are separate, but interconnected.

1. The State Department issued a **license** that authorized Defense Distributed to publish, for "unlimited distribution," certain "technical data" that was subject to litigation in the Western District of Texas. *See* Exhibit A at 2.
2. Through the **temporary modification**, the State Department authorized the distribution of that "technical data," in addition to certain "other files," without any prior restraint. *See* Exhibit B.[5]
3. Under the terms of the **settlement agreement**, "*any* United States person" can now "access, discuss, use, reproduce, or otherwise benefit from the technical data," and "other files," that are covered by the **temporary modification**. *See* Exhibit C at 3 (emphasis added).

---

[1] *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963).
[2] *New York Times Co. v. U.S.*, 403 U.S. 713, 732 (1971) (White, J., concurring) (emphasis added).
[3] *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971).
[4] ECF 2-1 at 4-5 (emphasis added).
[5] In 1981, the Office of Legal Counsel warned the State Department that its regulation of "technical data" raised "*serious constitutional questions*." *See* Constitutionality of the Proposed Revision of the Int'l Traffic in Arms Regulations, 5 U.S. Op. Off. Legal Counsel 202, 205-06 (1981) (emphasis added).

Let's unpack this nesting doll. Through its unique **license**, Defense Distributed can distribute the "technical data" that was at issue in the Western District of Texas litigation. However, Defense Distributed, like "any [other] United States person," can rely on the **temporary modification**, working in tandem with the **settlement agreement**, in order to "access, discuss, use, reproduce, or otherwise benefit from the technical data." These acts are *expressly* protected by the First Amendment. In *Sorrell v. IMS Health Inc.*, the Court recognized "that the *creation and dissemination* of information are speech within the meaning of the First Amendment."[6]

Yet, the Plaintiffs seek to block all three attributes of this framework: the license, the temporary modification, and the settlement agreement. Each of these injunctions would impose a prior restraint on speech, and silence "any United States person" who was previously *authorized* by the federal government to "creat[e] and disseminat[e] . . . information."

For reasons we will explain in a supplemental pleading—filed *seriatim* to accommodate the rapid pace of this litigation—the Plaintiffs cannot succeed on the merits: the State Department's actions are not subject to judicial review, the duty to notify Congress has not yet been triggered, and the Commodity Jurisdiction procedure simply does not apply. *See* Exhibit D.

Fortunately, the bedrock principles of the First Amendment make this case much easier. A finding that a constitutional right "'is either threatened or in fact being impaired'. . . mandates a finding of irreparable injury."[7] And "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."[8] Outside of court papers, the Attorney General of Washington bluntly acknowledged the purpose of his litigation: to "make it as difficult as humanly possible to *access this information*."[9] That statement against interest, by itself, is enough to deny the Temporary Restraining Order in its entirety.

The Plaintiffs can challenge the proposed rule in due time when it is finalized. But they cannot mount a collateral attack in order to censor speech. *See* Exhibit E.


Sincerely,



/s/ Josh Blackman
Counsel of Record
Defense Distributed, Second Amendment
Foundation, and Conn Williamson
*Pro Hac Vice Admission Pending

---

[6] 564 U.S. 552, 570 (2011). *See also Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) ("[I]f the acts of 'disclosing' and 'publishing' information do not constitute speech, it is hard to imagine what does fall within that category, as distinct from the category of expressive conduct" (some internal quotation marks omitted)). *See* Josh Blackman, *The 1st Amendment, 2nd Amendment, and 3D Printed Guns*, 81 Tenn. L. Rev. 479 (2014), http://bit.ly/2OvXBvu.

[7] *Deerfield Med. Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

[8] *Elrod*, 427 U.S. at 373-74 (citations omitted).

[9] Cyrus Farivar, 20 states take aim at 3D gun company, sue to get files off the Internet, *Ars Technica* (Jul. 30, 2018), http://bit.ly/2NX1dp7.

# Exhibit A



**United States Department of State**

*Bureau of Political-Military Affairs*
*Directorate of Defense Trade Controls*
*Washington,* D.C. 20522-0112

July 27, 2018

Mr. Cody R. Wilson, Defense Distributed, and Second Amendment Foundation, Inc.
c/o Mr. Matthew A. Goldstein
Snell & Wilmer
One South Church Avenue
Suite 1500
Tucson, AZ 85701-1630

RE:   Directorate of Defense Trade Controls Approval of Certain Files for Public Release

Dear Mr. Wilson, Defense Distributed, and Second Amendment Foundation, Inc.:

This letter is provided in accordance with section 1(c) of the Settlement Agreement in the matter of *Defense Distributed, et al., v. U.S. Department of State, et al.,* No. 15-cv-372-RP (W.D. Tx.) (hereinafter referred to as "*Defense Distributed*"). As used in this letter,

- The phrase "Published Files" means the files described in paragraph 25 of Plaintiffs' Second Amended Complaint in *Defense Distributed*.
- The phrase "Ghost Gunner Files" means the files described in paragraph 36 of Plaintiffs' Second Amended Complaint in *Defense Distributed*.
- The phrase "CAD Files" means the files described in paragraph 40 of Plaintiffs' Second Amended Complaint in *Defense Distributed*.

The Department understands that Defense Distributed submitted the Published Files, Ghost Gunner Files, and CAD Files to the Department of Defense's Defense Office of Prepublication and Security Review (DOPSR) in 2014 to request review for approval for public release pursuant to International Traffic in Arms Regulations (ITAR) § 125.4(b)(13). It is our further understanding that DOPSR did not make a determination on the eligibility of these files for release, but instead referred you to the Directorate of Defense Trade Controls (DDTC) regarding public release of these files.

I advise you that for the purposes of ITAR § 125.4(b)(13), the Department of State is a cognizant U.S. government department or agency, and DDTC has authority to issue the requisite approval for public release.  To that end, I approve the Published Files, Ghost Gunner Files, and CAD Files for public release (i.e., unlimited distribution).  As set forth in ITAR § 125.4(b)(13), technical data approved for public release by the cognizant U.S. government department or agency is not subject to the licensing requirements of the ITAR.

Sincerely,

Acting Deputy Assistant Secretary for the
Directorate of Defense Trade Controls

# Exhibit B

NOTICE: **GENERAL**

07/27/18

# Temporary Modification of Category I of the United States Munitions List

Consistent with the International Traffic in Arms Regulations (ITAR), 22 C.F.R. § 126.2, the Acting Deputy Assistant Secretary for Defense Trade Controls has determined that it is in the interest of the security and foreign policy of the United States to temporarily modify United States Munitions List (USML) Category I to exclude the following technical data identified in the Settlement Agreement for the matter of Defense Distributed, et al., v. U.S. Department of State, et al, Case No. 15-cv-372-RP (W.D. Tex.) (hereinafter "Defense Distributed"):

- "Published Files," i.e., the files described in paragraph 25 of the Second Amended Complaint in Defense Distributed.
- "Ghost Gunner Files," i.e., the files described in paragraph 36 of the Second Amended Complaint in Defense Distributed.
- "CAD Files," i.e., the files described in paragraph 40 of the Second Amended Complaint in Defense Distributed.
- "Other Files," i.e., the files described in paragraphs 44-45 of the Second Amended Complaint in Defense Distributed, insofar as those files regard items exclusively: (a) in Category I(a) of the USML, as well as barrels and receivers covered by Category I(g) of the USML that are components of such items; or (b) items covered by Category I(h) of the USML solely by reference to Category I(a), excluding Military Equipment.  Military Equipment means (1) Drum and other magazines for firearms to .50 caliber (12.7 mm) inclusive with a capacity greater than 50 rounds, regardless of jurisdiction of the firearm, and specially designed parts and components therefor; (2) Parts and components specially designed for conversion of a semi-automatic firearm to a fully automatic firearm; (3) Accessories or attachments specially designed to automatically stabilize aim (other than gun rests) or for automatic targeting, and specially designed parts and components therefor.

This temporary modification will remain in effect while the final rule referenced in paragraph 1(a) of the Settlement Agreement is in development.

Please see the Settlement Agreement and the Second Amended Compliant for additional information.

NOTICE: **GENERAL**

07/25/18

# Public Comments on USML Categories I–III

# Exhibit C

## SETTLEMENT AGREEMENT

Defense Distributed ("DD"), Second Amendment Foundation, Inc. ("SAF"), and Conn

Williamson (collectively, "Plaintiffs,") and the United States Department of State ("State"), the

Secretary of State, the Directorate of Defense Trade Controls ("DDTC"), the Deputy Assistant

Secretary, Defense Trade Controls, and the Director, Office of Defense Trade Controls Policy

(collectively, "Defendants"), out of a mutual desire to resolve all of the claims in the case

captioned *Defense Distributed, et al. v. Dep't of State, et al.*, Case No. 15-cv-372-RP (W.D.

Tex.) (the "Action") without the need for further litigation and without any admission of liability,

hereby stipulate and agree as follows:

Plaintiffs and Defendants do hereby settle all claims, issues, complaints, or actions

described in the case captioned, and any and all other claims, complaints, or issues that have

been or could have been asserted by Plaintiffs against Defendants in accordance with the

following terms and conditions:

1.    *Consideration*: In consideration of Plaintiffs' agreement to dismiss the claims in the

Action with prejudice as described in paragraph 2, below, Defendants agree to the following, in

accordance with the definitions set forth in paragraph 12, below:

      (a)    Defendants' commitment to draft and to fully pursue, to the extent authorized by

             law (including the Administrative Procedure Act), the publication in the Federal

             Register of a notice of proposed rulemaking and final rule, revising USML

             Category I to exclude the technical data that is the subject of the Action.

      (b)    Defendants' announcement, while the above-referenced final rule is in

             development, of a temporary modification, consistent with the International

Traffic in Arms Regulations (ITAR), 22 C.F.R. § 126.2, of USML Category I to exclude the technical data that is the subject of the Action. The announcement will appear on the DDTC website, www.pmddtc.state.gov, on or before July 27, 2018.

(c)     Defendants' issuance of a letter to Plaintiffs on or before July 27, 2018, signed by the Deputy Assistant Secretary for Defense Trade Controls, advising that the Published Files, Ghost Gunner Files, and CAD Files are approved for public release (i.e., unlimited distribution) in any form and are exempt from the export licensing requirements of the ITAR because they satisfy the criteria of 22 C.F.R. § 125.4(b)(13). For the purposes of 22 C.F.R. § 125.4(b)(13) the Department of State is the cognizant U.S. Government department or agency, and the Directorate of Defense Trade Controls has delegated authority to issue this approval.

(d)     Defendants' acknowledgment and agreement that the temporary modification of USML Category I permits any United States person, to include DD's customers and SAF's members, to access, discuss, use, reproduce, or otherwise benefit from the technical data that is the subject of the Action, and that the letter to Plaintiffs permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files.

(e)     Payment in the amount of $39,581.00.  This figure is inclusive of any interest and is the only payment that will be made to Plaintiffs or their counsel by Defendants under this Settlement Agreement. Plaintiffs' counsel will provide Defendants'

2

counsel with all information necessary to effectuate this payment.

The items set forth in subparagraphs (a) through (e) above constitute all relief to be provided in settlement of the Action, including all damages or other monetary relief, equitable relief, declaratory relief, or relief of any form, including but not limited to, attorneys' fees, costs, and/or relief recoverable pursuant to 2 U.S.C. § 1302, 2 U.S.C. § 1311, 2 U.S.C. § 1317, 22 U.S.C. § 6432b(g), 28 U.S.C. § 1920, Fed. R. Civ. P. 54(d), and the Local Rules.

2.   *Dismissal with Prejudice:* At the time of the execution of this Settlement Agreement, Plaintiffs agree to have their counsel execute and provide to Defendants' counsel an original Stipulation for Dismissal with Prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) and 41(a)(1)(B).  Counsel for Defendants agree to execute the stipulation and file it with the Court in the Action, no sooner than 5 business days after the publication of the announcement described in Paragraph 1(b) of this Settlement Agreement and issuance of the letter described in Paragraph 1(c) of this Settlement Agreement. A copy of the Stipulation for Dismissal with Prejudice is attached hereto.

3.   *Release:* Plaintiffs, for themselves and their administrators, heirs, representatives, successors, or assigns, hereby waive, release and forever discharge Defendants, and all of their components, offices or establishments, and any officers, employees, agents, or successors of any such components, offices or establishments, either in their official or

3

individual capacities, from any and all claims, demands and causes of action of every kind, nature or description, whether currently known or unknown, which Plaintiffs may have had, may now have, or may hereafter discover that were or could have been raised in the Action.

4.  *No Admission of Liability:* This Settlement Agreement is not and shall not be construed as an admission by Defendants of the truth of any allegation or the validity of any claim asserted in the Action, or of Defendants' liability therein. Nor is it a concession or an admission of any fault or omission in any act or failure to act. Nor is it a concession or admission as to whether the monetary or equitable relief, attorneys' fees, costs, and expenses sought by Plaintiffs in the Action, are reasonable or appropriate. None of the terms of the Settlement Agreement may be offered or received in evidence or in any way referred to in any civil, criminal, or administrative action other than proceedings permitted by law, if any, that may be necessary to consummate or enforce this Settlement Agreement. The terms of this Settlement Agreement shall not be construed as an admission by Defendants that the consideration to be given hereunder represents the relief that could be recovered after trial.  Defendants deny that they engaged in *ultra vires* actions, deny that they violated the First Amendment, Second Amendment, or Fifth Amendment of the United States Constitution, and maintain that all of the actions taken by Defendants with respect to Plaintiffs comply fully with the law, including the United States Constitution.

5.     *Merger Clause:* The terms of this Settlement Agreement constitute the entire agreement of Plaintiffs and Defendants entered into in good faith, and no statement, remark, agreement or understanding, oral or written, which is not contained therein, shall be recognized or enforced. Plaintiffs acknowledge and agree that no promise or representation not contained in this Settlement Agreement has been made to them and they acknowledge and represent that this Settlement Agreement contains the entire understanding between Plaintiffs and Defendants and contains all terms and conditions pertaining to the compromise and settlement of the disputes referenced herein. Nor does the Parties' agreement to this Settlement Agreement reflect any agreed-upon purpose other than the desire of the Parties to reach a full and final conclusion of the Action, and to resolve the Action without the time and expense of further litigation.

6.     *Amendments:* This Settlement Agreement cannot be modified or amended except by an instrument in writing, agreed to and signed by the Parties, nor shall any provision hereof be waived other than by a written waiver, signed by the Parties.

7.     *Binding Successors*: This Settlement Agreement shall be binding upon and inure to the benefit of Plaintiffs and Defendants, and their respective heirs, executors, successors, assigns and personal representatives, including any persons, entities, departments or agencies succeeding to the interests or obligations of the Parties.

8.   *Consultation with Counsel:* Plaintiffs acknowledges that they have discussed this
Settlement Agreement with their counsel, who has explained these documents to them
and that they understand all of the terms and conditions of this Settlement Agreement.
Plaintiffs further acknowledge that they have read this Settlement Agreement, understand
the contents thereof, and execute this Settlement Agreement of their own free act and
deed. The undersigned represent that they are fully authorized to enter into this
Settlement Agreement.

9.   *Execution:* This Settlement Agreement may be executed in one or more counterparts,
each of which shall be deemed an original, and all of which together constitute one and
the same instrument, and photographic copies of such signed counterparts may be used in
lieu of the original.

10.   *Jointly Drafted Agreement:* This Settlement Agreement shall be considered a jointly
drafted agreement and shall not be construed against any party as the drafter.

11.   *Tax and Other Consequences:* Compliance with all applicable federal, state, and local tax
requirements shall be the sole responsibility of Plaintiffs and their counsel. Plaintiffs and
Defendants agree that nothing in this Settlement Agreement waives or modifies federal,
state, or local law pertaining to taxes, offsets, levies, and liens that may apply to this

6

Settlement Agreement or the settlement proceeds, and that Plaintiffs are executing this Settlement Agreement without reliance on any representation by Defendants as to the application of any such law.

12.     *Definitions*: As used in this Settlement Agreement, certain terms are defined as follows:

-       The phrase "*Published Files*" means the files described in paragraph 25 of Plaintiffs' Second Amended Complaint.

-       The phrase "*Ghost Gunner Files*" means the files described in paragraph 36 of Plaintiffs' Second Amended Complaint.

-       The phrase "*CAD Files*" means the files described in paragraph 40 of Plaintiffs' Second Amended Complaint.

-       The phrase "*Other Files*" means the files described in paragraphs 44-45 of Plaintiffs' Second Amended Complaint.

-       The phrase "*Military Equipment*" means (1) Drum and other magazines for firearms to .50 caliber (12.7 mm) inclusive with a capacity greater than 50 rounds, regardless of jurisdiction of the firearm, and specially designed parts and components therefor; (2) Parts and components specially designed for conversion of a semi-automatic firearm to a fully automatic firearm; (3) Accessories or attachments specially designed to automatically stabilize aim (other than gun rests) or for automatic targeting, and specially designed parts and components therefor.

-       The phrase "*technical data that is the subject of the Action*" means: (1) the Published Files; (2) the Ghost Gunner Files; (3) the CAD Files; and (4) the Other Files insofar as those files regard items exclusively: (a) in Category I(a) of the United States Munitions List (USML), as well as barrels and receivers covered by Category I(g) of the USML that are components of such items; or (b) items

7

covered by Category I(h) of the USML solely by reference to Category I(a), excluding Military Equipment.

Dated: June 29, 2018

Dated: June 29, 2018

Matthew A. Goldstein
Snell & Wilmer LLP
One South Church Ave. Ste. 1500
Tucson, Arizona 85701
*Counsel for Plaintiffs*

Dated: June 29, 2018

Eric J. Soskin
Stuart J. Robinson
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, D.C. 20001
Tel. (202) 353-0533

*Counsel for Defendants*

8

# Exhibit D

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED, et al., | § | Case No. 15-CV-372-RP |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| U.S. DEPARTMENT OF STATE, et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
JOINT EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiffs Defense Distributed, Second Amendment Foundation, Inc., and Conn
Williamson hereby submit their Memorandum of Points and Authorities in Opposition to Joint
Emergency Motion for Temporary Restraining Order.

Dated: June 27, 2018                    Respectfully submitted,

/s/ Matthew Goldstein
Matthew Goldstein
D.C. Bar No. 975000*
Snell & Wilmer
One Church Avenue, Suite 1500
Tucson, Arizona 85701
520.882.1248
mgoldstein@swlaw.com


/s/ Alan Gura
Alan Gura
Virginia Bar No. 68842*
Gura PLLC
916 Prince Street, Suite 107
Alexandria, Virginia 22314
703.835.9085/Fax 703.997.7665
alan@gurapllc.com


*Admitted pro hac vice

/s/ Josh Blackman
Josh Blackman
Virginia Bar No. 78292
1303 San Jacinto Street
Houston, Texas 77002
202.294.9003/Fax: 713.646.1766
joshblackman@gmail.com


/s/ David S. Morris
David S. Morris
Texas State Bar No. 24032877
FISH & RICHARDSON P.C.
One Congress Plaza, Suite 810
111 Congress Avenue
Austin, Texas 78701
512.472.5070/Fax 512.320.8935
dmorris@fr.com

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
JOINT EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

SUMMARY OF ARGUMENT

The putative intervenor groups lack any basis to obtain injunctive relief. Quite apart from

their complete lack of standing, briefed separately on the motion for intervention, (1) the relief

these groups seek is flatly barred by statute and court rule; (2) the Groups are not suffering any

injury that needs to be remedied; (3) relief would harm the parties and reward inequitable

behavior; and (4) frustrate the public interest in promoting settlements and democratic self-

government.

ARGUMENT

I.      STATUTES AND COURT RULE FLATLY BAR THE GROUPS FROM SUCCEEDING ON THE
        MERITS.

On May 24, 2018, the Department of State published a proposed rule in the Federal

Register seeking to transfer responsibility for the licensing of firearms exports from the ITAR

U.S. Munitions List ("USML") to the Department of Commerce Export Administration

Regulations ("EAR") Commerce Control List. 83 Fed. Reg. 24,198 (May 24, 2018). While the

EAR will require licenses for exports of firearms, the EAR does not impose a prior restraint on

so-called "technical data"—that is, public speech. As a result, following the effective date of the

final rule, Plaintiffs, and everyone else in the United States, will be free to publish the technical

data that is the subject of this action.

The Groups now mount a collateral attack to the State Department rule by challenging the

parties' Settlement Agreement in this action, which requires the State Department's performance

of the following actions, in relevant part:

1

(a)     Defendants' **commitment to draft and to fully pursue, to the extent authorized by law (including the Administrative Procedure Act),** the publication in the Federal Register of a notice of proposed rulemaking and final rule, revising USML Category I to exclude the technical data that is the subject of the Action."

(b)     Defendants' announcement, while the above-referenced final rule is in development, of a **temporary modification**, consistent with the International Traffic in Arms Regulations (ITAR), 22 C.F.R. § 126.2, of USML Category I to exclude the technical data that is the subject of the Action. The announcement will appear on the DDTC website, www.pmddtc.state.gov, on or before July 27, 2018.

(c)     Defendants' issuance of a letter to Plaintiffs on or before July 27, 2018, signed by the Deputy Assistant Secretary for Defense Trade Controls, advising that the Published Files, Ghost Gunner Files, and CAD Files are **approved for public release** (i.e., unlimited distribution) in any form and are exempt from the export licensing requirements of the ITAR because they satisfy the criteria of 22 C.F.R. § 125.4(b)(13).

(d)     **Defendants' acknowledgment and agreement** that the temporary modification of USML Category I permits any United States person, to include DD's customers and SAF's members, to access, discuss, use, reproduce, or otherwise benefit from the technical data that is the subject of the Action, and that the letter to Plaintiffs permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files.

More specifically, the Groups seek injunctive relief under the Administrative Procedure Act ("APA") and "constitutionally-mandated Separations of Powers" to enjoin the State Department from committing to draft and to fully pursue an amendment to the regulations to remove certain firearms from the ITAR USML under Section 1(a) of the Settlement Agreement; and from issuing licenses for public speech concerning technical data on firearms through the authorizations provided at sections 1(b)-(d) of the Settlement Agreement.

And they seek to enjoin "the parties," TRO Mot., Dkt. 97, including "the plaintiffs," Proposed Order, Dkt. 97-2, from executing the Settlement Agreement.

The Groups cannot obtain the relief they request because the Court lacks jurisdiction to review Department of State decisions on what articles to designate on the USML; lacks jurisdiction to review State Department license decisions under the Arms Export Control Act ("AECA"); because no Congressional notification requirements apply to the State Department's performance under the Settlement Agreement, and because the Court lacks jurisdiction to question or supervise Plaintiffs' exercise of their Rule 41 rights.

### A.      AECA Section 2778(h) Precludes the Court from Reviewing the State Department's Decision to Remove Defense Articles from the USML.

The AECA provides that "[t]he President is authorized to designate those items which shall be considered as defense articles and defense services for the purposes of this section and to promulgate regulations for the import and export of such articles and services." 22 U.S.C. § 2778(a)(1). The items so designated constitute the ITAR USML. *Id.*

As a preliminary matter, Section 1(a) of the Settlement Agreement does not require the removal of anything from the USML. Rather, it only requires that the State Department commit to draft and fully pursue removal of the technical data at issue in this action from the USML, "to the extent authorized by law (including the Administrative Procedure Act)."

Even if the Settlement Agreement requires removal of the subject technical data from the USML, the AECA expressly bars the Court from reviewing such State Department designations of articles under the ITAR because 22 U.S.C. § 2778(h) expressly, clearly, and unequivocally precludes judicial review of such decisions:

**(h) Judicial review of designation of items as defense articles or services**

The designation by the President (or by an official to whom the President's functions under subsection (a) have been duly delegated), in regulations issued under this section,

3

of items as defense articles or defense services for purposes of this section **shall not be subject to judicial review**.

22 U.S.C. § 2778(h) (emphasis added).

**B.**     **The Court Lacks Jurisdiction to Review State Department License Decisions Under the APA because of a Clear Delegation of Authority and Lack of Judicially Manageable Standards.**

The Groups are challenging the State Department's agreement to provide an order temporarily modifying the ITAR, an accompany acknowledgement of same, and a letter to Plaintiffs approving or otherwise licensing the publication of the technical data at issue. These State Department licensing decisions are not subject to judicial review under the APA because the AECA's delegation of authority to control arms exports is decidedly one involving foreign affairs and national security—matters clearly within the State Department's discretionary authority; and the lack of judicially manageable standards precludes review.

Whether an agency action is committed to the discretion of an agency depends on the nature of the delegation of authority and the statutory language. *See Webster v. Doe*, 486 U.S. 592, 599-600 (1988). This narrow exception to judicial reviewability is especially prevalent in cases involving agency decisions relating to foreign affairs and national security because these cases involve "judgments on questions of foreign policy and the national interest" that are not "fit for judicial involvement." *See Dist. No. 1, Pac. Coast Dist., Marine Eng'rs' Beneficial Ass'n v. Mar. Admin*., 215 F.3d 37, 42 (D.C. Cir. 2000). Here, the AECA clearly provides authority to the President, or his delegate, to issue a license when he determines that such action is "consistent with the foreign policy interests of the United States," 22 U.S.C. § 2751, and "in

4

furtherance of world peace and the security and foreign policy of the United States." *Id.* §
2778(a)(1).

In addition, where the language of a statute provides no justiciable standard by which a
court can review the agency's exercise of its delegated authority, the matter is treated as
committed to the agency's discretion. *See Webster*, 486 U.S. at 600 (a statute allowing the
Director of the CIA to terminate employment of any employee whenever he found termination
"advisable" for the national interest "fairly exude[d] deference" and thereby precluded judicial
review under the APA). In particular, if the statute uses language that permits an executive
official, such as the President or another agency official, to take action that the official "deems"
in the "national interest," these statutes have been consistently interpreted to preclude judicial
review under the APA. *See Zhu v. Gonzales*, 411 F.3d 292, 295 (D.C. Cir. 2005) (construing a
statute, which allows the Attorney General to waive a requirement if waiver is in the "national
interest," as being committed to the discretion of the Attorney General).

*U.S. Ordnance, Inc. v. U.S. Department of State*, is especially relevant to articles at issue
in this present case. 432 F.Supp.2d 94 (2006). In *U.S. Ordnance*, Plaintiff challenged the State
Department's denial of a license to export M16 machine guns. After noting the broad scope of
the AECA delegation of authority to the President in matters of foreign affairs and national
security, the court held that "given the clear statutory language and the absence of judicially
manageable standards to guide the Court's review, it must reject plaintiffs invocation of the APA
and decline to review the agency's denial of plaintiff's applications for licenses to export M16
machine guns." *Id*. at 99. For the reasons stated in *U.S. Ordnance,* this Court must reject
Intervenors' attempt to challenge State Department licensing decisions under the APA based on

5

the clear statutory authority conferred to the Department of State and lack of judicially manageable standards. During oral arguments, counsel for the Groups should be asked to explain why they failed to reference the fact that decisions concerning the issuance of license are not subject to judicial review.

C.    **No Congressional Notification Requirements Apply to the Settlement Agreement.**

Throughout various sections of their briefings and proposed Complaint in Intervention, the Groups claim that the State Department failed to provide Congressional notification for the Settlement Agreement. However, they fail to cite any section of the AECA that actually imposes a Congressional notification requirement to the Settlement Agreement.

The AECA contains various Congressional notification requirements.[1] Specifically, the statute requires the State Department to formally notify Congress before issuance of any license or other approval for export sales of "Major Defense Equipment" that exceed certain dollar-value thresholds, before the approval of exports of commercial communications satellites to certain destinations and persons, and before approval of certain other transactions. *See e.g.,* 22 U.S.C. §§ 2776(c), 2776(d). In addition, as cited by the Groups, the President must provide Congressional notifications in advance of removing an item from the USML. *Id.* at § 2778(f)(1). However, no Congressional notification requirements apply to the State Department's obligations under the terms of the Settlement Agreement.

Specifically, no Congressional notification requirement applies to the State Department issuance of a license to publish technical data. Nor is Congressional notification required for the

---

[1] *See e.g.,* Matthew A. Goldstein, "Addressing Congressional Notification Requirements

State Department to make a commitment to draft and to fully pursue, to the extent authorized by law (including the Administrative Procedures Act), the publication in the Federal Register of a notice of proposed rulemaking and a final rule, revising USML Category I to exclude the technical data that is the subject of the Action. Critically, the Settlement Agreement does not require the State Department to remove anything from the USML. It only requires that the State Department commit to draft and pursue such change in compliance with the APA and any other applicable laws, to include the AECA and its Congressional notification requirements. That's it.

Further, no Congressional notification requirements apply to the State Department's issuance of a temporary order suspending or modifying the ITAR under Section 126.2. Here, Intervenors confuse and conflate the difference between a temporary order under ITAR Section 126.2 and actual removal of an article from the USML requiring Congressional notification. ITAR Section 126.2 permits the State Department to "**order** the **temporary** suspension or modification of any or all of the regulations of this subchapter in the interest of the security and foreign policy of the United States." 22 C.F.R. 126.2 (emphasis added). Such suspension is a temporary order that does not remove anything from the USML. In sharp contrast, removal of a defense article from the USML is a permanent act that requires rulemaking and Congressional notification.

Plaintiffs further note that at Count I of their proposed Complaint in Intervention, the Groups claim that "Defendants lack statutory authority to determine that the Plaintiffs' CAD files should be removed from the Category I list without following the 'established procedures' for commodity jurisdiction." Pr.Compl. ¶ 80. Here, the Groups misunderstand the established

---

— Best Practices," WorldECR, Issue 71 (August 2018).

scope and purpose of the ITAR commodity jurisdiction procedure. ITAR Section 120.4 is used

for case-by-case determinations of whether a particular product (i.e., XYC Company's widget) is

on the USML, and not for determinations on whether to remove entire classes of items from the

USML. *Karn v. United States Department of State* illustrated this point::

> Designating an export such that it is subject to the AECA and the ITAR requires first
> describing the type of item in the regulations, and second, if asked by a potential
> exporter, confirming that the item in question is or is not covered by such description.
> The commodity jurisdiction procedure provides the latter function... 925 F.Supp. 1, 7
> (D.D.C. 1996)

The commodity jurisdiction process simply does not apply to temporary modifications of

the ITAR under 126.2 or other licensing decisions. Nor does it apply to agency decisions to

amend the regulations to transfer export jurisdiction of defense articles to the Department of

Commerce.


**D.     The Court Cannot Constrain the Plaintiffs' Right to Dismiss Their Action.**

Fed. R. Civ. P. 41(a)(1) provides Plaintiffs two avenues to voluntarily dismiss their

action, without court intervention. The case law tends to focus on this rule's first subdivision:

allowing for dismissal without consent prior to service of an answer or motion for summary

judgment. However, the considerations appear equally applicable to the second method of court-

free dismissal: one stipulated to by the parties.

Without question, Plaintiffs can at this time proceed under *either* subdivision to dismiss

their case, although the settlement agreement contemplates the stipulation of Rule 41(a)(1)(ii).

The Department of Justice currently has the stipulation in hand.

The rights of Rule 41 are absolute. A Rule 41(a)(1) dismissal

itself closes the file. There is nothing the defendant can do to fan the ashes of that action into life and the court has no role to play. This is a matter of right running to the plaintiff and may not be extinguished or circumscribed by adversary or court. There is not even a perfunctory order of court closing the file. Its alpha and omega was the doing of the plaintiff alone. He suffers no impairment beyond his fee for filing.

*Am. Cyanamid Co. v. McGhee*, 317 F.2d 295, 297 (5th Cir. 1963); *Amerijet Int'l, Inc. v. Zero Gravity Corp. (In re Amerijet Int'l, Inc.)*, 785 F.3d 967, 973 (5th Cir. 2015). "Subject to certain restrictions not here relevant, Federal Rule of Civil Procedure 41(a)(1) on its face grants a plaintiff an unconditional right . . . ." *Pilot Freight Carriers, Inc. v. International Brotherhood of Teamsters*, 506 F.2d 914, 915 (5th Cir. 1975). "The court ha[s] no power or discretion to deny plaintiffs' right to dismiss or to attach any condition or burden to that right." *Williams v. Ezell*, 531 F.2d 1261, 1264 (5th Cir 1976).

Insofar as the Groups purport to have the Court enjoin the Plaintiffs from dismissing their complaint (if they are satisfied that the Government has lived up to its obligations under the settlement agreement), their motion must fail. Nor can they intervene in the case for the purpose of frustrating Plaintiffs' unconditional Rule 41 rights.

Rule 41 is the other side of the ITAR coin. ITAR forbids judicial review of licensing decisions. Rule 41 forbids judicial interference in the right of dismissal where it applies. There can be no success on the merits.

II.    THE GROUPS WOULD NOT SUFFER IRREPARABLE HARM WERE THEIR MOTION DENIED.

As noted in our other briefing, the Settlement Agreement does not purport to restrict the Groups' activities in any way. They remain free to pursue their institutional interests against those of the Plaintiffs.

Nor can the Court determine that national security—the interest secured by ITAR—

9

would be harmed by virtue of the Settlement Agreement. If the Court cannot question the Government's national security claims when those are asserted to defeat Plaintiffs' speech rights, the Court cannot purport to override the Government's considered judgment that the settlement agreement *does not* harm national security. And, as discussed in our opposition to the Group's intervention, there is an innocuous reason why the government now takes the position it does: While this case was being litigated, the Obama and Trump Administrations have engaged in a sophisticated and detailed plan to transition the regulation of certain technical data from the jurisdiction of the State Department to the jurisdiction of the Commerce Department.

This Court has already settled the threshold question: Plaintiffs face irreparable harm from the continued suppression of their speech rights. "The Court . . . has little trouble concluding Plaintiffs have shown they face a substantial threat of irreparable injury." *Defense Distributed* v. *Dept. of State*, 121 F. Supp. 3d 680, 689 (W.D. Tex. 2015).

III.   THE EQUITIES, AND THE PUBLIC INTEREST, FAVOR DENIAL OF THE MOTION.

Plaintiffs' constitutional rights, and the parties' interest, as well as the judicial interest, in settling disputes, surely outweigh this transparent public relations stunt. And Plaintiffs renew their objections to the last-minute ambush tactics employed here. These tactics continue well into this day with this morning's unwarranted supplemental briefing that raise novel arguments and points of law. (Plaintiffs moved separately to strike portions of those last-minute pleadings). The First Amendment secures the Groups an ample array of fora in which to express themselves and seek attention for their cause. This Court, and this case, is not the place to question the Government's exercise of its foreign policy powers.

Previously, the parties disputed which public interest—the exercise of constitutional

10

rights, or the rights of a democratic polity to its government—should prevail. Here, these interests are no longer opposed, but aligned in favor of denying the motion. And to these interests should be added the interest in encouraging settlements and sparing the Court of controversies that no longer arise under Article III.

CONCLUSION

The motion for temporary restraining order should be denied.

Dated: June 27, 2018                              Respectfully submitted,

*/s/ Matthew Goldstein*                           */s/ Josh Blackman*
Matthew Goldstein                                 Josh Blackman
D.C. Bar No. 975000*                              Virginia Bar No. 78292
Snell & Wilmer                                    1303 San Jacinto Street
One Church Avenue, Suite 1500                     Houston, Texas 77002
Tucson, Arizona 85701                             202.294.9003/Fax: 713.646.1766
520.882.1248                                      joshblackman@gmail.com
mgoldstein@swlaw.com

*/s/ Alan Gura*                                   */s/ David S. Morris*
Alan Gura                                         David S. Morris
Virginia Bar No. 68842*                           Texas State Bar No. 24032877
Gura PLLC                                         FISH & RICHARDSON P.C.
916 Prince Street, Suite 107                      One Congress Plaza, Suite 810
Alexandria, Virginia 22314                        111 Congress Avenue
703.835.9085/Fax 703.997.7665                     Austin, Texas 78701
alan@gurapllc.com                                 512.472.5070/Fax 512.320.8935
                                                  dmorris@fr.com

*Admitted pro hac vice

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on July 27, 2018, and was served via CM/ECF on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(b)(1).

By: *  /s/ Alan Gura* _____
　　　 Alan Gura

# Exhibit E

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED and SECOND AMENDMENT FOUNDATION, | § § | Case No. 1:18-CV-637 |
| | § | COMPLAINT |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| GURBIR S. GREWAL, individually, and in his official capacity as Attorney General of New Jersey; MICHAEL FEUER, individually, and in his official capacity as Los Angeles City Attorney, | § § § § | |
| | § | |
| Defendants. | § | |
| | § | |

COMPLAINT

Plaintiffs Defense Distributed and Second Amendment Foundation, Inc., by and through undersigned counsel, complain of Defendants as follows:

INTRODUCTION

Pursuant to a license and other authorization from the State Department, Defense Distributed has published and will continue to publish Computer-Aided Design (CAD) and Computer-Numeric Control (CNC) files on its Internet servers in furtherance of its mission to promote firearms knowledge and possession. The Second Amendment Foundation's members and supporters are among Defense Distributed's audience. New Jersey's Attorney General (Gurbir S. Grewal) and Los Angeles's City Attorney (Michael Feuer), have waged an ideologically-fueled program of intimidation and harassment against Defense Distributed. Grewal and Feuer have

threatened and intend to drag Defense Distributed before all manner of far-flung criminal and civil tribunals in an effort to silence the organization.

Alas these state and municipal officers from across the country cannot veto Defense Distributed's constitutionally-protected and federally-licensed speech. The Defendants' threatened legal actions violate the First Amendment speech rights of Defense Distributed and its audience, including SAF's members; run afoul of the Dormant Commerce Clause; infringe upon the Second Amendment rights of those who would make use of the knowledge disseminated by Defense Distributed; constitute a tortious interference with Defense Distributed's business; and are in any event, federally pre-empted by Congress's export control laws as well as Defense Distributed's export license, by which the State Department has explicitly authorized the speech that the Defendants are seeking to silence. Plaintiffs are entitled to declaratory and injunctive relief, damages, and attorney fees.

## *The Parties*

1.     Plaintiff Defense Distributed is a Texas corporation organized under the laws of the State of Texas, whose headquarters are located in Austin, Texas, and whose principal place of business is located in Austin, Texas. Defense Distributed was organized and is operated for the purpose of defending the civil liberty of popular access to arms guaranteed by the United States Constitution through facilitating access to, and the collaborative production of, information and knowledge related to the production of arms; and to publish and distribute, at no cost to the public, such information and knowledge on the Internet in promotion of the public interest.

2.     Consistent with the President's role as Commander and Chief, and the delegation of Congress's powers under the Commerce and Necessary and Proper Clauses, Congress has

conferred the President with the exclusive authority to issue licenses and other forms of authorizations for the export of technical data on firearms controlled under the Arms Export Control Act ("AECA"), 22 U.S.C. § 2751 et seq. The President has delegated this authority to the State Department. Executive Order 13637 of March 8, 2013.

3.     Pursuant to its exclusive authority under the AECA,  the State Department issued a license expressly authorizing the Plaintiffs to publish certain firearms files for "unlimited distribution" pursuant to ITAR § 125.4(b)(13).  *See* Exhibit A.

4.     Further pursuant to its exclusive authority under the AECA, the State Department issued an authorization under ITAR § 126.2 to allow every U.S. person to access, discuss, use, reproduce or otherwise benefit from technical data for the development, production, and/or use of firearms. *See* Exhibit B.

5.     Plaintiff Second Amendment Foundation, Inc., is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF has over 650,000 members and supporters nationwide, including members in Texas, New Jersey, and Los Angeles. The purposes of SAF include promoting the exercise of the right to keep and bear arms; and education, research, publishing and legal action focusing on the constitutional right to privately own and possess firearms, and the consequences of gun control. SAF brings this action on behalf of its members. Cody Wilson, Defense Distributed's principal, is a SAF member. SAF members seek to download the files shared by Defense Distributed, as well as use Defense Distributed's facilities to share their own files with others

6.     Defendant Gurbir S. Grewal is the Attorney General of New Jersey.  He is sued in his official and individual capacities.

7.     Defendant Michael Feuer is the City Attorney for Los Angeles, California. He is sued in his official and individual capacities.

JURISDICTION AND VENUE

8.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1367, 2201, and 2202.

9.     Plaintiff Defense Distributed resides within the jurisdiction of the U.S. District Court.

10.     Venue lies in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred, and a substantial part of property that is the subject of the action, are situated within the Western District of Texas.

11.     This action involves actions taken by Defendants in New Jersey and Los Angeles with respect to the Plaintiffs' business, activities, and property in Austin. Therefore, venue lies in this Court pursuant to 28 U.S.C. § 1391(b)(3), because there is no district in which this action may otherwise be brought, and both Defendants are subject to this Court's personal jurisdiction.

*Defendants' Threats of Legal Actions Against Defense Distributed*

12.     On July 26, 2018, Defendant Grewal sent a letter to Defense Distributed's headquarters in Austin, Texas.

13.     The letter "directed [Plaintiff] to cease and desist from publishing printable-gun computer files for use by New Jersey residents." *See* Exhibit C.

14.     Grewal asserted that publishing these files would violate New Jersey's "public nuisance laws." *Id.*

15.     Grewal's letter closed with a clear and present threat: "Should you fail to comply

with this letter, my Office will initiate legal action barring you from publishing these files before August 1, 2018." *Id.*

16.      In a press release, Grewal explicitly reiterated that threat: "Attorney General Grewal threatened Defense Distributed with 'legal action' if it fails to comply with his demand." Grewal also expressed his belief that "[p]osting this material online is no different than driving to New Jersey and handing out hard-copy files on any street corner." *See* Exhibit D.

17.      On July 27, 2018, Defendant Feuer caused to be filed in this Court, in the case of *Defense Distributed v. U.S. Dep't of State*, No. 1:15-CV-372-RP, a letter addressed to the Hon. Robert Pitman, who was then presiding over that case. *See* Exhibit E.

18.      The letter, at Dkt. 109-1, expressed Feuer's belief that Defense Distributed's publication of files "would pose a direct and immediate threat to public safety in the City of Los Angeles, and cause numerous violations of California and City laws designed to protect the public from gun violence." *Id.*

19.      Feuer noted that "[as] the City's chief lawyer and prosecutor, it is [his] job to enforce the gun laws of the City and California." *Id.*

20.      Feuer added that "Defense Distributed's blueprints" may violate California civil and criminal laws. *Id.*

21.      Feuer threatened Defense Distributed with legal action: "his office is authorized to file lawsuits to 'enjoin' the manufacture, importation, or possession of an undetectable firearm." *Id.*

22.      Feuer expressed his intent to seek to intervene in that case, for the express purpose of silencing Defense Distributed. *Id.*

23.      To convey this message, at least two of Feuer's attorneys appeared telephonically

during an emergency hearing before Judge Pitman. (At that juncture, the City of Los Angeles was not yet a party to the case, nor had it even filed a motion to intervene.)

24.     On July 28, 2019, Feuer released the following tweet from the @CityAttorneyLA Account: "City Atty Mike Feuer & @ManhattanDA Cyrus Vance, Jr. to @StateDept:  NO #DIY #guns! #gunviolence #GunControl #gunsense ▶️▶️https://goo.gl/L377y3 @ProsecutorsAGV." *See* Exhibit F.

25.     That tweet linked to a press release from the Prosecutors Against Gun Violence, which is chaired by the Los Angeles City Attorney and the Manhattan District Attorney.  It stated that Defense Distributed's "blueprints should not be published under any circumstances." *See* Exhibit G.

26.     On information and belief, Plaintiffs anticipate further legal actions from the Manhattan District Attorney.

*Plaintiff Responds to Defendant Grewal*

27.     On July 27, 2018, Plaintiff responded to Grewal. *See* Exhibit H. Plaintiff explained that the "Letter takes only vague and general positions regarding nuisance and negligence law." Plaintiff also explained that "all actions contemplated by Defense Distributed are fully protected by the First Amendment, and [Grewal's] attempts to prevent such actions constitute an unconstitutional prior restraint and otherwise violate the United States Constitution and the New Jersey Constitution." Plaintiff added that "the Letter constitutes an unlawful threat, in violation of Defense Distributed's Constitutional rights," and "demand[ed] that [the Defendant] withdraw the Letter."

28.     Plaintiff conveyed to the Grewal that "at this time Defense Distribute will attempt to restrict files made available on the internet to prevent download within New Jersey." Plaintiff

stated that "this [modification] should not be construed as an acknowledgment of the validity of your position, and Defense Distributed reserves all of its rights in this regard."

<em>Great, Irreparable, and Continuing Harm</em>

29.     But for Defendant Grewal's letter, Defense Distributed would freely distribute the files in New Jersey. However, Defense Distributed has taken steps to prevent the distribution of files in New Jersey because Defense Distributed reasonably fears that Defendant Grewal would pursue civil enforcement proceedings against Plaintiff. *See* Exhibit H. Users with New Jersey-based IP Addresses are currently blocked from accessing the files. *See* Exhibit I. [1]

30.     But for Defendant Feuer's letter, Defense Distributed would freely distribute the files in Los Angeles. However, Defense Distributed has already taken steps to prevent the distribution of files in Los Angeles because Defense Distributed reasonably fears that Defendant Feuer would pursue civil and t enforcement proceedings against Plaintiff. Users with Los Angeles-based IP Addresses are currently blocked from accessing the files. *See* Exhibit I.

31.     Notwithstanding its efforts to placate the Defendants, a legitimate controversy exists between Defense Distributed, and Defendants Grewal and Feuer, as to the legality of Defense Distributed's conduct. Defense Distributed can reasonably expect a continuing campaign of harassment and intimidation aimed at silencing it and tortiously interfering with its business.

32.     Defense Distributed is entitled to appropriate declaratory and injunctive relief against all further acts of harassment and intimidation by Grewal, Feuer, and all others who may act in concert with them.

C<small>OUNT</small> O<small>NE</small>

---

[1] Defense Distributed also blocked access to the files from IP addresses based in the following foreign countries: Islamic Republic of Iran, Belarus, Myanmar (Burma), Burundi, Cote d'Ivoire, Cuba, The Democratic Republic of the Congo, Iraq, Lebanon, Liberia, Libyan Arab Jamahiriya, Democratic People's Republic of Korea, Somalia, Sudan, Syrian Arab Republic, Yemen, and Zimbabwe.

42 U.S.C. § 1983

RIGHT OF FREE SPEECH—U.S. CONST. AMEND. I

33.    Defendants' threats of legal actions are invalid on their face, and as applied to Plaintiffs' public speech, are an unconstitutional prior restraint on protected expression. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963).

34.    Defendants' interruption and prevention of Plaintiffs from publishing the subject files, under color of law, violates Plaintiffs' rights under the First Amendment to the United States Constitution, by virtue of the Fourteenth Amendment, causing Plaintiffs, their customers, visitors and members significant damages, in violation of 42 U.S.C. § 1983.

35.    Plaintiffs are therefore entitled to declaratory and injunctive relief, and an award of damages and attorney fees, against Defendants.

COUNT TWO

42 U.S.C. § 1983

"DORMANT" COMMERCE CLAUSE, U.S. CONST. ART. I, § 8

36.    The threatened legal actions would not only require Plaintiffs to cease sharing files on its Texas-based servers within New Jersey and Los Angeles, respectively, but would also prohibit Plaintiffs from sharing the files within Texas, and other states.

37.    The Supreme Court has recognized that the "Commerce Clause . . . precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989).

38.    Through the threatened legal actions, New Jersey and Los Angeles "project[s] its

legislation" into other states, in violation of the "Dormant" Commerce Clause. *See* Brown-Forman Distillers Corp. v. New York State Liquor Auth., 476 U.S. 573, 583 (1986). *See also Am. Booksellers Found. v. Dean*, 342 F.3d 96, 103–04 (2nd Cir. 2003); *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1025 (E.D. Cal. 2017); *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 958–59 (N.D. Cal. 2006).

39.     Defendants' interruption and prevention of Plaintiffs from publishing the subject files on its Texas-based servers, under color of law, violates the Plaintiffs rights to freely participate in intrastate and interstate commerce under the "Dormant" Commerce Clause, U.S. Const. art. I, § 8.

40.     Defendants' actions have caused Plaintiffs, their customers, visitors and members significant damages, in violation of 42 U.S.C. § 1983. *See Dennis v. Higgins*, 498 U.S. 439 (1991).

41.     Plaintiffs are therefore entitled to declaratory and injunctive relief, and an award of damages and attorney fees, against Defendants.


COUNT THREE

42 U.S.C. § 1983

RIGHT TO KEEP AND BEAR ARMS—U.S. CONST. AMEND. II

42.     The fundamental Second Amendment right to keep and bear arms inherently embodies two complimentary guarantees: the right to acquire arms, and the right to make arms.

43.     If one cannot acquire or create arms, one cannot exercise Second Amendment rights. Infringing upon the creation and acquisition of arms of the kind in common use for traditional lawful purposes violates the Second Amendment, as applied to the states by virtue of the Fourteenth Amendment. *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008); *McDonald*

*v. City of Chicago*, 561 U.S. 742 (2010).

44.     By forbidding Defense Distributed from distributing files that concern the lawful manufacture of firearms, Defendants are violating the Second Amendment rights of Plaintiffs, their customers, members, and visitors.

45.     Defendants' interruption and prevention of Plaintiffs from publishing the subject files, under color of law, violates Plaintiffs' rights under the Second Amendment to the United States Constitution, by virtue of the Fourteenth Amendment, causing Plaintiffs, their customers, visitors and members significant damages, in violation of 42 U.S.C. § 1983.

46.     Plaintiffs are therefore entitled to declaratory and injunctive relief, and an award of damages and attorney fees, against Defendants

COUNT FOUR

THE SUPREMACY CLAUSE, U.S. CONST. ART. VI, CL. 2

PRE-EMPTION BASED ON EXPORT LICENSE ISSUED BY THE STATE DEPARTMENT

47.     Consistent with the President's role as Commander and Chief, and the delegation of Congress's powers under the Commerce and Necessary and Proper Clauses, Congress has conferred the President with the exclusive authority to issue licenses and other forms of authorizations for the export of technical data on firearms controlled under the Arms Export Control Act ("AECA"), 22 U.S.C. § 2751 et seq. The President has delegated this authority to the State Department. Executive Order 13637 of March 8, 2013.

48.     Pursuant to its exclusive authority under the AECA,  the State Department issued a license expressly authorizing the Plaintiffs to publish certain firearms files for "unlimited distribution" pursuant to ITAR § 125.4(b)(13).  *See* Exhibit A.

49.     Further pursuant to its exclusive authority under the AECA, the State Department issued an authorization under ITAR § 126.2 to allow every U.S. person to access, discuss, use, reproduce or otherwise benefit from technical data for the development, production, and/or use of firearms. *See* Exhibit B.

50.     The Defendants' threatened legal actions conflict with the State Department's exclusive authority and seek to interfere with this federal licensing framework. *See* Exhibits C, D, and E.

51.     In a press release, Defendant Grewal expressly stated that he seeks to override the federal government's licensing framework: "The federal government is no longer willing to stop Defense Distributed from publishing this dangerous code, and so New Jersey must step up." *See* Exhibit D.

52.     New Jersey and Los Angeles can no more prohibit the operation of a federally licensed export framework than could Maryland prohibit the operation of a federally chartered bank. *See McCulloch v. Maryland*, 17 U.S. 316 (1819).

53.     The threatened legal actions are preempted based on Defense Distributed's Export License that was issued by the State Department.

54.     "[I]f an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015).

55.     Plaintiffs are therefore entitled to injunctive relief against Defendants' threat of legal actions that are pre-empted.

COUNT FIVE

THE SUPREMACY CLAUSE, U.S. CONST. ART. VI, CL. 2

EXPRESS PREEMPTION

56.     Through federal export control law, Congress has expressly preempted state law.

57.     Therefore, the threatened legal actions are expressly preempted by federal export control law. *See English v. General Elec. Co.*, 496 U.S. 72, 78-79 (1990).

58.     "[I]f an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015).

59.     Plaintiffs are therefore entitled to injunctive relief against Defendants' threat of legal actions that are pre-empted.


COUNT SIX

THE SUPREMACY CLAUSE, U.S. CONST. ART. VI, CL. 2

FIELD PREEMPTION

60.     Congress has occupied the entire field of export control law.

61.     Therefore, the threatened legal actions are preempted by field preemption. *See English v. General Elec. Co.*, 496 U.S. 72, 79 (1990).

62.     "[I]f an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015).

63.     Plaintiffs are therefore entitled to injunctive relief against Defendants' threat of legal actions that are pre-empted by federal export control law.


COUNT SEVEN

12

THE SUPREMACY CLAUSE, U.S. CONST. ART. VI, CL. 2

CONFLICT PREEMPTION

64.   The threatened legal actions would stand as an obstacle and would frustrate the accomplishment of objectives authorized by federal export control law. *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 375 (2000); *Nat'l Foreign Trade Council, Inc. v. Giannoulias*, 523 F. Supp. 2d 731, 738-742 (N.D. Ill. 2007).

65.   Therefore, the threatened legal actions are preempted by conflict preemption.

66.   "[I]f an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015).

67.   Plaintiffs are therefore entitled to injunctive relief against Defendants' threat of legal actions that are pre-empted by federal export control law.

COUNT EIGHT

TORTIOUS INTERFERENCE WITH CONTRACTS

68.   Defensed Distributed receives advertising revenue from its file-sharing system through contracts with third-parties.  In the past, these revenues have exceeded $75,000 per annum.

69.   Defendants willfully and intentionally sought to interfere with those contracts.

70.   Defense Distributed has taken steps to prevent the distribution of files in New Jersey and Los Angeles because Defense Distributed reasonably fears that Defendants Grewal and Feuer would pursue civil and criminal enforcement proceedings against Plaintiff for doing so.

71.   The willful and intentional actions of Defendants Grewal and Feuer have proximately and directly caused damages to Defense Distributed's contracts.

72. The willful and intentional actions of Defendants Grewal and Feuer have resulted in actual damages.

73. Defendants' conduct, as described in this complaint, constitutes tortious interference with contracts. *See ACS Inv'rs, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex.1997).

74. Plaintiffs are therefore entitled to injunctive relief against Defendants' tortious interference with contracts.


COUNT NINE

TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTS

75. There was a reasonable probability that Defense Distributed was to enter into contract(s) to do business with other third parties in New Jersey and Los Angeles.

76. The threatened legal actions constitute a wrongful, deliberate, willful, intentional or otherwise tortious interference with prospective contracts in New Jersey and Los Angeles.

77. Plaintiffs are therefore entitled to injunctive relief against Defendants' tortious interference with prospective contracts.


PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendant as follows:

1. A declaration, and injunctive relief, to prevent Defendants' threatened legal actions that violate the First Amendment to the United States Constitution;

2. A declaration, and injunctive relief, to prevent Defendants' threatened legal actions

that violate the Dormant Commerce Clause;

3.      A declaration, and injunctive relief, to prevent Defendants' threatened legal actions that violate the Second Amendment to the United States Constitution;

4.      A declaration, and injunctive relief, to prevent Defendants' threatened legal actions that are preempted based on Defense Distributed's Export License that was issued by the State Department;

5.      A declaration, and injunctive relief, to prevent Defendants' threatened legal actions that are expressly preempted by federal export control law;

6.      A declaration, and injunctive relief, to prevent Defendants' threatened legal actions that are preempted by field preemption by federal export control law;

7.      A declaration, and injunctive relief, to prevent Defendants' threatened legal actions that are preempted by conflict preemption by federal export control law;

8.      A declaration, and injunctive relief, to prevent Defendants' threatened legal actions that tortiously interfere with contracts, and damages to be determined for Defendants' tortious interference with contracts;

9.      A declaration, and injunctive relief, to prevent Defendants' threatened legal actions that tortiously interfere with prospective contracts, and damages to be determined for Defendants' tortious interference with prospective contracts;

10.     Actual damages in an amount according to proof at trial;

11.     Attorney fees and costs pursuant to 42 U.S.C. § 1988; and

12.     Any other further relief as the Court deems just and appropriate.


The Plaintiffs hereby demand a jury trial.

Dated: July 29,  2018          Respectfully submitted,

_Alan Gura_                            _/s/ Josh Blackman_
Virginia Bar No. 68842*          Virginia Bar No. 78292
Gura PLLC                  1303 San Jacinto Street
916 Prince Street, Suite 107      Houston, Texas 77002
Alexandria, Virginia 22314       202.294.9003/Fax: 713.646.1766
703.835.9085 / Fax 703.997.7665   Josh@JoshBlackman.com
alan@gurapllc.com            Counsel of Record
*Admission pro hac vice pending