# EXHIBIT F

**Josh Blackman**
Josh@JoshBlackman.com | 202-294-9003 | 1303 San Jacinto Street, Houston, TX 77002

7/31/18

Dear Judge Lasnik,

I write to supplement our brief and previous letter in opposition to Plaintiffs Motion for Temporary Restraining Order in case no. 2:18-cv-01115.

At bottom, this suit is a collateral attack on an executed settlement agreement that has already been largely performed by the federal government, and has been completely performed by Defense Distributed, the Second Amendment Foundation, and Conn Williamson. The Court lacks jurisdiction to entertain such a claim.

Even if the underlying settlement had been entered by this Court, it would lack jurisdiction to reopen the closed case. "The dismissal in this case issued pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii), which provides for dismissal 'by filing a stipulation of dismissal signed by all parties who have appeared in the action,' and causes that dismissal to be with prejudice if (as here) the stipulation so specifies. Neither the Rule nor any provision of law provides for jurisdiction of the court over disputes arising out of an agreement that produces the stipulation." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378, 114 S. Ct. 1673, 1675, 128 L. Ed. 2d 391 (1994); *see also Commercial Space Mgmt. Co. v. Boeing Co.*, 193 F.3d 1074, 1076 (9th Cir. 1999) (holding that "once a notice of voluntary dismissal is filed, the district court in which the action is pending loses jurisdiction and cannot exercise discretion with respect to the terms and conditions of the dismissal."); *Hagestad v. Tragesser*, 49 F.3d 1430, 1433 (9th Cir.1995) (no jurisdiction to enforce settlement agreement where dismissal order neither expressly reserved jurisdiction nor incorporated the terms of the settlement agreement); *In re Hunter*, 66 F.3d 1002, 1006 (9th Cir.1995) (no ancillary jurisdiction to enforce settlement agreement).

Here, the rule applies with extra force. The Western District of Texas did not reserve jurisdiction or incorporate the terms of dismissal in its order, and so did not retain jurisdiction itself. Another district court, in another state, with no connection to the settlement, certainly lacks jurisdiction to alter the terms of that settlement, or affect the terms and conditions of the dismissal. This conclusion is especially true after the original court, which had jurisdiction over the case, (1) refuses, prior to the settlement, to allow third parties to scuttle the agreement (Exhibit A) and (2) adds its own order of dismissal following the parties' stipulation. Exhibit B.

The relief the Plaintiffs seek is simply impossible. Defense Distributed, the Second Amendment Foundation, and Williamson cannot *un*-dismiss their Texas action. Furthermore, the Western District of Texas cannot be ordered to re-open its docket.

Plaintiffs failed to joined the intervention efforts of the various groups that sought to scuttle the settlement before it was executed. Their failure to do so must constitute waiver. This chapter is closed.

Sincerely,

Josh Blackman
Counsel of Record
Defense Distributed, Second Amendment Foundation, Inc. and Conn Williamson

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 1:15-CV-372-RP |
| | § | |
| UNITED STATES DEPARTMENT | § | |
| OF STATE, et al., | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are a Joint Emergency Motion for Leave to Intervene filed by the Brady
Campaign to Prevent Gun Violence, Everytown for Gun Safety Action Fund, Inc., and the Giffords
Law Center to Prevent Gun Violence ("the Brady Center") (together, "Movants"), (Dkt. 96), as well
as a Joint Emergency Motion for Temporary Restraining Order and for Preliminary Injunction filed
by the same parties, (Dkt. 97). Today, the Court held a hearing to consider the two motions. Having
considered the parties' arguments, the evidence, and the relevant law, the Court will deny both
motions.

### I. BACKGROUND

On June 28, 2018, Plaintiffs Defense Distributed and the Second Amendment Foundation
(together, "Plaintiffs") and Defendants the United States Department of State, former Secretary of
State John Kerry, and the Directorate of Defense Trade Controls (together, "Defendants") informed
the Court that they had reached a settlement in this action. (Status report, Dkt. 95). The status report
did not disclose the terms of the settlement agreement (the "Agreement"). (*Id.*). Movants aver that
they learned of the Agreement's terms on July 17, 2018, and that they obtained a copy of the
Agreement two days later. (Supp. Brief Mot. Intervene, Dkt. 103, at 2). Movants filed a copy of the
Agreement with their motions. (Agreement, Dkt. 97-1).

The Agreement provides that Defendants will publish a notice of proposed rulemaking to revise the United States Munitions List ("USML") to exclude the technical data at issue in this action. (Agreement, Dkt. 97-1, at 1). While the final rule is in development, Defendants agree to temporarily modify the USML to exclude that same data as of today's date. (*Id.* at 1–2). Defendants also agree to issue a letter to Plaintiffs today advising them that the technical data at issue is exempt from the International Traffic in Arms Regulation's ("ITAR") licensing requirements. (*Id.* at 2). The parties have represented to the Court that they will enter a stipulation of dismissal on or before August 4, 2018. (Status report, Dkt. 95).

Movants are organizations dedicated to supporting the passage and enforcement of gun safety laws across the United States. (*See, e.g.*, Everytown Decl., Dkt. 103-1, ¶ 3). They move to intervene in the case and request a preliminary injunction that would prohibit Defendants from performing under the Agreement. (Mot. Prelim. Inj., Dkt. 97, at 2). Movants argue that if Defendants perform their obligations under the Agreement, Plaintiffs will promptly thereafter publish technical information online that can be used to manufacture firearms components. (*See* Supp. Brief Mot. Intervene, Dkt. 103, at 1 ("Defense Distributed intends to post on the Internet numerous and significant files that are not yet available to the public.")). Plaintiffs and Movants filed briefing related to Movants' two motions, and all parties participated in a hearing today.

## II. MOTION TO INTERVENE

Movants seek to intervene both by right and permissively. (Mot. Intervene, Dkt. 96, at 4–8). For the following reasons, the Court finds that Movants are not entitled to intervene by right and declines to exercise its discretion to permit them to intervene.

### A. Intervention by Right

Intervention by right is governed by Federal Rule of Civil Procedure 24(a). To intervene by right, the prospective intervenor either must be "given an unconditional right to intervene by a

federal statute," Fed. R. Civ. P. 24(a)(1), or must meet each of the four requirements of Rule

24(a)(2):

> (1) the application for intervention must be timely; (2) the applicant must have an
> interest relating to the property or transaction which is the subject of the action; (3) the
> applicant must be so situated that the disposition of the action may, as a practical matter,
> impair or impede his ability to protect that interest; (4) the applicant's interest must be
> inadequately represented by the existing parties to the suit.

*Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015). "Although the movant bears the burden of

establishing its right to intervene, Rule 24 is to be liberally construed." *Id.* (citations omitted).

"Federal courts should allow intervention where no one would be hurt and the greater justice could

be attained." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir.1994) (internal quotation marks

omitted). However, the Fifth Circuit has also cautioned courts to be "circumspect about allowing

intervention of right by public-spirited citizens in suits by or against a public entity for simple

reasons of expediency and judicial efficiency." *City of Houston v. Am. Traffic Sols., Inc.*, 668 F.3d 291,

294 (5th Cir. 2012).

Plaintiffs argue that Movants fail to meet all four prongs of Rule 24(a)(2). (Mem. Opp. Mot.

Intervene, Dkt. 107, at 15–24). Because the Court finds that Movants do not meet the second

prong—the requirement of a sufficient interest in the main action—the Court need not analyze the

remaining prongs.

Rule 24(a)(2) requires that an applicant to intervene has a "direct, substantial, legally

protectable interest in the proceedings." *Texas*, 805 F. 3d at 657 (citation and quotation marks

omitted). Whether an applicant has a legally protectable interest in the main action "turns on

whether the intervenor has a stake in the matter that goes beyond a generalized preference that the

case come out a certain way. So, an intervenor fails to show a sufficient interest when he seeks to

intervene solely for ideological, economic, or precedential reasons; that would-be intervenor merely

prefers one outcome to the other." *Id.* Although defining a "legally protectable interest" can be a "a

tautological exercise—a party may intervene if its interest is legally protectable and its interest is legally protectable if it can intervene"—the Fifth Circuit's cases provide guidance about what constitutes a sufficient interest for purposes of Rule 24(a)(2). *Wal–Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 834 F.3d 562, 568 (5th Cir. 2016).

For example, an applicant has a legally protectable interest if it is subject to the regulations at issue in an action or if it is the beneficiary of the regulations at issue. *Wal–Mart*, 834 F.3d at 568–69; *Texas*, 805 F.3d at 660–61. A nonprofit organization has a legally protectable interest in the "unique" circumstance that the organization "engineered the drive that led to" the regulation at issue being enacted. *City of Houston*, 668 F.3d at 294. On the other hand, a "purely economic interest" is insufficient. *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co. (NOPSI)*, 732 F.2d 452, 466 (5th Cir. 1984) (denying intervention to city officials in an action between a utility and a natural gas company based on the city official's interest in price it paid for gas); *see also Texas*, 805 F.3d at 658 (explaining that the *NOPSI* applicant's "generalized" interest was insufficient and observing that "every electricity consumer . . . yearns for lower electric rates.") (citation and quotation marks omitted).

According to Movants, the Agreement would make their work "immeasurably more difficult, if not impossible." (Mem. Supp. Mot. Intervene, Dkt. 26, at 6). Movants aver that they have a legally protectable interest in this action because "the intent of the Plaintiffs, through the Settlement Agreement, is to make Proposed Intervenors' work untenable." (*Id.* at 7). Movants aver that they "will be forced to expend additional resources to protect their respective missions." (*Id.*).

The Court finds that Movants' interest in this action is too generalized to establish their entitlement to intervention by right. The Fifth Circuit has counseled this Court to be "circumspect about allowing intervention of right by public-spirited citizens in suits by or against a public entity." *City of Houston*, 668 F.3d at 294. Like the applicants in *NOPSI*, there is little to distinguish Movants

from the many individuals who share Movants' policy preferences. The Court finds no authority to support the notion that simply expending organizational resources in support of a set of policy goals is sufficient to establish a legally protectable interest for purposes of Rule 24(a)(2), and Movants have cited none.[1] Movants are not entitled to intervention by right under Rule 24(a)(2).

## B. Permissive Intervention

On a timely motion, a court may permit anyone to intervene who has a claim or defense that shares with the main action a common question of law or fact. Fed. R. Civ. P. 24(b)(1)(B). Permissive intervention "is wholly discretionary . . . even though there is a common question of law or fact." *NOPSI*, 732 F.2d at 470–71.

There are no questions of law or fact common to both the main action and Movants' claims. Movants argue that the Agreement violates the Administrative Procedure Act ("APA") because the Agreement is a final agency action and its terms are arbitrary and capricious. (Mot. Prelim. Inj., Dkt. 97, at 3, 8). The instant action is a declaratory judgment action concerning the application of State Department regulations and the First and Second Amendments to the United States Constitution. (*See* Compl., Dkt. 1). Movants aver that they "satisfy the[ ] factors" relevant to Rule 24(b) but identify no common questions of law or fact between their claims and the main action. The Court declines to exercise its discretion to permit Movants to intervene under Rule 24(b)(2). Movants' motion to intervene is denied.

## C. Standing

Contrary to the Movants' belief, (see Mem. Supp. Mot. Intervene, Dkt. 96-1, at 8–9), "an intervenor of right must have Article III standing in order to pursue relief that is different from that

---

[1] Movants describe the resources they have diverted from their typical activities in support of their argument that they have Article III standing. (Supp. Brief Mot. Intervene, Dkt. 103, at 3–7). While resource diversion may be relevant to Article III standing, *see OCA-Greater Houston v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017), there is no authority—and Movants cite none—that resource diversion is sufficient to establish a legally protectable interest for purposes of Rule 24(a)(2).

which is sought by a party with standing." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651, 198 L. Ed. 2d 64 (2017). No party to the main action is seeking Movants' desired relief—an injunction of the Agreement based on a finding that it violates the APA—and therefore Movants must demonstrate independent standing. Plaintiffs argue that Movants lack independent standing, (Mem. Opp. Mot. Intervene, Dkt. 107, at 2–13), and the Court agrees.

To establish Article III standing, a plaintiff must establish, among other things, an "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations and quotation marks omitted). Movants argue that their standing arises from the injuries to them as organizations (rather than asserting the standing of their members). (Mem. Supp. Mot. Intervene, Dkt. 96-1, at 9 n.2). An "organization can establish standing in its own name if it "meets the same standing test that applies to individuals." *OCA-Greater Houston v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017). Movants must therefore establish that the Agreement causes them a concrete, particularized, and imminent injury.

Movants argue that they have standing because they have "have diverted significant resources to counteract the Settlement Agreement and the proliferation of 3-D printed guns." (Supp. Brief Mot. Intervene, Dkt. 103, at 3). The Fifth Circuit has made clear that resource diversion can support an organization's standing if a defendant's conduct requires the organization to divert resources to activities outside of its typical business activities. *See OCA-Greater Houston*, 867 F.3d at 611–12 (finding standing where an organization that is "not a lobbying group" "went out of its way" to educate its members on how to comply with the Texas' application of its election laws). On the other hand, an organizational plaintiff must explain how the activities it undertakes in response to the defendant's conduct differ from its "routine lobbying activities." *N.A.A.C.P. v. City of Kyle, Tex.*, 626 F.3d 233, 238 (5th Cir. 2010). The burden rests with the plaintiff to identify "specific projects

that [it] had to put on hold or otherwise curtail in order to respond to" the defendant's conduct. *Id.*; *see also Louisiana ACORN Fair Hous. v. LeBlanc*, 211 F.3d 298, 305 (5th Cir. 2000) (finding that an organization lacked standing because it "neither mentioned any specific projects [it] had to put on hold . . . nor did [it] describe in any detail how [it] had to re-double efforts in the community").

Movants fail to satisfy that burden. Each of the Movants submitted a declaration identifying activities they have undertaken since learning about the Agreement, such as "researching 3-D gun printing technology"; communicating with members, supporters, and lawmakers; submitting Freedom of Information Act requests related to the Agreement, and "work related to bringing the instant legal action." (Everytown Decl., Dkt. 103-1; Giffords Decl., Dkt. 103-2; Brady Decl., Dkt. 103-3).[2] It is unclear how much of this work differs from the Movants' "routine lobbying activities." *City of Kyle*, 626 F.3d at 238. More significantly, only one movant, the Brady Center, identifies any projects that it might have to put on hold as a result of responding to the Agreement, (*see* Brady Decl., Dkt. 103-3, at 2–3), and those projects are not described with sufficient specificity to constitute an injury in fact. For example, the Brady Center avers that if not for responding to the Agreement, it would have been able to use more resources to work on "strengthening gun laws," "fighting in the courts to defend gun laws," and "providing direct legal advocacy on behalf of victims and communities affected by gun violence." (*Id.* at 3). This evidence is not sufficiently specific to establish an injury in fact. *See ACORN*, 211 F.3d at 305–06 (finding, where a witness for the plaintiff organization testified that responding to defendant's conduct "really takes away from our activities in other areas, being able to do outreach and education, research and monitoring, intakes and investigations of complaints," that such testimony was too "conjectural, hypothetical, and speculative" to establish an injury in fact). Because the Movants cannot establish an injury in fact, they lack Article III standing to intervene in this action.

---

[2] It is well settled in the Fifth Circuit that an organization's "litigation efforts cannot establish injury in fact." *City of Kyle*, 626 F.3d at 238.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Movants' Joint Emergency Motion to Intervene, (Dkt. 96), is **DENIED**. Because Movants are not permitted to intervene, their Motion for Temporary Restraining Order and for Preliminary Injunction, (Dkt. 97), is **DENIED**.

**SIGNED** on July 27, 2018.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEFENSE DISTRIBUTED, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 1:15-CV-372-RP |
| | § | |
| UNITED STATES DEPARTMENT | § | |
| OF STATE, et al., | § | |
| | § | |
| Defendants. | § | |

**ORDER**

Before the Court is the parties' Stipulation of Dismissal with Prejudice. (Dkt. 112). The parties stipulate that they have resolved all causes of action and that this action should be dismissed with prejudice. (*Id.*). Federal Rule of Civil Procedure 41(a)(1)(A)(ii) allows a plaintiff to dismiss an action upon filing a stipulation of dismissal signed by all parties who have appeared. Plaintiff has done so. The Court therefore **ORDERS** that the case is **DISMISSED WITH PREJUDICE**. All costs shall be taxed to the party incurring them. This action is **CLOSED**.

**SIGNED** on July 30, 2018.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE