# EXHIBIT I

1

The Honorable Robert S. Lasnik

2

3

4

5

6

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

7

8

| | |
|---|---|
| STATE OF WASHINGTON; STATE OF CONNECTICUT; STATE OF MARYLAND; STATE OF NEW JERSEY; STATE OF NEW YORK; STATE OF OREGON; COMMONWEALTH OF MASSACHUSETTS; COMMONWEALTH OF PENNSYLVANIA; DISTRICT OF COLUMBIA; STATE OF CALIFORNIA; STATE OF COLORADO; STATE OF DELAWARE; STATE OF HAWAII; STATE OF ILLINOIS; STATE OF IOWA; STATE OF MINNESOTA; STATE OF NORTH CAROLINA; STATE OF RHODE ISLAND; STATE OF VERMONT and STATE OF VIRGINIA, | NO. 2:18-cv-01115-RSL<br><br>FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

9

10

11

12

13

14

15

16

Plaintiffs,

v.

17

18

UNITED STATES DEPARTMENT OF STATE; MICHAEL R. POMPEO, in his official capacity as Secretary of State; DIRECTORATE OF DEFENSE TRADE CONTROLS; MIKE MILLER, in his official capacity as Acting Deputy Assistant Secretary of Defense Trade Controls; SARAH HEIDEMA, in her official capacity as Director of Policy, Office of Defense Trade Controls Policy; DEFENSE DISTRIBUTED; SECOND AMENDMENT FOUNDATION, INC.; AND CONN WILLIAMSON,

19

20

21

22

23

Defendants.

24

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

1

Plaintiffs the State of Washington, State of Connecticut, State of Oregon, State of Maryland, State of New Jersey, State of New York, Commonwealth of Massachusetts, Commonwealth of Pennsylvania and the District of Columbia, State of California, State of Colorado, State of Delaware, State of Hawaii, State of Illinois, State of Iowa, State of Minnesota, State of North Carolina, State of Rhode Island, State of Vermont, and State of Virginia (the "States") bring this lawsuit against Defendants United States Department of State, Michael R. Pompeo, Directorate of Defense Controls, Mike Miller, and Sarah Heidema (the "Government Defendants"); as well as Defense Distributed, Second Amendment Foundation, Inc., and Conn Williamson.

## I.   INTRODUCTION

1.   This case addresses the threat that downloadable guns, in the form of Computer Aided Design (CAD) files for the automated production of firearms using a 3-D printer[1], will imminently be released on the internet, making these weapons available to virtually anyone.  3-D printed guns are functional weapons that are often unrecognizable by standard metal detectors because they are made out of materials other than metal (e.g., plastic) and untraceable because they contain no serial numbers. Anyone with access to the CAD files and a commercially available 3-D printer could readily manufacture, possess, or sell such a weapon—even those persons statutorily ineligible to possess firearms, including violent felons, the mentally ill and persons subject to protection and no-contact orders.  This serious threat to the national security and to public safety in the State of Washington was caused by the Federal Government's covert and *ultra vires* regulatory about-face, in violation of the Administrative Procedure Act (APA) and the Tenth Amendment to the U.S. Constitution.Until recently, the Federal Government

---

[1] 3-D printing refers to technology that allows a person to make a three dimensional product using a digital file or software in conjunction with a printer that is directed by the software. *See, e.g.*, https://3dprinting.com/what-is-3d-printing/ (last visited July 30, 2018).

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

2

1  prohibited the distribution of CAD files for the automated production of 3-D printed weapons

2  by including such files on the United States Munitions List (USML) and making them subject to

3  the International Traffic in Arms Regulations (ITAR), which are administered by the Directorate

4  of Defense Trade Controls (DDTC) within the Department of State.  As recently as April of this

5  year, the Government's position was that if such CAD files were distributed via the internet, they

6  could be "easily used overseas to make firearms that are subject to U.S. export controls", where,

7  "beyond the reach of U.S. law, they could be used to threaten U.S. national security, U.S. foreign

8  policy interests, or international peace and stability."

9       2.    In June 2018, however, the Government completely reversed its position on the

10  dissemination of the CAD files—not publicly or in accordance with a valid administrative

11  process, but by entering an under-the-radar settlement with a private company known as Defense

12  Distributed (DD).  *Defense Distributed v. U.S. Dept. of State*, 15-CV-372 RP (W.D. Texas).

13  Defense Distributed's stated objective is to ensure global, unrestricted access to firearms by

14  posting its CAD files online so that virtually everyone will have access to a "downloadable gun."

15  As part of the Settlement Agreement, the Government promised to: (i) draft and fully pursue a

16  notice of rulemaking and a final rule to remove the CAD files at issue from ITAR jurisdiction;

17  (ii) temporarily modify Category I of the USML to exclude the files at issue from ITAR; (iii)

18  issue a letter to Defense Distributed advising that its files are exempt from ITAR and "approved

19  for public release (i.e., unlimited distribution)"; and (iv) permit "any United States person" to

20  "use, reproduce or otherwise benefit from" the files at issue.

21       3.    On July 27, 2018, in accordance with the Settlement Agreement, DDTC

22  published a "Temporary Modification of Category I of the United States Munitions List" that

23  permits the dissemination of certain CAD files in Defense Distributed's possession, including

24  files used to create undetectable and untraceable weapons, as well as a tabletop gun-milling

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

3

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

machine called the "Ghost Gunner."  This deregulation also applies to other files for the automated production of 3-D printed weapons that may be developed or acquired by Defense Distributed in the future.

4.      Although the Government's deregulation of the CAD files in question is nominally "temporary," it permits Defense Distributed's founder, self-described "crypto-anarchist" Cody Wilson—and anyone else—to immediately disseminate the files by making them available for download via the internet.  Wilson and Defense Distributed have announced that they intend to release the files on August 1, 2018.  As of that point, the files will be, practically speaking, irretrievable, because they will have been posted on the internet—a bell that cannot be un-rung:



Source: https://defcad.com (accessed July 28, 2018).

5.      The files that Defense Distributed intends to make available for download as of August 1, 2018 include CAD files that can be used to manufacture a variety of weapons, including AR-15 frames[2] and a 3-D printed pistol known as the "Liberator", as well as a "computer-controlled milling machine" called the "Ghost Gunner," which is designed to allow its owner to carve gun parts out of aluminum:

---

[2] An AR-15 is a semi-automatic rifle that is the civilian equivalent of the M-16 and the weapon of choice for many mass shooters.

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

4

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744



Source: https://defcad.com (accessed July 28, 2018).

6.      According to news reports,[3] the Defense Distributed website's repository of downloadable-gun files will also include "more exotic DIY semi-automatic weapons."  "The relaunched site will be open to user contribution, too; Wilson hopes it will soon serve as a searchable, user-generated database of practically any firearm imaginable."  According to Wilson: "What's about to happen is a Cambrian explosion of the digital content related to firearms."  Wilson says: "All this Parkland stuff, the students, all these dreams of 'common sense gun reforms'?  No.  The internet will serve guns, the gun is downloadable . . . No amount of petitions or die-ins or anything else can change that."

7.      The Government entered into the Settlement Agreement in contravention of the statutes and regulations which govern the export designation process.  Among other things, upon

---

[3] Andy Greenberg, *A Landmark :egal Shift Opens Pandora's Box for DIY Guns*, (July 18, 2018) Wired, *available at* https://www.wired.com/story/a-landmark-legal-shift-opens-pandoras-box-for-diy-guns/, attached hereto as Ex. 1.

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

5

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

information and belief, the State Department: (i) has not provided the relevant Congressional committees with the required 30 days' notice to "temporarily" modify the USML or to achieve the same thing via approval for public release of the information pursuant to 22 C.R.F. §125.4(b)(13); (ii) has not received the concurrence of the Secretary of Defense to "temporarily" change the designation of the files at issue; and (iii) has not followed established commodity jurisdiction procedures before agreeing to "temporarily" exempt the CAD files at issue from ITAR.

8.    The "temporary modification" of USML Category I and approval for public release of the information pursuant 22 C.F.R. §125.4(b)(13) are especially troubling because it involves making CAD files available on the internet, which largely overrides the later need to formally modify the relevant rules.  Moreover, the "temporary modification" on its face applies to recently developed files that the Government has presumably not even seen or evaluated, as well as files that may be developed in the future.

9.    In addition, the Government has acted in an arbitrary and capricious manner, and has abused its discretion, by (i) failing to consider evidence relevant to ITAR jurisdiction over the CAD files; (ii) drastically changing long-established practice and policy without any explanation or sufficient notice; and (iii) failing to study the national- and state-security implications of exempting the CAD files from ITAR.  Upon information and belief, the Government has made no determination regarding the national security implications of the agreement, or its effects on sovereign U.S. states' ability to protect the safety of those within their borders.

10.    Tellingly, even the notices of proposed rules to amend the ITAR, which the Departments of State and Commerce published on May 24, 2018, make no mention of the dangers posed by the files falling into the hands of terrorist organizations, insurgent groups,

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

6

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1   transnational organized criminal organizations, or countries subject to the U.S. or U.N. arms

2   embargoes.

3       11.     The Government Defendants' unlawful actions—if allowed to stand—will lead

4   to the proliferation of untraceable printed guns overseas and within the United States.

5   Domestically, the proliferation of these guns also threatens to cripple the various States'

6   extensive and comprehensive systems of firearms regulations designed to keep guns out of the

7   wrong hands.

8       12.     For all these reasons, and others detailed below, the Government Defendants have

9   violated the Administrative Procedure Act (APA) and the Tenth Amendment of the U.S.

10  Constitution, which reserves police power to the states.  The Plaintiff States seek a declaration

11  that the "temporary modification" of the USML Category I (which constitutes a final agency

12  action) is invalid, and an injunction requiring the Government Defendants to rescind the

13  temporary modification and refrain from acting in a manner inconsistent with such rescission.

14              **II.     JURISDICTION AND VENUE**

15      13.     This Court has jurisdiction over this matter and the parties hereto pursuant to

16  28 U.S.C. §§ 1331, 2201, and 2202.

17      14.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(e) because the Plaintiff

18  is located here and a substantial part of the events or omissions giving rise to the claim occurred

19  or will imminently occur here.  In particular, the dissemination of the CAD files in question will

20  have an adverse impact on the public safety in the City of Seattle and King County, Washington,

21  which are located in this district.  *See* Declarations of King County Sheriff Mitzi Johanknecht

22  (attached hereto as Exhibit 2) and Seattle Police Chief Carmen Best (attached hereto as Exhibit

23  3). Also, Defendant Second Amendment Foundation, Inc. is located in Bellevue, Washington.

24

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

7

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

## III.    PARTIES

15.    The States of Washington, Connecticut, Maryland, New Jersey, New York, Oregon, California, Colorado, Delaware, Hawaii, Illinois, Iowa, Minnesota, North Carolina, Rhode Island, Vermont and Virginia, the Commonwealths of Massachusetts and Pennsylvania (Plaintiff States) and the District of Columbia, represented by and through their respective Attorneys General, are sovereign states of the United States of America.  The security of the Plaintiff States is threatened by the Government's deregulation of CAD files for the automated production of 3-D printed weapons via the "temporary modification" of the USML Category I. The "temporary modification" is also a direct attack on the State's sovereign power to protect the safety of those within its borders, including the power to enact and enforce laws related to the ownership and use of firearms. The States bring this action to redress harms to their quasi sovereign authority, proprietary interests, and interests as *parens patriae*.

16.    The States have a quasi-sovereign interest in protecting the security and well-being of their residents. "The States . . . perform many of the vital functions of modern government – punishing street crime, running public schools, and zoning property for development, to name but a few – even though the Constitution's text does not authorize any government to do so. Our cases refer to this general power of governing, possessed by the States but not by the Federal Government, as the 'police power.' " *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 535-36 (2012). Ensuring the safety of their residents from untraceable, undetectable weapons is one of the police powers of the States.

17.    The Government Defendants' authorization of the release of CAD files for the automated production of 3-D printed weapons diminishes the States' sovereignty by seriously jeopardizing the States' ability to enforce their public safety laws, including those regulating who may possess firearms; what type of firearms and weapons they may possess; the manner in

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

8

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

which firearms may be used; and the purchase and sale of firearms, including tracking serial numbers and ownership information. In addition, the imminent widespread availability of undetectable and untraceable weapons will make it far more difficult for the States to protect the safety of those within their borders, including through effective law enforcement measures that depend on the ability to track and forensically identify weapons, and the use of metal detectors in government buildings and other public places.

18.      The States have proprietary interests in their treasuries, the integrity of their borders, the safety of their jails and prisons, and the efficient performance of the work of their employees and officials. The Government Defendants' actions harm these interests. The Government Defendants' actions harm the States by increasing access through their borders of undetectable firearms. Their actions threaten state and county prison safety by facilitating the smuggling of undetectable weapons into prisons and jails. The Government Defendants' actions threaten state and county prison safety by easing access in their borders to undetectable firearms. Their actions make the States' state, county, and local detective work solving crimes more difficult by increasing access to untraceable and undetectable guns. Their actions also impede the States executive protection responsibilities. Further, the States – and border states like Washington in particular – spend substantial sums of State taxpayer money to protect their residents from terrorist attacks. Defendants' actions enhance the risk of terrorist attacks. This risk is not hypothetical; in 2001, Ahmed Ressam was convicted of planning to bomb the Los Angeles International Airport on New Year's Eve 1999, as part of the foiled 2000 millennium attack plots. Ressam entered the United States by taking the car and passenger ferry *M/V Coho* from Victoria, British Columbia to Port Angeles, Washington, where he was apprehended.

19.      Defendant the United States Department of State (State Department) is the executive agency of the United States government responsible for administering and enforcing

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

9

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    the ITAR under the authority of the Arms Export Control Act (AECA). The State Department is

2    a party to the Settlement Agreement with Defense Distributed.

3         20.    Defendant Michael R. Pompeo is sued in his official capacity as the Secretary of

4    State. In this capacity, he is responsible for the operation and management of the State

5    Department, including the operation and management of the Directorate of Defense Trade

6    Controls (DDTC) and administration and enforcement of the ITAR. The Secretary of State is a

7    party to the Settlement Agreement with Defense Distributed.

8         21.    Defendant DDTC is a subordinate unit within the Department of State Bureau of

9    Political and Military Affairs responsible for administering and enforcing the ITAR. The DDTC

10   enacted the "temporary modification" of the USML Category I, and is a party to the Settlement

11   Agreement with Defense Distributed.

12        22.    Defendant Mike Miller is sued in his official capacity as the Acting Deputy

13   Assistant Secretary of Defense Trade Controls. The Acting Deputy Assistant Secretary is a party

14   to the Settlement Agreement with Defense Distributed.

15        23.    Defendant Sarah Heidema is sued in her official capacity as the Director, Office

16   of Defense Trade Controls Policy. The Director, Office of Defense Trade Controls Policy is a

17   party to the Settlement Agreement with Defense Distributed.

18        24.    Defendant Defense Distributed is a Texas corporation whose headquarters and

19   principal place of business are located in Austin, Texas. Upon information and belief, Defense

20   Distributed advertises and sells items over the internet throughout the nation, including in

21   Washington.  Defense Distributed also intends to make available for download from the internet

22   as of August 1, 2018 the CAD files at issue in this Complaint, and these downloads would be

23   available in Washington. Defense Distributed is a necessary party as the Settlement Agreement

24

FIRST AMENDED COMPLAINT                        10               ATTORNEY GENERAL OF WASHINGTON
FOR DECLARATORY AND                                                   800 Fifth Avenue. Suite 2000
INJUNCTIVE RELIEF                                                       Seattle, WA  98104-3188
2:18-cv-01115-RSL                                                          (206) 464-7744

1  that it entered into with the other Defendants may be affected by the requested relief, and this

2  may impede Defense Distributed's interests under that Settlement Agreement.

3      25.    Defendant Second Amendment Foundation, Inc. is a non-profit organization

4  incorporated under the laws of Washington with its principal place of business in Bellevue,

5  Washington. The Second Amendment Foundation is a necessary party as the Settlement

6  Agreement that it entered into with the other Defendants may be affected by the requested relief,

7  and this may impede the Second Amendment Foundation's interests under that Settlement

8  Agreement.

9      26.    Conn Williamson is a citizen of the State of Washington. Mr. Williamson is a

10  necessary party as the Settlement Agreement that he entered into with the other Defendants may

11  be affected by the requested relief, and this may impede Mr. Williamson's interests under that

12  Settlement Agreement.

13              **IV.    ALLEGATIONS**

14  **A.    The Statutory and Regulatory Framework**

15      27.    The Arms Export Control Act (AECA), 22 U.S.C. § 2751 *et seq*., authorizes the

16  President, "[i]n furtherance of world peace and the security and foreign policy of the United

17  States . . . to control the import and the export of defense articles and defense services."

18  22 U.S.C. § 2778(a)(1). The purpose of the AECA is to reduce the international trade in arms

19  and avoid destabilizing effects abroad through arms exports.  22 U.S.C. § 2751.

20      28.    Under the AECA, "[t]he President is authorized to designate those items which

21  shall be considered as defense articles and defense services for the purposes of this section and

22  to promulgate regulations for the import and export of such articles and services."  22 U.S.C. §

23  2778(a)(1).  Items designated as defense articles or services constitute the United States

24

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

11

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    Munitions List (USML).  *Id.* at § 2778(a)(1).  Category I of the USML lists articles, services,

2    and related technical data for "Firearms, Close Assault Weapons and Combat Shotguns."

3        29.    Among other things, Category I of the USML includes all firearms up to .50

4    caliber, and all technical data directly related to such firearms.  *See* 22 C.F.R. § 121.1(I)(a).

5    "Technical data" is information that "is required for the design, development, production,

6    manufacture, assembly, operation, repair, testing, maintenance or modification of defense

7    articles."  *Id.* § 120.10(a).  Technical data includes "information in the form of blueprints,

8    drawings, photographs, plans, instructions or documentation" . § 120.10.

9        30.    As former Director of the Office of Defense Trade Controls Management Lisa V.

10   Aguirre stated in a 2015 declaration filed in federal court, "the 'technical data' provisions serve

11   the purpose of limiting the export of detailed information needed to manufacture, maintain, or

12   operate defense articles controlled on the USML. *Defense Distributed v. U.S. Dept. of State,* 15-

13   CV-372 RP Dkt. 32-1 ¶ 14(d). Such export limitations advance the purposes of the AECA by

14   limiting the ability of foreign powers to design, develop, and produce defense articles in lieu of

15   being able to obtain those articles directly. Absent the inclusion of technical data in the ITAR,

16   the ITAR's limits on arms transfers would be of negligible practical effect because the ITAR

17   would leave unregulated the exportation of the fundamental technology, know-how, blueprints,

18   and other design information sufficient for foreign powers to construct, produce, manufacture,

19   maintain, and operate the very same equipment regulated in its physical form by the ITAR." *Id.*

20       31.    Pursuant to Executive Order 13637, the President has delegated his AECA

21   authority to the State Department.  In turn, the State Department has promulgated the ITAR,

22   which is administered by the DDTC.  *See* 22 C.F.R. §§ 120-130.  Among other things, the DDTC

23   is tasked with maintaining, reviewing and clarifying the USML.

24

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

12

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

32.     Pursuant to Executive Order 13637, section 1(n), "[d]esignations including changes in designations, by the Secretary of items or categories that shall be considered as defense articles and defense services subject to export control under section 38 (22 U.S.C. 2778) shall have the concurrence of the Secretary of Defense."

33.     In addition, the Executive Branch must give notice to the International Relations Committee of the House of Representatives and to the Committee on Foreign Relations of the Senate at least 30 days in advance of removing an item from the USML.  22 U.S.C. § 2778(f)(1). Such notification must be made in accordance with the procedures applicable to reprogramming notifications under section 634A(a) of the Foreign Assistance Act of 1961, 22 U.S.C. § 2394-1. *Id.*

34.     Subject to the procedural requirements above and other provisions of AECA, ITAR allows the Deputy Assistant Secretary for Defense Trade Controls to order the temporary modification of any ITAR regulation.  However, it may do so only "in the interest of the security and foreign policy of the United States"—not merely as an interim measure before a final rule can be passed.  22 C.F.R. § 126.2.

35.     For situations where there is doubt that a particular item to be exported falls on the USML, ITAR contains a commodity jurisdiction (CJ) procedure.  22 C.F.R. § 120.4.  Upon written request, the DDTC will provide a determination as to whether a certain item, service, or data is within the jurisdiction of ITAR.  *Id.*

36.     As the Director Aguirre explained in her 2015 declaration, the CJ determination "entails consultation among the Department of State, Defense, Commerce and other U.S. Government agencies and industry in appropriate cases." Ex. 4 ¶ 19. Assessments are made on a case-by-case basis, evaluating whether the article is covered by the USML, is functionally equivalent to an article on the USML, or has substantial military or intelligence application.  A

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

13

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  determination made pursuant to the commodity jurisdiction process takes into account "(i) The

2  form and fit of the article; and (ii) The function and performance capability of the article." Ex. 4

3  ¶ 20.

4      37.    22 C.F.R. § 120.4(f) requires that "State, Defense and Commerce will resolve

5  commodity jurisdiction disputes in accordance with established procedures.  State shall notify

6  Defense and Commerce of the initiation and conclusion of each case."

7  **B.**    **The Defense Distributed CAD Files**

8      38.    Defense Distributed is a Texas corporation founded by Cody Wilson, a self-

9  described "crypto-anarchist" who believes that "governments should live in fear of their

10  citizenry." His company's objective is for everyone in the world to have access to guns, and to

11  make meaningful gun regulation impossible.

12      39.    In or around early May 2013, Defense Distributed posted CAD files on

13  DEFCAD.org, a website it created to serve as an open-source repository for weapons designs,

14  including software code used to automatically manufacture the "Liberator" pistol. The Liberator

15  is a plastic firearm which contains 6-oz piece of steel, which can be easily removed, enabling it

16  to avoid detection in walk-through metal detectors.

17      40.    Defense Distributed described these CAD files as "essentially blueprints that can

18  be read by CAD software."  As the Federal Government stated in a court filing in April 2018,

19  these files are "indispensable to a three-dimensional ('3-D') printing process used to create

20  firearms and their components."  All a user would need to do is connect to a 3-D printer,

21  download the CAD files, and enter a print command, in order to create a real, functional weapon

22  within hours or minutes.

23      41.    On May 8, 2013, the Office of Defense Trade Controls Compliance, which is

24  responsible for compliance with and civil enforcement of the AECA and ITAR, sent Defense

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

14

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Distributed a letter noting that "it is unlawful to export any defense article or technical data for which a license or written approval is required without first obtaining the required authorization from the DDTC." That letter is attached hereto as Exhibit 5.  The letter explained that "disclosing (including oral or visual disclosure) or transferring foreign data to a foreign person, whether in the United States or abroad, is considered an export under § 120.17 of the ITAR."  It requested that Defense Distributed remove ten specific CAD files from public access "immediately" and advised that Defense Distributed could submit a request for CJ determination for the files. Defense Distributed submitted a CJ determination request on June 21, 2015.

42.     Separately, Defense Distributed submitted a CJ determination request for the "Ghost Gunner," an automated firearms metal milling machine. In April 2015, the DDTC determined that the Ghost Gunner machine itself was not subject to the jurisdiction of the State Department, but that the "project files and data files for producing a defense article on a 3D printer or similar device constituted technical data on that defense article that would be subject to ITAR regulation."

43.     The DDTC completed its review of Defense Distributed's original requests on June 4, 2015 and determined that six of those files were subject to ITAR control: (i) the Liberator pistol; (ii) the .22 caliber electric pistol; (iii) the 5.56/.223 muzzle brake; (iv) the Springfield XD- 40 tactical slide assemble; (v) the sub-caliber insert; and (vi) the VZ-58 front sight.

44.     In making its CJ determination, the DDTC noted that the CAD files could be used to "automatically find, align, and mill" a defense article such as a firearm on a 3-D printer or other manufacturing device, and that manufacture of a defense article in this way requires considerably less know-how than manufacture in reliance on conventional technical data, which

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

15

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

merely *guides* the manufacture of a defense article and requires additional craftsmanship, know-how, tools, and materials.

## C.   Defense Distributed's Lawsuit against the Federal Government

45.     In May 2015, Defense Distributed sued the Federal Government in a Texas federal district court, seeking an injunction to prevent the Government from regulating Defense Distributed's dissemination of the CAD files. *Def. Distributed v. U.S. Dept. of State*, 15-CV-372 RP (W.D. Texas).

46.     In defending against that lawsuit, the Government stated it was "particularly concerned that [the] proposed export of undetectable firearms technology could be used in an assassination, for the manufacture of spare parts by embargoed nations, terrorist groups, or to compromise aviation security overseas in a manner specifically directed at U.S. persons." As the Government explained, the CAD files "are 'technical data' that are regulated by the ITAR because, absent such regulation, providing the CAD designs to a foreign person or foreign government would be equivalent to providing the defense article itself, enabling the complete circumvention of ITAR's export regulations."

47.     Along with its opposition to Plaintiffs' preliminary injunction motion, the Government submitted an affidavit from Lisa V. Aguirre, who was then the Director of the Office of Defense Trade Controls Management. *See* Ex. 4, Dkt. 32-1. Among other things, Director Aguirre stated that: (i) "[t]he 'Liberator' firearm included in DD's CAD designs presents a specific and unique risk  to the national security and foreign policy interests of the United States"; (ii) making the CAD files available online would provide terrorist organizations with firearms, which could be used against the United States or its allies; and (iii) "[a]cess to weapons technology coupled with the uncontrolled ubiquitous means of productions . . . could contribute to armed conflict, terrorist or criminal acts, and seriously undermine global export

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

16

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

control and non-proliferation regimes designed to prevent the dangerous and destabilizing spread and accumulation of weapons and related technologies." Ex. 4 at ¶ 35(c).

48.     The federal district court accepted the Government's arguments and declined to preliminarily enjoin the Government's regulation of the CAD files.  In doing so, the court found that "[f]acilitating global access to firearms undoubtedly increases the possibility of outbreak or escalation of conflict." *Def. Distributed v. U.S. Dep't of State*, 121 F. Supp. 3d 680, 691 (W.D. Tex. 2015).

49.     On appeal, the Fifth Circuit affirmed the district court's refusal to enjoin the Government's enforcement efforts, focusing on both the national security implications of the CAD files and the permanent nature of the internet:

> Even if Plaintiffs–Appellants eventually fail to obtain a permanent injunction, the files posted in the interim [if a preliminary injunction issued] would remain online essentially forever, hosted by foreign websites such as the Pirate Bay and freely available worldwide . . . ***Because those files would never go away***, a preliminary injunction would function, in effect, as a permanent injunction as to all files released in the interim ***Thus, the national defense and national security interest would be harmed forever***.

*Def. Distributed v. United States Dep't of State*, 838 F.3d 451, 461 (5th Cir. 2016) (emphasis added).

50.     On January 8, 2018, the Supreme Court denied Defense Distributed's petition for a writ of certiorari. *Def. Distributed v. Dep't of State*, 138 S. Ct. 638 (2018).

51.     After the district court lifted the stay of proceedings that had been imposed pending the above-referenced appeals, the Government in April 2018 moved to dismiss Defense Distributed's complaint, arguing that the CAD files at issue "can unquestionably facilitate the creation of defense articles abroad" and that "the Department of State has consistently and reasonably concluded that it is not possible to meaningfully curtail the overseas dissemination of arms if unfettered access to technical data essential to the production of those arms is

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

17

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

permitted." If the Government were not permitted to regulate the dissemination of the CAD files, it argued, "they could be used to threaten U.S. national security, U.S. foreign policy interests, or international peace and stability."

52. Mere weeks after the Government moved to dismiss, Wilson and Defense Distributed abruptly announced that their case had settled. According to news reports, "the government surprised the plaintiffs by suddenly offering them a settlement with essentially everything they wanted."[4] On July 27, 2018, the parties filed a stipulation of dismissal with prejudice.

**D.    The Government's Settlement Agreement with Defense Distributed**

53. The Settlement Agreement was apparently finalized in April 2018, but was not executed by the parties until June 29, 2018, and was not made public until July 10, 2018. A true and correct copy of the Settlement Agreement, which is published on DDTC's website (https://www.pmddtc.state.gov),  attached hereto as Exhibit 6.

54. Pursuant to Paragraph 1 of the Settlement Agreement, the Government Defendants have committed to:

a. "draft and . . . fully pursue, to the extent authorized by law (including the Administrative Procedure Act), the publication in the Federal Register of a notice of proposed rulemaking and final rule, revising USML Category I to exclude the technical data that is the subject of the [Defense Distributed] Action";

b. "announce[ ], while the above-referenced rule is in development, . . . a temporary modification, consistent with [ITAR], of USML Category I to exclude the technical data that is the subject of the Action . . . on or before July 27, 2018";

---

[4] Exhibit 1

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

18

c.      "issu[e] . . . a letter to Plaintiffs on or before July 27, 2018, signed by the Deputy

Assistant Secretary for Defense Trade Controls, advising that the Published Files, Ghost Gunner

Files, and CAD Files[5] are approved for public release (i.e., unlimited distribution) in any form

and are exempt from the export licensing requirements of the ITAR"; and

d.      "acknowledge[ ] and agree[ ] that the temporary modification of USML Category

I permits any United States person . . . to access, discuss, use, reproduce, or otherwise benefit

from the technical data that is the subject of the Action, and that the letter to Plaintiffs permits

any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files,

Ghost Gunner Files, and CAD Files."

55.      Importantly, Paragraphs 1(a), (b), and (d) of the Settlement Agreement apply to

"the technical data that is the subject of the Action," which is defined to include "Other Files,"

i.e., those that "Defense Distributed has and will continue to create and possess . . . that contain

technical information, to include design drawings, rendered images, written manufacturing

instructions." In other words, they include existing files that the Government presumably has not

seen or evaluated, as well as files that may be created or acquired by Defense Distributed in the

future.

56.      There is no indication in the Settlement Agreement (or elsewhere) that any

analysis, study or determination was made by the Government Defendants, in consultation with

other agencies, before the Government agreed to remove the CAD Files from the USML

Category I. In fact, the Settlement Agreement states that it "does not reflect any agreed-upon

---

[5] These terms are defined as follows, by reference to Defense Distributed's complaint:
- "Published Files": "technical information regarding a number of gun-related items, including a trigger guard, grips, two receivers, a magazine for AR-15 rifles, and a handgun".
- "Ghost Gunner Files": "files containing technical information on a machine, named the "Ghost Gunner," that can be used to manufacture a variety of items, including gun parts".
- "CAD Files": files which Defense Distributed has made requests to the Department of Defense Office of Prepublication Review and Security for prepublication review since September 2, 2014.

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

19

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    purpose other than the desire of the Parties to reach a full and final conclusion of the Action, and

2    to resolve the Action without the time and expense of further litigation." Ex. 6 ¶ 5.

3          57.    Upon information and belief, neither the House Committee on Foreign Relations

4    nor the Senate Committee on Foreign Relations received the required 30 days' advance notice

5    of the "temporary modification" referenced in Paragraphs 1(b) or (d) of the Settlement

6    Agreement. The temporary modification went into effect on July 27, 2018, without providing

7    any such notice to Congress.

8          58.    In addition, there is no indication in the Settlement Agreement (or elsewhere) that

9    the Secretary of Defense has concurred in the changes to designation to which the Government

10    Defendants committed, as required by Executive Order 13637. There is also no indication that

11    the Government Defendants have followed the established procedures for making a CJ before

12    allowing Defense Distributed to disseminate its CAD files.

13          59.    Since the Settlement Agreement became public, Cody Wilson and Defense

14    Distributed have repeatedly and adamantly claimed that the "temporary modification" pursuant

15    to the Settlement Agreement will effectively negate all gun violence prevention efforts. Among

16    other things, Wilson tweeted a photo of a tombstone announcing the death of "gun control," and

17    stated: "All this Parkland stuff, the students, all these dreams of 'common sense gun reforms'?

18    No.  The internet will serve guns . . . No amount of petitions or die-ins or anything else can

19    change that." *See* Ex. 1.

20    **E.**    **The Government's Actions in Accordance with the Settlement Agreement**

21          60.    On May 24, 2018, as promised, the Government published notices of proposed

22    rulemaking by the State and Commerce Departments, which would remove Plaintiffs' CAD files

23    from the USML Category I.  *See* International Traffic in Arms Regulations: U.S. Munitions List

24    Categories I, II, and II, 83 Fed. Reg. 24,198 (May 24, 2018); Control of Firearms, Guns,

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

20

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   Ammunition and Related Articles the President Determines No Longer Warrant Control Under

2   the United States Munitions List (USML), 83 Fed. Reg. 24,166 (May 24, 2018).

3       61.    According to the Department of State's Notice of Proposed Rule, it "is engaged

4   in an effort to revise the U.S. Munitions List so that its scope is limited to those defense articles

5   that provide the United States with a critical military or intelligence advantage or, in the case of

6   weapons, are inherently for military end use."  According to the State Department, the articles

7   that would be removed from the list "do not meet this standard."  For this reason, the notice

8   proposes to remove all non-automatic firearms up to .50 caliber (and any related technical data)

9   from the USML under the jurisdiction of the State Department, and move jurisdiction over these

10  products over to the Commerce Department, which, due to its looser export controls,[6] do not

11  typically take action to prohibit the publication of the data.

12      62.    The Department of Commerce's Proposed Rule, filed the same day, describes

13  how its Export Administration Regulations (EAR) will apply to items no longer controlled under

14  the USML.  Although the Department of Commerce would not comprehensively restrict the

15  export of technology related to firearms, it would have authority to impose a restriction on a

16  case-by-case basis if it determines the export would be contrary to the national security or foreign

17  policy interests of the United States, the promotion of human rights, or regional stability.

18  *See* 15 C.F.R. § 742.6. But the Department of Commerce cannot restrict the export of technology

19  already in the public domain, including through posting on publicly available sites on the

20  internet. *See* 15 C.F.R. §§ 734.3(b)(3), 734.7(a)(4). If the Government Defendants' improper

21  deregulation of the CAD files at issue is not enjoined, and Defense Distributed makes its

22  repository of files available online, the Department of Commerce will be unable to make an

23

24
          [6] ITAR requires any exporter of items on the USML to register with the State Department, *see* 22 C.F.R.
    122.1(a), but Commerce Department regulations include no similar registration requirement.

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL                            21          ATTORNEY GENERAL OF WASHINGTON
                                                              800 Fifth Avenue. Suite 2000
                                                                Seattle, WA 98104-3188
                                                                   (206) 464-7744

1   independent determination about whether national security or other concerns warrant restricting

2   the unlimited dissemination of those files in accordance with the EAR.

3       63.     The public comment period for both notices concluded on July 9, 2018, the day

4   before the Settlement Agreement became public.

5       64.     On July 27, 2018, as promised, DDTC published a notice on its website entitled

6   "Temporary Modification of Category I of the United States Munitions List." attached hereto as

7   Ex. 7. This notice states that "the Acting Deputy Assistant Secretary for Defense Trade Controls

8   has determined that it is in the interest of the security and foreign policy of the United States to

9   temporarily modify United States Munitions List (USML) Category I to exclude" the technical

10  data described in the Settlement Agreement.

11      65.     Upon information and belief, the Government did not actually "determine" that

12  "it is in the interest of the security and foreign policy of the United States" to permit the global

13  dissemination of CAD files that can be used to automatically manufacture undetectable and

14  untraceable weapons.  The notion that *removal* of an item from the USML is in the national

15  security interest defies common sense.  This statement also contradicts the Settlement

16  Agreement, which provides that the parties' agreement thereto does not "reflect any agreed-upon

17  purpose other than the desire of the Parties to reach a full and final conclusion of the Action, and

18  to resolve the Action without the time and expense of further litigation."

19      66.     In sum, the Government's covert agreement to deregulate the CAD files by way

20  of the Settlement Agreement—which culminated in the enactment of the "temporary

21  modification" on July 27, 2018—are final agency decisions that not only failed to comply with

22  procedural requirements, but that have far-reaching implications for national security and the

23  safety and security of the State and people of Washington.

24

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

22

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

F.      **Adverse Effects on the States' Public Safety Laws**

67.      Each of the States in this matter have extensive and comprehensive statutory and regulatory schemes regarding firearms. The aim of the States' laws is the same: To protect the public by keeping guns out of the hands of those who should not possess them – minors, convicted felons, the mentally ill, and those subject to protective and no-contact orders. The States' ability to protect the public will be seriously undermined if the Government's action is allowed to stand because the Government's action will allow anyone – including those ineligible to possess firearms – to easily obtain untraceable guns by simply printing them.

1.      **Washington's Firearms Laws**

68.      The State of Washington has a comprehensive statutory scheme regulating the possession, licensing, registration, and use of firearms and dangerous weapons.

69.      These  laws promote public safety by keeping guns out of the hands of those who, for various reasons, should not have access to them, including minors, persons convicted of violent felonies, the mentally ill, and persons subject to various protection and no-contact orders.

70.      As noted, Cody Wilson's express intent is to eviscerate *any* regulation of firearms by providing to anyone—including the categories of persons just mentioned—the ability to easily manufacture firearms that can evade metal detectors, are untraceable because they carry no markings, and shoot bullets that cannot be forensically linked to the gun.  The Government Defendants' unlawful action in removing from the USML CAD files like those Mr. Wilson intends to disseminate will allow Mr. Wilson and others like him to achieve their dream.

71.      Indeed, the Government Defendants' unlawful action will effectively cripple Washington's ability to enforce its firearm and dangerous weapons regulations—to the great detriment of the public and public safety.

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

23

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

72. Washington law prohibits certain persons from obtaining or possessing firearms. For example, persons cannot possess firearms if they have been convicted or found not guilty by reason of insanity of crimes including serious felony offenses and certain crimes committed by one family member against another (e.g., stalking, reckless endangerment, coercion). Wash Rev. Code §§ 9.41.040(1), (2)(a)(i)-(ii). Persons subject to a variety of protection and no contact orders are also prohibited from possessing firearms.[7] Wash Rev. Code § 9.41.040(2)(a)(iii). Persons who have been involuntarily committed for mental health treatment may not possess firearms. Wash Rev. Code § 9.41.040(2)(a)(iv). Finally, persons under the supervision of the Washington Department of Corrections cannot possess firearms or ammunition.  Wash Rev. Code § 9.41.045.

73. Washington law also has set up an extensive system of rules to ensure these persons cannot buy firearms. For example, a person who applies to buy a pistol from a dealer must provide a laundry list of information, including his or her name, residential address, date and place of birth, driver's license number or state identification card number, and statement that the buyer is eligible under Washington law to possess the gun, as well as a description of the gun, including the make, model, caliber and manufacturer's number. Wash Rev. Code § 9.41.090(5). The dealer cannot deliver the pistol to the buyer, even if he or she is eligible to possess the gun, unless the manufacturer's number for the gun is recorded on the application and transmitted to the local police chief or sheriff where the buyer lives. *Id.* The dealer must keep a record in a book of each pistol sold, including information about the person buying the weapon (e.g., name, address, etc.) and the weapon (e.g., caliber, make, model and manufacturer's number), and the book must be signed by both the buyer and the dealer in one another's presence.

---

[7] These include sexual assault protection orders (Wash Rev. Code 7.90), stalking protection orders (Wash. Rev. Code 7.92), anti-harassment protection orders (Wash Rev. Code 10.14), and domestic violence protection orders (RCW 26.50).

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

24

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  Wash Rev. Code § 9.41.110(9)(a). The dealer is also obligated to give to the buyer a copy of a

2  pamphlet advising the buyer of legal restrictions on the use of firearms and firearms safety. Wash

3  Rev. Code § 9.41.090(5) (year).

4       74.     One of the cornerstones of Washington's firearms regulatory structure is the use

5  of background checks. Essentially all sales or transfers of firearms in Washington are subject to

6  background checks.[8] Wash. Rev. Code § 9.41.113(1). This includes not just sales by dealers, but

7  also sales or transfers at gun shows and online. *Id.* Even sales or transfers between unlicensed

8  parties must be run through a licensed dealer in order to ensure that a background check is

9  completed. Wash Rev. Code § 9.41.113(3). The purpose of the background check is simple and

10 obvious: to ensure that persons prohibited by law from possessing firearms are unable to do so.

11      75.     The Government's "temporary modification" of the USML Category I to permit

12 "any United States person" to "access, discuss, use, reproduce, or otherwise benefit from" CAD

13 files for the automated production of 3-D printed weapons quite literally nullifies the State of

14 Washington's laws prohibiting certain categories of persons from possessing firearms.

15      76.     If the "temporary modification" is left in place, the State of Washington stands to

16 suffer extreme and irreparable harm.  Persons ineligible to possess firearms under Washington

17 law will easily be able to obtain downloadable guns that they can produce at home using a 3-D

18 printer.  Washington law enforcement will have no means of detecting such weapons using

19 standard equipment such as metal detectors, and no means of tracing such weapons because they

20 have no serial numbers.

21      77.     3-D printers are widely available to the general public in Washington. For

22 example, Amazon has hundreds of 3-D printers on its website for sale to the public. In addition,

23

24        [8] The exceptions to this rule are extremely limited (e.g., transfers between immediate family members, antique firearms, to prevent imminent death or great bodily harm, etc.). RCW 9.41.113(4).

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

25

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    such printers are widely accessible at Washington colleges and universities, including the

2    University of Washington in Seattle. *See, e.g.*, https://itconnect.uw.edu/learn/workshops/3d-

3    printing-consultation/ (University of Washington); https://vcea.wsu.edu/fiz/3d-printing/

4    (Washington State University); https://www.cwu.edu/multimodal-education/3d-printing

5    (Central Washington University).

6         78.    The dangers posed by the Government's actions that will allow the imminent

7    dissemination of the technology needed to print guns is recognized by two of Washington's

8    preeminent law enforcement officers, Seattle Police Chief Carmen Best and King County Sheriff

9    Mitzi Johanknecht. As Sheriff Johanknecht attests, "Ghost guns are an extreme risk to public

10   safety that would disrupt the ability of law enforcement to conduct, solve and prevent violent

11   crimes." Ex. 2 ¶ 8.

12        79.    In sum, the Government's actions are an extreme infringement on the State of

13   Washington's sovereign right to enact and enforce its public safety laws.

14        **2.     Connecticut's Firearms Laws**

15        80.    Connecticut comprehensively regulates the possession, sale and transfer of all

16   firearms within and into the state and bans the most dangerous military-style firearms

17   completely.  It also regulates the classes of people who may lawfully possess otherwise lawful

18   firearms and prohibits individual from possessing firearms who pose the most serious threat to

19   public safety, and in some instances, themselves.

20        **a.     Connecticut's regulation of all lawful firearm owners**

21        81.    In Connecticut, people who wish to possess handguns—pistols or revolvers—

22   are required to have a valid pistol permit; an eligibility certificate to purchase pistols or

23   revolvers; an eligibility certificate to purchase long guns, or a be a police officer or one of the

24   exemption listed in law. Not everyone who wishes to have a pistol permit in Connecticut is

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

26

granted one; he or she must be a person is a suitable person to receive such permit. Conn. Gen. Stat. Ann. § 29-28. Individuals who wish to possess a pistol or revolver must satisfy basic safety training requirements. Conn. Gen. Stat. Ann. § 29-36f(b); Conn. Gen. Stat. § 29-28 (b).

### b. Connecticut's regulation of sale, purchase and transfer of possession of all firearms, even between lawful firearm owners

82.     Connecticut closely regulates the sale and transfer of all firearms, even between lawful firearm owners. In Connecticut, no person, firm or corporation shall sell, deliver or otherwise transfer any pistol or revolver to any person who is prohibited from possessing a pistol or revolver. Conn. Gen. Stat. § 29-33(a). The purchaser of a pistol or revolver must have a valid permit to carry a pistol or revolver. Conn. Gen. Stat. § 29-33(b). Compliance with these requirements is ensured by requiring all sales or transfers of pistols or revolvers in Connecticut be made through a process established by the Connecticut Department Emergency Services and Public Protection. Conn. Gen. Stat. § 29-33(c).

83.     Similarly, Connecticut regulates the sale and transfer of long guns such as rifles and shotguns. All parties to such transfers must ensure, through a process established by the Connecticut Department Emergency Services and Public Protection, that the purchaser of the long gun has a valid long gun eligibility certificate that has not been revoked or suspended. Conn. Gen. Stat. § 29-36l(f).

84.     Connecticut regulation also restricts how many firearms a person can sell as year without becoming a federally licensed firearm dealer or obtaining a permit. Conn. Gen. Stat. § 29-28.

85.     Unlike many states, Connecticut's firearm regulations extend to the sales, transfers or exchanges taking place at "gun shows." Connecticut requires that gun show sellers

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

27

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    obtain an authorization number from the Connecticut Special Licensing and Firearms Unit.

2    Conn. Gen. Stat. § 29-37g(c).

3              c.    **Connecticut's prohibition on possession of a firearm by certain persons**

4    86.    Connecticut prohibits certain persons from obtaining or possessing firearms. For

5    example, persons cannot possess firearms if they have been convicted or found not guilty by

6    reason of insanity of crimes including serious felony offenses and certain crimes committed by

7    one family member against another Conn. Gen. Stat. § 53a-217. No person convicted for a

8    Felony or a Misdemeanor crime of domestic violence involving the use or threatened use of

9    physical force or a deadly weapon may possess any firearms in Connecticut. Conn. Gen. Stat.

10   § 29-36f(b); Conn. Gen. Stat. § 29-28 (b).

11   87.    The types of crimes that render someone ineligible to possess a firearm in

12   Connecticut are wide ranging and include: 1) illegal possession of narcotics or other controlled

13   substances; 2) criminally negligent homicide; 3) assault in the third degree ; 4) Assault of a

14   victim 60 or older in the third degree; 5) threatening; 6) reckless endangerment in the first degree;

15   7) unlawful restraint in the second degree; 8) riot in the first degree; 9) riot in the second degree;

16   10) Inciting to riot; 11) stalking in the second degree; or 12) anyone who has been convicted as

17   delinquent for the commission of a serious juvenile offense, or 13) anyone who has been

18   discharged from custody within the preceding twenty years after having been found not guilty

19   of a crime by reason of mental disease or defect; 14) anyone who has been confined in a hospital

20   for persons with psychiatric disabilities within the preceding sixty months by order of a probate

21   court; 15) anyone who has been voluntarily admitted to a hospital for persons with psychiatric

22   disabilities within the preceding six months for care and treatment of a psychiatric disability and

23   not solely for alcohol or drug dependency; or 15) anyone who is subject to a firearms seizure

24

FIRST AMENDED COMPLAINT                    28          ATTORNEY GENERAL OF WASHINGTON
FOR DECLARATORY AND                                          800 Fifth Avenue, Suite 2000
INJUNCTIVE RELIEF                                              Seattle, WA 98104-3188
2:18-cv-01115-RSL                                                  (206) 464-7744

order issued pursuant to Connecticut General Statute Section 29-38c after notice and an opportunity to be heard has been provided to such person; 16) anyone who is an alien illegally or unlawfully in the United States; 17) anyone who satisfies any of the federal disqualifiers listed in Title 18 U.S.C Chapter 44. *See* Conn. Gen. Stat. § 29-28(b);  Conn. Gen. Stat. § 29-36f(b).

88.   Connecticut also prohibits a person under the age of 21 years of age from obtaining a pistol or revolver. Conn. Gen. Stat. § 29-36f(a).

### d.   Connecticut's regulation of assault weapons and machine guns

89.   Connecticut prohibits the possession of an assault weapon or any "part or combination of parts" that can be readily assembled into an assault weapon, Conn. Gen. Stat. § 53-202c unless the owner obtained a Certificate of Possession prior to January 1, 2014. Conn. Gen. Stat. § 53-202d.

90.   Any Connecticut resident who owns a fully automatic weapon or machine gun is required to complete a state form registering that firearm with Connecticut immediately upon receiving it, and upon an annual basis. Conn. Gen. Stat. § 53-202(g).

91.   The Government's "temporary modification" of the USML Category I to permit "any United States person" to "access, discuss, use, reproduce, or otherwise benefit from" CAD files for the automated production of 3-D printed weapons quite literally nullifies the State of Connecticut's laws prohibiting certain categories of persons from possessing firearms.

92.   If the "temporary modification" is left in place, the State of Connecticut stands to suffer extreme and irreparable harm. Persons ineligible to possess firearms under Connecticut law will easily be able to obtain downloadable guns that they can produce at home using a 3-D printer.  Connecticut law enforcement will have no means of detecting such weapons using standard equipment such as metal detectors, and no means of tracing such weapons because they have no serial numbers.

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

29

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    93.    In sum, the Government's actions are an extreme infringement on the State of

2    Connecticut's sovereign right to enact and enforce its public safety laws.

3    **3.    Maryland's Firearms Laws**

4    94.    The State of Maryland has one of the most robust firearms regulatory regimes in

5    the country. For instance, Maryland prohibits certain categories of persons from buying or

6    possessing a firearm. This includes minors under the age of 21, and persons previously convicted

7    of certain serious crimes, including crimes of violence. Md. Code Ann., Pub. Safety § 5-133.

8    Persons who have been involuntarily committed to a mental health facility, or are under the

9    protection of a court-appointed guardian, or have been found incompetent to stand trial, or are

10   addicted to a controlled dangerous substance, or are subject to a protective order are all

11   prohibited from possessing a firearm as well. *Id.*

12   95.    Sales and other transfers of firearms in Maryland are extensively regulated to

13   ensure that prohibited persons are unable to obtain a weapon. A person seeking to purchase, rent,

14   or receive a handgun must first obtain a handgun qualification license. Md. Code Ann., Pub.

15   Safety § 5-117.1. To obtain such a license, applicants must, among other things, make a sworn

16   statement that they are not prohibited under federal or State law from possessing a handgun, pass

17   a fingerprint-based background check, and complete an approved firearms safety training course.

18   *Id.* Further, a person must submit a firearm application before the person purchases, rents, or

19   transfers a handgun in Maryland.  Md. Code Ann., Pub. Safety §§ 5-117, 5-118. That transaction

20   must be executed within 90 days of the application's approval and must be reported to the State

21   Police, including a description of the firearm and its serial number. Md. Code Ann., Pub. Safety

22   § 5-123. Firearm dealers are required to maintain records of every transaction, including the

23   name and address of the purchaser, a precise description, including make, model, caliber, and

24   serial number of each firearm acquired or sold, and the date of sale.  Md. Code Ann., Pub. Safety

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

30

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  § 5-145. Further, persons moving to Maryland from out-of-state must register their firearms with

2  the State Police, which requires the applicant to submit information such as their name, address,

3  and Social Security number, as well as the make, model, and manufacturer's serial number of

4  the firearm. Md. Code Ann., Pub. Safety § 5-143.

5       96.     Maryland also prohibits the possession of certain types of firearms. Assault

6  weapons, including assault pistols, may not be bought, possessed, sold, or transported into the

7  State. Md. Code Ann., Crim. Law § 4-303. Detachable magazines with a capacity of more than

8  ten rounds of ammunition are also prohibited from being bought, sold, or possessed. Md. Code

9  Ann., Crim. Law § 4-305.

10       97.     Maryland's carefully constructed regulatory regime will be upended if the

11  Government's action is permitted to stand. Persons currently prohibited from possessing

12  firearms would be able to easily circumvent Maryland law by simply manufacturing a gun on a

13  3-D printer. The firearms thus produced will be unregistered, unmarked, and virtually

14  untraceable, directly harming Maryland's interest in a well-regulated firearms market and

15  potentially leading to an increase in violent crime.

16       **4.**     **New Jersey's Firearms Laws**

17       98.     New Jersey not only has statutes related to the purchase and possession of guns,

18  but also laws relating to who can manufacture firearms. In New Jersey, under N.J.S.A. 2C:39-9,

19  it is illegal to manufacture a weapon without being registered or licensed to do so. And N.J.S.A.

20  2C:39-10 makes it a crime to knowingly violate the regulatory provision relating to the

21  manufacturing of firearms in N.J.S.A. 2C:58-1, which provides that every manufacturer of

22  firearms shall register with the proper State authorities. Yet Defense Distributed's codes would

23  enable individuals to manufacture guns, without a license, using a 3D printer at home, no matter

24  what state law says – and indeed, founder Cody Wilson has celebrated this result.

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

31

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

99.     New Jersey also has an extensive system of rules for people purchasing firearms. A person must obtain a firearms purchaser identification card before purchasing, receiving, or otherwise acquiring a firearm. Under N.J.S.A. 2C:58-3(c), the following people are prohibited from obtaining a purchaser identification card, and thus prohibited from purchasing firearms:  those who have been convicted of crimes and disorderly persons offenses involving acts of domestic violence (N.J.S.A. 2C:58-3(c)(1)); those who are drug dependent (N.J.S.A. 2C:58-3(c)(2)); those who are confined for mental disorders to hospitals, mental institutions or sanitariums (N.J.S.A. 2C:58-3(c)(2)); those who suffer from a physical defect or disease that would make it unsafe for him to handle firearms (N.J.S.A. 2C:58-3(c)(3)); those who have been confined for a mental disorder (N.J.S.A. 2C:58-3(c)(3)); those who are alcoholics and are unable to produce proof demonstrating that they no longer suffer from that particular disability in a manner that would interfere with or handicap them in the handling of firearms (N.J.S.A. 2C:58-3(c)(3)); juveniles (N.J.S.A. 2C:58-3(c)(4)); those for whom the issuance of a permit to purchase a handgun or firearms purchaser identification card would not be in the interests of the public health, safety, or welfare (N.J.S.A. 2C:58-3(c)(5)); those who are subject to restraining orders issued pursuant to the "Prevention of Domestic Violence Act" prohibiting them from possessing firearms (N.J.S.A. 2C:58-3(c)(6); those who were adjudicated delinquent for offenses which, if committed by an adult, would constitute a crime involving the unlawful use or possession of weapons, explosives, or destructive devices (N.J.S.A. 2C:58-3(c)(7)); those who had a firearm seized pursuant to the Prevention of Domestic Violence Act (N.J.S.A. 2C:58-3(c)(8)); and those who are named on the consolidated Terroristic Watchlist maintained by the Terrorist Screening Center administered by the Federal Bureau of Investigation (N.J.S.A. 2C:58-3(c)(9)). And New Jersey bans all assault weapons. N.J.S.A. 2C:39-5(f).

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

32

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

100.    Finally, New Jersey law prohibits "certain persons" from purchasing, owning, possessing, or controlling any and all firearms under N.J.S.A. 2C:39-7(b), due to their prior convictions for aggravated assault, arson, burglary, escape, extortion, homicide, kidnapping, robbery, aggravated sexual assault, sexual assault, bias intimidation, endangering the welfare of a child, stalking, or a crime involving domestic violence.  Those persons face a mandatory term of imprisonment with at least five years of parole ineligibility if they purchase, own, possess, or control a firearm. N.J.S.A. 2C:39-7(b).

### 5.    New York's Firearms Laws

101.    For over a century, in order to promote public safety, New York law has regulated the possession and use of guns and has prohibited certain persons from obtaining or possessing firearms. *See* NY Penal Law §§ 265.00, 265.01, 265.20(a)(3), 400.00; *Kachalsky v. Cty. of Westchester*, 701 F.3d 81, 84 (2012), cert. denied, 133 S. Ct. 1806 (2013). For example, New York licenses the possession of "firearms," which are defined, as a general matter, as any pistol or revolver; a shotgun having one or more barrels less than eighteen inches in length; a rifle having one or more barrels less than sixteen inches in length; and any assault weapon. *See* NY Penal Law §§ 265.01, 265.20(a)(3), 400.00. These measures remain the law today.

102.    Licenses are limited "to those over twenty-one years of age, of good moral character, without a history of crime or mental illness, and 'concerning whom no good cause exists for the denial of the license.' " *Kachalsky v. County of Westchester*, 701 F.3d 81, 86 (quoting PL § 400.00(1).); NY Penal Law §§ 265.00, 265.01, 265.20(a)(3), 400.00. Persons subject to a variety of protection orders are also prohibited from maintaining licenses. NY Penal Law § 400.00(1); NY Criminal Procedure Law § 530.14; Family Court Act §842-a.

103.    Every license application triggers an investigation into the applicant by local law enforcement, including an investigation into the applicant's mental health history.

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

33

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

PL § 400.00(4); *Kachalsky*, 701 F.3d at 87. Firearms subject to licensure must be disclosed to and registered with licensing officials. N.Y. Penal Law § 400.00(7) (mandating that each license "specify the weapon covered by calibre, make, model, manufacturer's name and serial number, or if none, by any other distinguishing number or identification mark . . . .").

104.    New York has also enacted specific criminal prohibitions on the possession of rifles and shotguns by certain mentally ill individuals.  PL §§ 265.01(6), 265.00(16). Penal Law § 265.01(6), enacted in 1974, provides that "a person who has been certified not suitable to possess a rifle or shotgun . . . and refuses to yield possession of such rifle or shotgun upon the demand of a police officer" is guilty of criminal possession of a weapon in the fourth degree.  Id. § 265.01(6). Law enforcement is authorized to take firearms "possessed by such person."

105.    New York's Secure Ammunition and Firearms Enforcement Act of 2013 (SAFE Act) generally restricts the transfer and possession of "assault weapons"—defined, as a general matter, as rifles, shotguns, and pistols that are (1) semiautomatic, (2) in the case of a pistol or rifle, able to accept a detachable ammunition magazine, and (3) equipped with at least one feature on an enumerated list of military style features. Penal Law § 265.00(22).[1]  Possession of a prohibited assault weapon constitutes the Class D felony of Criminal Possession of a Weapon in the Third Degree. Id. § 265.02(7)-(8)[9].

106.    The Government's "temporary modification" of the USML Category I to permit "any United States person" to "access, discuss, use, reproduce, or otherwise benefit from" CAD files for the automated production of 3-D printed weapons quite literally nullifies the New York's laws prohibiting certain categories of persons from possessing firearms. If the "temporary

---

[9] The Act does not prohibit possession of any firearm that was lawfully possessed before the law's effective date of January 15, 2013. See Penal Law § 265.00(22)(g)(v). Persons who lawfully possessed a banned assault weapon at that time may continue to do so, but must register the weapon with the Superintendent of the State Police. *Id*. § 400.00(16-a).]\

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

34

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   modification" is left in place, the New York stands to suffer extreme and irreparable

2   harm. Persons ineligible to possess firearms under New York law will easily be able to obtain

3   downloadable guns that they can produce at home using a 3-D printer. New York law

4   enforcement will have no means of detecting such weapons using standard equipment such as

5   metal detectors, and no means of tracing such weapons because they have no serial numbers.

6           **6.     Oregon's Firearms Laws**

7           107.    Oregon law also limits the availability and manufacture of firearms to protect the

8   public safety and in the exercise of its police powers. Or. Rev. St. 166.170(1) provides: "[e]xcept

9   as expressly authorized by state statute, the authority to regulate in any matter whatsoever the

10  sale, acquisition, transfer, ownership, possession, storage, transportation or use of firearms or

11  any element relating to firearms and components thereof, including ammunition, is vested solely

12  in the Legislative Assembly." Under this authority, the Oregon Legislature enacted Or. Rev. St.

13  166.410, which states that "[a]ny person who manufactures or causes to be manufactured within

14  this state, or who imports into this state, or offers, exposes for sale, or sells or transfers a handgun,

15  short-barreled rifle, short-barreled shotgun, firearms silencer or machine gun, otherwise than in

16  accordance with [the Oregon statutes] is guilty of a Class B felony."

17          108.    Thus, Oregon law prohibits certain persons from obtaining or possessing

18  firearms. For example, Oregon law prohibits certain felons, certain individuals under the

19  jurisdiction of juvenile court, certain individuals with will mental illnesses and certain persons

20  subject to stalking orders from possession firearms. Or. Rev. St. 166.250; Or. Rev. St. 166.255.

21  Under Or. Rev. St. 166.470(1), it is unlawful to knowingly and intentionally sell, deliver or

22  otherwise transfer a firearm to such persons.

23          109.    Oregon law also has set up an extensive system of rules to ensure unauthorized

24  persons cannot buy firearms. For example, with certain exceptions (for example, transfers to

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

35

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    family members), only a gun dealer may transfer a firearm. Or. Rev. St. 166.435(2). A person

2    who applies to buy a handgun from a dealer must provide valid government identification

3    bearing a photograph and date of birth, and the dealer must complete a transaction record with

4    the signature of the purchaser. This transaction record much include the federal firearms license

5    number of the dealer, the business name of the dealer, the place of transfer, the name of the

6    person making the transfer, the make, model, caliber and manufacturer's number of the handgun

7    and the type, the social security number of the purchaser, and the issuer and identification

8    number of the identification presented by the purchaser. The dealer must also obtain the

9    thumbprints of the prospective purchaser and contact the Department of State Police

10   ("Department") to conduct a criminal background check. Or. Rev. St. 166.412; Or. Rev. St.

11   166.418.

12       110.   Oregon law also requires a request for a criminal background check to transfer a

13   gun at a gun show. Or. Rev. St. 166.433(2); Or. Rev. St. 166.438.

14       **7.    Massachusetts' Firearms Laws**

15       111.   Massachusetts carefully regulates the possession, licensing, and use of firearms

16   and other inherently dangerous weapons. Among the goals of these laws is limiting access to

17   deadly weapons by persons who may inflict harm – be it negligently or intentionally – on

18   themselves or others. These laws also recognize that criminal use of firearms is a significant

19   problem, that guns should be registered and traceable in the event of theft or criminal misuse,

20   and that possession of firearms should be limited to responsible persons who meet all

21   requirements for licensure. *See, e.g.*, *Commonwealth v. Reyes*, 464 Mass. 245, 250 (2013); *Jupin*

22   *v. Kask*, 447 Mass. 141, 153-154 (2006)

23

24

FIRST AMENDED COMPLAINT                          36                    ATTORNEY GENERAL OF WASHINGTON
FOR DECLARATORY AND                                                          800 Fifth Avenue. Suite 2000
INJUNCTIVE RELIEF                                                              Seattle, WA  98104-3188
2:18-cv-01115-RSL                                                                 (206) 464-7744

112.    Under Massachusetts law,[10] a person may not possess or carry a firearm without obtaining a license from the appropriate licensing authority. Persons may not obtain a license to carry a firearm if they: (1) have committed certain offenses, including violent crimes and laws regulating the use, possession, or sale of a controlled substance; (2) have been committed to a hospital or institution for mental illness, or alcohol or substance misuse, subject to limited exceptions; (3) were younger than 21 years old at the time of submitting an application; (4) are currently subject to an order for suspension or surrender of firearms in connection with an abuse prevention order; (5) have an outstanding arrest warrant in any state or federal jurisdiction; (7) have been dishonorably discharged from the armed forces of the United States; (8) are a fugitive from justice; or (9) have renounced their United States citizenship. M.G.L. c. 140, § 131(d).

113.    A licensing authority also may deny a person a license to carry firearms if the licensing authority determines that the person is unsuitable for a license based on: (i) reliable and credible information that the applicant or licensee has exhibited or engaged in behavior that suggests that, if issued a license, the applicant or licensee may create a risk to public safety; or (ii) existing factors that suggest that, if issued a license, the applicant or licensee may create a risk to public safety. M.G.L. c. 140, § 131(d).

114.    Anyone who wishes to sell, rent, or lease firearms must apply for and obtain a license. Such licenses are valid for three years. No license may issue until an investigation into the applicant's criminal history has been completed. A licensee must record all sales of firearms to include a complete description of the firearm (including the make and type of firearm) and the person purchasing the firearm (including the person's sex, residence, and occupation). The police

---

[10] The Massachusetts-specific allegations contained herein constitute a summary of some of the most relevant provisions of Massachusetts law. It is not an exhaustive or complete list of all relevant statutes, regulations, or other provisions.

1   may inspect the premises of a licensee at all times. M.G.L. c. 140, §§ 122-124. Reports of all

2   transactions must be made by licensees to Massachusetts's Department of Criminal Justice

3   Information Services with information that includes the make, model, serial number, caliber,

4   barrel length, and gun surface finish. 803 C.M.R. 10.00.

5       115.    It is unlawful to manufacture a firearm in Massachusetts or to deliver a firearm

6   to a dealer in Massachusetts without a serial number permanently inscribed on a visible metal

7   surface of the firearm. M.G.L.  269, § 11E.

8       116.    Anyone who purchases or obtains a firearm from any source other than a licensed

9   dealer must, within seven days of receiving the firearm, report in writing to the Commissioner

10  of the Massachusetts Department of Criminal Justice Information Services the name and address

11  of the seller or donor and the buyer or donee, together with a complete description of the firearm,

12  including the caliber, make, and serial number. M.G.L. c. 140, § 128B.

13      117.    Only handguns that meet the safety and performance standards expressed in state

14  law and regulations, including protection against accidental discharge and explosion upon firing,

15  may be sold. M.G.L. c. 140D, § 123, clauses 18 to 20. The Secretary of the Massachusetts

16  Executive Office of Public Safety and Security has compiled an approved firearms roster,

17  pursuant to M.G.L. 140, § 131-3/4 and 501 C.M.R. 7.00.

18      118.    It is unlawful to sell, offer for sale, transfer, or possess any weapon, capable of

19  discharging a bullet or shot, that is not detectable as a weapon or potential weapon by x-ray

20  machines commonly used at airports or walk-through metal detectors. M.G.L. c. 140, § 131N.

21      119.    The sale, transfer, or possession of an "Assault weapon," as defined in M.G.L. c.

22  140, § 121, is prohibited. M.G.L. c. 140, § 131M.

23      120.    All firearms that are used in the commission of a crime must be traced by the

24  licensing authority for the city or town in which the crime took place. M.G.L. c. 140, § 131Q.

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

38

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1            **8.**     **Pennsylvania's Firearms Laws**

2            121.     Pennsylvania, like the other states, also has a robust system of state firearms laws

3 designed to keep the public safe and that would be undermined if the Government's action is

4 allowed to stand. Section 6105 of the Pennsylvania's Firearms Act mandates that any person

5 who has been convicted of certain enumerated offenses inside or outside of Pennsylvania

6 "regardless of the length of sentence" or whose conduct meets certain specified criteria "shall

7 not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control,

8 sell, transfer or manufacture a firearm in this Commonwealth." 18 Pa. C.S. § 6105(a). The

9 definition of "firearm" in section 6105 "shall include" any weapons which are "designed to or

10 may readily be converted to" expel any projectile by the action of an explosive or the frame or

11 receiver of any such weapon. 18 Pa. C.S. § 6105(i). The "downloadable guns" that Defense

12 Distributed promises to make available constitutes a "firearm" under this section of the Firearms

13 Act because it is a weapon that is designed and, by 3D printing, "may readily be converted to"

14 expel bullets by an explosive. *Id.* Depending on the underlying offense or criteria, violation of

15 section 6105, by individuals who shall not possess, use, control, sell, transfer or manufacture the

16 Defendants' firearm in the Commonwealth is a second degree felony or first or third degree

17 misdemeanor. 18 Pa. C.S. § 6105(a)(1). Each firearm wrongly possessed by a felon constitutes

18 a separate offense.

19            122.     By law, the State Police "shall have the responsibility to administer the provisions

20 of" Pennsylvania's Uniform Firearms Act, and are assigned certain specific duties thereunder.

21 18 Pa. C.S. § 6111.1.(a), (b). Among these duties, the State Police must: (1) review criminal

22 histories, delinquency histories, and mental health histories of potential firearms' purchasers or

23 transferees; make all reasonable efforts to identify the legal owner of any firearm confiscated or

24 recovered by law enforcement; (3) establish a telephone number for inquires by licensed firearms

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

39

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    manufacturer, importers, and dealers; and (4) provide information regarding the firearms laws

2    and firearms safety. 18 Pa. C.S. § 6111.1

3        123.    Section 6106 of the Firearms Act mandates, with limited exceptions, that, outside

4    of one's home or "fixed place of business," firearms may not be carried in the Commonwealth

5    "without a valid and lawfully issued license."  18 Pa. C.S. § 6106(a).  Violation of this section

6    constitutes a third degree felony unless the unlawful carrier of the firearm is "eligible" to have a

7    valid license, in which case the violation is a first degree misdemeanor.  *Id.*

8        124.    Under section 6109 of the Firearms Act, a "license to carry a firearm" is required

9    to carry a concealed firearm "on or about one's person or in a vehicle throughout this

10   Commonwealth."  18 Pa. C.S. § 6109(a).  In order to apply for a concealed carry license, you

11   must be "21 years of age or older" and the application itself must be "uniform throughout this

12   Commonwealth" and only "on a form prescribed by the Pennsylvania State Police."   18 Pa. C.S.

13   § 6109(b),(c).  In filling out the application, the licensee must identify one of the following

14   reasons for applying for a firearm license: "self-defense, employment, hunting and fishing, target

15   shooting, gun collecting or another proper reason."  18 Pa. C.S. § 6109(c).

16       125.    Applicants must also sign and date the following statement under penalty of

17   perjury, certifying that they have "never been convicted of a crime that prohibits [them] from

18   possessing or acquiring a firearm under Federal or State law," are "of sound mind," and "have

19   never been committed to a mental institution."  *Id.* Applicants must also authorize the relevant

20   law enforcement officials to research all records necessary to verify the certification and promise

21   to "promptly notify" them if they are issued a license but later "knowingly become ineligible to

22   legally possess or acquire firearms." *Id.*

23       126.    Then, before a license is issued, the sheriff must "conduct [an] investigation" of

24   the applicant including an investigation of the applicant's "record of criminal conviction,"

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

40

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

whether or not the applicant "is under indictment for or has ever been convicted of a crime punishable by imprisonment exceeding one year," and has a "character and reputation" such that the applicant "will not be likely to act in a manner dangerous to public safety."  18 Pa. C.S. § 6109(d).  The sheriff must also "conduct a criminal background, juvenile delinquency and mental health check." *Id*

127.   As can be seen, these various requirements and background checks serve to keep Pennsylvanians safe by keeping guns out of the hands of those who should not have access to them. This system, however, will be effectively nullified if those ineligible to buy or possess firearms can avoid the legal prerequisites for lawful possession by simply printing an untraceable gun at home or elsewhere.

**9.    District of Columbia's Firearms Laws**

128.   The District of Columbia, like the States, has a comprehensive statutory scheme regulating the possession, licensing, and registration of firearms. Certain types of weapons are prohibited entirely.

129.   District of Columbia law prohibits certain persons from registering firearms.[11] For example, persons cannot register firearms if they have been acquitted by reason of insanity within the last five years, or have been voluntarily or involuntarily committed to a mental hospital or institution in that time. D.C. Code § 7-2502.03. Other persons prohibited from registering firearms include persons convicted of a felony, persons with a history of violent behavior, under indictment for a crime of violence or a weapons offense, or convicted within the previous five years of:  (a) use, possession, or sale of any narcotic or dangerous drug; (b) assault

---

[11] Registration is a prerequisite to firearm possession and carrying in the District of Columbia. D.C. Code § 7-2502.01(a). *See also* D.C. Code § 22-4504 (license required to carry firearm within the District "either openly or concealed").

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

41

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    or threats; (c) two or more impaired driving offenses; (d) intrafamily offenses punishable as

2    misdemeanors; or (e) stalking. D.C. Code § 7-2502.03(a)(2)–(4).

3        130.    The District of Columbia also prohibits the registration of certain types of

4    firearms, including "unsafe" pistols, assault weapons, and .50 caliber firearms. D.C. Code §§ 7-

5    2502.02, 7-2501.01(3A)(A) (defining "assault weapon").

6        131.    One of the cornerstones of the District of Columbia's firearms regulatory

7    structure is the use of background checks. All persons seeking to register a firearm (or obtain a

8    license to carry concealed) are subject to background checks. D.C. Code § 7-2502.04(a); § 22-

9    4506.  The purpose of the background check is simple and obvious: to ensure that persons

10   prohibited by law from possessing firearms are unable to do so.

11       132.    The Government's "temporary modification" of the USML Category I to permit

12   "any United States person" to "access, discuss, use, reproduce, or otherwise benefit from" CAD

13   files for the automated production of 3-D printed weapons quite literally nullifies the District of

14   Columbia's laws prohibiting certain categories of persons from possessing firearms.

15       133.    If the "temporary modification" is left in place, the District of Columbia stands

16   to suffer extreme and irreparable harm.  Persons ineligible to possess firearms under District of

17   Columbia law will easily be able to obtain downloadable guns that they can produce at home

18   using a 3-D printer, and even produce guns which are explicitly prohibited in the District because

19   they are assault weapons such as the AR-15. See D.C. Code Sec. 7-2501.01(3A)(A) (defining

20   assault weapons).  District of Columbia law enforcement will have no means of detecting such

21   weapons using standard equipment such as metal detectors, and no means of tracing such

22   weapons because they have no serial numbers. In sum, the Government's actions are an extreme

23   infringement on the District of Columbia's right to enact and enforce its public safety laws.

24

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

42

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1      **10.    California's Firearms Laws**

2      134.    California's Dangerous Weapons Control Law contains a comprehensive set of

3   statutes regulating firearms. Cal. Penal Code §§ 16580, 23500.

4      135.    Ghost guns are a source of growing concern in California. They have been used

5   in at least two mass shootings in the State, one in Rancho Tehama Reserve in 2017 and one in

6   Santa Monica in 2013. Recently, federal and local law enforcement officials arrested ten suspects

7   in a Hollywood ghost gun ring that was supplying guns to criminals. One official involved in the

8   arrests noted a trend among Southern California gangs of making ghost guns, while an LAPD

9   official noted that ghost guns are "ending up in the hands of some of our most violent street

10  gangs here in Los Angeles."

11     136.    The actions taken by the Government and Defense Distributed will exacerbate

12  this problem, undermining California's firearms laws and harming the public. The following

13  allegations provide examples of the laws that would be undermined.

14     **a.    California's Unsafe Handgun Act**

15     137.    In 1999, the California Legislature enacted the Unsafe Handgun Act in response

16  to the proliferation of low-cost, cheaply made handguns that are disproportionately used in

17  crimes. *Fiscal v. City and Cty. of San Francisco*, 158 Cal. App. 4th 895, 912 (2008). Before a

18  handgun may be manufactured, imported, sold, or transferred in California, it must pass a test

19  by an independent, certified laboratory establishing that the gun satisfies certain safety

20  requirements. Cal. Penal Code § 32010. For instance, revolvers and pistols must pass a

21  drop-safety test and satisfy certain firing requirements. Cal. Penal Code §§ 31900, 31905. In

22  general and barring specific exemptions, pistols that have not been grandfathered in under the

23  Act must come equipped with chamber load indicators, magazine disconnects, and

24  microstamping technology that imprints identifying information on expended cartridge casings.

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

43

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   Cal. Penal Code § 31910(b)(4), (7).  Pistols that do not satisfy these requirements may not be

2   manufactured, imported, sold, or transferred in California. Cal. Penal Code § 32000. It is

3   improbable that any 3-D printed pistol would come under an exemption or be grandfathered in,

4   meaning it would have to comply with these requirements before it could be lawfully possessed

5   in the State.

6          138.    In 1999, the California Legislature enacted the Unsafe Handgun Act in response

7   to the proliferation of low-cost, cheaply made handguns that are disproportionately used in

8   crimes. *Fiscal*, 158 Cal. App. 4th at 912. Before a handgun may be manufactured, imported,

9   sold, or transferred in California, it must pass a test by an independent, certified laboratory

10  establishing that the gun satisfies certain safety requirements. Cal. Penal Code § 32010. For

11  instance, revolvers and pistols must pass a drop-safety test and satisfy certain firing

12  requirements. Cal. Penal Code §§ 31900, 31905. In general and barring specific exemptions,

13  pistols that have not been grandfathered in under the Act must come equipped with chamber load

14  indicators, magazine disconnects, and microstamping technology that imprints identifying

15  information on expended cartridge casings. Cal. Penal Code § 31910(b)(4), (7). Pistols that do

16  not satisfy these requirements may not be manufactured, imported, sold, or transferred in

17  California. Cal. Penal Code § 32000. It is improbable that any 3-D printed pistol would come

18  under an exemption or be grandfathered in, meaning it would have to comply with these

19  requirements before it could be lawfully possessed in the State.

20         139.    Defense Distributed's CAD files allow criminals to easily thwart these

21  requirements. And law abiding citizens who use those files to make a handgun using a 3-D

22  printer run the risk of violating state law, since any handgun printed and assembled (i.e.,

23  manufactured) would be illegal unless it was made for submission and testing purposes to

24  comply with the Unsafe Handgun Act.

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

44

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

### b.   California regulates machine guns, assault rifles, and large-capacity magazines

140.   California prohibits the manufacture and possession of military-style firearms and large capacity magazines. It is a felony to manufacture a machinegun or assault rifle or convert a firearm into a machinegun or assault weapon. Cal. Penal Code § 30600, 32625; *see also* Cal. Penal Code §§ 30510, 30515. It is also a crime to manufacture magazines that hold more than ten rounds. Cal. Penal Code §§ 16740, 16150, 32310.

141.   Upon information and belief, Defense Distributed intends to post CAD files that would allow these prohibited military-style weapons to be manufactured within California in contravention of California law.

### c.   California regulates the purchase, sale, and transfer of firearms

142.   California also addresses gun violence and crime through a comprehensive scheme regulating the sale and transfer of firearms. These laws ensure that firearms sales and transfers are overseen by licensed firearms dealers. Cal. Penal Code §§ 26500, 28050. Employees of these firearms dealers must pass a background check, and the dealers must conducted business in designated buildings (with exceptions for gun shows). Cal. Penal Code §§ 26915, 26805. Among other important laws, licensed firearms dealers implement California's ten-day waiting period laws. Cal. Penal Code §§ 26815, 27540. These laws prevent prohibited persons from acquiring firearms and ensure that purchasers have a cooling-off period, which reduces violent crime and suicide.

143.   The CAD files that Defense Distributed intends to post promote evasion of these protections.

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

45

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

**d.     California law prohibits certain persons from possessing firearms**

144.     California law prohibits many classes of people from possessing firearms. By way of illustration, minors may not possess handguns or live ammunition. Cal. Penal Code §§ 29610, 29650. Those convicted of a felony, or who have an outstanding warrant for a felony, may not possess any firearm. Cal. Penal Code § 29800. Those convicted of certain misdemeanors, including domestic violence and threatening public officials, may not possess firearms. Cal. Penal Code § 29805. And those who are receiving inpatient treatment for a mental disorder or who have communicated a threat of physical violence to their licensed psychotherapist may not possess firearms. Cal. Welf. & Inst. Code § 8100.

145.     The Government's "temporary modification" of the USML Category I to permit "any United States person" to "access, discuss, use, reproduce, or otherwise benefit from" CAD files will remove regulatory barriers in place that prevent these prohibited classes from obtaining firearms.

**11.     Colorado's Firearms Laws**

146.     Colorado regulates the possession, sale, and transfer of firearms within the state, including by requiring background checks for firearms transfers between private individuals and at gun shows. Colo. Rev. Stat.  §§ 18-12-11; 12-26.1-101. The state also bans certain dangerous weapons and prohibits certain categories of persons from purchase or possession of a firearm. Colo. Rev. Stat. §§ 18-12-102(1); 18-12-108.5(1); 18-12-108(1).

147.     Like many states, Colorado prohibits concealed carry of firearms without a permit, Colo. Rev. Stat. § 18-12-105, and also prohibits members of the general populace from carrying firearms on school grounds, Colo. Rev. Stat. §§ 18-12-105.5, 18-12-214(3), or from carrying firearms in public buildings equipped with security screening. § 18-12-214(4). Because they have few metal parts, can be acquired by ineligible individuals without a background check,

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

46

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    and are virtually untraceable, printable firearms can be used to evade all of these statutory

2    restrictions.

3          148.   Colorado prohibits outright the possession of firearm silencers, machine guns,

4    short shotguns, short rifles, and ballistic knives. Colo. Rev. Stat. § 18-12-102(1).

5          149.   Under Colorado law, individuals under the age of eighteen are generally

6    prohibited from possessing handguns, Colo. Rev. Stat. § 18-12-108.5(1)(a), and certain previous

7    offenders are generally barred from firearm possession altogether. Colo. Rev. Stat.

8    § 18-12-108(1). Individuals subject to civil protection orders may not possess or attempt to

9    purchase or receive a firearm while the protection order is in effect, Colo. Rev. Stat.

10   § 18-6-803.5(1)(c), and in fact must generally surrender any firearms in their possession within

11   24 hours of being served with a qualifying order. Colo. Rev. Stat. § 18-1-1001(9).

12         150.   To effectuate these provisions and other similar restrictions on firearm

13   possession, Colorado requires virtually all private firearms sales, including those at gun shows,

14   to be preceded by a background check.  Colo. Rev. Stat. §§ 18-12-112; 12-26.1-101.

15         151.   The "temporary modification" will undermine Colorado's efforts to prevent the

16   proliferation of dangerous weapons and to ensure that those ineligible to possess firearms under

17   state law are not able to obtain them.  Rather than purchasing a firearm from a dealer or private

18   individual, which transfer would generally require a background check, an individual ineligible

19   to legally possess a firearm could simply purchase a 3D printer, download the plans, and

20   manufacture an untraceable firearm at home within a matter of hours. This safety risk is of

21   particular concern to Colorado, in light of the history of tragic mass shootings in the State,

22   including shootings that have taken place on school grounds. Examples include the shooting at

23   Columbine High School in 1999, which claimed the lives of 12 students and one teacher, as well

24   as the lives of the two shooters. In 2012, a mass shooting at an Aurora, Colorado movie theater

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND                     47
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

1    claimed the lives of 12 additional victims. Hundreds more innocent victims have been killed or

2    injured in other shooting events in Colorado's recent history.

3        **12.    Delaware's Firearms Laws**

4        152.    Delaware protects the public by prohibiting machine guns, the irresponsible sales

5    of firearms, and the unauthorized possession and use of firearms by certain categories of persons

6    who constitute dangerously high levels of risk to others. Delaware's scheme to provide this

7    protection is rendered entirely ineffective if the Government's "temporary modification" is

8    permitted to proceed. Delaware will be substantially and irreparably harmed if it is unable to

9    enforce its laws to protect individuals in Delaware from these risks and ensure public safety and

10   security.

11       153.    Delaware restricts the possession of firearms by several categories of individuals

12   through the crime Possession of a Deadly Weapon by a Person Prohibited, with some narrow

13   exceptions. *See* 11 *Del. C.* § 1448. Persons convicted of felony offenses in Delaware or

14   elsewhere, persons who have been civilly committed due to a serious mental illness and are a

15   danger to themselves or others, those convicted of drug offenses, those convicted of crimes of

16   domestic violence or who are subjects of a Protection from Abuse Order, those who fail to appear

17   for court when charged with a felony, and those who possess illegal drugs and firearms at the

18   same time are all prohibited from possessing firearms by Delaware law. Delaware has

19   determined that each of these categories of individuals create an unreasonably high risk of danger

20   if permitted to possess a firearm. A conviction under this statute, where the person's prohibited

21   status is based on a recent prior conviction, requires a mandatory minimum period of

22   incarceration of 3 years or longer in prison. 11 *Del. C.* § 1448 (e). The Government's proposed

23   action subverts Delaware's judgment and ignores the high risk to people living, working, and

24   visiting Delaware.

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

48

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

154.    Delaware requires criminal history background checks as a precondition, again with narrow exceptions, to the sale of any firearm in the State of Delaware by licensed or unlicensed sellers or transferors. 11 *Del. C.* §§ 1448A, 1448B.  This requirement will be entirely frustrated if the Government's course of action is permitted to proceed. The Government's action assist with transfers in violation of Delaware law and therefore substantially undermines Delaware's compelling state interests.

155.    In Delaware, it is also a crime to give a firearm to a person prohibited, 11 *Del. C.* § 1454, to unlawfully permit a minor access to a firearm, 11 *Del. C.* § 1456, and to possess a machine gun or any weapon adaptable for use as a machine gun, 11 *Del. C.* § 1444. The Government's action obviates Delaware's statutory protections, muddles an important enforcement paradigm, and creates an unnecessary conflict with state law.

156.    Each of these vital, protective measures designed to keep the Delaware public safe and secure are vitiated if the Government's actions are implemented.  Long-standing regulations designed to foster community safety are rendered meaningless if any person can turn on a computer and 3-D printer in the privacy of their home and cheaply and quickly manufacture a fully-functioning firearm. Lacking any serial number, Delaware will be unable to trace these firearms. Because they are made of non-metallic components, these firearms will easily evade detection in public spaces. The Government's action in encouraging and facilitating the violation of Delaware laws not only constitutes a gross encroachment on Delaware's constitutional and sovereign authority to exercise reasonable and long-respected police powers, it puts people in Delaware at unacceptable levels of unjustified risk.

### 13.    Hawaii's Firearms Laws

157.    Hawaii's firearm death rate – 4.5 deaths per 100,000 persons in 2016 – is very low compared to other states, and Hawaii's extensive scheme of firearm regulation is likely part

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

49

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1   of the reason. *See* National Center for Health Statistics, Firearm Mortality by State,

2   https://www.cdc.gov/nchs/pressroom/sosmap/firearm_mortality/firearm.htm.   Hawaii   law

3   requires persons to obtain a permit prior to acquiring a firearm by purchase, gift, inheritance,

4   bequest, or in any other manner. Hawaii Revised Statutes ("HRS") § 134-2(a) (2011 & Supp.

5   2017). The process to obtain a permit involves a 14-day waiting period, a criminal background

6   check, fingerprinting and photographing, disclosure of the applicant's name, address, sex, height,

7   weight, date of birth, place of birth, country of citizenship, social security number, alien or

8   admission   number,   and   information   regarding   the   applicant's   mental   health   history.

9   HRS § 134-2(b) & (e). The applicant must sign a waiver allowing access to the applicant's

10  mental health records. HRS § 134-2(c). The applicant generally must be 21 years of age or more.

11  HRS § 134-2(d). Prior to receiving a permit for a pistol or revolver, the applicant must complete

12  an approved hunter education course or a firearm safety or training course. HRS § 134-2(g).

13      158.   Hawaii law also requires firearms brought into the state and firearms acquired

14  in-state pursuant to HRS § 134-2 to be registered within five days of arrival or acquisition.  HRS

15  §134-3(a) & (b). The following information must be provided during registration:  the name of

16  the manufacturer and importer; model; type of action; caliber or gauge; serial number; and

17  source, including name and address of the prior registrant.  HRS § 134-3(b).  If the firearm does

18  not have a serial number, the permit number must be engraved upon the receiver portion of the

19  firearm. *Id.* The person registering is subject to fingerprinting and photographing, as well as a

20  criminal background check.  HRS § 134-3(a).

21      159.   Hawaii law prohibits possession of firearms and ammunition by certain classes

22  of individuals, including: fugitives from justice; persons prohibited from possessing firearms or

23  ammunition under federal law; persons under indictment or complaint; convicted felons; persons

24  convicted of a crime of violence or illegal sale of drugs; persons under treatment for addiction

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

50

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

to drugs or alcohol; persons acquitted of a crime by reason of mental disease, disorder, or defect; persons diagnosed with a significant behavioral, emotional, or mental disorder, or treated for organic brain syndromes; certain persons under age 25 who were adjudicated by the family court; minors under treatment for addiction to drugs or alcohol, who are fugitives from justice, or who were found not responsible due to mental disease, disorder, or defect; and persons subject to a restraining order or order for protection. HRS § 134-7(a)-(e).

160.    Hawaii law also prohibits certain classes of firearms and firearm components, including:  assault pistols, automatic firearms, short-barreled rifles, sawed-off shotguns, mufflers, silencers, bump stocks, multiburst trigger activators, trigger cranks, and large capacity magazines for pistols in excess of 10 rounds.  HRS § 134-8; 2018 Haw. Sess. Laws Act 157, §1.

161.    Hawaii law further enables the seizure of firearms upon disqualification:  HRS § 134-13 (revocation of any permit or license by issuing authority or by a court for good cause); HRS § 134-7(f) (restraining order may include immediate surrender of firearms); HRS § 134-7.3 (seizure upon admission to psychiatric facility or emergency or involuntary hospitalization); HRS § 134-7.5 (immediate seizure of firearms in domestic abuse situations by responding police officers).

162.    All of these regulations could be circumvented and effectively nullified if persons may use CAD files to produce firearms on 3-D printers.  Hawaii's strong interest in protecting public safety will be severely harmed.

**14.    Illinois's Firearms Laws**

163.    The State of Illinois recognizes that regulation of the possession, carriage, sale, transfer, and manufacture of firearms is vital to promote and protect the health, safety, and welfare of the public. *See Horsley v. Trame*, 808 F.3d 1126, 1132 (7th Cir. 2015) ("[I]t is clear that Illinois has an important and compelling interest in its citizens' safety" and in "protecting

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

51

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1   the public from firearms violence."). Illinois has exercised its police power and enacted a

2   comprehensive regulatory and criminal scheme governing the possession and acquisition of

3   firearms, *see* 430 ILCS 65/0.01 *et seq.*, 720 ILCS 5/24-1; the public carriage of firearms, *see* 430

4   ILCS 66/1 *et seq.*, 720 ILCS 5/24-1; and the sale, delivery, or manufacture of firearms, *see* 720

5   ILCS 5/24-1, 24-3.

6          164.   The Illinois Firearm Owner's Identification Card Act establishes a licensure

7   system that identifies persons who are not qualified to possess firearms within the State. Among

8   other reasons, an individual is ineligible for a license to possess a firearm if he has been convicted

9   of a felony, has been a patient in a mental health facility within the past five years, is subject to

10  an existing order of protection prohibiting him from possessing a firearm, has been convicted of

11  battery, assault, or aggravated assault within the last five years, has been convicted of domestic

12  battery, has been involuntarily admitted into a mental health facility, is a person with an

13  intellectual or developmental disability, or is prohibited from possessing or acquiring firearms

14  by any Illinois or federal statute. 430 ILCS 65/4, 65/8. If an individual becomes ineligible during

15  the licensure period, the Illinois State Police shall revoke his license and require him to disclose

16  and dispose of the firearms in his possession. 430 ILCS 65/8, 65/9.5. To ensure continued

17  compliance with these eligibility requirements, Illinois imposes notification requirements on

18  circuit court clerks, medical professionals, law enforcement officers, certain state officials, and

19  school administrators. 430 ILCS 65/8.1.

20         165.   The Illinois Firearm Concealed Carry Act is a comprehensive statutory licensure

21  regime for public carriage of firearms. In addition to satisfying enumerated eligibility

22  requirements, applicants for this license must not pose a danger to themselves, others, or the

23  public safety, and law enforcement agencies may submit objections to applicants on these

24  grounds. 430 ILCS 66/10, 66/15, 66/25. As part of the licensure process, the applicant must

FIRST AMENDED COMPLAINT                    52          ATTORNEY GENERAL OF WASHINGTON
FOR DECLARATORY AND                                          800 Fifth Avenue, Suite 2000
INJUNCTIVE RELIEF                                             Seattle, WA 98104-3188
2:18-cv-01115-RSL                                                 (206) 464-7744

1  complete a firearms training course and the Illinois State Police conducts a comprehensive

2  background search of the applicant. 430 ILCS 66/35, 66/75. Additionally, Illinois will issue a

3  concealed carry license to nonresidents only if their home States have a regulatory scheme

4  governing ownership, possession, and carriage that is substantially similar to the regime

5  established in Illinois. 430 ILCS 66/40(b). As part of its comprehensive scheme, Illinois law

6  restricts the places where a firearm may be legally carried by a licensee. 225 ILCS 10/7; 430

7  ILCS 66/65; 720 ILCS 5/24-1(a)(10); 89 Ill. Admin. Code § 402.8(i).

8      166.    Illinois also regulates the sale or delivery of firearms, requiring a waiting period

9  after an application to purchase a firearm has been made; restricting the sale of firearms to

10 minors, individuals with certain criminal convictions, individuals addicted to narcotics,

11 individuals who have been a patient in a mental health institution in the last five years, and

12 individuals with an intellectual disability; and prohibiting the sale of firearms containing parts

13 from certain nonhomogeneous metals. 720 ILCS 5/24-3.

14     167.    Additionally, Illinois law provides that it is a felony to manufacture machine

15 guns, rifles and shot guns of a certain length, and certain types of ammunition.  720 ILCS 5/24-

16 1(a)(7), 24-2.2.

17     168.    The Government's actions severely undermine Illinois's ability to enforce this

18 comprehensive regulatory and criminal regime regarding the possession, carriage, sale, and

19 manufacture of firearms. This, in turn, poses an unacceptable and serious risk to the public

20 health, safety, and welfare.

21     **15.    Iowa's Firearm Laws**

22     169.    The State of Iowa enacted comprehensive regulation to govern the acquisition,

23 possession, and use of firearms to bar access to these weapons by persons who lack the maturity

24 or judgment to safely possess and use these weapons and to bar possession by those who pose a

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

53

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1 | danger to others.

2 | 170. Iowa regulates acquisition of pistols and revolvers by requiring a government-

3 | issued permit to acquire these weapons and by providing criminal penalties for acquiring or

4 | transferring these weapons without a permit.[12] Iowa Code §724.15 and §725.16. Issuance of this

5 | permit requires query of the national instant criminal background check and proof of identity.

6 | Iowa Code §724.17. Persons who are under the age of twenty-one, are convicted felons, have

7 | been convicted of a misdemeanor crime of domestic violence, or who are subject to protective

8 | orders or barred under federal law from shipping, transporting, possessing or receiving a firearm

9 | are ineligible to receive a permit to acquire pistols and revolvers. Iowa Code §724.15(1).

10 | 171. Iowa law generally bars the carrying of concealed dangerous weapons anywhere,

11 | and carrying a pistol, revolver, or loaded firearm within a city. Iowa Code §724.4. Iowans may

12 | avoid this prohibition by applying for and receiving a permit to carry weapons. Iowa Code

13 | 724.4(4)(i). Nonprofessional permits to carry weapons may be issued to persons twenty-one

14 | years of age and older. Iowa Code 724.8. Persons seeking a permit are required to file an

15 | application, undergo a criminal history background check, and complete a firearm safety course.

16 | Iowa Code §724.7-10. Professional permits may be issued to peace officers and other

17 | security-related professionals over 18 years of age. Iowa Code Section 724.6. People holding a

18 | valid permit to carry weapons may use this permit to acquire pistols and revolvers in lieu of the

19 | permit to acquire issued under Iowa Code 724.15.

20 | 172. Iowa limits access to pistols and revolvers by persons under the age of twenty-

21 | one by providing a general ban and criminal penalties to those who sell, loan, give or make

22 | available these weapons to persons under twenty-one. Iowa Code §724.22. This statute provides

23 | _____

24 | [12] Permits are not required for transfers between federally licensed firearms dealers for certain antique firearms, transfers on the behalf of a law enforcement agency, and transfers between close relatives. Iowa Code §724.15(2).

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

54

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

exemptions to this general ban, allowing minors to possess pistols and revolvers under the direct supervision of their parents, guardians, spouses or instructors. *Id.*

173.    Iowa law seeks to limit unsupervised access to rifles and shotguns by minors by providing criminal penalties to those who sell, loan, give, or make these weapons available to persons under eighteen years of age without the consent of their parent, guardian, or adult spouse. Iowa Code §724.22. Iowa provides criminal and civil liability for parents and guardians who store loaded firearms in a manner likely to allow access without permission by a minor under fourteen or allows possession of a pistol or revolver by a person under fourteen years of age. Iowa Code §724.22(6) & (7).

174.    Iowa law limits access of firearms to potentially dangerous persons by providing a felony offense for convicted felons who possess, receive, transport, or have dominion or control over firearms. Iowa Code §724.26. This statute extends this firearm bar to persons previously convicted of misdemeanor crimes of domestic violence and those subject to certain domestic protective orders. Iowa Code §726(2)(a).

175.    Iowa law limits access to weapons by persons with diminished capacity. Iowa Code §724.31 requires Iowa courts that adjudicate a person as a mental defective or commit a person to a mental institution to report that adjudication to the Iowa Department of Public Safety for inclusion in the National Instant Criminal Background Check database as provided by 18 U.S.C. §922(d)(4) and (g)(4). Iowa Code §724.31.

176.    Iowa law prohibits persons from being issued a permit to carry weapons who are addicted to the use of alcohol, have been convicted of within the previous three years of a serious or aggravated misdemeanor assault charge, or where probable cause exists from documented actions to believe the person is likely use a weapon unlawfully. Iowa Code §724.8.

177.    The above-cited protections under Iowa's current weapons statutes will be

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

55

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    severely weakened if people are able to bypass this system by downloading plans and using a

2    3-D printer to make their own firearms.

3        **16.    Minnesota's Firearms Laws**

4        178.    In the exercise of its police powers, the State of Minnesota has regulated firearms

5    in the interest of public safety.

6        179.    For example, Minnesota law prohibits some people from using or possessing

7    firearms, including certain individuals who have been convicted of a felony; have a mental

8    illness or developmental disability; have been convicted of controlled substance crimes; have

9    been committed to a treatment facility due to chemical dependency; have been convicted of

10   domestic-violence-related crimes; or are subject to an order for protection. Minn. Stat.

11   § 624.713, subd. 1. It is also unlawful to knowingly transfer a firearm to such persons.

12   Minn. Stat. §§ 624.7133, 624.7141.

13       180.    Minnesota similarly regulates the sale or transfer of certain firearms. For

14   example, an individual seeking to acquire a firearm may apply for a transferee permit by

15   providing personal information to local law enforcement. Minn. Stat. § 624.7131, subd. 1. Local

16   law enforcement then conducts a background check to ensure that the individual is not prohibited

17   from possessing a firearm.  *Id.*, subd. 2, 4.Within seven days, law enforcement will either issue

18   a transferee permit or provide written notification that the application has been denied with the

19   specific reason for the denial. *Id.*, subd. 5.

20       181.    If the proposed purchaser of certain firearms does not have a transferee permit,

21   the proposed seller and the prospective buyer must submit a report to local law enforcement with

22   personal information of the proposed transferee and the address of the seller's business.  Minn.

23   Stat. §624.7132, subd. 1. Local law enforcement then conducts a background check to ensure

24   that the individual is not prohibited from possessing a firearm. *Id.*, subd. 2-3. The seller may not

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

56

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    transfer the firearm to the buyer for at least five business days after the report is delivered to

2    local law enforcement. *Id.*, subd. 4.

3         182.    Minnesota also regulates the carrying of firearms in public.  For example, subject

4    to some exceptions, rifles, shotguns, and semiautomatic military-style assault weapons cannot

5    be carried in public places. Minn. Stat. § 624.7181. And pistols may not be carried in public

6    without a permit to carry. Minn. Stat. § 624.714, subd. 1. Applications for permits to carry are

7    submitted in person to local law enforcement.  *Id.*, subd. 2-3. The applicant must be at least 21

8    years old, trained in the safe use of a pistol, not prohibited from possessing a firearm, not listed

9    in the criminal gang investigative data system, and not a danger to themselves or the public. *Id.*;

10   Minn. Stat. § 624.714, subd. 6(a)(3). The applicant must also provide personal information, a

11   photocopy of their training certificate, and a photo identification. *Id.*, subd. 3(a), (c). Local law

12   enforcement then conducts a background check to ensure that the individual is not prohibited

13   from possessing a firearm. *Id.*, subd. 4.

14        183.    Even with a permit to carry, an individual carrying a firearm may not remain in a

15   private establishment if they know that the establishment has made a reasonable request that

16   firearms not be brought onto the premises. *Id.*, subd. 17. Employers and educational institutions

17   may also restrict the carrying or possession of firearms. *Id.*, subd. 18. Individuals also may not

18   carry while under the influence of alcohol or controlled substances. Minn. Stat. § 624.7142.

19        184.    In addition, Minnesota prohibits certain firearms, like for example, machine guns,

20   short-barreled shotguns, and Saturday night special pistols, which are pistols made with material

21   that has a melting point of less than 1,000 degrees Fahrenheit, material that has an ultimate tensile

22   strength of less than 55,000 pounds per square inch, or powdered metal having a density of less

23   than 7.5 grams per cubic centimeter.  Minn. Stat. § 609.67; Minn. Stat. § 624.712, subd. 4;

24   Minn. Stat. § 624.716.

185.    Proliferation of untraceable, undetectable 3-D printed guns is a threat to public safety in Minnesota.  By allowing this proliferation, Defendants undermine Minnesota's firearm laws and the safety of Minnesota residents.

**17.    North Carolina's Firearms Laws**

186.    North Carolina has a broad statutory scheme to regulate firearms that is intended to keep firearms out of the hands of persons ineligible to possess them. Unlike other states, North Carolina also has specific laws precluding the manufacture and possession of a variety of automatic firearms and firearms that do not have serial numbers or identifying marks. These firearms are of the type that can be produced on a 3D printer.

187.    Under North Carolina law, it is unlawful for any person, firm, or corporation to sell, give away, transfer, purchase, or receive, at any place within the state, any pistol, unless the purchaser or receiver obtains a license or permit from the sheriff of the county in which the purchaser or receiver resides, or the purchaser or receiver possesses a valid North Carolina issued concealed carry permit. This requirement to obtain a permit prior to the transfer of a pistol applies not only to a commercial transaction, but also between private individuals or companies throughout North Carolina. A permit expires after five years, and a violation of the pistol permit law is a Class 2 misdemeanor under North Carolina law. N.C.G.S. § 14-402(a).

188.    North Carolina law also requires permits to receive or purchase a handgun. N.C.G.S. § 14-402. The county sheriff is only authorized to issue a permit after a county resident submits an application establishing that the applicant is of good moral character and that the person, firm, or corporation wants to possess the weapon for one of the following purposes:

a.    The protection of the applicant's home, business, person, family, or property;

b.    Target shooting;

c.    Collecting; or

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

58

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

d.  Hunting

Additionally, the sheriff must conduct a background check to verify, before the issuance of a permit, that the person is not ineligible to purchase or possess a handgun. N.C.G.S. §14-404(a).

189.    A handgun permit cannot be issued if the applicant, *inter alia*: (1) has been convicted in any state or federal court of a felony or has currently pending felony charges; (2) is a fugitive from justice; (3) is addicted to drugs; (4) has been adjudicated incompetent or committed to a mental institution; (5) is an alien illegally or unlawfully in the United States; (6) has been dishonorably discharged from the U.S. armed forces; or (7) is subject to certain restraining and no-contact orders. N.C.G.S §14-404(c).

190.    A court in any domestic violence protective order can also prohibit a party from possessing, purchasing, or receiving a firearm for a time fixed in the order, the violation of which is a felony. N.C.G.S. § 50B-3.1.

191.    Every dealer in pistols and other weapons mentioned in Article 52A of the N.C. General Statutes must keep accurate records of all sales, including the name, place of residence, date of sale, etc., of each person, firm, or corporation to whom sales are made. N.C.G.S. § 14-406, N.C.G.S. § 14-408.

192.    It is unlawful for any person, firm, or corporation to manufacture, sell, give away, dispose of, use or possess machine guns, submachine guns, or other like weapons. A machine gun or submachine gun means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. This includes the frame or receiver of any such weapon, any combination of parts designed and intended for use in converting a weapon into a machine gun, and any combination of parts from which a machine gun can be assembled if such parts are in the possession or under the control of a person. N.C.G.S. § 14-409.

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

59

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    193.    It is unlawful for any person to manufacture, assemble, possess, store, transport,

2    sell, offer to sell, purchase, offer to purchase, deliver, give to another, or acquire any weapon of

3    mass death and destruction. A weapon of mass death and destruction includes any firearm

4    capable of fully automatic fire; any shotgun with a barrel length less than eighteen inches, or an

5    overall length of twenty-six inches; a rifle with a barrel length of less than sixteen inches or an

6    overall length of less than twenty six inches; any muffler or silencer for any firearm, any

7    combination of parts designed or intended for use in converting a device into any weapon

8    described above, and from which a weapon of mass death and destruction may readily be

9    assembled. A device which could convert a semi-automatic firearm into one capable of full

10   automatic fire would be in violation of this statute. N.C.G.S. § 14-288.8.

11   194.    It is unlawful for any person to alter, deface, destroy, or remove the permanent

12   serial number, manufacturer's identification plate, or other permanent distinguishing number or

13   identification mark from any firearm with the intent to conceal or misrepresent the identity of

14   the firearm. Additionally, it is unlawful for any person to knowingly sell, buy, or be in possession

15   of any firearm on which the permanent serial number, manufacturer's identification plate, or

16   other permanent distinguishing number or identification mark has been altered, defaced,

17   destroyed, or removed for the purpose of concealing or misrepresenting the identity of the

18   firearm. Such a violation is punishable as a felony. N.C.G.S. § 14-160.2.

19   195.    North Carolina's compelling state interests in keep the public safe by keeping

20   guns out of the hands of those ineligible to possess them and to restrict the manufacture and

21   possession of automatic and untraceable weapons would be irreparably harmed if the

22   Government's action is allowed to stand.

23   **18.    Rhode Island's Firearms Laws**

24   196.    Rhode Island law establishes procedures for the lawful possession of firearms as

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

60

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   well as certain restrictions regarding the manufacturing and possession of firearms. These

2   procedures and restrictions are designed "to prevent criminals and certain other persons from

3   acquiring firearms generally and handguns in particular without at the same time making unduly

4   difficult such acquisition for other members of society." *Gadomski v. Tavares*, 113 A.3d 387,

5   298 (R.I. 2015) (quoting *State v. Storms*, 308 A.2d 463, 466 (R.I. 1973)).

6        197.    In Rhode Island, with certain exceptions, "[n]o person shall, without a license or

7   permit . . . carry a pistol or revolver in any vehicle or conveyance or on or about his or her person

8   whether visible or concealed[.]" R.I. Gen. Laws § 11-47-8.

9        198.    The licensing authorities of any city or town in Rhode Island shall issue a license

10  or permit to a person over the age of twenty-one (21) to carry a concealed firearm upon his or

11  her person, provided the applicant has "good reason to fear an injury to his or her person or

12  property or has any other proper reason for carrying a pistol or revolver, and that he or she is a

13  suitable person to be so licensed." R.I. Gen. Laws § 11-47-11(a). In such a case, the applicant

14  must comply and satisfy certain qualifications. *See* R.I. Gen. Laws § 11-47-15. Furthermore, the

15  Attorney General of Rhode Island "may issue a license or permit to any person twenty-one (21)

16  years of age or over to carry a pistol or revolver, whether concealed or not, upon his or her person

17  upon a proper showing of need[.]" R.I. Gen. Laws § 11-47-18(a).

18       199.    Rhode Island General Laws § 11-47-5(a) also provides that "[n]o person shall

19  purchase, own, carry, transport, or have in his or her possession any firearm," if that person has

20  been convicted of a "crime of violence," is a fugitive from justice, been convicted or pled nolo

21  contendere to an offense punishable as a felony, or has been convicted or pled nolo contendere

22  to certain other enumerated offenses. *See* R.I. Gen. Laws § 11-47-5(a)(4)(i)-(iv). In addition,

23  "[n]o person shall purchase, carry, transport, or have in his or her possession any firearm" if that

24  person is subject to a domestic abuse restraining order, *see* R.I. Gen. Laws § 11-47-5(b), nor

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

61

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1   shall any person subject to community confinement or subject to electronic surveillance or

2   monitoring as a condition of parole "purchase, carry, transport, or have in his or her possession

3   any firearm." R.I. Gen. Laws § 11-47-5(c). Upon pleading nolo contendere or upon conviction

4   of certain enumerated offenses, a defendant must "surrender all firearm(s) owned by the

5   defendant, or in the defendant's possession, care, custody, or control[.]" R.I. Gen. Laws

6   § 11-47-5.3(a).

7        200.    In addition to the above paragraph, Rhode Island law also provides that "[n]o

8   person who is under guardianship or treatment or confinement by virtue of being a mental

9   incompetent, or who has been adjudicated or is under treatment or confinement as a drug addict,

10  shall purchase, own, carry, transport, or have in his or her possession or under his or her control

11  any firearm." R.I. Gen. Laws § 11-47-6.

12       201.    A person, firm or corporation in Rhode Island may make and sell a machine gun

13  or parts for the same only if issued a license by the Attorney General of Rhode Island. R.I. Gen.

14  Laws § 11-47-19.

15       202.    Rhode Island law also provides that "[n]o person shall change, alter, remove, or

16  obliterate the name of the maker, model, manufacturer's number . . . [or] other mark of

17  identification on any firearm."  R.I. Gen. Laws § 11-47-24(a).  Additionally, "[n]o person shall,

18  absent recertification paperwork, knowingly receive, transport, or possess any firearm which has

19  had the name of the maker or manufacturer's serial number removed, altered, or obliterated, or

20  if there is no name of the maker, model, or manufacturer's number then any other mark of

21  identification of any firearm." R.I. Gen. Laws § 11-47-24(b). Violation of these provisions is a

22  felony. R.I. Gen. Laws § 11-27-24(g).

23       203.    Rhode Island also recently enacted a so-called "red flag" law, which provides a

24  procedure where a petition may be filed in a court of law "requesting an extreme risk protection

FIRST AMENDED COMPLAINT                          62              ATTORNEY GENERAL OF WASHINGTON
FOR DECLARATORY AND                                                      800 Fifth Avenue. Suite 2000
INJUNCTIVE RELIEF                                                          Seattle, WA 98104-3188
2:18-cv-01115-RSL                                                              (206) 464-7744

1    order that shall enjoin the respondent from having in their possession, custody or control any

2    firearms and shall further enjoin the respondent from purchasing, receiving or attempting to

3    purchase or receive any firearms while the order is in effect." *See* R.I. Gen. Laws § 8-8.3-3.

4         204.    The Government Defendants' "temporary modification" of the USML

5    Category 1 to allow "any United States person" to "access, discuss, use, reproduce, or otherwise

6    benefit from" CAD files for the automated production of 3-D printed weapons obfuscates,

7    hinders, and contravenes Rhode Island law regarding the regulation of firearms.   Persons

8    currently prohibited from possessing firearms – or persons allowed to possess a firearm(s) after

9    proper licensing, qualification, and/or medical review – will be able to circumvent and violate

10   Rhode Island law by manufacturing such a weapon on a 3D printer.  Moreover, by virtue of their

11   production on a 3D printer, these weapons will be unmarked, without identifying marks, and

12   untraceable in violation of Rhode Island law. The Government's actions will cause irreparable

13   injury to Rhode Island and its citizens if allowed to stand.

14        **19.    Vermont's Firearms Laws**

15        205.    Vermont also has a comprehensive statutory scheme for regulating the possession

16   and sale of firearms.

17        206.    Vermont prohibits certain persons from possessing firearms, including persons

18   who have been convicted of a violent crime, persons who have been adjudicated to pose "an

19   extreme risk of causing harm to himself or herself or another person," and persons under 21

20   years of age who are not law enforcement officers, active or veteran members of the military, or

21   who have not satisfactorily completed an approved hunter safety course and been approved by

22   the state Commissioner of Fish and Wildlife. 13 Vt. Stat. Ann. §§ 4017, 4020, 4053. Moreover,

23   a person in Vermont who is adjudicated to be in need of treatment, under the State's mental

24   health laws, is barred by federal law from possessing a firearm. *See* 13 Vt. Stat. Ann., tit. 13, §

FIRST AMENDED COMPLAINT                          63                ATTORNEY GENERAL OF WASHINGTON
FOR DECLARATORY AND                                                      800 Fifth Avenue. Suite 2000
INJUNCTIVE RELIEF                                                         Seattle, WA  98104-3188
2:18-cv-01115-RSL                                                            (206) 464-7744

4824; tit. 18, § 7617a; 18 U.S.C. § 922(g)(4). A mental health based prohibition on firearm ownership cannot be removed absent a judicial ruling that the person is no longer in need of treatment under Vermont law. *See* Vt. Stat. Ann., tit. 13, § 4825. And courts in Vermont routinely impose prohibitions on firearm ownership as conditions of probation for released adult and juvenile offenders. *See* Vt. Stat. Ann., tit. 28, § 252(b)(8); tit. 33, § 5262(b)(4).

207.    Vermont recently enacted a universal background check system which requires nearly all firearm transfers to be facilitated by a licensed firearms dealer who must determine that the proposed transferee is not prohibited by state or federal law from possessing a firearm. Vt. Stat. Ann., tit. 13, § 4019.

208.    Vermont law also authorizes law enforcement officers to remove any firearms in the immediate possession or control of a person being arrested or cited for domestic assault if removal is necessary to protect he safety of the officer, the alleged victim, the arrestee, or a family member of the arrestee or alleged victim. 13 Vt. Stat. Ann., tit. 13, § 1048.

209.    Vermont law also imposes significant record-keeping requirements related to the transfer of firearms. Firearms retailers are required to "record the sale . . . of all revolvers and pistols, and the purchase by them all secondhand revolvers and pistols . . . [which] shall include the date of the transaction, the marks of identification of the firearm, including the manufacturer's name, the caliber, model and manufacturer's number of the firearm." Vt. Stat. Ann., tit. 13 § 4006. These records must be preserved for six years and made available for inspection by "all enforcement officers to inspect the same at all reasonable times." *Id.*

210.    These laws were enacted to protect the people of Vermont safe by keeping deadly weapons out of the hands of persons who are most likely to use them to cause others harm and to facilitate law enforcement investigations into gun-related crime. The Government's

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

64

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   "temporary modification" will cause Vermont irreparable harm by undermining the State of

2   Vermont's ability to enforce these laws and protect its residents.

3       **20.     Virginia's Firearms Laws**

4       211.    While Virginia's system of firearm regulation is not as comprehensive as that of

5   some of her sister states, even Virginia's regulatory framework would be compromised under

6   the Government's position. There are entire categories of persons that Virginia has determined

7   are prohibited from possessing various firearms. These categories would be obviated if the

8   Government's "temporary modification" of the USML Category I allows "any United States

9   person" to "access, discuss, use, reproduce, or otherwise benefit from" CAD files for the

10  automated production of 3-D printed weapons.

11      212.    For example, it is a violation of Virginia law for any person who has been

12  acquitted on a charge of any felony and certain misdemeanors and ordinances by reason of

13  insanity and committed to the custody of the Commissioner of Behavioral Health and

14  Developmental Services to purchase, possess, or transport any firearm. Va. Code § 18.2-308.1:1.

15  Such an individual may never again possess a firearm unless he successfully petitions the court

16  for the restoration of that right. *Id.* Similarly, it is unlawful for any person who has been

17  adjudicated incapacitated from purchasing, possessing, or transporting a firearm. Va. Code

18  § 18.2-308.1:2. Again, such an individual may never again possess a firearm unless he

19  successfully petitions the court for the restoration of that right. *Id.* It is unlawful for any person

20  who has been involuntarily admitted to a facility or ordered to mandatory outpatient treatment

21  for a myriad of reasons from ever again purchasing, possessing, or transporting a firearm unless

22  he successfully petitions the court for the restoration of that right. Va. Code § 18.2-308.1:3.

23      213.    Nor is mental acuity the only basis for restricting firearm possession. Virginia

24  prohibits those persons convicted of felonies, certain misdemeanors, and those adjudicated

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

65

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    delinquent of certain offenses from knowingly and intentionally possessing or transporting any

2    firearm. Va. Code § 18.2-308.2. With limited exceptions, these are lifetime bans unless one

3    successfully petitions the court for restoration of that right. *Id.*

4         214.    There are other, more limited circumstances in which firearm possession is

5    restricted, but the context of these circumstances demonstrates the importance of ensuring that

6    certain individuals do not have access to firearms. Individuals subject to protective orders may

7    not transport firearms. Va. Code § 18.2-308.1:4. Perhaps most importantly, those subject to

8    protective orders arising from family abuse may not even possess a firearm while the order is in

9    effect. *Id.* Further, those convicted of two misdemeanor drug possession offenses within

10   36 months are prohibited from transporting handguns until they complete a conviction-free

11   period of five years. Va. Code § 18.2-0308.1:5. It is also unlawful, and subject to an enhanced

12   penalty, to be in possession of a firearm while simultaneously in unlawful possession of a

13   controlled substance. Va. Code § 18.2-308.4.

14        215.    In addition to possession, Virginia also prohibits an individual from bartering,

15   giving, or furnishing a firearm to those whom he knows are prohibited from possessing or

16   transporting a firearm. Va. Code § 18.2-308.2:1. Likewise, Virginia prohibits individuals from

17   furnishing handguns to minors. Va. Code § 18.2-309(B). These statutes evidence Virginia's

18   public policy of ensuring that others not facilitate prohibited persons from obtaining firearms

19   that they may not lawfully possess. The CAD files in this case run completely contrary to that

20   public policy.

21        216.    Restrictions also exist on the types of firearms allowable in Virginia. Of particular

22   relevance is the restriction against the manufacture, transfer, possession, or transportation of

23   plastic firearms. Va. Code § 18.2-308.5. "A 'plastic firearm' means any firearm . . . containing

24   less than 3.7 ounces of electromagnetically detectable metal in the barrel, slide, cylinder, frame

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

66

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

or receiver of which, when subjected to inspection by X-ray machines commonly used at airports, does not generate an image that accurately depicts its shape." *Id.*

217.    If the "temporary modification" is left in place, the Commonwealth of Virginia— home to such national security institutions as the Pentagon, the headquarters of the Central Intelligence Agency, and the Norfolk Naval Base—will be irreparably harmed, as firearms manufactured from the CAD files at issue will upend Virginia's public safety regime. Those prohibited from possessing and transporting firearms will be able to manufacture their own untraceable guns with no accountability in short order.

## V.    CAUSES OF ACTION

### Count I:
### Violation of the Administrative Procedure Act—*Ultra Vires* Conduct

218.    All of the foregoing allegations are repeated and realleged as though fully set forth herein.

219.    Under the Administrative Procedure Act (APA), a court must set "aside agency action that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

220.    The Government Defendants' enactment of a "temporary modification" of the USML Category I so as to deregulate CAD files used for the production of 3-D printed guns constitutes a final agency action that is *ultra vires* and should be set aside by the Court. Likewise, Defendants approval of the CAD files for public release and effective removal from USML Category I constitutes a final agency action that is *ultra vires* and should be set aside by the Court.

221.    The Government Defendants may only exercise the authority conferred to them by statute. Neither the AECA nor ITAR confer upon the Government Defendants the power to

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

67

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  modify the USML Category I, temporarily or otherwise, without 30 days' notice to the relevant

2  Congressional committees and without concurrence of the Defense Department.

3  222.  Upon information and belief, the Government Defendants did not provide

4  advance notice of the proposed temporary modification to the House Committee on Foreign

5  Affairs and to the Committee on Foreign Relations of the Senate, and did not receive the

6  concurrence of the Secretary of Defense, before enacting the modification on July 27, 2018.

7  223.  According to Rep. Engel, Ranking Member of the House Committee on Foreign

8  Affairs, notice of the terms of the settlement has not been provided by the President or the State

9  Department. *See* "Engel Decries State Department Policy to Allow 3-D Gun Printing," Press

10  Release (July 20, 2018), *available at* https://democrats-foreignaffairs.house.gov/news/press-

11  releases/engel-decries-state-department-policy-allow-3-d-gun-printing, attached hereto as Ex. 8.

12  224.  The Government Defendants also lack statutory authority to determine that the

13  Plaintiffs' CAD files should be removed from the Category I list and approval of the CAD files

14  for public release without following the "established procedures" for commodity jurisdiction.

15  This is especially relevant here because, in effect, the "temporary modifications" and approval

16  for public release at issue will negate—in large part—the need for final rulemaking with respect

17  to the data at issue, because once the data is on the internet, the damage to the national security

18  and public safety in the State of Washington will be irreparable.

19  225.  In addition, although ITAR allows the Deputy Assistant Secretary for Defense

20  Trade Controls to order the temporary modification of any ITAR regulation, it may do so only

21  "in the interest of the security and foreign policy of the United States." 22 C.F.R. § 126.2.

22  226.  The temporary modification enacted by DDTC on July 27, 2018 and the approval

23  of the CAD files for public release sent the same day are not in the interest of the security and

24  foreign policy of the United States, and, upon information and belief, Government Defendants

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

68

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  have made no determination otherwise.

2  227.  In addition, Government Defendants lack statutory authority to permit "any

3  United States person" to "access, discuss, use, reproduce, or otherwise benefit" from CAD files

4  for the automated production of 3-D printed weapons, as this would allow "any United States

5  person" to manufacture, possess, and sell firearms made from the files.  As such, this provision

6  would violate numerous provisions of Washington's statutory scheme regulating firearms,

7  including laws that promote public safety by keeping guns out of the hands of minors, persons

8  convicted of violent felonies, the mentally ill, and persons subject to various protection and no-

9  contact orders. For similar reasons, this provision would also violate numerous provisions of the

10  federal Gun Control Act, including 18 U.S.C. § 922(x)(2) (prohibiting handgun possession by

11  minors), § 922(g) (prohibiting firearm possession by felons and domestic abusers), and § 922(p)

12  (prohibiting the manufacture of undetectable firearms).  Government Defendants lack any

13  authority to amend, rescind, or waive any portion of these laws.

14  228.  For these reasons, the State of Washington is entitled to a declaration that the

15  "temporary modification" is invalid, and an injunction requiring Government Defendants to

16  rescind the temporary modification and restore the status quo until a proper administrative

17  process is completed.

18  **Count II:**

19  **Violation of the Administrative Procedure Act—Action Not in Accordance with Law**

20  229.  All of the foregoing allegations are repeated and realleged as though fully set

21  forth herein.

22  230.  Under the APA, a court must set aside agency action that is "not in accordance

23  with law." 5 U.S.C. § 706(2)(A).

24  231.  As alleged above, upon information and belief, Government Defendants did not

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

69

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

give 30 days' notice to the required Congressional Committees or receive concurrence from the Secretary of Defense before enacting the "temporary modification" of USML Category I to remove the CAD files at issue from ITAR regulation on July 27, 2018 as well as the approval of the CAD files for public release on the same day.

232.     Upon information and belief, Government Defendants also did not follow established procedures before granting Defense Distributed an exception to ITAR jurisdiction.

233.     Furthermore, it is unlawful for Government Defendants to permit "any United States person" to "access, discuss, use, reproduce, or otherwise benefit from" CAD files for the automated production of 3-D printed weapons, as this purports to allow prohibited individuals to possess, manufacture, and sell firearms made using such files, in violation of existing state and federal law.

234.     For these reasons, the State of Washington is entitled to a declaration that the "temporary modification" is invalid, and an injunction requiring Government Defendants to rescind the temporary modification and restore the status quo until a proper administrative process is completed.

## Count III:
## Violation of the Administrative Procedure Act—Arbitrary and Capricious Agency Action

235.     All of the foregoing allegations are repeated and realleged as though fully set forth herein.

236.     Under the APA, a court must set "aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," 5 U.S.C. § 706(2)(A).

237.     A court may hold that an agency action is arbitrary and capricious when the

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

70

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1   agency has failed to consider relevant evidence or articulate a satisfactory explanation for its

2   action.  An agency's departure from prior practice can serve as an additional basis for finding an

3   agency's action to be arbitrary and capricious.

4          238.    Upon information and belief, Government Defendants have provided no

5   explanation for the Government's complete reversal of its position on the CAD files at issue.

6   The Government has released no reports, studies, or analyses to explain why CAD files for the

7   automated production of 3-D printed weapons should be removed from ITAR regulation or that

8   the files should be publically released.  It appears that Government Defendants have also failed

9   to consider or acknowledge the serious national security concerns or the threat to public safety

10  posed to states, including the Plaintiff States, created by the export of the CAD files.

11         239.    Government Defendants' enactment of a "temporary modification" to exclude the

12  CAD files at issue from ITAR jurisdiction, the approval of the CAD files for public release, and

13  the agreement to permit "any United States person" to "access, discuss, use, reproduce, or

14  otherwise benefit from" the CAD files is arbitrary and capricious because the Government has

15  not offered a reasoned explanation for ignoring or countermanding its earlier factual

16  determinations.  It is also arbitrary and capricious because it is contrary to the purposes of AECA,

17  which requires the State Department to administer AECA to reduce the international trade in

18  arms and avoid destabilizing effects abroad through arms export. *See* 22 U.S.C. § 2751. It is also

19  arbitrary and capricious because it is an extreme infringement of the Plaintiff States' sovereign

20  right to exercise its police power by enacting and enforcing public safety laws that restrict certain

21  persons' possession of firearms and provide for licensing and tracking gun ownership.

22         240.    For these reasons, the Plaintiff States are entitled to a declaration that the

23  "temporary modification" is invalid, and an injunction requiring Government Defendants to

24  rescind the temporary modification and restore the status quo until a proper administrative

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL                                    71                    ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

process is completed.

## Count IV:
## Violation of the Tenth Amendment

241.    All of the foregoing allegations are repeated and realleged as though fully set forth herein.

242.    The structure and limitations of federalism allow the States great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons. The police power is a critical function reserved to the States by the Tenth Amendment.

243.    While the regulation of health and safety is primarily and historically a matter of State and local concern, the Federal Government can set uniform national standards in these areas—but only if Congress makes its intent to alter the usual constitutional balance between the States and the Federal Government "unmistakably clear" in the language of the statute.

244.    Government Defendants' enactment of a "temporary modification" to the USML permitting "any United States person" to "access, discuss, use, reproduce, or otherwise benefit from" CAD files for the automated production of 3-D printed weapons and the approval of the CAD files for public release purports to allow any U.S. citizen to manufacture and use an undetectable and untraceable weapon—regardless of their age, mental health status, or criminal history—in violation of Washington's public safety laws.

245.    Government Defendants' action infringes on the Plaintiff States' exercise of its police power and enforcement of its safety laws, including (i) prohibiting certain United States persons from possessing firearms—such as minors, persons convicted of violent felonies, the mentally ill, and persons subject to various protection and no-contact orders; (ii) regulating the acquisition and tracking the ownership of firearms; (iii) using serial numbers to trace weapons;

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

72

1    and (iv) keeping government buildings and other public places safe through the use of metal

2    detectors.

3        246.    Government Defendants were not authorized by Congress to infringe upon the

4    Plaintiff States' police power to this extreme degree, which is well outside the scope of any

5    authority delegated by AECA.   Indeed, Government Defendants failed even to follow the

6    required administrative procedures before enacting the temporary modification, including

7    providing Congress with 30 days' notice and obtaining the Secretary of Defense's concurrence.

8    Rather, Government Defendants enacted the temporary modification unilaterally on July 27,

9    2018, completely reversing the Government's previous position as to the CAD files at issue

10   while sidestepping Congressional review and flouting APA requirements.

11       247.    As such, the State of Washington is entitled to a declaration that the "temporary

12   modification" is an unconstitutional violation of the Tenth Amendment, and an injunction

13   requiring Government Defendants to rescind the temporary modification and restore the status

14   quo until a proper administrative process is completed.

15                          **VI.    PRAYER FOR RELIEF**

16       WHEREFORE, the State of Washington requests that the Court enter a judgment against

17   Defendants and award the following relief:

18            a.        Declare that the "temporary modification" of the USML Category I and

19       the approval of the CAD files for public release are unlawful and *ultra vires* agency

20       action, including to the extent it purports to permit "any United States person" to "use,

21       reproduce or otherwise benefit from" the files at issue in violation of state and federal

22       law;

23            b.        Declare that the "temporary modification" of the USML Category I and

24       approval of the CAD files for public release are an unconstitutional violation of the Tenth

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL                    73              ATTORNEY GENERAL OF WASHINGTON
                                                          800 Fifth Avenue. Suite 2000
                                                            Seattle, WA  98104-3188
                                                               (206) 464-7744

Amendment;

    c.    Declare that the "temporary modification" of the USML Category I and approval of the CAD files for public release are null and void;

    d.    Issue an injunction requiring Defendants to rescind the "temporary modification" of the USML Category I and to rescind the approval of the CAD files for public release;

    e.    Issue an injunction prohibiting Defendants and anyone acting in concert with them from taking any action inconsistent with the rescission of the "temporary modification" of the USML Category I and the rescission of the approval of the CAD files for public release;

    f.    Award the State its costs and reasonable attorneys' fees; and

    g.    Award such additional relief as the interests of justice may require.

Respectfully submitted this 2nd day of August, 2018.

ROBERT W. FERGUSON
Attorney General

*/s/ Jeffrey Rupert*
JEFFREY RUPERT, WSBA #45037
Division Chief
KRISTIN BENESKI, WSBA #45478
Assistant Attorney General
TODD BOWERS, WSBA #25274
Deputy Attorney General
JEFF SPRUNG, WSBA #23607
Assistant Attorney General
JeffreyR2@atg.wa.gov
KristinB1@atg.wa.gov
ToddB@atg.wa.gov
JeffS2@atg.wa.gov
*Attorneys for Plaintiff State of Washington*

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

74

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

GEORGE JEPSEN
Attorney General of Connecticut

*/s/ Kimberly Massicotte*
KIMBERLY MASSICOTTE, CT-04111
Associate Attorney General
*/s/ Joseph Rubin*
JOSEPH RUBIN, CT-00068
Associate Attorney General
*/s/ Maura Murphy Osborne*
MAURA MURPHY OSBORNE, CT-19987
Assistant Attorney General
Connecticut Office of Attorney General
55 Elm St.
P.O. Box 120
Hartford, CT 06141-0120
*Attorneys for Plaintiff State of Connecticut*


BRIAN E. FROSH
Attorney General of Maryland

*/s/ Julia Doyle Bernhardt*
JULIA DOYLE BERNHARDT
*/s/ Jennifer Katz*
JENNIFER KATZ
Assistant Attorneys General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, MA  21202
(410) 576-7291
jbernhardt@oag.state.md.us
jkatz@oag.state.md.us
*Attorneys for Plaintiff State of Maryland*


GURBIR GREWAL
Attorney General of New Jersey

*/s/ Jeremy M. Feigenbaum*
JEREMY M. FEIGENBAUM
Assistant Attorney General
Office of the Attorney General
Richard J. Hughes Justice Complex
25 Market Street, 8th Floor, West Wing
Trenton, NJ  08625-0080
(609) 376-2690

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

75

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Jeremy.Feigenbaum@njoag.gov
*Attorneys for Plaintiff State of New Jersey*


BARABARA D. UNDERWOOD
Attorney General of New York

*/s/ Barbara D. Underwood*
BARBARA D. UNDERWOOD
Attorney General of New York
28 Liberty Street
New York, NY 10005


MAURA HEALEY
Attorney General of Commonwealth of
Massachusetts

*/s/ Jonathan B. Miller*
JONATHAN B. MILLER
Assistant Attorney General
Office of the Massachusetts Attorney General
One Ashburton Place
Boston, MA 02108
617-963-2073
Jonathan.Miller@state.ma.us
*Attorneys for Plaintiff Commonwealth of
Massachusetts*


JOSH SHAPIRO
Attorney General of Commonwealth of
Pennsylvania

*/s/ Josh Shapiro*
JOSH SHAPIRO
Attorney General
Office of the Attorney General
Strawberry Square, 16th Floor
Harrisburg, PA 17120
(717) 787-3391
*Attorneys for Plaintiff Commonwealth of
Pennsylvania*

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

76

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1

KARL A. RACINE
Attorney General for the District of Columbia

2

/s/ Robyn Bender

3

ROBYN BENDER
Deputy Attorney General

4

Public Advocacy Division
/s/ Jimmy Rock

5

JIMMY ROCK
Assistant Deputy Attorney General

6

Public Advocacy Division
Office of the Attorney General for the District

7

of Columbia
441 4th Street N.W., Suite 630 South

8

Washington, D.C. 20001
Attorneys for Plaintiff District of Columbia

9

10

ELLEN F. ROSENBLUM
Attorney General of Oregon

11

/s/ Scott J. Kaplan

12

SCOTT J. KAPLAN, WSBA #49377
Senior Assistant Attorney General

13

Oregon Department of Justice
100 SW Market Street

14

Portland, OR 97201
(971) 673-1880

15

scott.kaplan@doj.state.or.us
Attorneys for Plaintiff State of Oregon

16

17

XAVIER BECERRA
Attorney General of California

18

/s/ Nelson R. Richards

19

NELSON R. RICHARDS
Deputy Attorney General

20

/s/ Mark Beckington
MARK BECKINGTON

21

Supervising Deputy Attorney General
/s/ Thomas Patterson

22

THOMAS PATTERSON
Senior Assistant Attorney General

23

Attorneys for the State of California

24

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

77

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

CYNTHIA H. COFFMAN
Attorney General of Colorado

*/s/ Matthew D. Grove*
MATTHEW D. GROVE
Assistant Solicitor General
Colorado Department of Law
1300 Broadway, 6th Floor
Denver, Colorado  80203
Telephone:  (720) 508-6157
FAX:  (720) 508-6041
E-Mail: matt.grove@coag.gov
*Attorneys for Plaintiff State of Colorado*


MATTHEW P. DENN
Attorney General of Delaware

*/s/ Ilona M. Kirshon*
ILONA M. KIRSHON (# 3705)
Deputy State Solicitor
State of Delaware Department of Justice
Carvel State Office Building, 6th Floor
Wilmington, DE 19801
(302) 577-8400
Ilona.kirshon@state.de.us

*/s/ Patricia A. Davis*
PATRICIA A. DAVIS (# 3857)
Deputy Attorney General
State of Delaware Department of Justice
Dover, DE  19904
(302) 257-3233
patriciaA.davis@state.de.us
*Attorneys for the Plaintiff State of Delaware*


RUSSELL A. SUZUKI
Attorney General of Hawaii

*/s/ Robert T. Nakatsuji*
ROBERT T. NAKATSUJI
Deputy Attorney General
Department of the Attorney General
425 Queen Street
Honolulu, Hawaii  96813
(808) 586-1360

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

78

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Robert.T.Nakatsuji@hawaii.gov
*Attorneys for Plaintiff State of Hawaii*


LISA MADIGAN
Attorney General of Illinois

*/s/ Brett E. Legner*
BRETT E. LEGNER
Deputy Solicitor General
*/s/ Katelin B. Buell*
KATELIN B. BUELL
*/s/ Sarah A. Hunger*
SARAH A. HUNGER
Assistant Attorneys General
Office of the Attorney General
100 W. Randolph, 12th Floor
Chicago, IL 60601
blegner@atg.state.il.us
*Attorneys for Plaintiff State of Illinois*


THOMAS J. MILLER
Attorney General of Iowa

*/s/ Nathan Blake*
NATHAN BLAKE
Deputy Attorney General
Office of the Attorney General of Iowa
1305 E. Walnut St.
Des Moines, IA 50319
(515) 281-4325
nathan.blake@ag.iowa.gov
*Attorneys for the Plaintiff State of Iowa*


LORI SWANSON
Attorney General of Minnesota

*/s/ Jacob Campion*
JACOB CAMPION, MN Reg. #0391274
Assistant Attorney General
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1100
St. Paul, Minnesota 55101-2128
(651) 757-1459
jacob.campion@ag.state.mn.us

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

79

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1      *Attorneys for the Plaintiff State of Minnesota*

2

     JOSHUA H. STEIN
3      Attorney General of North Carolina

4      */s/ Sripriya Narasimhan*

     SRIPRIYA NARASIMHAN
5      Deputy General Counsel

     North Carolina Department of Justice
6      114 W. Edenton St.

     Raleigh, NC 27603
7      *Attorneys for Plaintiff State of North Carolina*

8

     PETER F. KILMARTIN
9      Attorney General of Rhode Island

10      */s/ Michael W. Field*

     MICHAEL W. FIELD
11      */s/ Susan Urso*

     SUSAN URSO
12      Assistant Attorneys General

     150 South Main Street
13      Providence, Rhode Island 02903

     (401) 274-4400
14      mfield@riag.ri.gov

     surso@riag.ri.gov
15      *Attorneys for Plaintiff State of Rhode Island*

16

     THOMAS J. DONOVAN, JR.
17      Attorney General of Vermont

18      */s/ Benjamin D. Battles*

     BENJAMIN D. BATTLES
19      Solicitor General

     Office of the Attorney General
20      109 State Street

     Montpelier, Vermont 05609-1001
21      802-828-5500

     benjamin.battles@vermont.gov
22      *Attorneys for Plaintiff State of Vermont*

23

24

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

80

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1

2

MARK R. HERRING
Attorney General of the
Commonwealth of Virginia

3

*/s/ Samuel T. Towel*

4

SAMUEL T. TOWELL
Deputy Attorney General, Civil Litigation
Office of the Attorney General of Virginia
Barbara Johns Building
202 N. Ninth Street
Richmond, VA 23219
(804) 786-6731
STowell@oag.state.va.us
*Attorney for Plaintiff Commonwealth of
Virginia*

5

6

7

8

9

10

***Pro Hac Vice* motions forthcoming for all
counsel of record not barred in the Western
District of Washington**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

81

1

## __DECLARATION OF SERVICE__

2        I hereby certify that on August 2, 2018, I electronically filed the foregoing document

3 with the Clerk of the Court using the CM/ECF system, which will serve a copy of this document

4 upon all counsel of record.

5        DATED this 2nd day of August, 2018, at Seattle, Washington.

6

7
                          */s/ Jeffrey Rupert*
                          Assistant Attorney General

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF
2:18-cv-01115-RSL

82

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA  98104-3188
(206) 464-7744