# EXHIBIT M

1

The Honorable Robert S. Lasnik

2

3

4

5

6                  **UNITED STATES DISTRICT COURT**
              **WESTERN DISTRICT OF WASHINGTON**
7                            **AT SEATTLE**

8    STATE OF WASHINGTON; STATE OF              NO. 2:18-cv-01115-RSL
     CONNECTICUT; STATE OF MARYLAND;
9    STATE OF NEW JERSEY; STATE OF NEW          PLAINTIFF STATES' REPLY IN
     YORK; STATE OF OREGON;                     SUPPORT OF THEIR MOTION FOR A
10   COMMONWEALTH OF                            PRELIMINARY INJUNCTION
     MASSACHUSETTS; COMMONWEALTH
11   OF PENNSYLVANIA; DISTRICT OF
     COLUMBIA; STATE OF CALIFORNIA;             **HEARING DATE: AUGUST 21, 2018**
12   STATE OF COLORADO; STATE OF
     DELAWARE; STATE OF HAWAII; STATE
13   OF ILLINOIS; STATE OF IOWA; STATE
     OF MINNESOTA; STATE OF NORTH
14   CAROLINA; STATE OF RHODE ISLAND;
     STATE OF VERMONT and
15   COMMONWEALTH OF VIRGINIA,

16                      Plaintiffs,
                v.
17

18   UNITED STATES DEPARTMENT OF
     STATE; MICHAEL R. POMPEO, in his
19   official capacity as Secretary of State;
     DIRECTORATE OF DEFENSE TRADE
20   CONTROLS; MIKE MILLER, in his official
     capacity as Acting Deputy Assistant Secretary
21   of Defense Trade Controls; SARAH
     HEIDEMA, in her official capacity as Director
22   of Policy, Office of Defense Trade Controls
     Policy; DEFENSE DISTRIBUTED; SECOND
23   AMENDMENT FOUNDATION, INC.; AND
     CONN WILLIAMSON,

24                      Defendants.

## I.      INTRODUCTION

The States have demonstrated that the removal of 3D-printable gun files from the U.S. Munitions List violated multiple statutory requirements and will irreparably harm the States absent preliminary relief. The Government's main response is to claim that irreparable harm will not occur. But the only evidence the Government has ever offered on this subject[1] is consistent with the States' extensive evidence establishing the profound consequences that would result from the global proliferation of undetectable, untraceable, 3D-printable weapons.

Troublingly, nothing in the Government's briefing suggests that the agency even acknowledged the implications of its deregulation, much less considered them, weighed them, and made an informed judgment. Even after President Trump tweeted that deregulating downloadable guns "doesn't seem to make much sense!", the agency has provided no reasoned justification for its actions—presumably because none exists. Rather, the Government evades the question with unsupported promises that existing criminal laws will adequately protect us, semantic gymnastics, and unhelpfully broad statements about a larger regulatory reform effort embodied in various final and proposed rules—none of which is the subject of this challenge.

This lawsuit challenges the State Department's discrete decision to reverse its years-long regulatory policy through a "Temporary Modification" and a Letter authorizing "unlimited distribution" of downloadable guns. Because the Department failed to follow binding procedural requirements, those actions were *ultra vires*. And because the Government has still failed to provide any sort of "reasoned explanation" for taking those actions, they are arbitrary and capricious. A preliminary injunction is needed to prevent drastic, irreparable harm that would otherwise result from the State Department's unconsidered and unlawful actions.

---

[1] *See* Dkt. #29-1, Ex. 4 (Aguirre Decl.).

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
2:18-cv-01115-RSL

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

## II.   ARGUMENT

### A.   Extensive, Unrebutted Evidence Shows the States Will Be Irreparably Harmed Absent a Preliminary Injunction

With no supporting authority, Defendants offer a crabbed reading of the irreparable harm requirement that would discount any injury caused by violations of existing laws—no matter how likely or predictable. No such arbitrary rule limits the availability of equitable relief. *See S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, 804 F. Supp. 2d 1045, 1063 (E.D. Cal. 2011) (enjoining Fisheries Service action due to irreparable harm likely to result from illegal poaching). The Government's self-serving rule fails to account for the real-world consequences of permitting 3D-printable gun files to be posted online. The harm the States will suffer is amply supported by extensive and unrebutted evidence, and while the most serious harm has not yet come to pass, it is far from "speculative" or "conjectural." *See* Dkt. # 43 at 19–24.

The Government also ignores reality when it argues that authorizing the unrestricted dissemination of downloadable guns via the internet "simply cannot" harm the States because AECA and the ITAR apply only to exports. Dkt. # 64 at 9–11, 12–13. As the Government itself recognized just four months ago, "the Internet has no dividing lines"[2]—once the files are released, they are available globally. The Court correctly found in issuing the TRO that a "side effect" of export regulation has been "to make it more difficult to locate and download" 3D-printable guns, and "the proliferation of these firearms will have many of the negative impacts on a state level that the federal government once feared on the international stage"—so much so that the balance of harms tips "sharply" in the States' favor. Dkt. # 23 (Order) at 6–7. This finding is borne out by the extensive, unrebutted evidence now in the record. *See* Dkt. # 43 at 19–24 & accompanying citations. The Government offers no authority for its assertion that

---

[2] Rupert Decl. Ex. 4 (Government's Motion to Dismiss) at 8, 18 (Dkt. # 44-1).

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
2:18-cv-01115-RSL

2

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

these practical effects of its deregulation must be ignored.[3] Its argument appears to conflate the irreparable harm analysis with the zone-of-interests standing test, which is easily satisfied. Dkt. # 43 at 9–10.

Without evidence, Defendants discount the serious threats the States face from *non-U.S. persons* acquiring 3D-printed weapons—persons who are not subject to federal or state criminal laws.[4] Dkt. # 64 at 12, 23; Dkt. # 63 at 21. The States' concerns about undetectability and effective law enforcement apply to guns smuggled in by air, land, or sea, and guns printed by non-U.S. persons within the States' borders. *See* Dkt. # 43 at 20–23. The Government assures us it has "determined" that posting 3D-printable firearms on the internet no longer "injure[s] the national security" (Dkt. # 64 at 12), but does not explain why it abruptly reversed its position that posting the files "would have very serious adverse impacts on the national security"[5] and offers no evidence that posting 3D-printable gun files on the internet somehow furthers the national security. The President himself tweeted that this "doesn't seem to make much sense!"

Finally, the Private Defendants argue that no harm can occur because the files are already in the "public domain," and in any event they pose no more danger than written bomb-making instructions.[6] Dkt. # 63 at 21. That ignores the breadth of the Temporary Modification, which removes from the Munitions List not only Defense Distributed's *existing* 3D-printable firearm files, but also "similar 3D printing files related to firearms" that "they or others" have already

---

[3] The cited portion of *Park Village* (Dkt. # 64 at 12) merely says it is plaintiffs' burden to show irreparable injury, which is undisputed. *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1160 (9th Cir. 2011) (affirming grant of preliminary injunction in part).

[4] *See* Dkt. # 43 at 9–10, 23–24 (describing heightened risk of terrorist attacks using undetectable weapons and harm caused by untraceable smuggled guns within States' borders).

[5] Rupert Decl. Ex. 4 (Government's Motion to Dismiss) at 6 (Dkt. # 44-1); *see also* Dkt. # 29-1, Ex. 4 (Aguirre Decl.), ¶ 35(c) (attesting that if the files were posted, "[t]errorist groups and other actors could then potentially manufacture and use such weapons against the United States or its allies").

[6] Click-and-print computer files are fundamentally different from the written word and merit far less, if any, First Amendment protection. *Infra* at 8–9.

3

created or will "continue to create" *in the future*.[7] The Private Defendants' cat-out-of-the-bag arguments fail to recognize the sweeping scope of the Temporary Modification and the severe harm that would result from the open and unlimited distribution online of new or as yet unknown 3D-printed firearm files (whether made by the Private Defendants or anyone else).[8]

## B.    The States Have Demonstrated a Strong Likelihood of Success on the Merits

### 1.    Motion to Strike

As a preliminary matter, pursuant to LCR 7(g), the States move to strike the portions of the Declaration of Defendant Sarah Heidema (Dkt. # 64-1) that go solely to the merits of whether the challenged actions were lawful: paragraphs 3–18, 20–24, and 30–32. *See* Dkt. # 52 (Order) at 2 (stating that the Court will "fashion appropriate relief" if Defendants "rely on the unproduced record" to oppose the States' motion). These portions of the declaration violate the prohibition on "litigation affidavits and '*post hoc*' rationalizations for agency action" as a basis for review. *Presidio Golf Club v. Nat'l Park Serv.*, 155 F.3d 1153, 1164 (9th Cir. 1998).

### 2.    The State Department violated the APA and acted *ultra vires*

Defendants' efforts to justify their failure to comply with binding procedural requirements do not save them from the plain facts: they hid their broad deregulation of 3D-printable gun files by "temporarily" (but in effect, permanently) modifying the Munitions List per a private settlement agreement, rather than acting aboveboard and within their authority.[9]

The State Department was statutorily required to provide 30 days' notice to Congress

---

[7] Rupert Decl. Ex. 13 (Defense Distributed's Second Amended Complaint), ¶ 44 (Dkt. # 44-1).

[8] Furthermore, files posted on the internet without prior approval are not in the "public domain" for purposes of ITAR. 22 C.F.R. § 120.11(a)(7). The State Department's regulation has kept the files out of the "public domain" since 2013 and, moreover, prevented them from becoming openly and widely accessible since then.

[9] Defendants repeatedly misrepresent the nature of this APA challenge. The States are challenging the Government's Temporary Modification and Letter as *ultra vires* agency actions on their own terms. They are *not* challenging the Settlement Agreement as such, questioning the Government's litigation strategy, or collaterally attacking any decision in the Texas case. *See* Dkt. # 63 at 8–10, 19 & n.9; Dkt. # 64 at 7, 9, 10, 14, 19, 21–22.

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
2:18-cv-01115-RSL

4

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  before removing all "3D printing files related to firearms" from the Munitions List, and it failed

2  to do so. Dkt. # 43 at 11–13. These files are "items" subject to the notice requirement. *Id*. at 12.[10]

3  The Government continues to insist otherwise,[11] but its argument is contradicted by its own cited

4  authority and previous use of the term, and by the State Department's own CJ regulation. *Id*.;

5  *see* Dkt. # 64 at 19, 20. In addition, Executive Order 13637 §1(n), which delegates the

6  President's AECA authority, provides that the Secretary of Defense must concur with changes

7  in designations of "items or categories of items." Under the Government's interpretation, that

8  would be nonsense: "categories or categories of categories." In light of this authority, which the

9  Government fails to address, its idiosyncratic definition of "item" carries little weight.[12]

10  At least the Government doesn't go so far as to adopt the Private Defendants' argument

11  that the notice requirement does not apply because the Temporary Modification's "exclusion"

12  of 3D-printable gun files from the Munitions List is not a "removal" from the Munitions List.

13  Dkt. # 63 at 17–19 (insisting that "the distinction matters" but citing no authority). This semantic

14  argument contradicts Defendants' own acknowledgments that the Temporary Modification and

15  Letter are intended to prematurely implement the non-final NPRM until it becomes final.

16  *See* Dkt. # 63 at 3; Dkt. # 64 at 22. It also disregards the permanence of internet postings, which

17  makes "temporary" deregulation impossible. *See* Dkt. # 43 at 10.

18  For largely the same reasons the notice requirement is triggered, the executive order's

19

20  [10] *See also* Rupert Decl. Ex. 9 (Sen. Menendez letter 8/8/18) (Dkt. # 44-1) (Temporary Modification was "tantamount to a permanent removal of an item from the USML"); Rep. Engel Decl. ¶ 4 & Ex. 1 (Dkt. # 43-2).

21  [11] No deference is owed here. *Skidmore* deference only applies to ambiguous statutory language. *Fox Television Stations, Inc. v. Aereokiller, LLC*, 851 F.3d 1002, 1014 (9th Cir. 2017). And then only if the agency's position is persuasive. *Price v. Stevedoring Servs. of Am., Inc.*, 697 F.3d 820, 832 (9th Cir. 2012).

22  [12] The Government's request that the Court "simply extend the TRO" so that the Government can "consider" whether to provide notice to Congress misapprehends the purpose of a TRO, which is to preserve the status quo for a "sharply limited" period until the Court can hold a hearing. Wright & Miller, 11A *Federal Practice & Procedure* § 2953 (3d ed.). The Federal Rules of Civil Procedure do not contemplate "indefinite, successive

23  extensions of temporary restraining orders." *Pan Am. World Airways, Inc. v. Flight Engineers' Int'l Ass'n, PAA Chapter, AFL-CIO*, 306 F.2d 840, 842 (2d Cir. 1962).

24

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
2:18-cv-01115-RSL

5

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    concurrence requirement is also triggered by the Temporary Modification and Letter. Dkt. # 43

2    at 13.[13] Any concurrence with the separate NPRM is irrelevant, and there is no evidence that the

3    Department of Defense specifically concurred with the global release of 3D-printable gun files—

4    an issue that first came to light in July 2018. *See* Dkt. # 43 at 4. Indeed, the Heidema declaration

5    glaringly does not mention any concurrence with the Temporary Modification (which, unlike the

6    NPRM, expressly covers 3D-printable gun files). *See* Dkt. # 64-1, ¶ 31; Dkt. # 29-1, Ex. 7.

7           Further, the State Department had no authority—and thus is entitled to no "deference,"

8    regardless of its rationale, Dkt. # 64 at 20—to use its self-promulgated "temporary modification"

9    regulation to "do what a federal statute prohibits it from doing," i.e., disregard statutory

10   procedures. *Tuan Thai v. Ashcroft*, 366 F.3d 790, 798 (9th Cir. 2004); Dkt. # 43 at 13–14.

11          As for the States' arbitrary and capricious claim, the available evidence strongly suggests

12   that the State Department failed to give due consideration to national security concerns when it

13   abruptly reversed its position with no "reasoned explanation." Dkt. # 43 at 15–17. The

14   Government fails to explain the Department's reversal of its longstanding, national-security-

15   based regulation of 3D-printable gun files. Its *only* answer is that the Temporary Modification

16   and Letter are consistent with the NPRM, which is a non-final rule. The fundamental problem is

17   that enacting these "temporary" measures to prematurely effectuate a non-final rule short-circuits

18   the entire administrative process. That is the epitome of arbitrary and capricious action.

19          The NPRM is now said to be supported by "legitimate industry concerns[.]"

20   Dkt. # 64 at 18. Such concerns do not bear on the national security, which is undoubtedly "an

21   important aspect of the problem" that must be considered, *Motor Vehicle Mfrs. Ass'n of U.S.,*

22

23          [13] The Government ignores controlling authority providing that agency actions exceeding authority granted
     by an executive order are reviewable, Dkt. #43 at 13 n.51, in favor of an out-of-circuit district court case. Dkt. #64
24   at 20 (citing *Defenders of Wildlife v. Jackson*, 791 F. Supp. 2d 96, 120 (D.D.C. 2011)). *Jackson* involved an
     executive order that expressly foreclosed judicial review, which Executive Order 13637 does not.

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
2:18-cv-01115-RSL                                        6                    ATTORNEY GENERAL OF WASHINGTON
                                                                                    800 Fifth Avenue. Suite 2000
                                                                                     Seattle, WA 98104-3188
                                                                                         (206) 464-7744

*Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983). In the absence of any evidence that the State Department grappled with the consequences of deregulating 3D-printable firearm files, it is reasonable to infer the agency has "entirely failed to consider an important aspect of the problem" and therefore acted arbitrarily and capriciously. *Id.* at 43.

### 3.    The First Amendment does not excuse the Government's APA violations

According to the Private Defendants, they have a First Amendment right to "freely . . . share" 3D-printed firearm files on the internet.[14] For two reasons, this Court should reject their attempt to literally "weaponiz[e] the First Amendment." *Janus v. Am. Fed'n of State, Cty. & Mun. Emps.*, 138 S. Ct. 2448, 2501 (2018) (Kagan, J., dissenting). First, the First Amendment is inapposite to the merits of this APA case because the Government has never asserted it as a basis for its actions. Second, even if First Amendment questions were presented, the Private Defendants' dangerous, expansive theory finds no support in the case law or common sense.

(i) *The First Amendment is irrelevant to the merits*. It is a "simple but fundamental" rule of administrative law that the propriety of agency action is judged "solely by the grounds invoked by the agency." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). Neither the court nor the other parties may "supply a reasoned basis . . . that the agency itself has not given." *Id.* at 196. However emphatically the Private Defendants invoke the First Amendment, the Government has never asserted it as a basis for the Temporary Modification or the Letter. To the contrary, the Government "continues" to maintain, as it did throughout the Texas proceedings, that its ITAR regulation never violated Defense Distributed's First Amendment rights.[15]

The Private Defendants (and other interested non-parties) may wish to inject the First Amendment into these proceedings, but the Government has declined to invoke it as a basis for

---

[14] Dkt. # 63 at 1, 15.
[15] Heidema Decl. (Dkt. # 64-1), ¶ 28.

1  the challenged actions. It therefore does not bear on the legal merits of this APA case.

2     (ii) _The First Amendment would not support the State Department's actions in any case_.

3  Even if the State Department _had_ removed 3D-printable gun files from the Munitions List to

4  avoid infringing a supposed First Amendment right to post such files online, a "decision based

5  upon such misreading of the law," _Sovich v. Esperdy_, 319 F.2d 21, 30 (2d Cir. 1963), would

6  have been arbitrary and capricious—for no such right exists. As explained by _amicus_ Everytown

7  for Gun Safety and by the Government's own prior briefing, the Private Defendants' First

8  Amendment theory is riddled with flaws. Three points bear special mention:

9     _First_, posting 3D-printable gun files online is not an expressive act entitled to First

10  Amendment protection. As the Government explained in the Texas case, "The First Amendment

11  does not apply to the export of CAD files that <u>function to automatically create a firearm or its</u>

12  <u>components</u>."[16] The purpose of posting the files is not to communicate a message to a human

13  but to "induce action" by a computer to process the code and automatically 3D-print the firearm

14  "without the intercession of the mind or the will of the recipient." _CFTC v. Vartuli_, 228 F.3d 94,

15  111 (2d Cir. 2000). The functional, mechanistic nature of the CAD files make them unlike, say,

16  a book describing _in words_ how to create a 3D-printed gun or advocating for their widespread

17  dissemination. _See, e.g._, Cody Wilson, _Come and Take It: The Gun Printer's Guide to Thinking_

18  _Free_ (2016).[17] Posting 3D-printable code online is more akin to distributing the gun itself.

19     _Second_, whatever minimal expressive content a 3D-printed firearm file may have, that

20  content falls categorically outside the First Amendment's scope because it is "integral to criminal

21  conduct." _United States v. Alvarez_, 567 U.S. 709, 717 (2012). Posting online a CAD file for

22

---

23     [16] Rupert Decl. Ex. 4 at 2 (Dkt. # 44-1) (emphasis in original, capitalizations omitted); _see also_ Br. of Amicus Curiae Everytown for Gun Safety at 4-9 (Dkt. # 47-1).

24     [17] _See also_ Dkt. # 29-1, Ex. 4 (Aguirre Decl.), ¶ 30 ("DDTC's determination does not restrict [Defense Distributed] from discussing information and ideas about 3D printing, . . . as long as such discussions do not include the export of technical data").

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
2:18-cv-01115-RSL

8

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   printing an undetectable, untraceable firearm has one clear purpose: to facilitate the unfettered,

2   widespread, unregulated manufacture of such firearms, i.e., to aid and abet violations of criminal

3   laws. Again, the files are "functional" in that they "directly facilitate the manufacture" of illegal

4   weapons.[18] Even if they contain some speech elements, then, the files squarely fit the "historic

5   and traditional categor[y]" of "speech integral to criminal conduct" that the First Amendment

6   does not protect. *Alvarez*, 567 U.S. at 717.

7       *Third*, even if 3D-printable firearm files were sufficiently speech-like to qualify for some

8   protection, their regulation under ITAR is constitutionally sound. The Ninth Circuit has

9   "repeatedly rejected First Amendment challenges to the AECA, its implementing regulations,

10  and its predecessor" statute. *United States v. Chi Mak*, 683, F.3d 1126, 1136 (9th Cir. 2012).

11  Such challenges implicate intermediate scrutiny because ITAR regulates conduct "unrelated to

12  the suppression of expression." *Id.* As the Government previously argued, ITAR "is obviously

13  not the product of government hostility toward the spread of ideas about 3D printing of firearms,

14  but rather against the very *means* to easily do so."[19] Under intermediate scrutiny, restricting the

15  export of 3D-printed firearm files easily passes muster: it "furthers an important or substantial

16  government interest" in regulating the trafficking of undetectable, unprintable firearms; that

17  interest is "unrelated to the suppression of free expression"; and the "incidental restriction on

18  alleged First Amendment freedoms is no greater than is essential to the furtherance of that

19  interest."[20]

20

21      [18] Rupert Decl. Ex. 3 at 10 (Dkt. # 44-1); *see also* Everytown Amicus Br. at 9–12 (Dkt. # 47-1).
        [19] Rupert Decl. Ex. 3 at 25 (Dkt. # 44-1).

22      [20] *Id.* at 32 (quoting *Kleinman v. City of San Marcos*, 597 F.3d 323, 328 (5th Cir. 2010)). The Government
    later took the position that strict rather than intermediate scrutiny applies, but that reversal was incorrect.

23  Rupert Decl. Ex. 4 at 6 n.7 (Dkt. # 44-1). Strict scrutiny applies only to laws that "target speech based on its
    communicative content," *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2226 (2015), not laws based on conduct's
    functional elements. Even if strict scrutiny applied, ITAR's restrictions are "narrowly tailored to achieve the

24  Government's compelling interests" in protecting national security, as the Government argued.
    Rupert Decl. Ex. 4 at 6 n.7 (Dkt. # 44-1).

Finally, even if the Private Defendants' First Amendment theory were remotely colorable—which it isn't—and even if the Government asserted the First Amendment as a basis for the State Department's actions—which it doesn't—the clear departures from procedural requirements would *still* be unlawful. An administrative agency cannot disregard legally mandated procedures simply because it questions their constitutionality. *See Weinberger v. Salfi*, 422 U.S. 749, 765 (1975); *Johnson v. Robison*, 415 U.S. 361, 368 (1974). The State Department failed to follow its procedural obligations, which no First Amendment rationale could excuse.

In sum, Defense Distributed's supposed First Amendment interests are at best minimal in theory, and are legally irrelevant to the merits here. Even if the issue were properly presented, no court has ever recognized anything resembling a right to unlimited distribution of 3D-printable gun files. This Court should not be the first.[21]

**C.      The Equities Weigh in the States' Favor**

The significant threat of irreparable harm to the States, against the minimal burden of a delay in lifting longstanding regulatory restrictions, tips the balance sharply in the States' favor. Dkt. # 43 at 24. A preliminary injunction is warranted to preserve the status quo *ante litem*.[22]

**D.      All Jurisdictional Requirements Are Satisfied, Including Standing**

**1.      The States easily meet the requirements for standing**

In challenging the States' sovereign, proprietary, and quasi-sovereign standing,

---

[21] Nor should the Court credit the Private Defendants' half-hearted Second Amendment argument, which they bury in a footnote. Dkt. # 63 at 17 n.6. That claim is even further afield because there is "no Second Amendment right to be a [gun] manufacturer or dealer." *Olympic Arms v. Magaw*, 91 F. Supp. 2d 1061, 1071 (E.D. Mich. 2000), *aff'd*, 301 F.3d 384 (6th Cir. 2002); *accord Mont. Shooting Sports Ass'n v. Holder*, No. CV-09-147-DWM-JCL, 2010 WL 3926029, at *21 (D. Mont. Aug. 31, 2010); *see D.C. v. Heller*, 554 U.S. 570, 626–27 (2008).

[22] Defendants assert that the States are seeking a "mandatory injunction" or something more than preservation of the status quo. Dkt. # 64 at 9, 23; Dkt. # 63 at 8. "The status quo is the last uncontested status which preceded the pending controversy." *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963). The last uncontested status—which was in place until July 27, 2018—was that the files at issue were subject to export-control regulation. The States seek a return to that status. *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("we disregard the contention that this preliminary injunction alters the status quo ante litem").

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
2:18-cv-01115-RSL

10

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    Defendants fail to mention the controlling case of *Massachusetts v. EPA*, 549 U.S. 497 (2007),

2    which largely contradicts their arguments. They argue that the State Department's actions are

3    not directed at the States, which remain free to enforce their laws, Dkt. # 64 at 14–15, but this

4    misses the point. The challenged actions permit the dissemination of untraceable, undetectable

5    weapons, which harms the States' sovereign interests by frustrating their ability to enforce gun-

6    possession laws, undermining the security of their borders, and violating their sovereign power

7    and duty to protect public health and safety. Here, as in *Massachusetts*, the States have standing

8    to challenge a federal action that did not expressly target them. 549 U.S. at 506–14.[23]

9        That some of the files at issue have already been disseminated does not render the States'

10   injuries unredressable.[24] Dkt. # 63 at 13, 21; *supra* at 3–4. A preliminary injunction would

11   prevent the spread of existing 3D-printed gun files from the dark corners of the web to

12   mainstream internet sites, and would prevent future—and technologically more advanced—

13   designs from ever entering the public domain. An injunction would redress the near-certain

14   prospect of future harm the States would face without one.

15       The Government claims that the States cannot sue it in their quasi-sovereign capacity,

16   Dkt. # 64 at 16, but this argument was rejected in *Massachusetts*, 549 U.S. at 520 n.17 (states

17   may sue the federal government to protect their quasi-sovereign interests as *parens patriae*).

18       Finally, as to prudential standing, the Government attempts to distinguish the "national

19   security" interests they concede are served by AECA from the "domestic security" threats the

20

21   [23] The Government makes the related argument that other state and federal laws still restrict individuals'
     ability to wield untraceable, undetectable weapons, and therefore its actions do not injure the States. Again,
     however, the Government's actions make it more difficult to use existing state laws and practices such as screening

22   with metal detectors to protect state citizens, state employees, and state facilities. Nor are the States' injuries too
     theoretical. A party "need not sit idly by and wait for . . . harm to befall it." *Pennsylvania v. Trump*, 281 F. Supp.
     3d 553, 567 (E.D. Pa. 2017). It need only show only that it is "*likely* to suffer future injury," *City of Los Angeles v.*

23   *Lyons*, 461 U.S. 95, 105 (1983) (emphasis added), which the States' evidence amply establishes here.
     [24] The Government also suggests, with no support, that 3D-printable gun files have been circulated within

24   the United States through channels other than the internet. Dkt. # 64 at 14–15. Defense Distributed, at least, does
     not appear to be interested in disseminating the files via a medium other than the internet.

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
2:18-cv-01115-RSL                                      11                    ATTORNEY GENERAL OF WASHINGTON
                                                                                    800 Fifth Avenue. Suite 2000
                                                                                     Seattle, WA 98104-3188
                                                                                         (206) 464-7744

States face as a result of the Temporary Modification and Letter. Dkt. #64 at 17 n.9. This distinction is illusory. Clearly, terrorists who can evade metal detectors and organized criminals who can escape detection of their crimes pose a threat to the "security" of the nation and, by extension, the States. *See, e.g.*, *United States v. U.S. Dist. Court*, 407 U.S. 297, 321 (1972); *Hodges v. Abraham*, 253 F. Supp. 2d 846, 868 (D.S.C. 2002) (federal government using "national security" and domestic security" interchangeably in litigation).

### 2.    The Private Defendants' jurisdictional arguments are meritless

The Private Defendants argue that the Court "lacks jurisdiction" over this APA case because the States' lawsuit "counts as a collateral attack" on the final disposition of the Texas proceedings. Dkt. # 63 at 8–9. This argument misses the point, as the States are challenging agency action, not "collaterally attacking the judgments of other courts." *Rein v. Providian Fin. Corp.*, 270 F.3d 895, 902 (9th Cir. 2001).[25] The Private Defendants also argue that the Court lacks jurisdiction "because of statutory limitations." Dkt. # 63 at 10–12. Their assertion that Executive actions under AECA are *never* reviewable (*id.* at 10–11) relies on inapposite case law[26] and ignores cases that *have* reviewed agency action under AECA.[27] They also invoke Section 2778(h) of AECA, which plainly does not apply because it only excludes from judicial review the "designation"—not the removal—of Munitions List items. Dkt. # 63 at 10–12.

### III.    CONCLUSION

For the reasons above and in the Plaintiff States' Motion, the Court should convert its temporary restraining order to a preliminary injunction.

---

[25] If the collateral attack doctrine were stretched so far as to apply to agency actions taken pursuant to a settlement agreement, then agencies could shield any unlawful action with a settlement agreement. Unsurprisingly, the Private Defendants cite no authority for this argument.

[26] *Webster v. Doe*, 486 U.S. 592, 600 (1988), considered the reviewability of actions committed to the CIA Director's discretion under the National Security Act.

[27] *See, e.g.*, *B-W. Imports, Inc. v. United States*, 75 F.3d 633 (Fed. Cir. 1996) (considering Customs Service's exercise of delegated import authority under AECA).

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
2:18-cv-01115-RSL                                  12                  ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    DATED this 17th day of August, 2018.

2                                          ROBERT W. FERGUSON
                                           Attorney General
3
                                           */s/ Jeffrey Rupert*
4                                          JEFFREY RUPERT, WSBA #45037
                                           Division Chief
5                                          KRISTIN BENESKI, WSBA #45478
                                           Assistant Attorney General
6                                          TODD BOWERS, WSBA #25274
                                           Deputy Attorney General
7                                          JEFF SPRUNG, WSBA #23607
                                           Assistant Attorney General
8                                          ZACHARY P. JONES, WSBA #44557
                                           Assistant Attorney General
9                                          JeffreyR2@atg.wa.gov
                                           KristinB1@atg.wa.gov
10                                         ToddB@atg.wa.gov
                                           JeffS2@atg.wa.gov
11                                         ZachJ@atg.wa.gov
                                           *Attorneys for Plaintiff State of Washington*
12
                                           GEORGE JEPSEN
13                                         Attorney General of Connecticut

14                                         */s/ Kimberly Massicotte*
                                           KIMBERLY MASSICOTTE, CT-04111
15                                         Associate Attorney General
                                           JOSEPH RUBIN, CT-00068
16                                         Associate Attorney General
                                           MAURA MURPHY OSBORNE, CT-19987
17                                         Assistant Attorney General
                                           Connecticut Office of Attorney General
18                                         55 Elm St.
                                           P.O. Box 120
19                                         Hartford, CT 06141-0120
                                           *Attorneys for Plaintiff State of Connecticut*
20
                                           BRIAN E. FROSH
21                                         Attorney General of Maryland

22                                         */s/ Julia Doyle Bernhardt*
                                           JULIA DOYLE BERNHARDT
23                                         JENNIFER KATZ
                                           Assistant Attorneys General
24                                         Office of the Attorney General

REPLY IN SUPPORT OF MOTION FOR                  13        ATTORNEY GENERAL OF WASHINGTON
PRELIMINARY INJUNCTION                                              800 Fifth Avenue. Suite 2000
2:18-cv-01115-RSL                                                     Seattle, WA 98104-3188
                                                                          (206) 464-7744

1  |  200 Saint Paul Place, 20th Floor
   |  Baltimore, MA 21202
2  |  (410) 576-7291
   |  jbernhardt@oag.state.md.us
3  |  jkatz@oag.state.md.us
   |  *Attorneys for Plaintiff State of Maryland*
4  |
   |  GURBIR GREWAL
5  |  Attorney General of New Jersey
6  |  */s/ Jeremy M. Feigenbaum*
   |  JEREMY M. FEIGENBAUM
7  |  Assistant Attorney General
   |  Office of the Attorney General
8  |  Richard J. Hughes Justice Complex
   |  25 Market Street, 8th Floor, West Wing
9  |  Trenton, NJ 08625-0080
   |  (609) 376-2690
10 |  Jeremy.Feigenbaum@njoag.gov
   |  *Attorneys for Plaintiff State of New Jersey*
11 |  BARABARA D. UNDERWOOD
   |  Attorney General of New York
12 |
   |  */s/ Barbara D. Underwood*
13 |  BARBARA D. UNDERWOOD
   |  Attorney General of New York
14 |  28 Liberty Street
   |  New York, NY 10005
15 |
   |  MAURA HEALEY
16 |  Attorney General of Commonwealth of
   |  Massachusetts
17 |
   |  */s/ Jonathan B. Miller*
18 |  JONATHAN B. MILLER
   |  Assistant Attorney General
19 |  Office of the Massachusetts Attorney General
   |  One Ashburton Place
20 |  Boston, MA 02108
   |  617-963-2073
21 |  Jonathan.Miller@state.ma.us
   |  *Attorneys for Plaintiff Commonwealth of*
22 |  *Massachusetts*
23 |
24 |

REPLY IN SUPPORT OF MOTION FOR     14
PRELIMINARY INJUNCTION
2:18-cv-01115-RSL

1

JOSH SHAPIRO
Attorney General of Commonwealth of
2  Pennsylvania

3  */s/ Josh Shapiro*
JOSH SHAPIRO
4  Attorney General
Office of the Attorney General
5  Strawberry Square, 16th Floor
Harrisburg, PA 17120
6  (717) 787-3391
*Attorneys for Plaintiff Commonwealth of*
7  *Pennsylvania*

8  KARL A. RACINE
Attorney General for the District of Columbia

9  */s/ Robyn Bender*
ROBYN BENDER
10  Deputy Attorney General
Public Advocacy Division
11  JIMMY ROCK
Assistant Deputy Attorney General
12  Public Advocacy Division
*Attorneys for Plaintiff District of Columbia*
13

14  ELLEN F. ROSENBLUM
Attorney General of Oregon

15  */s/ Scott J. Kaplan*
SCOTT J. KAPLAN, WSBA #49377
16  Senior Assistant Attorney General
Oregon Department of Justice
17  100 SW Market Street
Portland, OR  97201
18  (971) 673-1880
scott.kaplan@doj.state.or.us
19  *Attorneys for Plaintiff State of Oregon*

20  XAVIER BECERRA
Attorney General of California
21

22  */s/ Nelson R. Richards*
NELSON R. RICHARDS
Deputy Attorney General
23  */s/ Mark Beckington*
MARK BECKINGTON
24  Supervising Deputy Attorney General

1
                */s/ Thomas Patterson*
                THOMAS PATTERSON

2
                Senior Assistant Attorney General
                *Attorneys for the State of California*

3
                CYNTHIA H. COFFMAN

4
                Attorney General of Colorado

5
                */s/ Matthew D. Grove*
                MATTHEW D. GROVE

6
                Assistant Solicitor General
                Colorado Department of Law

7
                1300 Broadway, 6th Floor
                Denver, Colorado  80203

8
                Telephone:  (720) 508-6157
                FAX:  (720) 508-6041

9
                E-Mail: matt.grove@coag.gov
                *Attorneys for Plaintiff State of Colorado*

10
                MATTHEW P. DENN

11
                Attorney General of Delaware

12
                */s/ Ilona M. Kirshon*
                ILONA M. KIRSHON (#3705)

13
                Deputy State Solicitor
                State of Delaware Department of Justice

14
                Carvel State Office Building, 6th Floor
                Wilmington, DE 19801

15
                (302) 577-8400
                Ilona.kirshon@state.de.us

16
                */s/ Patricia A. Davis*

17
                PATRICIA A. DAVIS (#3857)
                Deputy Attorney General

18
                State of Delaware Department of Justice
                Dover, DE  19904

19
                (302) 257-3233
                patriciaA.davis@state.de.us

20
                *Attorneys for the Plaintiff State of Delaware*

21
                RUSSELL A. SUZUKI
                Attorney General of Hawaii

22
                */s/ Robert T. Nakatsuji*

23
                ROBERT T. NAKATSUJI
                Deputy Attorney General

24
                Department of the Attorney General

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
2:18-cv-01115-RSL

16

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1      425 Queen Street
        Honolulu, Hawaii  96813
2      (808) 586-1360
        Robert.T.Nakatsuji@hawaii.gov
3      *Attorneys for Plaintiff State of Hawaii*

4      LISA MADIGAN
        Attorney General of Illinois

5

        */s/ Brett E. Legner*
6      BRETT E. LEGNER
        Deputy Solicitor General
7      */s/ Katelin B. Buell*
        KATELIN B. BUELL
8      */s/ Sarah A. Hunger*
        SARAH A. HUNGER
9      Assistant Attorneys General
        Office of the Attorney General
10     100 W. Randolph, 12th Floor
        Chicago, IL 60601
11     blegner@atg.state.il.us
        *Attorneys for Plaintiff State of Illinois*

12

        THOMAS J. MILLER
13     Attorney General of Iowa

14     */s/ Nathan Blake*
        NATHAN BLAKE
15     Deputy Attorney General
        Office of the Attorney General of Iowa
16     1305 E. Walnut St.
        Des Moines, IA  50319
17     (515) 281-4325
        nathan.blake@ag.iowa.gov
18     *Attorneys for the Plaintiff State of Iowa*

19     LORI SWANSON
        Attorney General of Minnesota

20

        */s/ Jacob Campion*
21     JACOB CAMPION, MN Reg. #0391274
        Assistant Attorney General
22     Office of the Minnesota Attorney General
        445 Minnesota Street, Suite 1100
23     St. Paul, Minnesota 55101-2128
        (651) 757-1459
24     jacob.campion@ag.state.mn.us

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
2:18-cv-01115-RSL

17

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1          *Attorneys for the Plaintiff State of Minnesota*

2          JOSHUA H. STEIN
           Attorney General of North Carolina

3
           */s/ Sripriya Narasimhan*
4          SRIPRIYA NARASIMHAN
           Deputy General Counsel
5          North Carolina Department of Justice
           114 W. Edenton St.
6          Raleigh, NC 27603
           *Attorneys for Plaintiff State of North Carolina*
7
           PETER F. KILMARTIN
8          Attorney General of Rhode Island

9          */s/ Michael W. Field*
           MICHAEL W. FIELD
10         */s/ Susan Urso*
           SUSAN URSO
11         Assistant Attorneys General
           150 South Main Street
12         Providence, Rhode Island 02903
           (401) 274-4400
13         mfield@riag.ri.gov
           surso@riag.ri.gov
14         *Attorneys for Plaintiff State of Rhode Island*

15         THOMAS J. DONOVAN, JR.
           Attorney General of Vermont
16
           */s/ Benjamin D. Battles*
17         BENJAMIN D. BATTLES
           Solicitor General
18         Office of the Attorney General
           109 State Street
19         Montpelier, Vermont 05609-1001
           802-828-5500
20         benjamin.battles@vermont.gov
           *Attorneys for Plaintiff State of Vermont*
21
           MARK R. HERRING
22         Attorney General of the
           Commonwealth of Virginia
23
           */s/ Samuel T. Towell*
24         SAMUEL T. TOWELL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Deputy Attorney General, Civil Litigation
Office of the Attorney General of Virginia
Barbara Johns Building
202 N. Ninth Street
Richmond, VA 23219
(804) 786-6731
STowell@oag.state.va.us
*Attorney for Plaintiff Commonwealth of
Virginia*

***Pro Hac Vice* motions forthcoming for all
counsel of record not barred in the Western
District of Washington**

REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION
2:18-cv-01115-RSL

19

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue. Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1

## **DECLARATION OF SERVICE**

2     I hereby certify that on August 17, 2018, I electronically filed the foregoing document

3 with the Clerk of the Court using the CM/ECF system, which will serve a copy of this document

4 upon all counsel of record.

5     DATED this 17th day of August, 2018, at Seattle, Washington.

6

7                                        */s/ Jeffrey Rupert*_____
                                         JEFFREY RUPERT

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24