IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| DEFENSE DISTRIBUTED; SECOND AMENDMENT FOUNDATION, INC; and CONN WILLIAMSON,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF STATE; MICHAEL POMPEO, in his official capacity as Secretary of State; DIRECTORATE OF DEFENSE TRADE CONTROLS; MIKE MILLER, in his official capacity as Acting Deputy Assistant Secretary of Defense Trade Controls ; SARAH J. HEIDEMA, in her official capacity as Acting Director, Office of Defense Trade Controls Policy, Bureau of Political Military Affairs, Department of State,<br><br>Defendants. | Civil Action No. 1:15-CV-00372-RP |

**Plaintiffs' Reply in Support of
Plaintiffs' Rule 59 Motion for a New Trial and Motion to Alter or Amend a Judgment or,
Alternatively, Rule 60(b) Motion for Relief from a Judgment.**

Plaintiffs Defense Distributed, Second Amendment Foundation, Inc., and Conn Williamson submit this reply in support of Plaintiffs' Rule 59 Motion to Alter or Amend a Judgment or, Alternatively, Rule 60(b) Motion for Relief from a Judgment. *See* Dkt. 117 (Plaintiffs' motion); Dkt. 125 (Defendants' response).

**Reply**

The State Department opposes this motion as though it attacks the Settlement Agreement. Not so. The motion does *not* ask the Court to disrupt the Settlement Agreement in any way. The motion is about withdrawal of a stipulation—not withdrawal from the Settlement Agreement.

By granting the Plaintiffs' motion and reopening this case, the Court will *not* be acting upon the Settlement Agreement. This is because, as everyone acknowledges, the current judgment does *not* incorporate the Settlement Agreement in any respect. Indeed, the judgment's failure to account for the Settlement Agreement's obligations *is the problem* to be addressed upon reopening.

When the stipulation occurred, no one had a reason to think that the judgment ought to account for the Settlement Agreement's obligations. But now, in light of extraordinary and unforeseeable occurrences, the benefit of a judgment that does so is apparent. The only thing standing in the way of an improved disposition is a stipulation that the Plaintiffs have timely and justifiably withdrawn. Accordingly, the judgment based upon the stipulation should be vacated.

What right would the State Department lose if the motion to reopen were granted? None. If the current judgment is vacated, the State Department (and the Plaintiffs) will be perfectly free to argue about how the new judgment should account for the Settlement Agreement. The proper way to proceed is to decide that issue on the merits—not on the basis of a nullified stipulation.

Meanwhile, uncertainty looms. For example, the State Department promises that a Ninth Circuit appeal could fix the problem caused by the Western District of Washington's injunction. But the State Department will not say whether or not it intends to prosecute such an appeal, and the deadline for doing so is weeks away. If the Court is not convinced that the judgment should be vacated permanently, it should at least vacate the judgment temporarily so that contingencies can be fully explored before an ultimate decision is made. Both Rule 59 and Rule 60 warrant this.

I.      **The Rule 59 motion is timely.**

The government makes just one argument about the request for relief under the broad authority of Rule 59.  According to the State Department, Rule 59 cannot supply a basis for relief because the motion did not meet the Rule 59 filing deadline.  This is incorrect.

The government's timeliness argument presents a pure question of law: What event starts the 28-day deadline period for motions under Federal Rule of Civil Procedure 59?  If the government is right about what starts the period, then the motion did not meet the 28-day deadline.  But if the Plaintiffs are right about what starts the deadline period, then the motion was timely.

Rule 59 speaks to this issue clearly.  The Rule's 28-day filing period begins upon the entry of a final "judgment":  "A motion to alter or amend a judgment must be filed no later than 28 days after the *entry of the judgment*."  Fed. R. Civ. P. 59(e) (emphasis added); *see* Fed. R. Civ. P. 54(a) ("'Judgment' as used in these rules includes a decree and any order from which an appeal lies.")

According to the government, the Rule 59(e) "entry" of a final "judgment" occurred when the parties filed the Rule 41(a)(1) stipulation.  But according to the Plaintiffs, the Rule 59(e) "entry" of a final "judgment" occurred when the Court entered its order dismissing the action, allocating costs, and closing the case.  This is not an open question. Existing precedent resolves it conclusively in favor of the Plaintiffs.

In the Fifth Circuit, a Rule 41(a)(1) dismissal stipulation is *not* a final judgment.  A Rule 41(a)(1) dismissal stipulation therefore cannot trigger the Rule 59 deadline that begins upon "entry of the judgment." Fed. R. Civ. P. 59(e). The final "judgment" for purposes of Rule 59 deadlines here is the order dismissing the action with prejudice, allocating costs, and closing the case that the Court entered on July 20, 2018.  *See* Dkt. 117 at 3.

2

*Harvey Specialty & Supply, Inc. v. Anson Flowline Equip. Inc.*, 434 F.3d 320 (5th Cir. 2005) is the controlling precedent.  It resolves the question presented by holding that a Rule 41(a)(1) dismissal does *not* constitute a final judgment: "Ultimately, a Rule 41(a)(1) dismissal is not a 'final judgment.'" *Id.* at 324.

*Harvey* is no secret.  The motion cited it to preempt the very argument that the government now makes.  It cited *Harvey* to explain that, even though the stipulation constituted the dismissal, the "order constituted the final judgment." Dkt. 117 at 3 (citing *Harvey*, 434 F.3d at 324-25).

The State Department says nothing about *Harvey*.  Indeed, the State Department does not cite any authority about Rule 59 finality.  Instead, its sole citation is to an inapposite case about the separate question of what a Rule 41(a)(1) dismissal lets courts do *about the dismissed action's merits*.  Dkt. 125 at 3-4 (citing *SmallBizPros, Inc. v. MacDonald*, 618 F.3d 458 (5th Cir. 2010)).

The substance/procedure distinction is critical. A court's power to re-adjudicate a dismissed claim's *substance* has nothing to do with its power to take *procedural* steps like the issuance a final judgment giving effect to a stipulation.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395-98 (1990).  The government's citations address the substantive issue.  The real issue here is procedural.

For the issue of motion deadlines, *Harvey* is the end of the matter.  Rule 59's 28-day deadline period did not start upon the parties' filing of a stipulation.  It started when the Court entered the order dismissing the action with prejudice, allocating costs, and closing the on July 20, 2018.  *See* Dkt. 117 at 3.  The motion is therefore timely under Rule 59.

Timeliness is the State Department's only major Rule 59 argument, and for the reasons just explained, it is wrong as a matter of law.  Thus, regardless of whether the Rule 60(b) threshold is met, the Court should grant the motion on the basis of Rule 59 alone.

**II.     The Western District of Washington's injunction was unforeseeable.**

The government's other main point says that the Court should deny this motion because the Western District of Washington's entry of a preliminary injunction was foreseeable. Dkt. 125 at 6. Not so. The foreseeability argument does not deserve credence because it contradicts both the position taken by the United States itself in many other cases and well-reasoned precedent.

First, the government's current position contradicts position it took in *United States v. Castellanos*, 608 F.3d 1010 (8th Cir. 2010). In that case, the government *agreed* with the Plaintiffs' position here. It correctly took the position that court decisions are sometimes unforeseeable and warrant a party's change in litigating position. *See* Brief for the United States at 9, 22-23, *United States v. Castellanos*, 608 F.3d 1010 (8th Cir. 2010), 2009 WL 1849405.

Specifically, the government in *Castellanos* sought leeway to change positions by arguing that the Eight Circuit had issued a decision that (1) "the government could not foresee," and that (2) "took a position advocated by neither party" to the litigation at hand. *Id.* at 9, 22-23. That logic supports the Plaintiffs here because the Western District of Washington's decision does both of those things. Another key part of the government's *Castellanos* argument can be translated here to support the Plaintiffs' motion: "Holding that the Government must anticipate all potential rulings, even rulings not advocated by any party, and present evidence in advance of those rulings, would undermine the cause of judicial economy rather than advance it." *Id.* at 22-23.

A similar contradiction arises from the government's position in *Northern States Power Co. v. United States*, 459 F. App'x 910 (Fed. Cir. 2011). Just as in this case, where states obtained a preliminary injunction that threatens a government contract, *Northern States Power* was about whether "subsequently imposed state requirements" were foreseeable at the time of a prior government contract. *See* Br. for the Defendant-Appellant at 40 *Northern States Power Co. v. United States*, 459 F. App'x 910 (Fed. Cir. 2011), 2009 WL 1849405. As opposed to its position

here, the government there argued that "subsequently imposed state requirements" were "clearly *not* foreseeable to the United States at the time of contracting." *Id.* at *40 (emphasis added).

Importantly, the government in *Northern States Power* did not use the kind of rigid, per-se rule that it advances here. Instead, it rightly argued that the foreseeability of "downstream consequences" such as "subsequently imposed state requirements" depends on circumstances like (1) whether the state actions were "unprecedented," (2) whether the state actions "transgressed established limits upon the rights of states to regulate" federal matters, (3) whether "case law both predating and postdating" the contract supported the state actions at issue, and (4) the presence of a federally-issued "license" to engage in the activity at issue. *Id.* at *33-40. All of that reasoning applies to the Western District of Washington's decision to issue a preliminary injunction here.

The government's current position does not just contradict its prior briefs. It also contradicts the resulting precedents. Well-reasoned cases recognize that, in certain extraordinary circumstances, parties are *not* required to foresee future court decisions that would call for a change in litigating position if known about in advance.

The decision in *United States v. Yoffe*, 775 F.2d 447 (1st Cir. 1985), is a perfect example. There, the government sought leeway to account for an unpredictable First Circuit decision about what federal regulations meant. Instead of punishing the government for the unpredictable event, the court gave it leeway because the decision was *not* foreseeable: "We do not think that the government should be found to have acted without substantial justification *because it did not foresee how the court of appeals would interpret the regulations*." *Id.* at 451 (emphasis added). This was so because the decision at issue "was the first and is the only opinion" to resolve the question. *Id.*; *see also Dantran, Inc. v. U.S. Dept. of Labor*, 246 F.3d 36, 50 (1st Cir. 2001) (reaffirming *Yoffee*'s holding). The logic that justified the *Yoffe* change in position applies here.

5

Back in July, when the Plaintiffs and State Department were deciding whether to submit a stipulation of dismissal—as opposed to a request for a judgment that reflected the Settlement Agreement in substance—they had no reason to expect that politicized state officials would lay siege to the Settlement Agreement's execution in the unprecedented fashion that they have. Nor did the parties here have any reason to expect that the states would succeed in convincing a federal court to enjoin the State Department's accomplishment of its Settlement Agreement obligations.

Hence, under the prior circumstances, it was perfectly reasonable for both sides to support the use of Rule 41(a)(1)(A)(ii)'s relatively simple disposition device. But under the circumstances that exist now, that is no longer the case because of the extraordinary state of noncompliance that State Department's response has to acknowledge. *See* Dkt. 125 at 6 ("The Government has, thus far, fully complied with the settlement agreement, *except* to the extent that they have complied with the court order in the Washington litigation." (emphasis added)). It is truly rare for the federal government to acknowledge that a court decision has stopped it from "fully compl[ying]" with an obligation that it acknowledges must be ultimately honored.

In light of these developments, both the Plaintiffs and the State Department would benefit from a judgment that reflects the controversy's true disposition by accounting for the Settlement Agreement's obligations expressly. Rule 60(b) supplies a sufficient basis for such relief and so does the even more expansive authority of Rule 59.

**Conclusion**

"The Court does have the right, and it should never fail to exercise it, to relieve counsel of stipulations to prevent manifest injustice." *Laird v. Air Carrier Engine Services, Inc.*, 263 F.2d 948, 953 (5th Cir. 1959). The motion should be granted. The Court should vacate the July 30, 2018 Order, Dkt. 113.

Respectfully submitted,

FARHANG & MEDCOFF

By /s/Matthew Goldstein
Matthew Goldstein*
D.C. Bar No. 975000
4801 E. Broadway Blvd., Suite 311
Tucson, AZ 85711
(202) 550-0040
mgoldstein@fmlaw.law

Josh Blackman*
Virginia Bar No. 78292
joshblackman@gmail.com
1303 San Jacinto Street
Houston, TX 77002
(202) 294-9003

*Admitted *pro hac vice*

Attorneys for Plaintiffs Defense Distributed, Second Amendment Foundation, Inc., and Conn Williamson

BECK REDDEN LLP

By /s/ Chad Flores
Chad Flores*
State Bar No. 24059759
cflores@beckredden.com
1221 McKinney St., Suite 4500
Houston, TX 77010
(713) 951-3700

*Admitted *pro hac vice*

Attorney for Plaintiff Defense Distributed

7

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the above and foregoing document was served to all counsel of record through the Court's CM/ECF system on this 19th day of September, 2018.

                                                /s/ Chad Flores
                                                Chad Flores