UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION


DEFENSE DISTRIBUTED, SECOND          )
AMENDMENT FOUNDATION, INC.,          )
            Plaintiff,               )
                                     )
        vs.                          )Case No. A:15-CV-372-RP
                                     )
UNITED STATES DEPARTMENT OF STATE,   )
JOHN F. KERRY, DIRECTORATE OF        )
DEFENSE TRADE CONTROLS, THE BRADY    )
CAMPAIGN TO PREVENT GUN VIOLENCE,    )
EVERYTOWN FOR GUN SAFETY ACTION      )
FUND, INC., GIFFORDS,                )
            Defendants.              )
_____)



TRANSCRIPT OF MOTIONS HEARING PROCEEDINGS
BEFORE THE HONORABLE ROBERT PITMAN
FRIDAY JULY 27, 2018, 2:03 P.M.




FOR THE PLAINTIFF:   DAVID S. MORRIS, ESQ.
                     MATTHEW A. GOLDSTEIN, ESQ.
                     JOSHUA M. BLACKMAN, ESQ.
                     ALAN GURA, ESQ. via telephone


FOR THE DEFENDANTS   STUART J. ROBINSON, ESQ. via telephone
                     J. DAVID CABELLO, ESQ.
                     JOHN D. KIMBALL, ESQ.  via phone
                     MUNIRA JUSANI, ESQ.
                     JIM CLARK, ESQ. via telephone
                     TOM PETERS, ESQ. via telephone
                     BEN CHAPMAN, ESQ. via telephone



Proceedings recorded by mechanical stenography, transcript
        produced using computer aided transcription.



Pamela J. Andasola, CSR/RMR/FCRR

AFTERNOON SESSION, JULY 27, 2018

*****

(The following proceedings were had in

open court and via telephonic appearance

at the hour of 2:03 p.m.)

*****

THE CLERK:  Court calls A:15-CV-372, Defense Distributed, and others versus United States Department of State, and others, for motions hearing.

THE COURT:  If we can have announcements for the record, please.

MR. MORRIS:  Your Honor, David Morris, local counsel for plaintiffs.

Let me introduce Matt Goldstein of Matthew A. Goldstein, PLLC.  He came up here from Tucson early this morning; and Josh Blackman, who is a professor at South Texas College of Law, came up here early this morning as well.

MR. GOLDSTEIN:  Thank you, Your Honor.

THE COURT:  Thank you very much.

MR. CABELLO:  Good afternoon, Your Honor.  David Cabello, Blank Rome, on behalf of the proposed intervenors. I'm joined by my colleague Munira Jesani, also Blank Rome.

THE COURT:  Thank you very much.

MR. CABELLO:  And on the phone we have John

Kimball who has recently been admitted pro hac vice by this Court and --

MR. KIMBALL:  That's correct.  Thank you.

THE COURT:  Okay.  Very good.  Thank you.

MR. BLACKMAN:  Additionally, Your Honor, my apologies, Alan Gura from Gura PLLC is on the phone as well.

He is the lead counsel.

THE COURT:  Gotcha, very good.

And if, for the purpose of this hearing, if you can make sure when you do speak you each speak into the microphone either at counsel table or at the podium so that those on the phone can hear you better.

Okay, who else do we have on the line?

MR. CLARK:  This is Jim Clark, Chief Deputy City of L.A. joining.

THE COURT:  I'm sorry, and your name again?

MR. CLARK:  Jim Clark.  I'm chief deputy.

THE COURT:  Okay, and could you clarify your position in the case, Mr. Clark.

MR. CLARK:  We wrote a letter to the Court telling the Court we are petitioning to intervene.

THE COURT:  Okay.  We don't believe we've received any word of that.

Okay, who else do we have on the phone?

MR. ROBINSON:  Good afternoon, Your Honor, Stuart

Robinson from the Department of Justice on behalf of defendants.

THE COURT:  Good afternoon, Mr. Robinson.

And anyone else?

MR. CLARK:  Also from the City Attorney of Los Angeles is Tom Peters and Ben Chapman.

THE COURT:  Tom Peters and --

MR. CLARK:  Ben Chapman, C-H-A-P-M-A-N.

MR. CABELLO:  Your Honor, if I may?

THE COURT:  Yes.

MR. CABELLO:  I just received word, through message, that the Court is hard to hear on the telephone link.

THE COURT:  Okay.

MR. GURA:  Your Honor --

THE COURT:  Yes.

MR. GURA:  -- this is Allen Gura.  There were a large number of people who announced on the conference call before court.  I have no objection to their listening in, but they are here.

THE COURT:  Okay, let's go ahead and, for the record, if anyone else is on the line who hasn't identified themselves, if you will do so now, please.

MR. CLARK:  Your Honor, this Jonathan Lowie (phonetic) with Brandy Campaign Intervenor, we are one of

the proposed intervenors.

THE COURT:  I'm sorry, could you repeat your name?

MR. CLARK:  Jonathan Lowie (phonetic) for the Game Center to Prevent Gun Violence and Brady Campaign to Prevent Gun Violence.  We're being represented by Blank Rome here today.

THE COURT:  All right.  Thank you.

Anyone else on the phone?

MR. CLARK:  Your Honor, this is Adam Skaggs.  Last name is S-K-A-G-G-S.  I am with Giffords and Law Center to Prevent Gun Violence, proposed intervenors, represented by Blank Rome here today.

THE COURT:  Great.  Thank you.

Anyone else?

MR. CLARK:  Your Honor, this is Eric Tirschwell (phonetic) with Everytown for Gun Safety, also represented by Blank Rome, one of the proposed intervenors.

THE COURT:  Thank you.

Anyone else?

And if whoever sent the message that you were having difficulty hearing me, can you tell me whether or not that's improved?

MR. GURA:  It's improved, Your Honor.

THE COURT:  Thank you very much.

And, please, a couple of things:  If you are

having trouble understanding me or anyone else, if you can simply let us know that.  And also, for those of you on the phone, when you do speak, if you can indicate for the benefit of the court reporter who is speaking, that would be helpful.  Thank you.

So we are here on the movant's Motion to Intervene and for a Preliminary Injunction, The Brady Campaign to Prevent Gun Violence, and Everytown for Gun Safety Action Fund, and Giffords.

I have reviewed the initial petition and motion. I have skimmed the filing by Defense Distributed today, that was filed today, and so, I am prepared to move forward with the hearing.

Mr. Cabello, what I would propose is that I'm going to give you twenty minutes or so, and if you could certainly walk me through the --

MR. BLACKMAN:  Your Honor, may I?

THE COURT:  Please.

MR. BLACKMAN:  We filed a Motion to Strike -- I'm sorry -- we filed a Motion to Strike.  I think it would be advantageous to rule on that first.  Depending on what facts are admissible, the analysis very much changes.  So I suggest we first discuss the Motion to Strike and since it's our motion, I would be happy to discuss it.

THE COURT:  Okay, I have reviewed that motion and

I will be glad to hear you on it now.

MR. BLACKMAN:  Okay.  May it please the Court.  We appreciate you hearing this case on such short notice.  I traveled from Houston this morning.  My colleague, Matt Goldstein, traveled from Tucson.  We had very little sleep last night, so we'll do the best we can.

In addition to the filings filed on the evening of July 25th, this morning, at 9 a.m., the plaintiffs filed a supplemental memorandum.  I read it as I was getting off the plane at the airport.  They advance a novel theory of standing they didn't raise before.

In their prior pleading they explain that their grounds for standing was based on future diversions of resources.  In the brief they filed this morning, they said they've already diverted resources.  And they've included several Affidavits and Declarations from members of respective organizations.

Your Honor, there's a lot of things we find unfair about this proceeding.  This is one of them, and it's not fair that we have to litigate against a moving target.

I had very little time to prepare any argument and I think the Court is within its is power to strike this pleading as well as about 30 minutes ago another pleading was filed where the City of Los Angeles wants to intervene. They have not filed a motion, but they wanted to.

Your Honor, this is not how we litigate, this is an ambush.  And I think that fundamental fairness dictates that they can't throw things at us the morning of the hearing.

Critically, nothing in the motion filed this morning was unknown two days ago.  There was no reason why they could not have included the affidavit from those three individuals and the resources already expended on Wednesday night.  I suspect they realized they had a weak case and they tried to bolster it up, but this must be waiver.

For this reason we ask that you strike the Section B of their pleading and the relevant portions of the declaration -- not all of them -- Section A and C are fine. We have no objection to that because it's basically bolstering their argument, but they can't raise any argument at this late, late hour whichfew would have to address on the fly.  Thank, Your Honor.

THE COURT:  Let me -- Mr. Blackman ,if you could, can you tell me how you've been prejudiced by the late filing given that if they had filed it with their motion -- I mean, it is what it is.  It's not as though you would have been able to depose those folks anyway.

So you are well aware of what that information does in terms of your argument, and it certainly does shift your argument but it doesn't change the analysis at all.  It

just gives you a little more information to argue, so how are you prejudiced by their including that information in their late filing?

MR. BLACKMAN:  Your Honor, let me take a step back.  This entire proceeding is prejudicial.  In the last 24 hours, Mr. Goldstein and I produced nearly sixty pages of briefing.  I've spent personally maybe eight hours in researching the Havens Realty question, and I spent a lot of time with that.  They did not have any reasons to divert.

And I put that together for my client in the case, and, to use an expression, had I known they would make this argument, I would have used my resources differently.  I would have focused on different things and perhaps been better prepared.

Instead, we prepared several pages addressing argument that they think is no longer relevant.  There is extreme prejudice but the point -- I can't make it clear enough, nothing in those Declarations this morning was unknown on Wednesday.  Nothing.  They could have filed these weeks ago if they knew they were diverting resources.  They could have come in here into court already but they waited to the last minute to ambush us.  For that reason, we ask to strike the Section B of the motion, Your Honor, and also to strike relevant portions of the declaration, and I'm going to make a motion to strike the L.A. City Attorney but I

haven't had a chance to see it yet.

THE COURT:  Thank you very much.

Okay, Mr. Cabello, if you would like to respond?

MR. CABELLO:  Yes, Your Honor, if I may?

Your Honor, I intend to address the timeliness of our motion when we get underway, unless the Court would like for me to address it now?

THE COURT:  No, that's fine.

MR. CABELLO:  I do want to touch on the City of L.A. and give you a little bit of precursor of argument with respect to the time limits.

The plaintiffs have made the argument that we've known about this for months, that it's a trial by ambush, et cetera, et cetera.

Nothing could be further from the truth, however, and I'll lay that timeline out.  But I think that the different State Attorneys General and the City of Los Angeles point to how quickly, one, the State Department advocates its role, and, secondly, how quickly we've had to respond as private parties trying to intervene in this case.

And now we see that the New York -- I'm sorry -- New Jersey Attorney General is interested.  They have sent the plaintiffs a cease and desist letter asking them to cease and desist from publishing the drawings.

There have been two letters by the U.S. Senate

which have been sent, and I will provide the Court with copies of those shortly.  There have been two letters that have been sent to Secretary Pompeo, one by Senator Melendez and the second by, I believe, seven or eight senators, including Senator Martin.  So we see people starting to learn about this settlement agreement and recognizing that there are legitimate interests to be defended.

With respect to the motion to strike, Your Honor, I would note that the plaintiffs clearly are aware of my clients, that is The Brady Group, that is Every City, and also the Giffords.  They are longstanding attempts to find sensible gun control and regulate guns.  So the fact that they've spent a lot of effort in the past, everyone's aware of it, and certainly they're aware of it because they've encountered my clients in every step that they have tried to introduce unregulated, unregistered, untraceable guns into the stream of commerce.

So, there's no surprises here, Your Honor.  They can argue:  Oh, gee whiz, we didn't know about their past activities.  I think the Court can take judicial notice of it, Your Honor, and at the end of the day I think its nothing but hogwash.

So with that, Your Honor, I would ask that the Court not grant their Motion to Strike and that we be permitted to proceed.

□□□□□□
□□□□□□

12

THE COURT:  All right.  So I, you know, share -- I think everyone on both sides is frustrated with the timing of this and I assure you I, as much as any of you, wish that we weren't having to do this on as expedited a schedule as we are and we're all just doing the best we can with where we find ourselves.

With regards to the issue that Mr. Blackman raises, I am going to -- for the purpose of this hearing, I'm going to allow that -- those Declarations to be used.  I will reserve judgment as to whether or not, at the end of the day, I want some more context than this.

I appreciate your argument, Mr. Blackman, because I know you expended a great deal of your time addressing that.  I suppose once they filed those Declarations, I get that you might not -- you might have used your time elsewhere.  I get that.

But, I'm going to -- I'm not going to strike those at this time because I want them to be able to talk about those things in the context of their argument, and I'll -- without prejudice to being able to grant your motion to strike at a later time.

So, with that, what I think would be most instructive for me is for you to each have twenty minutes to talk about whatever you want to talk about, and I think the things that will be of most interest to me -- I'm not as

13

interested, unless you have something different than what you've said in the pleadings, about the timing.  That's not the most -- the greatest concern to me at this time.  I think there are some more substantive issues with the relief that's being sought.

And so, certainly you can talk about the timing, but I am -- I'm more interested, frankly -- and this goes with essentially additional intervenors as well -- that is, that it occurs to me that to the extent you have an interest and to the extent you have a remedy in what you perceive the failures of the parties in this case, and specifically I guess the Department of State, that I'm not sure that this lawsuit and what originally was a declaratory action between the plaintiffs in this case and the Government is the best avenue for you to -- and certainly I don't think it's the only avenue for you -- to have sought the relief that you are asking for.

This is simply a settlement between two parties in an ongoing litigation and it really doesn't have anything to do with administrative law or -- so the things that you are complaining about.  But you set it up that way, and that's fine, so if you can focus first on -- I think, what would be helpful to me is if you can focus on Rule 24 factors, specifically the interest that you have relating to the property or transaction which is the subject of the action,

□□□□□□
□□□□□□

that is, this lawsuit.  And then, if you could talk -- I do think you have to demonstrate Article III standing.  I think we're going to have a disagreement there.

So, assuming that I'm right, I think you really need to spend some time talking about your independent standing that you have, given the fact that, again, no party in this action is seeking relief under the APA.  And so, I think that you are going to need to demonstrate to me what your independent Article III standing is.

So, with that, that sort of will guide your comments.  But you are free to talk about anything you would like.  And I'll let you know when we've gone about twenty minutes and give them time and opportunity.

MR. CABELLO:  Your Honor, if I may, just a point of order.  I'm certainly happy to address the standing issue first and foremost.  As you know, we are also seeking a temporary restraining order and so I don't know if you want me to touch on all of the four prongs, if you will, during my time, which I'm happy to do as well?

THE COURT:  If you would like to, that's fine.

MR. CABELLO:  Very well.

Your Honor, well let me then turn to the standing issue, and there are certain cases that I will offer up.  I do have copies of the cases for the Court and I do have copies for my opposing colleagues at counsel table.

With respect to the standing, Your Honor, I think that the Supreme Court case Town of Chester v. Laroe Estates is kind of the seminal case. It basically stands for the purpose or for the proposition that there are three elements that have to be satisfied for an intervenor to have standing.

Certainly Rule 24, Federal Rule of Civil Procedure 24(a) and (b) address the standing issue procedurally, but I think substantively it's addressed by the Court in the Town of Chester v. Laroe Estates, and that's a 2017 Supreme Court case. And I'll offer that up to the Court at this time.

Your Honor, I misspoke. I'll hand these out and I'll do without mine.

THE COURT: Thank you.

MR. CABELLO: In this case, Your Honor, there's three basic prongs. Basically the litigant, in this case intervenor, has to demonstrate that they've suffered an injury, in fact. Secondly, that it's fairly traceable to the challenged conduct of, you know, the defendant in this case. And I think we're not even going to address the plaintiff's conduct; because what we are looking at is the defendant's conduct, that is, the defendant had advocated its role in trying to enjoin and keep its citizens safe from these unregulated or these -- this technical information that pertains to guns and it being available to the public,

16

both foreign and domestic.  And then, thirdly, it's likely to be redressed by favorable judicial decision.

And then there's also a test for injury in fact. And I believe that the Court is also familiar with that case, having been decided in this court.

If I may, Your Honor?

And that case is OCA-Greater Houston v. The State of Texas, and that is a August 16th, 2017, case and it was decided in this very courtroom by Your Honor.

In that case I think that the 5th Circuit basically concurred with this Court with respect to the organizational standings and found that organizational standing can establish standing in its own name if it meets the same-standing test that applies to individuals.

And I believe that given the harm that we've addressed in our Declarations and in our various briefing, there is a harm here that will be suffered by the defendants, by the intervenors, which the defendants cannot and haven't remedied.  And that injury, in fact -- and this is key, Your Honor -- the court, the 5th Circuit, said: Need not be substantial.  It need not measure more than an identifiable trifle.

Your Honor, I think we have much more than a trifle of harm here.  We have a substantial measure of harm. But the Court continues:  Injuries and fact requirement

⬜⬜⬜⬜⬜⬜
⬜⬜⬜⬜⬜⬜

17

under Article III is qualitative not quantitative in nature. So we need to stay focused that what we're looking for and what we believe we presented is a qualitative harm.

Now, I'm sure that the plaintiffs would like to show the Court that there's this tremendous, tremendous harm, but we have to measure it, at least as a threshold issue, whether or not it's more than a trifle; and, secondly, whether it's a qualitative harm.  And we believe that both tests are met.

I do have one other case, Your Honor, that was brought to my attention just yesterday and I will offer that up.

MR. BLACKMAN:  Thank you.

MR. CABELLO:  For the record, this is the Commonwealth of Pennsylvania v. the President of the United States, et al.  This was decided by the 3rd Circuit and filed on April 24, 2018.

In this -- and I'll call the Court's attention to Page 11, III, where the court -- the 3rd Circuit here addresses head on the issue with respect to the Federal Rule of Civil Procedure 24(a).

And if I may read from the opinion, quote, "A party that has filed a timely motion has a right to intervene under Rule 24(a) if it can show three things:  A sufficient interest in the litigation.  And we believe that

18

that is established, Your Honor, by the briefing.  Two, a threat that the interest will be impaired or affected as a matter of -- as a practical matter by the disposition of the action.  And, three, that its interest is not adequately represented for the existing parties to the litigation.

And the -- this particular case, Commonwealth of Pennsylvania cites to the Kleissler case, which is also a 3rd Circuit case.  And I will read the cite for the Kleissler case here momentarily.  It's Kleissler v. US Forest Service 157 F.3d 964 and the jump cite is 969, Your Honor.

So I think what we have is -- we see that at the bottom the court's permitted a litigant to intervene if these three matters are addressed, and we believe that they're adequately address by our pleading.

But, clearly, since the State Department has advocated its role, my clients, the intervenors, have a clearer issue in this case that they adequately want addressed.

THE COURT:  Let's talk about that.  Can you articulate what your legally protected interest is in this litigation?

MR. CABELLO:  Yes, Your Honor.  That is set out in the declaration and certainly in the supplemental briefing.

The intervenors have a long history of trying to

promote and promoting gun safety in the United States, making sure that firearms, registered firearms -- in this case registered firearms -- are used safely, that they're properly regulated.  They have a long history of this. There's a lot of other issues that the -- that the intervenors address in their day-to-day work and that is set out in the Declarations, Your Honor.  And I'm happy to read from those Declarations, but I don't think -- at bottom, what they want to do is make sure that minors, mental incompetents, felons, spousal abusers don't have access to regulated firearms.

As the plaintiff has said, this is a whole new world and the goal, the stated goal of Defense Distributed is basically to sound the death knell on gun control, and the easiest way to do that is to put these -- this technical information for do-it-yourself home manufactured guns out on the Internet and permit people to download them, create their own untraceable, unregistered guns, and undetectable. Your Honor.  And I do have some video clips that I plan to show the Court.  I don't know if we have time, but it's part of my presentation.

But at bottom, Your Honor, the intervenors are seeking to make sure that U.S. citizens are kept safe from firearms, that firearms are used responsibly, and yet we have Defense Distributed's technical information that will

be put out on the Internet.

There is a national interest.  There is a problem with foreign security, terrorists, both foreign and domestic terrorists.  But that activity, putting gun out -- or gun technical data out on the Internet will certainly completely disrupt my client's long-stated mission.

THE COURT:  Let me -- let me express a concern I have with the way you've articulated your legally protected interest.  It seems to me that your interest is best characterized as generalized concern about gun violence in its many forms.  If that were enough to create a legally protected interest to give rise to standing and intervention of a right, as a right, then, you know, there would be no end of people who would have the right to intervene in lawsuits like this.  Right?

MR. CABELLO:  Your Honor, I disagree.  Because there's certainly not a protectoral interest.  We have been counting on the Department of State to protect that interest.  We had counted on the regulatory framework that Congress gave to the President and the President gave to the State Department.

THE COURT:  So does every individual who is worried about gun violence -- and they may be equally offended.  But what's the limiting principal of that creating a legally protected interest in -- for the purposes

21

of Article III standing?

MR. CABELLO:  And that all falls within our Complaint and Intervention, Your Honor.  What ends up happening is had the State Department followed the Administrative Procedures Act in overturning the regulatory framework, in removing this technical information from the restrictions that it was under, had it done what it was supposed to under the statute, under the governing regulations and under the Administrative Procedures Act, we would have no articulable harm.

The problem is that they stepped away from that and so our interest is in making the government do what it's supposed to do, what it was told to do by Congress, by the President.  I don't know where we broke down, but our interest is in ensuring that that happens.

And if I may, Your Honor, I would like to pass up to the Court some of these letters that I have been provided.

MR. BLACKMAN:  Your Honor, I'm going to object to this.  We haven't seen this letter.  This is by ambush.  I'm going to object to these letters.

THE COURT:  What are these letters?

MR. BLACKMAN:  We haven't seen them.  He has given us no notice.

MR. CABELLO:  Your Honor, if I may, first of all,

with respect to the first letter -- and that is from the State of New Jersey -- this was directed directly to his client, Defense Distributed.

MR. BLACKMAN:  This is being actively litigated, perhaps in another court.  I am not prepared to represent anything about these.  I object to these letters.  The letters to the U.S. Senate, letters to Pompeo.  They are trying to litigate a legal dispute in this court and it's obvious they're giving you letters from Senators and Attorneys General.  I object.

MR. CABELLO:  Your Honor, if I may?  We did not solicit these letters.  They were being sent to us but none of them are solicited by us. Certainly the action by --

MR. BLACKMAN:  Your Honor, they can be --

THE COURT:  Don't interrupt him.

MR. CABELLO:  Certainly the letter from the State Attorney General, I learned about it yesterday afternoon while this Court was holding a hearing.  It flew in -- into my email.

Similarly, the July 26 letter from the United States Senate came across this morning, Your Honor.  I hadn't seen it before.  To my knowledge no one was soliciting that letter.

In the letter from Senator Melendez, again, this was brought to my attention, this is the July 25th letter

23

from the U.S. Senate.

THE COURT:  Let me ask you this:  In the half an hour that you were here before the hearing started, did you share these letters with the other side?

MR. CABELLO:  No, Your Honor, I didn't.

THE COURT:  On that basis, you know, that does suggest that you had the opportunity, at least, to get -- let them look at it before the hearing, so I'll sustain the objection.

MR. CABELLO:  All right.

Your Honor, so back to the issue.  My point is, without the letters -- we can do it without the letters.  We can go on without the letters, Your Honor.  The point is, Your Honor, that the Congress, the Senate, the State AGs are starting to be very concerned about the Senate's decision -- I'm sorry -- the State Department's decision to back away from the regulatory framework that was set up.

THE COURT:  I understand everyone's concern.  I get the concern.  I'm sympathetic to it.  But would any or all of those people have the right to intervene in this case?

MR. CABELLO:  Your Honor, I think certainly to the extent that they feel that my law firm can't adequately represent those interests, they may.  I can't say whether they're going to intervene or not.

□□□□□□
□□□□□□

THE COURT:  But isn't that -- the City of Houston case, doesn't the 5th Circuit talk about sort of being wary or circumspect about allowing intervenors the right by public-spirited citizens?  Isn't that sort of what this -- that you have what may be a very virtuous concern and motivation, but it takes more than that to meet the criteria of the rule and of the law in terms of being able to intervene in a case?

MR. CABELLO:  Yes, Your Honor.  And I -- when you look at the 5th Circuit decision in the City of Houston, they're not encouraging everyone to jump in, I think at bottom, in the City of Houston case, they're saying as long as the proposed intervenor's interests are adequately protected by the litigants, there is no reason for them to participate.

In this case I think it's clear, Your Honor, that my clients' interests are not adequately protected by the Department of State because they've entered into the Settlement Agreement.

THE COURT:  Is having your interests looked at the same thing as agreeing with the position of the people who are looking after your interests?  In other words, is that the test?  If you disagree with -- because presumably you thought that the Department of Justice was adequately representing your interest before they switched horses,

right?

MR. CABELLO:  And we didn't seek to intervene at that time, Your Honor.  You are absolutely right.

THE COURT:  So it turns on not whether they're adequately representing your interests, it's whether or not you agree with how they're representing your interests?

MR. CABELLO:  Your Honor, I beg to differ.  That's not necessarily the case.

THE COURT:  Okay.

MR. CABELLO:  The reason that we chose to intervene is that the State Department treats this settlement as a private party.  They are not a private party.  They have to follow the regulations and part of that means that they have to have a public-notice period.  They have to have a public-comment period.

None of that was done.  They negotiated this agreement in a back room and then they released it once it had been signed and executed and agreed to and so they gave the public no opportunity to comment.

THE COURT:  But this lawsuit has nothing to do with their administrative responsibilities and duties, right?

MR. CABELLO:  Again, Your Honor, I beg to differ. I believe that had they followed the rules and regulations under the Administrative Procedure Act, then we would have

26

most likely no recourse here because they've dotted the Is and crossed the Ts.

THE COURT:  But that didn't arise in this lawsuit. That's something outside the confines -- now perhaps your argument is that one of the things they're obligated to do as a result of this settlement is violative of these regulations, but that's not -- isn't that extraneous to the lawsuit that's pending here?

MR. CABELLO:  Well, at bottom, Your Honor, what is germane to this lawsuit is the settlement agreement and the State Department's attempt to release it.  So I think we need to look full behind the curtain and see how we got to that settlement agreement and when we look behind the curtain we find that there's been violation of Administrative Procedure Act.  There's been all sorts of ultra vires acts.  And they violated the separation of power in permitting the plaintiffs to roll out technical information on guns, which basically subverts the congressional statutes dealing with gun control, just because everyone can have a gun now and it's unregistered.

But, Your Honor, there are -- and I will concur and I will agree with the Court, there are several ways to challenge this conduct.  One of them clearly I believe that it's proper, and it appears the Court may disagree, is the Motion to Intervene.

I will tell the Court that the reason we sought the Motion to Intervene is because the case was already squarely before the Court.  It had gone up to the 5th Circuit, come back.  This Court was intimately familiar with the facts and there were a true desire -- and I'll walk through the timeline -- there was a true desire to get in front of the Court quickly before this deadline, which is this afternoon, which I believe, based on yesterday's hearing, the parties pretty much agreed that the letter from the State Department to the plaintiffs had to be released under the settlement agreement this afternoon.  So we were under a tremendous time crunch and this is a case, Your Honor -- or clearly you have a -- once the genie is out of the bottle, it's out.

THE COURT:  Isn't the genie already out of the bottle?  One of the things I've heard over and over in this case is that we're talking about something that really is a fiction because the harm of which you are concerned actually already exists.  It's just this party who has been chilled by the things they're complaining of, in doing what a lot of other people are doing, and that is distributing this information that you consider to be dangerous.

MR. CABELLO:  And I'm glad the Court has raised that, Your Honor, because you are absolutely right.  Some drawings were released back before the State Department

stepped in and informed the plaintiffs that they had to take them down and that they couldn't post them without getting permission, getting a license, in essence, and that's what at least the underlying lawsuit is all about.

So, yes, some drawings were released. But the drawing that I understand was released was for a -- basically a single-round plastic gun, that, quite frankly, is an inferior gun and that falls apart after one or two rounds have been fired through it.

What this is all about, and I call the Court's attention to the plaintiff's founder's statements which were reported in Vice News at Page 5, and that statement -- Mr. Wilson, the founder of Distributed Defense said --

MR. BLACKMAN:  Your Honor, I'm going to make a hearsay objection.  There's been no foundation for this article laid.

THE COURT:  Okay, I'll take it under advisement.

MR. BLACKMAN:  Thank you.

MR. CABELLO:  Your Honor, this statement is at Page 3 of 7.  The second paragraph up from the bottom.

Wilson's business, DEFCAD, is currently the only one authorized by the Government to offer blueprints for 3D printing firearms according to this -- to this legal section of the site.  But anyone who signs up can upload and share their own drawings and blueprints, which gives Wilson's

company infinite potential to expand the reach to 3D firearms printing.

He goes on, and the last paragraph on this page --

MR. BLACKMAN:  I'm going to make a relevance objection, Your Honor.  If other people are uploading the files, that's not my client's issue.  I have objection to foundation and relevance.

MR. CABELLO:  Your Honor, if I may, if someone uploads them to Defense Distributed's website, then they republish, the distributor of that information is the owner of that website.  So clearly it's relevant.

I mean, if I have a website and I am taking data in and then I'm making it available to people then I'm republishing it and making it available.

As long as that party is enjoined from providing that information to the public, it doesn't get out.

Now, someone else may choose to get that information out.  Hopefully the State Department will step in.  Hopefully the Commerce Department will step in.  But right now the person that has that data -- and this is being closely watched because the plaintiff's founder was concerned about whether or not he would be charged with criminal activity, which he hasn't.  But here's --

MR. BLACKMAN:  Objection.  Was this --

MR. CABELLO:  -- here's --

THE COURT:  He's made an objection.  Let me hear it.

MR. BLACKMAN:  Where was this concern at the start of the criminal activity?

MR. CABELLO:  It was in one of the documents.

MR. BLACKMAN:  You've got to give me more, sir, you can't make these allegations in court without any basis.

MR. CABELLO:  Your Honor, if I may?  I will certainly find the statement.

THE COURT:  Thank you.

MR. CABELLO:  Let me continue.

The last paragraph of this report says, "After August 1" -- that's with this release -- "a range of blueprints will be available for download from Wilson's site, including the AR-15 the VZ.58, Czechoslovakian assault rifle, and a 1911 pistol."

So I've heard the statements:  Oh, gee whiz, this is all out.  Your Honor, if it was all out, the case would have been moot when they sued the State Department.  I mean, why file a lawsuit.  It's all out there.

What they wanted to do was move beyond that, and that's exactly why we're here, is they want to move beyond it and offer additional blueprints, sort of as a conduit for other blueprints, and make those all available to the public.

THE COURT: Okay. Thank you.

MR. CABELLO: Your Honor, I want to touch just briefly on the timeline and then I want to come back to this issue you raised about filing this lawsuit.

Very simply, Your Honor -- and I believe that the Affidavits of Declaration establish this -- that on July 10th, Everytown and Giffords first learned of the fact of the settlement agreement. On the 12th of July, 2018, the Brady intervenor first sought excerpts of the Settlement Agreement. On July 17th, 2018, Everytown finally received a copy of the Settlement Agreement.

This has all been under the cloak of darkness, this Settlement Agreement negotiation, the execution. That wasn't obtained until the 17th of July. In less than ten days we're here before the Court.

Now, Your Honor, as I said, the reason that we filed this intervention motion is because we see that there is a real concern about these drawings. You are right, Your Honor, we can file a separate cause of action and, quite frankly, Your Honor, we are prepared to file that separate cause of action.

If the Court determines that we shouldn't be intervenors and is not going to permit us to be intervenors, then we would ask the Court to use its inherent powers to enjoin the defendant from publishing anything from its

32

website until it can consider our TRO as a private litigant against Defense Distributed and the State Department for abdicating its role, so this will continue.

The issue we're trying to address is to make sure that we don't lose the forest for the trees, that we don't stay so focused on the procedural aspects that these drawings get out in the public and then the genie is out of the bottle, pretty much.

I don't believe that the genie is out of the bottle yet, but I believe that as soon as Defense Distributed puts the drawings, the technical information for all the rest of these weapons on the website, it clearly will be out of the bottle.

The last point, Your Honor, is that the plaintiffs themselves have said that the drawings that were released may be on the dark web, but they have errors -- error prone -- and they may not be reliable.  And so, yes, there are -- there is some technical information out on the web, but I think it's become clear that that is not reliable and this is Defense Distributed's opportunity to publish that data, get it out in a reliable fashion.

And then, Your Honor, I think we're all in danger.  Now, I started to tell the Court, and I'll tell the Court, Your Honor, I went through a metal detector downstairs.  I emptied out everything I had.  And I believe that should

happen, not only in this courtroom but when I go to the airport and when I -- when I go everywhere where the public has come to expect security. But I will tell this Court that the kind of guns, these plastic guns, they can be walked through the metal detectors downstairs and endangering this Court and every judge in this courtroom [sic]. They can be walked through security at an airport and endangering every person in the plane, and that can be done by a foreign or domestic terrorist or someone that's intent on using an illegal, untraceable, unregistered gun.

And we would ask the Court to take notice of that fact and to act in a manner that protects its citizens, protects us abroad and here in the United States, and, as I say, we're prepared to move forward with this, Your Honor.

THE COURT: Thank you very much.

MR. CABELLO: Okay.

THE COURT: Mr. Blackman?

MR. MORRIS: Your Honor, if it's okay, these two gentlemen are going to split the time.

THE COURT: Okay.

MR. BLACKMAN: Your Honor, I will take fifteen minutes I will focus on the Motion for Intervention and my colleague, Matt, with a high IQ will focus on the Temporary Restraining Order.

THE COURT: Thank you.

□□□□□□
□□□□□□

MR. BLACKMAN:  May it please the Court.  I'll start where you asked to start, which is Rule 24.  And I want to focus on one of the factors identified in Stallworth v. Monsanto.

That factor asks:  Is there unusual circumstances that would militate either for or against intervention in this case?  Without question, there are extremely unusual circumstances that militate against it.  At several times my friend said the Government has abdicated their role.  Abdicated.  It's a very strange phrase he used.

At several points in their brief they actually charge the Government with some sort of improper motives, that the Government capitulated to our position.  Were that so, that it is shocking that the Government abdicated the correct position, took matched security.  Again, correct, the way they see it.

But, Your Honor, there is a former innocuous reason why they have a settlement.  We informed the Court in March a settlement was in works, by a month later we asked for an extension, and on June 28th we announced that we were going to dismiss the entire case.

Let me give you a peep behind the curtain which they're so desperate to see.  There's no Oz here.  This is mundane, administrative law.

Your Honor, I apologize, I don't have a copy of it

35

but this is the federal register from May 24, 2018.  I'll share with the Court and I can get them later.

THE COURT:  Thank you.

MR. BLACKMAN:  Thank you, Your Honor.

I apologize, I didn't have enough time to print out binders.  I was in urgency.

In May 2018, the U.S. Government announced that they would be transferring jurisdiction of certain types of technical data from the State Department to the Commerce Department.  This was not a new change.  This is a change that's been in the works since 2010, and my colleague, Mr. Goldstein, was involved in that back during the Obama administration.  For years the Government has been trying to shift jurisdiction from State to Commerce.

The upshot of that change was technical data would no longer be subject to a prior restraint.  It's that simple.  Once the Government published that proposed notice, our lawsuit no longer made any sense to them.

How could it be that everyone in the United States could share their data under the commerce clause regime except for Cody Wilson.  Cody still had a letter against him saying:  Do not share this information.  It would make no sense.

And let me tell you, Judge, we would have been happy to litigate that because we would have won.  It's

36

completely irrational to single out a single individual for a regime that no one else is subject to.  That's why it was a settlement, the Government recognized they were going to lose this case and they decided to release all claims and it took us a few months to work out the kinks and how to phrase it and the attorney fees and all these other things, right? That's the reason why we're here.

It's unfortunate that my friend needs to charge the U.S. Government with bad faith based on wild speculation when there's an easy answer, one he didn't even mention in his brief, the proposed rule making.  That's why we're here. The U.S. Government made a determination -- not just the Trump administration but the Obama administration -- that technical data, speech, should not be subject to this prior restraint.  That's it.  That's it.  His case here is nothing more than a collateral attack on a rule making.

Your Honor, I think you said it correctly, this is not the correct avenue or the place to bring this case.  He is merely attempting to frustrate a settlement.

Now, I think the judge, Your Honor, asked for what's the limiting principle.  He has none.  He admitted that anyone who is interested in gun control could come into federal court.

Your Honor, remember the Schlesinger case back when Justice Douglas allowed an order to be entered to stop

the bombing in Cambodia because it concerned citizens about the war?  Within a day the Supreme Court vacated Justice Douglas's opinion.  Justice Marshall said, Justice Douglas, that's not okay.

They're asking for a dangerous intervention in the separation of powers, and not only is this dangerous, we don't have jurisdiction, Your Honor.

I reference the Ordnance case which is referenced in our brief, the DDC case from District of Columbia.  They don't cite it.

The courts have no jurisdiction to entertain cases concerning the issuance of licenses.  None.  This has been delegated to the elected branches not the judiciary.  And also, there's a statutory bar my colleague Mr. Goldstein is going to talk about.  There's statute that exempts decisions concerning the issue of licenses from the APA.  They don't mention it.

There are so many exceptional circumstances that militate against this, and that's just Rule 24.  I can regale the Court with articles and arguments on standing but there's no causation.  There's no traceability.

The files Mr. Wilson wants to post on August 1st are already online.  He misspoke.  The files Mr. Wilson wants to post are online.

If you look at Page 11 of our brief, in Exhibit B,

38

we list each of the ten files and links where even available.

Judge, the blueprint for the AR-15 has been online since 2007.  The genie is out of the bottle.  You can't unring this.  At this point they are trying a last-minute intervention to frustrate us.

If there are any further questions, I can turn it over to Mr. Goldstein, but I think I've said enough.

THE COURT:  Thank you.

Mr. Goldstein?

MR. GOLDSTEIN:  Your Honor, before I -- I'm here to entertain any questions you have about the proposed rule, how the rule making comes about, and specifically to the Category I and that rule that's before you.

THE COURT:  You can assume I don't know anything about it.  How is that?  Let's start with that.

MR. GOLDSTEIN:  Okay.  Well, beginning in 2010, former President Barack Obama initiated what's called the Export Control Reform Initiative and the goal of this was to kind of counter, among other things, the licensing delays and problems people were encountering with the Department of State.  And the idea was to transfer items with less -- lesser military critical significance from the ITAR, U.S. munitions list, to the Departments of Commerce, Commerce control list.  Commerce has better staffing.  Commerce can

39

process licenses better.  It has a better mission that helps to promote U.S. industry for items of lesser concern.

So what they did was they had some series of meetings for all this time while the initiative was going on at the Pentagon, at the Department of Defense -- I was actually present at some of these before I went on solo.

And at these meetings you would have people from the Department of Defense, the National Security Agency, you would have various --

MR. CABELLO:  Your Honor, I'm going to make a belated objection.  All of this is not argument, Your Honor.  He's attempting to testify.  And he's telling us about what happened.  I mean, that's hearsay on hearsay.

But, Your Honor has ruled that my material is hearsay.  This is the same kind of hearsay.  Mine is offered in printed letters from the Senate.  He's testifying from the podium as to what he heard and what has happened in these Senate hearings, so I would object and ask that it be stricken from the record.

THE COURT:  I led him into it, but it's well taken.  If you can just limit your argument to what's in the record.

MR. GOLDSTEIN:  I can limit it to the record and, if I can, what's in the federal register.  The federal register is replete with federal register notices, over 1000

pages of federal register notices were issued since 2010 moving these items from USML to the CCL. This is a matter of public record in the federal register.

Now, there's twenty-one categories on the USML and so what they were doing is the federal register notices go by category numbers. Sometimes federal registers will move and work in more than one category.

Category I controls firearms, combat shotguns, close-quarter combat weapons. Category II is guns and armament, so that's above .50 cals, which is before you. And Category III is admission for those things. These are the last three categories to be transferred as part of President Obama's Export Control Reform Initiative.

With the completion of these transfers, which the present administration has now completed, the Export Control Reform dream of doing these transfers from the twenty-one categories of the USML to the Commerce Control list, CCL, will be realized.

Now the big difference that we're dealing with here today is that it's not that you transferred Category IV missiles, it's not that you transferred Category I -- Category XI military electronics, it's that now they're transferring the Category I firearms which was held back for a while for domestic concerns.

And I have a feeling that the reason why they're

41

doing it now is because the time has come to complete the reform.  They figure they can settle the case, whatever.

But this is an initiative that's been done long, long ago.  It was part of a larger reform effort and it just so happens that now with timing, in May, they issued the proposed rule.

Now, they are very much following the APA -- there's no evidence that they presented to show otherwise. They issued a proposed ruling.  It has a public comment period that I believe ended July 7th.  They haven't even issued a final ruling yet.

Now, under the Arms Expert Control Act they are not required to provide any congressional notification and told they're going to be removing the items, and that's 2778(f) of the Arms Expert Control Act, also known as 38(f), and that requires that the President give advanced notification to Congress before removing any item off of the USML.

This settlement agreement doesn't require them to move anything in the USML.  All it does is it asks the Government to make a commitment to draft and fully pursue these amendments as authorized by the law, and it says to include the APA.

Our settlement agreement actually requires that they comply with the law in dealing with those items.

So, now, taking a step back from the history of this where this is not some sort of homespun thing that was for this litigation and part of a larger effort, and we can provide supplemental briefing on that as time allows.  It's quite easy to do because it has an extensive legislative and executive branch history of this in the federal register.

But even if that wasn't the case, the President's decision on what is on the USML is not subject to judicial review.  Section 2778(h), which is a very simple stand-alone provision in the Arms Export Control Act -- and the Arms Export Control Act, 2778, is not that long.  They take a second to skim it and see this section says that judicial notice is precluded.  It's so short I would like to just read it to the Court.  It's actually a sentence in length.

I'll find it, Your Honor.

Okay, Your Honor, it took me more than a second but Section (h) of the 2778 of the Arms Export Control Act titled Judicial Review of Designation of Items as Defense Articles or Services.  It states, "The designation by the President, or by an official to whom the President's functions under Subsection (a) have been duly designated, in regulations issued under this section of items as defense articles" --

MR. CABELLO:  Your Honor, I would object.  He's had this information.  I haven't been provided with a copy

of it and certainly I'm not provided a copy of it at this time.

MR. GOLDSTEIN:  Your Honor, it's in the Arms Control Act.  They have read it.

THE COURT:  It's a statute.  I think he's allowed to read.  I'll take judicial notice of it.

MR. GOLDSTEIN:  Basically what it says -- blah, blah, blah -- sorry -- says, "Shall not be subject to judicial review."  So basically what that means is -- and this is kind of 101 from the Expert Control wording -- if the agency says something is on the USML or wants to remove it, you can't challenge it in court.

We studied the Charms (phonetic) decision on a different matter that's not in our brief that actually dealt with this issue, where someone who was doing a commodity jurisdiction request, which we had in our action as part of the facts.  He didn't like the result.  He challenged it in court.  The Court said:  No, this provision not only prohibits you from challenging what the Department of State puts on their USML, or takes off of it, but also challenges to keep you from challenging individual determination of whether your particular item matches it.

So, number one, even if per some way our settlement agreement required the Government to do -- transfer these items, which it doesn't, they're going to do

44

what they can under the APA and other laws.  Even if it did, the Court doesn't have jurisdiction over that issue.

Now, the other part that they're complaining about is the other sections of the Settlement Agreement that don't involve the transfer of an item but involve what is a licensing by the Department of State of Mr. Wilson and the other plaintiffs' speech.

Now, that statue doesn't speak to speech but there is substantial decisions by the DC Circuit and the US Ordnance case, one of the cases we cite, which says that the decisions by the Department of State regarding when to grant licenses for exports is not subject to judicial review and there's good reason for that.  One is there's an exception from the APA, right in the beginning at 702 or 701(a)(2), that says that when the matter is one that's left to the discretion of the agency by statue, it's not subject to the APA.

And this is the clear case US Ordnance found that this is a case that's left, the case of Arms Export Control Act licenses involves Foreign Affairs, a military function of the U.S. Government, the Executive Branch, that is not subject to judicial review for two primary reasons:  One, like the exception to the APA, it involves a discretionary act that requires knowledge of foreign affairs/foreign policy.

You know people who are making these decisions normally have direct access to the intelligence community, CIA reports, NSA.  They are surrounded by other members that can provide them with information in their branch.  They are also normally trained in diplomacy, international relations, but these are the people whose job it is in the Executive Branch to make these decisions.

The other part in the decision in US Ordnance is that it's not only left to the discretion by statute but it also doesn't have any judicially managed standard for the Court to step in and say:  We can decide what's best as far as international affairs and foreign policy when it comes to licensing decisions.

So the law is pretty clear there, that the Court does not have jurisdiction and shouldn't try to step in the place with the Department of State in determining when to grant the license.  So we are just dealing with two separate things here, list transfer prohibited by statute, licensing determinations prohibited under the APA; lack of judicially managed standards left to the agency's discretion involving a core matter of foreign affairs and foreign policy of national security.

THE COURT:  Thank you.

MR. GOLDSTEIN:  Thank you.

THE COURT:  Let me give Mr. Robinson the

46

opportunity to chime in.

Mr. Robinson, would you like to give me the benefit of your thoughts on these issues?

MR. ROBINSON:  Thank you very much, Your Honor.

I don't want to take up too much of your time.  We agree with the Court that the greatest concern to the application is Article III standing and as the proposed intervenors' counsel mentioned in the Town of Chester, the 2017 term, the court stated that a litigant seeking to intervene as of right under 24(a)(2) must meet the requirements of Article III standing if that intervenor wishes to pursue relief not requested by the plaintiff, which is certainly the case here.

And when Mr. Cabello was articulating his theory of standing, as the Court noted consisted essentially of a generalized grievance about safety and security and any concerns about national safety would be farther removed to the Executive Branch's prerogative to make decisions about what is in the interest of national security.

And then when the Court asked Mr. Cabello to explain how that injury was concrete and particularized, Mr. Cabello referenced violations of the APA, but that itself, again, is a generalized grievance.  And even a procedural injury will not secure the absence of a direct injury.

And I would refer the Court to the 5th Circuit Langley decision, 77 F.3d 479 from 1996 which says exactly that. Also a procedural injury must be based on procedures that are designed to protect threatened concrete interests of the ultimate basis of the standing. Again that's from Lujan.

So, if safety and security are not concrete enough, and we submit that they are not here, the Court's only potential basis to find subject-matter jurisdiction would be on the organizational-standing doctrine, which I don't think Mr. Cabello really got into in his presentation.

And as the Court is made aware, there was a shift in the proposed intervenors' position on organizational standing. They now claim that they have expended significant resources to counteract the parties' conduct, but everybody on taking into account their new theory, looking at the Declarations they have submitted, they are insufficient to submit Article III standing specifically with respect to injury. What they need to do, pursuant to the 5th Circuit precedent, is to show a drain of resources as a result of their actions.

Their Declarations provide information about research, communication and litigation activities. Certainly it's well established that litigation and litigation counseling are not proficient to meet that test.

48

And, more importantly, they haven't explained how these activities mentioned in their Declarations differ from their routine activities.

They haven't identified specific projects that they have had to put on hold, otherwise curtail, or in the -- using the phrasing from the Acorn (phonetic) decision, that they had to stop everything else in order to counteract the action at issue here.

Also, it's not clear from the Declaration to what extent those activities relate to this settlement versus, for example, responding to the NPRM. I think at least two of the groups who are proposed intervenors have submitted comments, so there's just no causal link there. So on that basis alone, we think there is no standing established by the group and we would ask the Court to deny the application.

I'm also prepared to talk about some of the APA points if the Court wishes, but we would primarily ask the Court to deny the Application based on standing.

THE COURT: Okay. Thank you very much, Mr. Robinson.

All right, Mr. Cabello, would you like the opportunity to respond?

MR. CABELLO: Yes, Your Honor.

First of all, with respect to the comments that

were just made with respect to diverted resources, I would call the Court's attention to the Declaration of Joshua Scharff, in particular paragraph 7, with respect to the Brady group.

MR. BLACKMAN:  Your Honor, I'm just going to renew my objection for relying on these exhibits, for the record. Thank you.

THE COURT:  Thank you.

MR. CABELLO:  If Brady would not have extended those resources toward this issue, Brady would have been able to extend those resources in furtherance of its mission to create a safer future for every American where hundreds of gun injuries and deaths a day are no longer normal, including by and then it has a list of basically half a page of reasons, including strengthening gun law, reducing the flow of crime guns, meaningfully communicating to gun owners, finding a course to defend gun laws, and effective gun violence prevention policies, challenging laws and policies, and providing direct legal advocacy.

So, Your Honor, they are -- at least the Declarations establish that there are some resources that have been and will be diverted in the future, particularly if these -- if these -- if this technical information is released.

Let me turn, Your Honor, with respect to a comment

that the Court made and asked me about and I believe the Court said, you know, wouldn't everyone have a right to intervene? And I don't believe that's the case, Your Honor, because it is the organizations that are making those expenditures. It is the organizations that are going through these efforts. It isn't the individual.

So the members of our intervenor organizations would not have the right to intervene. It's the organizations because they're the ones that are expending resources both for this action and will continue after this action, and certainly their focus will be redirected and the resources significantly drained by an adverse decision on this.

I will tell the Court that this notion that gun control is being transferred from the State Department to the Commerce Department is really directed to physical arms; that is, registered guns that are exported, guns that are trafficked.

What we're talking about here is technical information and so we find that the statutes and the rule making is not staying up with the technology.

If we were talking about registered guns with serial numbers on them, certainly to the extent that's transferred from the State Department to the Commerce Department, that's within the prerogative of the

administration.

MR. BLACKMAN:  Your Honor, I'm going to object. Does he have a citation for anything that says that?  I want a foundation for this assertion.

THE COURT:  Do you have any?

MR. CABELLO:  Your Honor, certainly it is in our briefing and I'm happy to pull that out.  It is in our Complaint and Intervention.  We've laid that out, the whole scheme, and I believe it's been there from the beginning.

Your Honor, when the Court looked at the Arms Export Control Act that's set out in our briefing and in our Complaint and Intervention, we lay out the scheme worked for the USML, that's the U.S. munitions list, and also lay out the fact that these firearms, less than .50 caliber and less, are in the -- are considered Category I under USML. And the technical data also is considered under the USML.

So what we have here is, yes, there's been a desire to transfer, but as it turns out, once this technical data is out, there's no way to regulate it and certainly to the extent we are talking about, tangible things, the commerce department can regulate those very easily.

Now, my colleague said, Well, you know, all these files are already out there.  They are all available.  If that were so, Your Honor, then an injunction certainly won't harm the plaintiff.  An injunction actually would serve to

preserve the status quo because the files are out there, they are out there.

There's no injunction with respect to those files. They can't possibly run to those files. All we're asking is that they not publish anything further from the files. So, to the extent they're out there, that injunction doesn't affect them.

Your Honor, if I may, I just was challenged when I made a statement with respect to Defense Distributed's founder and I want to call the Court's attention to ECF Document Number 8 which at Page 7 -- and I'll have my colleague --

MR. BLACKMAN:  Do you have a copy of it?  I didn't print it out.

MR. CABELLO:  All we have it is electronically. It's their filing, Your Honor.  It's their filing.  It's a statement they made.

And I would like to read that into the record, Your Honor.

THE COURT:  Okay.

MR. CABELLO:  This is Defense Distributed's document and it was their Motion in Support of the Injunction where they first sought to enjoin the U.S. State Department.  And it says, "Nevertheless, for fear of criminal and civil enforcement, Defense Distributed promptly

complied with the defendants' demand and removed all of the published files from its servers."

That's their statement, Your Honor.  Clearly they, at least, had some concern about criminal enforcement.

Your Honor, as I mentioned, if the Court finds that we do not have a right to intervene -- and we believe we do have a right to intervene -- at some point we were interrupted when I tried to discuss the commonwealth of the pending action, and I believe that if the Court takes notice of that case, what we find is that even though there was a -- I do want to read one section into the record, because I think it's important to the Court's consideration.

This dealt with a Catholic organization trying to deal with some changes in the payment for birth control devices and pills.  The people that sought to intervene were called the Little Sisters of Peter and Paul, if I'm not mistaken.  I don't recall the exact name.

But in here the Court said, "We have held that the applicants' interests are not adequately represented if they divert sufficiently from the interest of the existing party such that the existing party cannot devote proper attention to the applicants' interest.  The burden is generally treated as minimal and requires the applicant to show that representation of his interest may be inadequate."

That's at Page 16 of the opinion that I've handed

54

up to the Court.

So I think, Your Honor, clearly we have an interest in intervening but should the Court find that it isn't sufficient to intervene, we would ask the Court to, nonetheless, use its disciplinary powers to enjoin.  There would be no harm to the plaintiffs.  They said the files are already out there.

We have a Complaint ready to file, an independent right we'd associate with this case, and then we can set another hearing on TRO, Your Honor.  We just need to try to get these -- this technical data out of the hands, keep it out of the hands of the public.

THE COURT:  Thank you.

Any follow up?

MR. BLACKMAN:  Yes, Your Honor.

Mr. Goldstein would like to respond to some of the discussion points, and I will have a brief reply at the end. Thank you.

MR. GOLDSTEIN:  I have a lot I can talk about as far as the misstatement in the briefing about congressional communication requirements that do not apply to anything in this case and a lot of this about due process is way off the mark.

If Your Honor has questions I can answer those but what I'm going to focus right now on, what was just said as

far as the transfer of the AR not controlling technology.

When the Department of State issued -- issues proposed rules transferring items off the United States munitions list to the commerce control list, from the Commerce Department of EAR, there's companion rules.  The Department of State issues a rule removing the item, Department of Commerce issues a rule putting the item on their list.

So the May 2018 rule on Category I, the last in the line of list transfer rules in the Obama Export Reform Initiative, that rule from the Department of State also had a Department of Commerce companion rule, and it's actually from the Department of Commerce's Bureau of Industry and Security.  They have special agents with guns.  They have enforcement powers, they are a regulatory body, and they require licenses and there's harsh fines if you don't comply with those in the companion rule.  Which the cite is 83 FR 24166 at Page 24170 of the rule.

It clearly describes the new export control classification listing on the Commerce Control List under 0E501, titled Technology for Firearms and Certain Related Items.  And it states that this new ECCN, quote, "would apply national security and regional stability to the United Nations and anti-terrorism reasons to control technology required for the development and production of firearms

other than shotguns."  And there's other parts of this proposed rule.

They're not decontrolling all of this.  They're still going to control technology.  The hardware gets transferred.  Also the technology gets transferred.  The big difference, and the reason why there's concern here today is, unlike the Department of State, the Department of Commerce lists to the Department of Justice advisements back in the '80s and they never imposed a prior restraint.  So once the items are transferred, the Department of Commerce is not in the business of imposing controls on public speech, so I just want to correct that statement from earlier.  The technology will be transferred, it's just they're not controlling public speech.

THE COURT:  Thank you very much.

MR. GOLDSTEIN:  Just one more statement about any delay on my client's right to speak is irreparable harm regardless of what's out there.  Thank you.

THE COURT:  Thank you.

MR. BLACKMAN:  Your Honor, I will address briefly the point Mr. Gura raised in rebuttal that there is this proposed intervenor complaint.

The Article III standards for the proposed intervenor complaint is the same for the Motion to Intervene.  If they don't have standing to intervene, they

don't have standing to file the amended complaint, so I don't see it going anywhere.

I want to close on the point of Mr. Goldstein. Elrod v. Burns, 1976, the Supreme Court said the loss of First-Amendment freedoms for even minimal periods of time unquestionably constitutes irreparable injury.

We've been here long enough.  The Government sent Mr. Wilson his letter in 2013.  We were in your court, Your Honor, in 2015 arguing this.  We've been to the 5th Circuit and to the Supreme Court, back down here, and we've reached a settlement.  Let's draw it to a close.  The Government's prepared to keep their end of the bargain, so are we.  Let this matter close today and let us get on with our lives. Thank you, Your Honor.

THE COURT:  Thank you.

Mr. Robinson, do you have anything to add?

MR. ROBINSON:  One last point, Your Honor.

When you were making your opening remarks that if the plaintiff -- or, excuse me -- the proposed intervenors do have standing, otherwise meet any credential standing test, that's the proper avenue for them to pursue relief would be to challenge whatever might be the ultimate final ruling issued under the APA, not this lawsuit here.

THE COURT:  Okay.  Thank you very much.

All right.  Any last thoughts?

58

MR. CABELLO:  A couple, Your Honor.

First of all, with respect to the regulatory framework that is being handed off to the Commerce Department, the issue -- and I mean we've hit it square on -- and that is the prior restraint on the technical data. The Commerce Department has no ability to restrain that technical data and if it's not restrained and it's released to the public, then any review by the Commerce Department will be for naught because they can't pull it back.

So we're in a very different field now because of the technology so clearly, Your Honor, yes, that is the issue square on, is the Commerce Department doesn't have an ability to restrain before release of that technical information and that is something that the State Department did very well.

With respect to the First-Amendment rights, Your Honor, that issue has been up to the 5th Circuit.  And I believe that the 5th Circuit clearly hit the nail on the head and said that the public's interest in keeping this information out of the hands of members of the general public and criminals far outweighs those First-Amendment rights and we believe that that is sound law based on the facts that we have here before us.

THE COURT:  All right.  Thank you very much for supplementing your pleadings with argument today.  I am

going to issue a written order in the coming hour or so and the -- that I will go ahead and tell you that the order will be an order denying the Petitioner's Motion to Intervene and Petition for Preliminary Injunction and I think it will be for reasons that will, as Mr. Blackman indicated, will effectively preclude an independent lawsuit.

But we'll get that out. I want to make sure that I craft it carefully and we will get it out just as soon as we can and then we'll be in a position to do what you need to do, Mr. Cabello.

But, again, thank you all very much.

MR. CABELLO: Your Honor, one minor matter?

THE COURT: Sure.

MR. CABELLO: With respect to the Motion to Intervene, the denial of that is a matter -- there is an immediate right of appeal, Your Honor. So, we would ask that the Court consider continuing the injunction on the materials, on the technical data that is in question here, to give us an opportunity to appeal this as a matter of right to the 5th Circuit so that we can have the 5th Circuit review the decision with respect to intervention.

And I say that with all due respect.

MR. BLACKMAN: Your Honor, I have to object to that. They could have brought the suit weeks ago. We don't need a last-minute appeal to the 5th Circuit on the right of

review or even the loss of the First-Amendment freedom for even a moment to constitute irreparable injury, even if this Court found that a Preliminary Injunction was not appropriate, we're back here on the merits.  The balance of harm factors are very different.  There's no reason to postpone this anymore.  The Government's ready, we're ready, and let's draw this to a close.

And, Mr. Goldstein, would you like to say something?

MR. GOLDSTEIN:  Of course there is no injunction.

MR. BLACKMAN:  There's nothing to delay.  If they want to seek mandamus in the 5th Circuit, let them do it but let us move on with our lives.

THE COURT:  I will make a ruling now to be followed up by a written ruling in a few minutes so that you have a ruling now if you want to go seek a mandamus or anything in the next hour and a half; but I will give the reasons for my ruling on the record in a written order by the end of day.

MR. BLACKMAN:  Your Honor, for clarification, can we act upon this ruling now and issue the letter?

THE COURT:  Yes, that's going to be in my ruling so I'll rule that in the ruling to be followed up in a written order.

MR. BLACKMAN:  So, Mr. Robinson, if you are

61

listening, we're ready.

THE COURT:  Mr. Robinson, anything else?

MR. ROBINSON:  No, Your Honor.  Thank you very much.

THE COURT:  Okay.  Thank you all very much.

(Whereupon, the hearing then concluded at 3:24 p.m.)

*     *     *     *     *

62

C E R T I F I C A T E

I, Pamela J. Andasola, Certified Shorthand Reporter, Registered Merit Reporter, Federal Certified Realtime Reporter, in my capacity as Official Reporter do hereby certify that I was present and recorded the above proceedings in stenotype and reduced the same to typewritten form, that the foregoing 61 pages constitute a true and complete record of the proceedings, to the best of my ability, had and done on July 27, 2018, before the Honorable ROBERT PITMAN, Courtroom 4 of the United States District Court, Western District of Texas, Austin Division.

Dated this 7th day of January, 2019.

s/Pamela J. Andasola
PAMELA J. ANDASOLA, CSR/RMR/FCRR

MR. BLACKMAN: [28] 3/46/166/187/19/3 17/1221/1821/2222/322/1328/1328/17 29/329/2330/230/533/2033/2535/349/4 51/152/1254/1456/1959/2260/1060/19 60/24
MR. CABELLO: [44] 2/202/244/84/10 10/310/814/1314/2015/1417/1318/22 20/1521/121/2422/1022/1523/423/9 23/2124/825/125/625/925/2226/827/22 28/1829/729/2430/430/730/1031/133/15 39/942/2348/2349/851/552/1452/20 57/2559/1159/13
MR. CLARK: [9] 3/133/163/194/44/74/23 5/25/85/14
MR. GOLDSTEIN: [10] 2/1838/1038/16 39/2243/243/645/2354/1856/1560/9
MR. GURA: [3] 4/144/165/22
MR. KIMBALL: [1] 3/2
MR. MORRIS: [2] 2/1133/17
MR. ROBINSON: [4] 3/2446/357/1661/2
THE CLERK: [1] 2/5
THE COURT: [72]

'

'80s [1] 56/9

,

,if [1] 8/18

.

.50 [2] 40/1051/14

0

0E501 [1] 55/21

1

1000 [1] 39/25
101 [1] 43/10
10th [1] 31/7
11 [2] 17/1937/25
12th of [1] 31/8
15 [2] 30/1538/3
157 [1] 18/10
16 [1] 53/25
16th [1] 16/8
17th [1] 31/10
17th of [1] 31/14
1911 [1] 30/16
1976 [1] 57/4
1996 [1] 47/2
1st [1] 37/22

2

2007 [1] 38/4
2010 [3] 35/1138/1740/1
2013 [1] 57/8
2015 [1] 57/9
2017 [3] 15/1016/846/9
2018 [9] 1/132/117/1731/831/1035/135/7 55/962/10
2019 [1] 62/15
24 [11] 9/613/2315/715/817/1717/21 17/2434/235/137/1946/10
24166 [1] 55/18
24170 [1] 55/18
25th [1] 7/8
26 [1] 22/20
27 [3] 1/132/162/10
2778 [4] 41/1542/942/1142/17

28th [1] 34/20
2:03 [2] 1/132/5

3

30 [1] 7/23
372 [1] 2/7
38 [1] 41/15
3:24 [1] 61/7
3D [2] 28/2229/1
3rd [3] 17/1617/1918/8

4

479 [1] 47/2

5

5th [2] 58/1760/12
5th Circuit [12] 16/1016/2024/224/1027/4 47/147/2057/958/1859/2059/2059/25

6

61 [1] 62/8

7

701 [1] 44/14
702 [1] 44/14
77 [1] 47/2
7th [2] 41/1062/15

8

83 FR 24166 [1] 55/18

9

9 a.m [1] 7/8
964 [1] 18/10
969 [1] 18/10

A

a.m [1] 7/8
A:15 [2] 1/52/7
A:15-CV-372 [1] 2/7
A:15-CV-372-RP [1] 1/5
abdicated [3] 34/934/1034/14
abdicating [1] 32/3
ability [3] 58/658/1362/10
able [5] 8/2212/1812/2024/749/11
about [49] 7/197/2310/1311/611/1912/18 12/2412/2413/213/613/2114/514/11 14/1218/2020/1020/2322/622/1723/15 24/224/327/1728/428/1029/2231/431/18 37/137/1538/1238/1338/1639/1244/3 46/1646/1746/2248/1750/150/19 50/2251/2053/454/1954/2054/2256/16
above [2] 40/1062/6
abroad [1] 33/13
absence [1] 46/24
absolutely [2] 25/327/24
abusers [1] 19/10
access [2] 19/1045/2
according [1] 28/23
account [1] 47/16
Acorn [1] 48/6
across [1] 22/21
act [15] 21/521/925/2526/1533/1241/12 41/1542/1042/1142/1743/444/2044/24 51/1160/21
action [14] 1/86/813/1313/2514/718/4 22/1331/1931/2143/1648/850/1050/11 53/9
actions [1] 47/21
actively [1] 22/4

activities [5] 11/2047/2348/248/348/10
activity [3] 20/429/2330/4
acts [1] 26/16
actually [8] 27/1834/1139/641/2442/14 43/1451/2555/12
Adam [1] 5/9
add [1] 57/16
addition [1] 7/7
additional [2] 13/830/23
Additionally [1] 3/5
address [10] 8/1610/510/714/1515/8 15/2018/1519/632/456/20
addressed [4] 15/916/1618/1418/19
addresses [1] 17/20
addressing [2] 9/1512/13
adequately [9] 18/418/1518/1823/23 24/1324/1724/2425/553/19
administration [5] 35/1336/1336/1340/15 51/1
administrative [7] 13/2021/521/925/21 25/2526/1534/24
admissible [1] 6/22
admission [1] 40/11
admitted [2] 3/136/21
advance [1] 7/10
advanced [1] 41/16
advantageous [1] 6/21
adverse [1] 50/12
advisement [1] 28/17
advisements [1] 56/8
advocacy [1] 49/19
advocated [2] 15/2218/17
advocates [1] 10/19
affairs [4] 44/2044/2445/1245/21
affairs/foreign [1] 44/24
affect [1] 52/7
affected [1] 18/2
affidavit [1] 8/7
Affidavits [2] 7/1631/6
after [4] 24/2228/830/1250/10
afternoon [7] 2/12/213/254/322/1727/8 27/11
again [8] 3/1614/622/2425/2334/1546/23 47/559/11
against [6] 7/2032/234/634/835/2137/19
agency [3] 39/843/1144/16
agency's [1] 45/20
agents [1] 55/14
ago [5] 7/238/69/2041/459/24
agree [3] 25/626/2246/6
agreed [2] 25/1827/9
agreeing [1] 24/21
agreement [14] 11/624/1925/1726/10 26/1327/1131/831/1031/1131/1341/19 41/2443/2444/4
AGs [1] 23/14
ahead [2] 4/2159/2
aided [1] 1/24
airport [3] 7/1033/233/7
al [1] 17/16
ALAN [2] 1/173/6
all [39] 5/78/138/2512/112/514/1821/2 21/2523/1023/2026/1528/428/1030/18 30/1830/2030/2431/1232/1232/2236/4 36/639/439/1141/2048/2248/2551/22 51/2352/452/1553/156/357/2558/258/24 59/1159/2261/5
allegations [1] 30/7
Allen [1] 4/17
allow [1] 12/9

## A

allowed [2] 36/2543/5
allowing [1] 24/3
allows [1] 42/4
alone [2] 42/948/14
already [9] 7/158/89/2127/227/1527/19 37/2351/2354/7
also [22] 2/234/55/166/29/2311/1114/16 16/316/418/737/1441/1543/2045/545/10 47/348/948/1751/1351/1655/1156/5
am [7] 5/106/1212/813/722/529/1258/25
ambush [4] 8/29/2210/1321/20
amended [1] 57/1
AMENDMENT [5] 1/457/558/1658/21 60/1
amendments [1] 41/22
American [1] 49/12
among [1] 38/20
analysis [2] 6/228/25
Andasola [4] 1/2562/362/1862/18
Angeles [3] 4/67/2410/18
announced [3] 4/1834/2035/7
announcements [1] 2/10
another [3] 7/2322/554/10
answer [2] 36/1054/24
anti [1] 55/24
anti-terrorism [1] 55/24
any [20] 3/237/218/159/912/323/1930/7 35/1838/738/1241/1341/1745/1046/16 51/554/1456/1657/2057/2558/8
anymore [1] 60/6
anyone [8] 4/44/225/85/145/196/128/24 36/22
anything [12] 13/1914/1122/631/2538/15 41/2051/352/554/2157/1660/1761/2
anyway [1] 8/22
anywhere [1] 57/2
APA [12] 14/737/1641/741/2344/144/14 44/1744/2345/1946/2248/1757/23
apart [1] 28/8
apologies [1] 3/6
apologize [2] 34/2535/5
appeal [3] 59/1659/1959/25
appearance [1] 2/4
appears [1] 26/24
applicant [1] 53/23
applicants' [2] 53/1953/22
application [3] 46/748/1648/19
applies [1] 16/14
apply [2] 54/2155/23
appreciate [2] 7/312/12
appropriate [1] 60/4
April [1] 17/17
April 24 [1] 17/17
AR [3] 30/1538/355/1
AR-15 [2] 30/1538/3
are [89]
argue [2] 9/111/19
arguing [1] 57/9
argument [15] 7/218/158/158/248/259/12 9/1610/1010/1212/1212/1926/539/11 39/2158/25
arguments [1] 37/20
arise [1] 26/3
armament [1] 40/10
arms [9] 41/1241/1542/1042/1042/17 43/344/1950/1651/10
article [9] 14/214/917/121/128/1646/7 46/1147/1856/23
articles [3] 37/2042/1942/23

articulable [1] 21/10
articulate [1] 18/21
articulated [1] 20/8
articulating [1] 46/14
as [62] 2/173/67/97/237/238/2110/20 12/312/312/412/412/1012/2513/814/16 14/1917/618/218/319/1220/1020/13 24/1224/1324/2125/1226/629/1529/15 30/2331/1632/132/1032/1033/1339/17 40/1241/1541/2242/442/1842/2243/16 45/1145/1246/746/1046/1547/1247/21 51/1853/553/2354/1954/2054/2555/1 59/559/859/859/1962/5
ask [11] 8/119/2211/2323/231/2433/11 39/1848/1548/1854/459/16
asked [5] 34/234/1936/2046/2050/1
asking [4] 10/2313/1737/552/4
asks [2] 34/541/20
aspects [1] 32/6
assault [1] 30/15
assertion [1] 51/4
associate [1] 54/9
assume [1] 38/15
assuming [1] 14/4
assure [1] 12/3
attack [1] 36/16
attempt [1] 26/11
attempting [2] 36/1939/12
attempts [1] 11/11
attention [7] 17/1117/1822/2528/1149/2 52/1053/21
attorney [5] 4/59/2510/2222/1736/6
Attorneys [2] 10/1722/10
August [3] 16/830/1337/22
August 1 [1] 30/13
August 16th [1] 16/8
August 1st [1] 37/22
AUSTIN [2] 1/262/12
authorized [2] 28/2241/22
available [7] 15/2529/1329/1430/1430/24 38/251/23
avenue [4] 13/1513/1636/1857/21
aware [5] 8/2311/911/1311/1447/12
away [2] 21/1123/16

## B

back [15] 9/523/1123/1625/1727/427/25 31/335/1236/2440/2342/156/857/1058/9 60/4
bad [1] 36/9
balance [1] 60/4
bar [1] 37/14
Barack [1] 38/18
bargain [1] 57/12
based [6] 7/1327/836/947/348/1958/22
basic [1] 15/16
basically [10] 8/1415/315/1616/1119/14 26/1828/743/743/949/14
basis [5] 23/630/747/547/948/14
be [63]
because [25] 8/1411/1412/1212/1815/21 20/1624/1824/2326/126/2027/227/18 27/2429/2131/1735/2537/141/142/550/4 50/952/153/1158/958/10
become [1] 32/19
been [34] 3/18/198/229/1310/2511/111/2 11/316/520/1721/1725/1826/1426/15 27/1928/928/1530/1931/1235/1135/13 35/2437/1238/341/342/2142/2549/10 49/2251/951/1757/757/958/17

before [19] 1/124/197/1122/2223/323/8 24/2527/327/727/2531/1538/1138/14 39/640/1041/1758/1358/2362/10
beg [2] 25/725/23
beginning [3] 38/1744/1451/9
behalf [2] 2/224/1
behind [3] 26/1226/1334/22
being [11] 5/512/2013/515/2522/422/12 24/224/729/2050/1558/3
belated [1] 39/11
believe [23] 3/2211/416/416/1517/317/8 17/2518/1425/2426/2327/831/532/9 32/1032/2541/1050/150/351/953/653/9 58/1858/22
BEN [3] 1/224/64/8
benefit [2] 6/446/3
best [6] 7/612/513/1420/945/1162/9
better [5] 3/129/1438/2539/139/1
between [2] 13/1313/18
beyond [2] 30/2130/22
big [2] 40/1956/5
binders [1] 35/6
birth [1] 53/14
bit [1] 10/10
BLACKMAN [7] 1/172/168/1812/712/12 33/1759/5
blah [3] 43/743/843/8
Blank [5] 2/222/235/55/125/17
blueprint [1] 38/3
blueprints [5] 28/2228/2530/1430/23 30/24
body [1] 55/15
bolster [1] 8/10
bolstering [1] 8/15
bombing [1] 37/1
both [5] 12/216/117/920/350/10
bottle [6] 27/1427/1632/832/1032/1338/4
bottom [6] 18/1319/819/2224/1226/9 28/20
BRADY [8] 1/75/46/711/1031/949/449/9 49/10
branch [4] 42/644/2145/445/7
Branch's [1] 46/18
branches [1] 37/13
Brandy [1] 4/25
brief [7] 7/1434/1136/1137/937/2543/14 54/17
briefing [8] 9/716/1618/118/2442/451/7 51/1154/20
briefly [2] 31/356/20
bring [1] 36/18
broke [1] 21/14
brought [3] 17/1122/2559/24
burden [1] 53/22
Bureau [1] 55/13
Burns [1] 57/4
business [2] 28/2156/11

## C

C-H-A-P-M-A-N [1] 4/8
CABELLO [10] 1/192/226/1410/346/14 46/2046/2247/1148/2259/10
caliber [1] 51/14
call [5] 4/1817/1828/1049/252/10
called [2] 38/1853/16
calls [1] 2/7
cals [1] 40/10
Cambodia [1] 37/1
came [3] 2/152/1722/21
CAMPAIGN [4] 1/84/255/46/7

**C**

can [47] 2/103/103/125/216/16/37/68/19 11/1911/2012/513/613/2213/2316/13 17/2418/2022/1423/1223/1326/2028/24 31/1932/133/433/733/835/237/1938/7 38/1538/2539/2139/2339/2441/242/3 44/145/445/1151/2154/954/1954/2459/9 59/2060/20
can't [10] 8/38/159/1723/2323/2430/7 38/443/1252/458/9
cannot [2] 16/1853/21
capacity [1] 62/5
capitulated [1] 34/13
carefully [1] 59/8
case [54] 1/53/197/38/99/1010/2013/11 13/1415/215/315/1115/1515/1615/20 16/516/716/816/1017/1018/618/718/8 18/918/1819/323/2124/224/824/1224/16 25/827/227/1227/1730/1834/734/2136/4 36/1536/1836/2437/837/941/242/744/10 44/1844/1944/1946/1350/353/1054/9 54/22
cases [4] 14/2314/2437/1144/10
categories [3] 40/440/1240/17
category [12] 38/1440/640/740/840/9 40/1140/2040/2140/2240/2351/1555/9
Catholic [1] 53/13
causal [1] 48/13
causation [1] 37/21
cause [2] 31/1931/21
CCL [2] 40/240/17
cease [2] 10/2310/24
Center [2] 5/45/10
certain [3] 14/2335/855/21
certainly [22] 6/168/2411/1413/613/15 14/1515/718/2420/520/1722/1322/16 23/2230/943/146/1347/2450/1150/23 51/651/1951/24
Certified [2] 62/362/4
certify [1] 62/6
cetera [2] 10/1410/14
challenge [3] 26/2343/1257/22
challenged [3] 15/1943/1752/8
challenges [1] 43/20
challenging [3] 43/1943/2149/18
chance [1] 10/1
change [4] 8/2535/1035/1035/15
changes [2] 6/2253/14
CHAPMAN [3] 1/224/64/8
characterized [1] 20/10
charge [2] 34/1236/8
charged [1] 29/22
Charms [1] 43/13
Chester [3] 15/215/1046/8
chief [2] 3/143/17
chilled [1] 27/19
chime [1] 46/1
choose [1] 29/17
chose [1] 25/10
CIA [1] 45/3
Circuit [18] 16/1016/2017/1617/1918/8 24/224/1027/444/947/147/2057/958/17 58/1859/2059/2059/2560/12
circumspect [1] 24/3
circumstances [3] 34/534/837/18
citation [1] 51/3
cite [5] 18/818/1037/1044/1055/17
cites [1] 18/7
citizens [5] 15/2319/2324/433/1237/1
City [10] 3/144/57/249/2510/910/1711/10

24/124/1024/12
civil [3] 15/717/2152/25
claim [1] 47/14
claims [1] 36/4
clarification [1] 60/20
clarify [1] 3/18
CLARK [4] 1/213/143/173/19
classification [1] 55/20
clause [1] 35/20
clear [6] 9/1724/1632/1944/1845/1448/9
clearer [1] 18/18
clearly [11] 11/918/1626/2327/1329/11 32/1253/354/255/1958/1158/18
client [2] 9/1022/3
client's [3] 20/629/656/17
clients [3] 11/1011/1518/17
clients' [1] 24/17
clips [1] 19/19
cloak [1] 31/12
close [5] 40/957/357/1157/1360/7
close-quarter [1] 40/9
closely [1] 29/21
Cody [2] 35/2135/21
collateral [1] 36/16
colleague [7] 2/237/433/2335/1137/14 51/2252/12
colleagues [1] 14/25
College [1] 2/17
Columbia [1] 37/9
combat [2] 40/840/9
come [6] 9/2127/431/333/336/2241/1
comes [2] 38/1345/12
coming [1] 59/1
comment [4] 25/1525/1941/949/25
comments [3] 14/1148/1348/25
commerce [24] 11/1729/1935/935/14 35/2038/2438/2438/2538/2540/1750/16 50/2451/2155/455/555/755/1255/2056/8 56/1058/358/658/858/12
Commerce's [1] 55/13
commitment [1] 41/21
commodity [1] 43/15
commonwealth [3] 17/1518/653/8
communicating [1] 49/16
communication [2] 47/2354/21
community [1] 45/2
companion [3] 55/555/1255/17
company [1] 29/1
complaining [3] 13/2127/2044/3
complaint [7] 21/351/851/1254/856/22 56/2457/1
complete [2] 41/162/9
completed [1] 40/15
completely [2] 20/536/1
completion [1] 40/14
complied [1] 53/1
comply [2] 41/2555/16
computer [1] 1/24
concern [12] 13/320/720/1023/1823/19 24/530/331/1839/246/653/456/6
concerned [4] 23/1527/1829/2237/1
concerning [2] 37/1237/16
concerns [2] 40/2446/17
concluded [1] 61/6
concrete [3] 46/2147/447/7
concur [1] 26/21
concurred [1] 16/11
conduct [5] 15/1915/2115/2226/2347/15
conduit [1] 30/23
conference [1] 4/18

confines [1] 26/4
Congress [4] 20/2021/1323/1441/17
congressional [3] 26/1941/1354/20
consider [3] 27/2232/159/17
consideration [1] 53/12
considered [2] 51/1551/16
consisted [1] 46/15
constitute [2] 60/262/8
constitutes [1] 57/6
context [2] 12/1112/19
continue [3] 30/1132/350/10
continues [1] 16/25
continuing [1] 59/17
control [25] 11/1219/1426/1936/2238/19 38/2540/1340/1540/1741/1241/1542/10 42/1142/1743/443/1044/1950/1551/11 53/1455/455/1955/2055/2456/4
controlling [2] 55/156/14
controls [3] 1/740/856/11
copies [3] 11/214/2414/25
copy [5] 31/1134/2542/2543/152/13
core [1] 45/21
correct [5] 3/334/1534/1536/1856/12
correctly [1] 36/17
could [13] 3/185/26/158/78/189/199/21 10/1514/135/1935/2036/2259/24
couldn't [1] 28/2
counsel [5] 2/133/73/1114/2546/8
counseling [1] 47/25
counted [1] 20/19
counter [1] 38/20
counteract [2] 47/1548/8
counting [1] 20/18
couple [2] 5/2558/1
course [2] 49/1760/10
court [87]
court's [7] 17/1818/1328/1047/849/2 52/1053/12
courtroom [4] 16/933/133/662/11
courts [1] 37/11
craft [1] 59/8
create [3] 19/1720/1149/12
creating [1] 20/25
credential [1] 57/20
crime [1] 49/16
criminal [4] 29/2330/452/2553/4
criminals [1] 58/21
criteria [1] 24/6
critical [1] 38/23
Critically [1] 8/5
crossed [1] 26/2
crunch [1] 27/12
CSR [2] 1/2562/18
CSR/RMR/FCRR [2] 1/2562/18
currently [1] 28/21
curtail [1] 48/5
curtain [3] 26/1226/1434/22
CV [2] 1/52/7
Czechoslovakian [1] 30/15

**D**

danger [1] 32/22
dangerous [3] 27/2237/537/6
dark [1] 32/16
darkness [1] 31/12
data [14] 20/529/1229/2032/2135/935/15 35/2036/1451/1651/1954/1158/558/7 59/18
Dated [1] 62/15
DAVID [4] 1/161/192/122/21

**D**

day [8] 11/2112/1119/619/637/249/13 60/1962/15
day-to-day [1] 19/6
days [2] 8/631/15
DC [1] 44/9
DDC [1] 37/9
deadline [1] 27/7
deal [2] 12/1353/14
dealing [4] 26/1940/1941/2545/17
dealt [2] 43/1453/13
death [1] 19/14
deaths [1] 49/13
decide [1] 45/11
decided [4] 16/516/917/1636/4
decision [11] 16/223/1523/1624/1042/8 43/1345/847/248/750/1259/21
decisions [7] 37/1544/944/1145/145/7 45/1346/18
declaration [6] 8/139/2418/2431/648/9 49/2
Declarations [11] 7/169/1812/912/14 16/1619/719/847/1747/2248/249/21
declaratory [1] 13/13
decontrolling [1] 56/3
DEFCAD [1] 28/21
defend [1] 49/17
defendant [3] 15/1915/2231/25
defendant's [1] 15/22
defendants [5] 1/91/194/216/1816/18
defendants' [1] 53/1
defended [1] 11/7
defense [19] 1/31/72/76/1119/1319/25 22/328/1329/932/232/1032/2039/539/8 42/1842/2252/952/2152/25
delay [2] 56/1760/11
delays [1] 38/20
delegated [1] 37/13
demand [1] 53/1
demonstrate [3] 14/214/815/17
denial [1] 59/15
deny [2] 48/1548/19
denying [1] 59/3
department [49] 1/62/84/110/1813/12 18/1620/1820/2121/424/1824/2425/11 27/1027/2529/1829/1930/1932/235/9 35/1038/2139/539/843/1944/644/11 45/1650/1550/1650/2450/2551/2152/24 55/255/555/655/755/1155/1255/1356/7 56/756/856/1058/458/658/858/1258/14
Department's [2] 23/1626/11
Departments [1] 38/24
Depending [1] 6/21
depose [1] 8/22
deputy [2] 3/143/17
describes [1] 55/19
designated [1] 42/21
designation [2] 42/1842/19
designed [1] 47/4
desire [3] 27/527/651/18
desist [2] 10/2310/24
desperate [1] 34/23
detector [1] 32/24
detectors [1] 33/5
determination [2] 36/1243/21
determinations [1] 45/19
determines [1] 31/22
determining [1] 45/16
development [1] 55/25
devices [1] 53/15

devote [1] 53/21
dictates [1] 8/2
did [6] 9/922/1123/339/344/158/15
didn't [9] 7/1111/1923/525/226/335/5 36/1043/1752/13
differ [3] 25/725/2348/2
difference [2] 40/1956/6
different [6] 9/1310/1713/143/1458/10 60/5
differently [1] 9/12
difficulty [1] 5/21
diplomacy [1] 45/5
direct [3] 45/246/2449/19
directed [2] 22/250/16
directly [1] 22/2
DIRECTORATE [1] 1/7
disagree [3] 20/1624/2326/24
disagreement [1] 14/3
disciplinary [1] 54/5
discretion [3] 44/1645/945/20
discretionary [1] 44/23
discuss [3] 6/236/2453/8
discussion [1] 54/17
dismiss [1] 34/21
disposition [1] 18/3
dispute [1] 22/8
disrupt [1] 20/6
DISTRIBUTED [9] 1/32/86/1119/1322/3 28/1332/232/1152/25
Distributed's [5] 19/2529/932/2052/9 52/21
distributing [1] 27/21
distributor [1] 29/10
DISTRICT [5] 1/11/137/962/1162/12
diversions [1] 7/13
divert [2] 9/953/20
diverted [3] 7/1549/149/22
diverting [1] 9/20
DIVISION [2] 1/262/12
do [43] 3/103/133/244/236/37/610/912/4 13/2014/114/1914/2414/2415/1317/10 19/919/1519/1619/1921/1221/1321/13 23/1225/2026/530/2135/2242/543/24 43/2547/1951/552/1353/653/753/11 54/2157/1657/2059/959/1060/1262/5
do-it-yourself [1] 19/16
doctrine [1] 47/10
document [2] 52/1152/22
documents [1] 30/5
does [7] 8/248/2420/2223/641/2045/15 51/3
doesn't [11] 8/2513/1924/229/1641/19 43/2544/244/845/1052/658/12
doing [7] 12/527/2027/2140/540/1641/1 43/15
domestic [4] 16/120/333/940/24
don't [26] 3/2213/1514/1719/819/1019/20 21/1422/1532/532/532/934/2537/737/10 37/1638/1544/446/547/1150/353/17 55/1656/2557/157/259/24
done [5] 21/725/1633/941/362/10
dotted [1] 26/1
Douglas [2] 36/2537/3
Douglas's [1] 37/3
down [3] 21/1428/257/10
download [2] 19/1730/14
downstairs [2] 32/2433/5
draft [1] 41/21
drain [1] 47/20
drained [1] 50/12

draw [2] 57/1160/7
drawing [1] 28/8
drawings [8] 10/2427/2528/528/2531/18 32/732/1132/15
dream [1] 40/16
due [2] 54/2259/22
duly [1] 42/21
during [2] 14/1835/12
duties [1] 25/21

**E**

each [3] 3/1012/2338/1
EAR [1] 55/5
earlier [1] 56/13
early [2] 2/152/17
easiest [1] 19/15
easily [1] 51/21
easy [2] 36/1042/5
ECCN [1] 55/22
ECF [1] 52/10
effective [1] 49/17
effectively [1] 59/6
effort [3] 11/1341/442/3
efforts [1] 50/6
eight [2] 9/711/4
either [2] 3/1134/6
elected [1] 37/13
electronically [1] 52/15
electronics [1] 40/22
elements [1] 15/4
Elrod [1] 57/4
else [12] 3/133/244/44/225/85/145/196/1 29/1736/248/761/2
elsewhere [1] 12/16
email [1] 22/19
emptied [1] 32/25
encountered [1] 11/15
encountering [1] 38/21
encouraging [1] 24/11
end [6] 11/2112/1020/1454/1757/12 60/19
endangering [2] 33/633/8
ended [1] 41/10
ends [1] 21/3
enforcement [3] 52/2553/455/15
enjoin [4] 15/2331/2552/2354/5
enjoined [1] 29/15
enough [6] 9/1820/1135/538/847/857/7
ensuring [1] 21/15
entered [2] 24/1836/25
entertain [2] 37/1138/12
entire [2] 9/534/21
equally [1] 20/23
Eric [1] 5/15
error [1] 32/16
errors [1] 32/16
ESQ [11] 1/161/161/171/171/191/191/20 1/201/211/211/22
essence [1] 28/3
essentially [2] 13/846/15
establish [3] 16/1331/649/21
established [3] 18/147/2448/14
Estates [2] 15/215/10
et [3] 10/1310/1417/16
even [13] 15/2036/1038/141/1042/7 43/2344/146/2353/1057/560/160/260/2
evening [1] 7/7
every [6] 11/1011/1520/2233/633/849/12
everybody [1] 47/16
everyone [5] 12/224/1126/2035/1950/2

## E

everyone's [2] 11/1323/18
everything [2] 32/2548/7
EVERYTOWN [5] 1/85/166/831/731/10
everywhere [1] 33/2
evidence [1] 41/8
exact [1] 53/17
exactly [2] 30/2247/2
example [1] 48/11
except [1] 35/21
exception [2] 44/1344/23
exceptional [1] 37/18
excerpts [1] 31/9
excuse [1] 57/19
executed [1] 25/18
execution [1] 31/13
executive [4] 42/644/2145/646/18
exempts [1] 37/15
Exhibit [1] 37/25
Exhibit B [1] 37/25
exhibits [1] 49/6
existing [3] 18/553/2053/21
exists [1] 27/19
expand [1] 29/1
expect [1] 33/3
expedited [1] 12/4
expended [3] 8/812/1347/14
expending [1] 50/9
expenditures [1] 50/5
Expert [3] 41/1241/1543/10
explain [2] 7/1246/21
explained [1] 48/1
export [10] 38/1940/1340/1542/1042/1142/1744/1951/1155/1055/19
exported [1] 50/17
exports [1] 44/12
express [1] 20/7
expression [1] 9/11
extend [1] 49/11
extended [1] 49/9
extension [1] 34/20
extensive [1] 42/5
extent [7] 13/913/1023/2348/1050/23 51/2052/6
extraneous [1] 26/7
extreme [1] 9/17
extremely [1] 34/7

## F

F.3d [2] 18/1047/2
fact [9] 11/1214/615/1816/316/1916/25 31/733/1251/14
factor [1] 34/5
factors [3] 13/2334/360/5
facts [4] 6/2127/543/1758/23
failures [1] 13/11
fair [1] 7/20
fairly [1] 15/18
fairness [1] 8/2
faith [1] 36/9
falls [2] 21/228/8
familiar [2] 16/427/4
far [4] 45/1154/2055/158/21
farther [1] 46/17
fashion [1] 32/21
favorable [1] 16/2
FCRR [2] 1/2562/18
fear [1] 52/24
federal [13] 15/717/2035/136/2339/24 39/2439/2540/140/340/540/642/662/4

feel [1] 23/23
feeling [1] 40/23
fees [1] 36/6
felons [1] 19/10
few [2] 36/560/15
fiction [1] 27/18
field [1] 58/10
fifteen [1] 33/21
figure [1] 41/2
file [5] 30/2031/1931/2054/857/1
filed [15] 6/126/196/207/77/87/147/24 7/258/58/209/1912/1417/1717/2331/17
files [11] 29/637/2237/2338/151/2352/152/352/452/553/254/6
filing [6] 6/118/209/331/452/1652/16
filings [1] 7/7
final [2] 41/1157/22
finally [1] 31/10
find [10] 7/1811/1112/626/1430/942/15 47/950/2053/1054/3
finding [1] 49/17
finds [1] 53/5
fine [4] 8/1310/813/2214/20
fines [1] 55/16
firearms [13] 19/219/219/319/1119/24 19/2428/2329/240/840/2351/1455/21 55/25
fired [1] 28/9
firm [1] 23/23
first [15] 6/216/2313/2214/1621/2522/1 31/731/948/2552/2357/558/258/1658/21 60/1
First-Amendment [4] 57/558/1658/2160/1
flew [1] 22/18
flow [1] 49/16
fly [1] 8/17
focus [7] 13/2213/2333/2233/2334/3 50/1154/25
focused [3] 9/1317/232/6
folks [1] 8/22
follow [2] 25/1354/14
followed [4] 21/425/2460/1560/23
following [2] 2/341/7
foregoing [1] 62/8
foreign [10] 16/120/320/333/944/2044/24 44/2445/1245/2145/21
foremost [1] 14/16
forest [2] 18/1032/5
form [1] 62/8
former [2] 34/1738/18
forms [1] 20/11
forward [2] 6/1233/14
found [3] 16/1244/1860/3
foundation [4] 1/428/1529/751/4
founder [3] 28/1329/2152/10
founder's [1] 28/11
four [1] 14/18
FR [1] 55/18
framework [4] 20/1921/623/1758/3
frankly [3] 13/728/731/20
free [1] 14/11
freedom [1] 60/1
freedoms [1] 57/5
FRIDAY [1] 1/13
friend [2] 34/936/8
front [1] 27/7
frustrate [2] 36/1938/6
frustrated [1] 12/2
full [1] 26/12
fully [1] 41/21

function [1] 44/20
functions [1] 42/21
FUND [2] 1/96/9
fundamental [1] 8/2
further [3] 10/1538/752/5
furtherance [1] 49/11
future [3] 7/1349/1249/22

## G

Game [1] 5/3
gave [3] 20/2020/2025/18
gee [2] 11/1930/17
general [5] 10/1710/2222/1022/1758/20
generalized [3] 20/1046/1646/23
generally [1] 53/22
genie [5] 27/1327/1532/732/938/4
gentlemen [1] 33/19
germane [1] 26/10
get [15] 10/612/1412/1623/723/1927/6 29/1629/1732/732/2135/254/1157/13 59/759/8
gets [2] 56/456/5
getting [3] 7/928/228/3
GIFFORDS [5] 1/95/106/911/1131/7
give [11] 6/1510/1014/1320/1230/634/22 41/1645/2546/259/1960/17
given [4] 8/2014/616/1521/23
gives [2] 9/128/25
giving [1] 22/9
glad [2] 7/127/23
go [7] 4/2123/1333/133/240/559/260/16
goal [3] 19/1319/1338/19
goes [2] 13/729/3
going [31] 6/159/2412/812/912/1712/17 14/314/815/2021/1921/2123/2528/14 29/431/2333/1934/2136/337/1539/4 39/1041/1443/2549/550/551/254/2556/4 57/259/160/22
GOLDSTEIN [12] 1/162/142/157/59/6 35/1237/1438/838/1054/1657/360/8
gone [2] 14/1227/3
good [6] 2/213/43/83/254/344/13
got [3] 26/1230/647/11
Gotcha [1] 3/8
governing [1] 21/8
government [17] 13/1421/1228/2234/9 34/1234/1334/1435/735/1335/1736/3 36/936/1241/2143/2444/2157/7
Government's [2] 57/1160/6
grant [4] 11/2412/2044/1145/17
great [2] 5/1312/13
Greater [1] 16/7
greatest [2] 13/346/6
grievance [2] 46/1646/23
grounds [1] 7/13
group [3] 11/1048/1549/4
groups [1] 48/12
guess [1] 13/12
guide [1] 14/10
gun [27] 1/81/85/45/55/115/166/86/8 11/1219/119/1420/420/420/1020/23 26/1926/2028/728/833/1036/2249/13 49/1549/1649/1749/1850/14
guns [14] 11/1211/1615/2519/1619/18 26/1833/433/440/949/1650/1750/17 50/2255/14
GURA [5] 1/173/63/64/1756/21

## H

hac [1] 3/1

**H**

had [28] 2/37/57/218/98/209/1110/1 10/1915/2220/1921/421/723/725/18 25/2427/327/1028/132/2535/2139/3 42/2543/1648/548/753/455/1162/10
hadn't [1] 22/22
half [3] 23/249/1460/17
hand [1] 15/12
handed [2] 53/2558/3
hands [3] 54/1154/1258/20
happen [1] 33/1
happened [2] 39/1339/17
happening [1] 21/4
happens [2] 21/1541/5
happy [6] 6/2414/1514/1919/735/2551/7
hard [1] 4/12
hardware [1] 56/4
harm [13] 16/1516/1716/2416/2417/3 17/617/821/1027/1851/2554/656/1760/5
harsh [1] 55/16
has [30] 3/115/1717/2317/2318/1619/12 21/2325/2027/1927/2329/2031/1233/3 34/935/1336/2137/1238/338/2539/1 39/1439/1740/1541/141/942/549/14 54/2458/658/17
hasn't [2] 4/2229/23
have [125]
haven't [8] 10/116/1921/2021/2341/10 42/2548/148/4
Havens [1] 9/8
having [5] 5/216/112/416/524/20
he [16] 2/153/721/2329/329/2229/23 34/1036/1036/1836/2136/2137/2339/17 43/1743/1751/3
he's [6] 30/139/1239/1239/1642/2443/5
head [2] 17/2058/19
hear [4] 3/124/127/130/1
heard [3] 27/1630/1739/17
hearing [14] 1/122/93/95/216/137/38/4 12/822/1823/323/827/954/1061/6
hearings [1] 39/18
hearsay [5] 28/1539/1339/1339/1539/15
held [2] 40/2353/18
helpful [2] 6/513/23
helps [1] 39/1
here [38] 2/152/174/205/55/126/69/21 11/1816/1716/2417/1918/923/326/126/8 30/2231/1533/1334/2336/736/1136/15 38/1140/2045/1846/1347/848/850/19 51/1753/1856/657/757/1057/2358/23 59/1860/4
here's [2] 29/2329/25
hereby [1] 62/6
high [1] 33/23
him [3] 22/1535/2139/20
his [7] 22/236/1136/1546/1447/1153/24 57/8
history [4] 18/2519/442/142/6
hit [2] 58/458/18
hogwash [1] 11/22
hold [1] 48/5
holding [1] 22/18
home [1] 19/16
homespun [1] 42/2
Honor [124]
HONORABLE [2] 1/1262/10
Hopefully [2] 29/1829/19
horses [1] 24/25
hour [5] 2/58/1623/359/160/17
hours [2] 9/69/7

Houston [5] 7/416/724/124/1024/12
how [13] 8/18/199/110/1810/1925/626/12 35/1936/538/1338/1646/2148/1
however [1] 10/15
hundreds [1] 49/12

**I**

I'll [17] 10/1612/1914/1215/1115/1215/13 17/1823/827/528/1732/2334/135/142/15 43/652/1160/23
I'm [37] 2/233/163/175/26/146/199/24 10/2112/912/1712/1712/2513/713/12 14/414/1514/1917/419/721/1921/20 23/1623/1927/2328/1429/429/1329/13 38/1139/1043/148/1749/551/251/753/16 54/25
I've [5] 9/727/1630/1738/853/25
idea [1] 38/22
identifiable [1] 16/22
identified [3] 4/2234/348/4
II [1] 40/9
III [10] 14/214/917/117/1921/140/1146/7 46/1147/1856/23
illegal [1] 33/10
immediate [1] 59/16
impaired [1] 18/2
important [1] 53/12
importantly [1] 48/1
imposed [1] 56/9
imposing [1] 56/11
improper [1] 34/12
improved [2] 5/225/23
inadequate [1] 53/24
INC [2] 1/41/9
include [1] 41/23
included [2] 7/158/7
including [5] 9/211/530/1549/1449/15
incompetents [1] 19/10
independent [4] 14/514/954/859/6
indicate [1] 6/3
indicated [1] 59/5
individual [4] 20/2236/143/2150/6
individuals [2] 8/816/14
industry [2] 39/255/13
inferior [1] 28/8
infinite [1] 29/1
information [22] 8/239/19/215/2419/16 19/2521/626/1827/2229/1029/1629/18 32/1132/1835/2242/2545/447/2249/23 50/2058/1458/20
informed [2] 28/134/18
inherent [1] 31/24
initial [1] 6/10
initiated [1] 38/18
initiative [5] 38/1939/440/1341/355/11
injunction [10] 6/751/2451/2552/352/6 52/2359/459/1760/360/10
injuries [2] 16/2549/13
injury [10] 15/1816/316/1946/2146/24 46/2547/347/1957/660/2
innocuous [1] 34/17
Instead [1] 9/15
instructive [1] 12/23
insufficient [1] 47/18
intelligence [1] 45/2
intend [1] 10/5
intent [1] 33/10
interest [23] 12/2513/913/2417/2518/2 18/418/2120/220/920/920/1220/1720/19 20/2521/1221/1524/2546/1953/2053/22

53/2454/358/19
interested [4] 10/2213/113/736/22
interests [10] 11/723/2424/1324/1724/20 24/2225/525/647/453/19
international [2] 45/545/12
Internet [3] 19/1720/120/5
interrupt [1] 22/15
interrupted [1] 53/8
intervene [25] 3/216/67/2410/2017/24 18/1320/1423/2023/2524/825/225/11 26/2527/246/1050/350/853/653/753/15 54/456/2556/2559/359/15
intervening [1] 54/3
intervenor [8] 4/2515/515/1731/946/11 50/756/2256/24
intervenor's [1] 24/13
intervenors [15] 2/225/15/115/1713/8 16/1818/1718/2519/619/2224/331/23 31/2348/1257/19
intervenors' [2] 46/847/13
intervention [10] 20/1221/331/1733/22 34/637/538/651/851/1259/21
intimately [1] 27/4
introduce [2] 2/1411/16
involve [2] 44/544/5
involved [1] 35/12
involves [2] 44/2044/23
involving [1] 45/20
IQ [1] 33/23
irrational [1] 36/1
irreparable [3] 56/1757/660/2
is [204]
isn't [6] 24/124/426/727/1550/654/4
issuance [1] 37/12
issue [21] 12/714/1514/2315/817/717/20 18/1823/1129/631/432/437/1643/1544/2 48/849/1058/458/1258/1759/160/21
issued [7] 40/141/541/941/1142/2255/2 57/23
issues [6] 13/419/546/355/255/655/7
it [136]
it's [53] 5/236/237/198/148/2110/1313/15 15/915/1816/117/717/818/919/2021/12 22/824/1625/526/2026/2427/1427/19 29/1130/2032/1933/1834/1035/1635/25 36/839/2040/2040/2140/2242/442/13 42/1443/343/544/1645/947/2448/950/8 51/952/1652/1652/1653/1255/1256/13 58/758/7
ITAR [1] 38/23
item [5] 41/1743/2244/555/655/7
items [11] 38/2239/240/241/1441/25 42/1842/2243/2555/355/2256/10
its [16] 7/2210/1911/2115/2315/2316/13 18/418/1720/1131/2431/2532/333/12 49/1153/254/5
itself [1] 46/23
IV [1] 40/20

**J**

January [1] 62/15
Jersey [2] 10/2222/2
Jesani [1] 2/23
JIM [3] 1/213/143/17
job [1] 45/6
JOHN [3] 1/71/202/25
joined [1] 2/23
joining [1] 3/15
Jonathan [2] 4/245/3
Josh [1] 2/16

**J**

JOSHUA [2] 1/1749/2
judge [4] 33/635/2436/2038/3
judgment [1] 12/10
judicial [9] 11/2016/242/842/1242/1843/6 43/944/1244/22
judicially [2] 45/1045/19
judiciary [1] 37/13
JULY [11] 1/132/17/822/2022/2531/7 31/831/1031/1441/1062/10
July 10th [1] 31/7
July 17th [1] 31/10
July 25th letter [1] 22/25
July 26 [1] 22/20
July 7th [1] 41/10
jump [2] 18/1024/11
June [1] 34/20
June 28th [1] 34/20
jurisdiction [8] 35/835/1437/737/1143/16 44/245/1547/9
JUSANI [1] 1/20
just [24] 4/119/112/514/1417/1126/19 27/1931/236/1237/1939/2141/442/13 45/1748/1349/149/552/854/1054/25 56/1256/1356/1659/8
Justice [7] 4/124/2436/2537/237/337/3 56/8

**K**

keep [4] 15/2343/2154/1157/12
keeping [1] 58/19
kept [1] 19/23
KERRY [1] 1/7
key [1] 16/20
KIMBALL [2] 1/203/1
kind [5] 15/333/438/2039/1543/10
kinks [1] 36/5
Kleissler [3] 18/718/918/9
knell [1] 19/14
knew [1] 9/20
know [16] 6/211/1912/112/1314/1214/16 14/1715/1919/2020/1321/1423/638/15 45/150/251/22
knowledge [2] 22/2244/24
known [3] 9/1110/1341/15

**L**

L.A [3] 3/159/2510/10
lack [1] 45/19
laid [2] 28/1651/8
Langley [1] 47/2
large [1] 4/18
larger [2] 41/442/3
Laroe [2] 15/215/10
last [13] 5/97/69/59/2229/330/1232/14 38/540/1255/957/1757/2559/25
last-minute [2] 38/559/25
late [4] 8/168/168/199/3
later [3] 12/2134/1935/2
law [11] 2/175/1013/2023/2324/734/24 41/2241/2545/1449/1558/22
laws [3] 44/149/1749/18
lawsuit [12] 13/1314/125/2026/326/8 26/1028/430/2031/435/1857/2359/6
lawsuits [1] 20/15
lay [3] 10/1651/1251/13
lead [1] 3/7
learn [1] 11/6
learned [2] 22/1731/7
least [6] 17/623/728/448/1149/2053/4

led [1] 39/20
left [4] 44/1544/1945/945/20
legal [3] 22/828/2349/19
legally [4] 18/2120/820/1120/25
legislative [1] 42/5
legitimate [1] 11/7
length [1] 42/14
less [4] 31/1438/2251/1451/15
lesser [2] 38/2339/2
let [20] 2/146/28/189/414/1214/2220/7 20/723/223/830/130/1134/2235/2445/25 49/2557/1257/1360/1260/13
let's [5] 4/2118/2038/1657/1160/7
letter [13] 3/2010/2321/2022/122/16 22/2022/2322/2422/2527/935/2157/8 60/21
letters [15] 10/2511/221/1721/2121/22 22/622/722/722/922/1223/423/1223/12 23/1339/16
license [2] 28/345/17
licenses [6] 37/1237/1639/144/1244/20 55/16
licensing [4] 38/2044/645/1345/18
like [15] 10/310/614/1214/2017/420/15 21/1642/1343/1744/2346/248/2252/18 54/1660/8
likely [2] 16/126/1
limit [2] 39/2139/23
limiting [2] 20/2436/21
limits [1] 10/11
line [3] 3/134/2255/10
link [2] 4/1348/13
links [1] 38/1
list [12] 38/138/2438/2540/1745/1849/14 51/1355/455/455/855/1055/20
listening [2] 4/1961/1
listing [1] 55/20
lists [1] 56/8
litigant [4] 15/1618/1332/146/9
litigants [1] 24/14
litigate [4] 7/208/122/835/25
litigated [1] 22/4
litigation [8] 13/1917/2518/518/2242/3 47/2347/2447/25
little [5] 7/57/219/110/1053/16
lives [2] 57/1360/13
local [1] 2/12
long [9] 18/2519/420/624/1229/1541/3 41/442/1157/7
long-stated [1] 20/6
longer [4] 9/1635/1635/1849/13
longstanding [1] 11/11
look [5] 23/824/1026/1226/1337/25
looked [2] 24/2051/10
looking [4] 15/2117/224/2247/17
Los [3] 4/57/2410/17
lose [2] 32/536/4
loss [2] 57/460/1
lot [7] 7/189/811/1319/527/2054/1954/22
Lowie [2] 4/245/3
Lujan [1] 47/6

**M**

made [9] 10/1230/135/1836/1247/1249/1 50/152/952/17
make [18] 3/109/119/179/2519/919/23 28/1429/430/730/2432/435/2239/10 41/2145/746/1859/760/14
making [11] 19/221/1229/1329/1436/11 36/1638/1345/150/450/2157/18

managed [2] 45/1045/20
mandamus [2] 60/1260/16
manner [1] 33/12
manufactured [1] 19/16
many [2] 20/1137/18
March [1] 34/19
mark [1] 54/23
Marshall [1] 37/3
Martin [1] 11/5
matched [1] 34/15
matches [1] 43/22
material [1] 39/14
materials [1] 59/18
Matt [3] 2/147/433/23
matter [11] 18/318/340/243/1444/15 45/2147/957/1359/1259/1559/19
matters [1] 18/14
MATTHEW [2] 1/162/14
may [26] 4/96/177/210/414/1416/617/22 20/2321/1621/2522/1123/2424/526/24 29/829/1730/832/1632/1734/135/135/7 41/552/853/2455/9
May 24 [1] 35/1
maybe [1] 9/7
me [32] 2/145/215/216/16/168/188/199/4 10/712/2312/2513/313/913/2314/814/18 14/2220/720/720/923/230/130/630/11 34/2235/2442/1645/2546/249/2550/1 57/19
mean [5] 8/2129/1230/1939/1358/4
meaningfully [1] 49/16
means [2] 25/1443/9
measure [3] 16/2116/2417/6
mechanical [1] 1/23
meet [4] 24/646/1047/2557/20
meetings [2] 39/439/7
meets [1] 16/13
Melendez [2] 11/322/24
members [4] 7/1645/350/758/20
memorandum [1] 7/9
mental [1] 19/9
mention [2] 36/1037/17
mentioned [3] 46/848/253/5
merely [1] 36/19
Merit [1] 62/4
merits [1] 60/4
message [2] 4/125/20
met [1] 17/9
metal [2] 32/2433/5
microphone [1] 3/11
might [3] 12/1512/1557/22
military [3] 38/2340/2244/20
militate [3] 34/634/837/19
mine [2] 15/1339/15
minimal [2] 53/2357/5
minor [1] 59/12
minors [1] 19/9
minute [3] 9/2238/559/25
minutes [6] 6/157/2312/2314/1333/22 60/15
missiles [1] 40/21
mission [3] 20/639/149/11
misspoke [2] 15/1237/23
misstatement [1] 54/20
mistaken [1] 53/17
moment [1] 60/2
momentarily [1] 18/9
Monsanto [1] 34/4
month [1] 34/19
months [2] 10/1336/5

## M

moot [1] 30/19
more [14] 9/112/1113/413/716/2116/23 17/724/630/636/1640/742/1648/156/16
morning [9] 2/162/177/47/87/148/38/6 9/1822/21
MORRIS [2] 1/162/12
most [4] 12/2212/2513/326/1
motion [25] 6/66/106/196/206/236/24 6/257/258/58/209/239/2510/611/811/24 12/2017/2326/2527/231/1733/2252/22 56/2459/359/14
motions [2] 1/122/9
motivation [1] 24/6
motives [1] 34/12
movant's [1] 6/6
move [7] 6/1230/2130/2233/1440/641/20 60/13
moving [2] 7/2040/2
Mr [1] 56/21
Mr. [34] 3/194/36/148/189/610/312/7 12/1228/1333/1735/1237/1437/2237/23 38/838/1044/645/2546/246/1446/20 46/2247/1148/2148/2254/1657/357/8 57/1659/559/1060/860/2561/2
Mr. Blackman [5] 8/1812/712/1233/17 59/5
Mr. Cabello [8] 6/1410/346/1446/2046/22 47/1148/2259/10
Mr. Clark [1] 3/19
Mr. Goldstein [8] 9/635/1237/1438/8 38/1054/1657/360/8
Mr. Robinson [7] 4/345/2546/248/21 57/1660/2561/2
Mr. Wilson [5] 28/1337/2237/2344/657/8
much [20] 2/202/245/246/2210/212/3 16/2327/932/833/1541/746/446/548/20 56/1557/2458/2459/1161/461/5
mundane [1] 34/24
MUNIRA [2] 1/202/23
munitions [3] 38/2451/1355/4
must [3] 8/1046/1047/3
my [34] 2/233/57/49/109/1211/911/15 14/1914/2517/1118/1719/2120/622/19 22/2222/2523/1123/2324/1729/633/22 34/835/1136/837/1439/1449/651/22 52/1156/1760/1860/2262/562/9

## N

nail [1] 58/18
name [5] 3/165/25/1016/1353/17
national [6] 20/239/845/2246/1746/19 55/23
Nations [1] 55/24
nature [1] 17/1
naught [1] 58/9
nearly [1] 9/6
necessarily [1] 25/8
need [10] 14/514/816/2116/2117/226/12 47/1954/1059/959/25
needs [1] 36/8
negotiated [1] 25/16
negotiation [1] 31/13
never [1] 56/9
Nevertheless [1] 52/24
new [8] 10/2110/2219/1222/235/1047/16 55/1955/22
News [1] 28/12
next [1] 60/17
night [2] 7/68/9

no [37] 1/54/198/68/149/1610/811/18 14/620/1321/1021/2422/2223/524/14 25/1926/128/1534/2335/1635/1835/22 36/237/1137/2137/2141/843/1848/13 48/1449/1351/1952/354/658/660/560/10 61/3
none [4] 22/1225/1636/2137/12
nonetheless [1] 54/5
normal [1] 49/13
normally [2] 45/245/5
not [83]
note [1] 11/9
noted [1] 46/15
nothing [8] 8/59/189/1910/1511/2225/20 36/1560/11
notice [9] 7/311/2021/2425/1433/1135/17 42/1343/653/9
notices [3] 39/2540/140/5
notification [2] 41/1341/17
notion [1] 50/14
novel [1] 7/10
now [30] 4/237/110/710/2117/426/426/20 29/1729/2031/1632/2336/2040/440/15 40/1940/2241/141/541/741/1242/144/3 44/847/1451/2254/2558/1060/1460/16 60/21
NPRM [1] 48/11
NSA [1] 45/3
number [3] 4/1843/2352/11
Number 8 [1] 52/11
numbers [2] 40/650/23

## O

Obama [4] 35/1236/1338/1855/10
Obama's [1] 40/13
object [8] 21/1921/2122/622/1039/18 42/2451/259/23
objection [10] 4/198/1423/928/1529/5 29/629/2430/139/1149/6
obligated [1] 26/5
obtained [1] 31/14
obvious [1] 22/9
OCA [1] 16/7
OCA-Greater [1] 16/7
occurs [1] 13/9
off [6] 7/941/1743/2054/2255/358/3
offended [1] 20/24
offer [5] 14/2315/1117/1128/2230/23
offered [1] 39/15
official [2] 42/2062/5
Oh [2] 11/1930/17
okay [23] 3/43/133/183/223/244/144/21 6/257/210/325/928/1731/133/1633/18 33/2037/438/1742/1648/2052/2057/24 61/5
once [6] 12/1425/1727/1335/1751/18 56/10
one [28] 4/255/177/1910/1811/317/10 22/2226/526/2327/1628/828/2230/534/3 36/236/1040/440/740/1643/2344/10 44/1344/1544/2253/1156/1657/1759/12
ones [1] 50/9
ongoing [1] 13/19
online [3] 37/2337/2438/3
only [7] 13/1628/2133/137/643/1845/9 47/9
open [1] 2/4
opening [1] 57/18
opinion [3] 17/2237/353/25
opportunity [7] 14/1323/725/1932/2046/1

48/2359/19
opposing [1] 14/25
order [10] 14/1514/1733/2436/2548/7 59/159/259/360/1860/24
Ordnance [4] 37/844/1044/1845/8
organization [1] 53/13
organizational [4] 16/1216/1247/1047/13
organizational-standing [1] 47/10
organizations [5] 7/1750/450/550/750/9
originally [1] 13/13
other [17] 17/1019/523/424/2227/2129/5 30/2436/638/2044/144/344/444/745/3 45/856/156/1
others [2] 2/82/9
otherwise [3] 41/848/557/20
our [24] 6/2410/616/1616/1618/1521/2 21/1221/1432/134/1335/1837/937/25 41/2443/1443/1643/2350/751/651/7 51/1151/1157/1360/13
ourselves [1] 12/6
out [47] 10/1615/1218/2319/719/1620/1 20/420/526/1727/1327/1427/1529/16 29/1830/1830/1830/2032/732/732/9 32/1332/1832/2132/2535/636/136/538/4 51/751/851/1151/1251/1351/1851/19 51/2352/152/252/652/1454/754/1154/12 56/1858/2059/759/8
outside [1] 26/4
outweighs [1] 58/21
over [5] 27/1627/1638/839/2544/2
overturning [1] 21/5
own [3] 16/1319/1828/25
owner [1] 29/10
owners [1] 49/17
Oz [1] 34/23

## P

p.m [3] 1/132/561/7
page [9] 17/1928/1228/2029/337/25 49/1452/1153/2555/18
Page 11 [2] 17/1937/25
Page 16 [1] 53/25
Page 24170 [1] 55/18
Page 3 [1] 28/20
Page 5 [1] 28/12
Page 7 [1] 52/11
pages [4] 9/69/1540/162/8
Pamela [4] 1/2562/362/1862/18
paragraph [4] 28/2029/330/1249/3
part [8] 19/2025/1340/1241/442/343/16 44/345/8
participate [1] 24/15
particular [3] 18/643/2249/3
particularized [1] 46/21
particularly [1] 49/22
parties [5] 10/2013/1113/1818/527/9
parties' [1] 47/15
parts [1] 56/1
party [8] 14/617/2325/1225/1327/19 29/1553/2053/21
pass [1] 21/16
past [2] 11/1311/19
Paul [1] 53/16
payment [1] 53/14
peep [1] 34/22
pending [2] 26/853/9
Pennsylvania [2] 17/1518/7
Pentagon [1] 39/5
people [14] 4/1811/519/1720/1423/20 24/2127/2129/529/1338/2139/745/145/6

# P

people... [1] 53/15
per [1] 43/23
perceive [1] 13/10
perhaps [3] 9/1322/526/4
period [3] 25/1425/1541/10
periods [1] 57/5
permission [1] 28/3
permit [2] 19/1731/23
permitted [2] 11/2518/13
permitting [1] 26/17
person [2] 29/2033/8
personally [1] 9/7
pertains [1] 15/25
Peter [1] 53/16
PETERS [3] 1/214/64/7
petition [2] 6/1059/4
Petitioner's [1] 59/3
petitioning [1] 3/21
phone [7] 1/202/253/63/123/245/86/3
phonetic [5] 4/255/35/1643/1348/6
phrase [2] 34/1036/5
phrasing [1] 48/6
physical [1] 50/16
pills [1] 53/15
pistol [1] 30/16
PITMAN [2] 1/1262/11
place [2] 36/1845/16
plaintiff [6] 1/41/1619/1246/1251/2557/19
plaintiff's [3] 15/2128/1129/21
plaintiffs [12] 2/137/810/1210/2311/9 13/1417/426/1727/1028/132/1454/6
plaintiffs' [1] 44/7
plan [1] 19/19
plane [2] 7/1033/8
plastic [2] 28/733/4
pleading [5] 7/127/237/238/1218/15
pleadings [2] 13/258/25
please [6] 2/114/235/256/187/234/1
PLLC [2] 2/153/6
podium [2] 3/1139/17
point [11] 9/1710/1814/1423/1123/13 32/1438/553/756/2157/357/17
points [3] 34/1148/1854/17
policies [2] 49/1849/19
policy [3] 44/2545/1245/21
Pompeo [2] 11/322/7
portions [2] 8/129/24
position [6] 3/1924/2134/1334/1547/13 59/9
possibly [1] 52/4
post [3] 28/237/2237/24
postpone [1] 60/6
potential [2] 29/147/9
power [2] 7/2226/16
powers [4] 31/2437/654/555/15
practical [1] 18/3
precedent [1] 47/20
preclude [1] 59/6
precluded [1] 42/13
precursor [1] 10/10
prejudice [2] 9/1712/20
prejudiced [2] 8/199/2
prejudicial [1] 9/5
Preliminary [3] 6/759/460/3
prepare [1] 7/21
prepared [8] 6/129/149/1522/531/20 33/1448/1757/12
prerogative [2] 46/1850/25
present [3] 39/640/1562/6

presentation [2] 19/2147/11
presented [2] 17/341/8
preserve [1] 52/1
President [8] 17/1520/2020/2021/14 38/1840/1341/1642/20
President's [2] 42/742/20
presumably [1] 24/23
pretty [3] 27/932/845/14
PREVENT [5] 1/85/45/45/116/8
prevention [1] 49/18
primarily [1] 48/18
primary [1] 44/22
principal [1] 20/24
principle [1] 36/21
print [2] 35/552/14
printed [1] 39/16
printing [2] 28/2329/2
prior [5] 7/1235/1636/1456/958/5
private [4] 10/2025/1225/1232/1
pro [1] 3/1
problem [2] 20/221/11
problems [1] 38/21
procedural [3] 32/646/2447/3
procedurally [1] 15/8
Procedure [4] 15/717/2125/2526/15
procedures [3] 21/521/947/3
proceed [1] 11/25
proceeding [2] 7/199/5
proceedings [5] 1/121/232/362/762/9
process [2] 39/154/22
produced [2] 1/249/6
production [1] 55/25
professor [1] 2/16
proficient [1] 47/25
prohibited [2] 45/1845/19
prohibits [1] 43/19
projects [1] 48/4
promote [2] 19/139/2
promoting [1] 19/1
promptly [1] 52/25
prone [1] 32/17
prongs [2] 14/1815/16
proper [3] 26/2453/2157/21
properly [1] 19/4
property [1] 13/25
propose [1] 6/14
proposed [18] 2/225/15/115/1724/13 35/1736/1138/1241/641/946/747/13 48/1255/356/256/2256/2357/19
proposition [1] 15/4
protect [2] 20/1847/4
protected [6] 18/2120/820/1220/2524/14 24/17
protectoral [1] 20/17
protects [2] 33/1233/13
provide [5] 11/141/1342/445/447/22
provided [3] 21/1842/2543/1
providing [2] 29/1549/19
provision [2] 42/1043/18
public [16] 15/2524/425/1425/1525/19 29/1630/2532/733/240/341/954/1256/11 56/1458/858/21
public's [1] 58/19
public-comment [1] 25/15
public-notice [1] 25/14
public-spirited [1] 24/4
publish [2] 32/2052/5
published [2] 35/1753/2
publishing [2] 10/2431/25
pull [2] 51/758/9

purpose [3] 3/912/815/4
purposes [1] 20/25
pursuant [1] 47/19
pursue [3] 41/2146/1257/21
put [4] 9/1019/1520/148/5
puts [2] 32/1143/20
putting [2] 20/455/7

# Q

qualitative [3] 17/117/317/8
quantitative [1] 17/1
quarter [1] 40/9
question [3] 9/834/759/18
questions [3] 38/738/1254/24
quickly [3] 10/1810/1927/7
quite [3] 28/731/1942/5
quo [1] 52/1
quote [2] 17/2255/22

# R

raise [2] 7/118/15
raised [3] 27/2331/456/21
raises [1] 12/8
range [1] 30/13
reach [1] 29/1
reached [1] 57/10
read [9] 7/917/2218/819/742/1443/443/6 52/1853/11
ready [4] 54/860/660/661/1
real [1] 31/18
realized [2] 8/940/18
really [5] 13/1914/427/1747/1150/16
Realtime [1] 62/5
Realty [1] 9/8
reason [13] 8/68/119/2224/1425/1027/1 31/1634/1836/740/2544/1356/660/5
reasons [6] 9/944/2249/1555/2459/5 60/18
rebuttal [1] 56/21
recall [1] 53/17
received [3] 3/224/1131/10
recently [1] 3/1
recognized [1] 36/3
recognizing [1] 11/6
record [12] 2/114/2217/1439/1939/22 39/2340/349/652/1853/1160/1862/9
recorded [2] 1/2362/6
recourse [1] 26/1
redirected [1] 50/11
redressed [1] 16/2
reduced [1] 62/7
reducing [1] 49/15
refer [1] 47/1
reference [1] 37/8
referenced [2] 37/846/22
reform [6] 38/1940/1340/1641/241/4 55/10
regale [1] 37/20
regarding [1] 44/11
regardless [1] 56/18
regards [1] 12/7
regime [2] 35/2036/2
regional [1] 55/23
register [8] 35/139/2439/2539/2540/1 40/340/542/6
registered [5] 19/219/350/1750/2262/4
registers [1] 40/6
regulate [3] 11/1251/1951/21
regulated [2] 19/419/11
regulations [5] 21/925/1325/2426/742/22

**R**

regulatory [5] 20/1921/523/1755/1558/2
relate [1] 48/10
Related [1] 55/21
relating [1] 13/24
relations [1] 45/5
release [4] 26/1130/1336/458/13
released [8] 25/1727/1027/2528/528/6
32/1549/2458/7
relevance [2] 29/429/7
relevant [4] 8/129/169/2429/11
reliable [3] 32/1732/1932/21
relief [5] 13/413/1614/746/1257/21
relying [1] 49/6
remarks [1] 57/18
remedied [1] 16/19
remedy [1] 13/10
remember [1] 36/24
remove [1] 43/11
removed [2] 46/1753/1
removing [4] 21/641/1441/1755/6
renew [1] 49/5
repeat [1] 5/2
replete [1] 39/25
reply [1] 54/17
report [1] 30/12
reported [1] 28/12
reporter [5] 6/462/462/462/562/5
reports [1] 45/3
represent [2] 22/523/24
representation [1] 53/24
represented [5] 5/55/115/1618/553/19
representing [3] 24/2525/525/6
republish [1] 29/10
republishing [1] 29/14
request [1] 43/16
requested [1] 46/12
require [2] 41/1955/16
required [3] 41/1343/2455/25
requirement [1] 16/25
requirements [2] 46/1154/21
requires [4] 41/1641/2444/2453/23
research [1] 47/23
researching [1] 9/8
reserve [1] 12/10
resources [13] 7/147/158/89/129/20
47/1547/2049/149/1049/1149/2150/10
50/12
respect [18] 10/1111/815/116/1117/20
22/147/1948/2549/149/349/2552/352/9
58/258/1659/1459/2159/22
respective [1] 7/17
respond [4] 10/310/2048/2354/16
responding [1] 48/11
responsibilities [1] 25/21
responsibly [1] 19/24
rest [1] 32/12
restrain [2] 58/658/13
restrained [1] 58/7
restraining [2] 14/1733/24
restraint [4] 35/1636/1556/958/5
restrictions [1] 21/7
result [3] 26/643/1747/21
review [8] 42/942/1843/944/1244/2258/8
59/2160/1
reviewed [2] 6/106/25
rifle [1] 30/16
right [33] 5/712/114/417/2320/1320/13
20/1420/1523/1023/2024/325/125/3
25/2227/2429/2031/1836/644/1446/10

48/2250/250/853/653/754/954/2556/17
57/2558/2459/1659/2059/25
rights [2] 58/1658/22
rise [1] 20/12
RMR [2] 1/2562/18
ROBERT [2] 1/1262/11
ROBINSON [9] 1/194/14/345/2546/2
48/2157/1660/2561/2
role [5] 10/1915/2318/1732/334/9
roll [1] 26/17
Rome [5] 2/222/235/55/125/17
room [1] 25/17
round [1] 28/7
rounds [1] 28/9
routine [1] 48/3
RP [1] 1/5
rule [25] 6/2113/2315/715/717/2017/24
24/734/236/1136/1637/1938/1238/13
38/1441/650/2055/655/755/955/1155/12
55/1755/1856/260/23
Rule 24 [5] 13/2315/717/2434/237/19
ruled [1] 39/14
rules [4] 25/2455/355/555/10
ruling [10] 41/941/1157/2360/1460/15
60/1660/1860/2160/2260/23
run [1] 52/4

**S**

S-K-A-G-G-S [1] 5/10
s/Pamela [1] 62/18
safe [2] 15/2319/23
safely [1] 19/3
safer [1] 49/12
safety [7] 1/85/166/819/146/1646/1747/7
said [19] 7/1413/216/2019/1228/1331/16
32/1534/936/1737/338/843/1850/251/22
53/1854/654/2557/458/19
same [5] 16/1424/2139/1556/2462/7
same-standing [1] 16/14
satisfied [1] 15/5
say [5] 23/2433/1445/1159/2260/8
saying [2] 24/1235/22
says [11] 30/1241/2242/1243/743/843/11
44/1044/1547/251/352/24
Scharff [1] 49/3
schedule [1] 12/4
scheme [2] 51/951/12
Schlesinger [1] 36/24
second [5] 1/311/428/2042/1242/16
secondly [3] 10/1915/1817/8
Secretary [1] 11/3
section [9] 8/118/139/2328/2342/942/12
42/1742/2253/11
sections [1] 44/4
secure [1] 46/24
security [11] 20/333/333/734/1539/8
45/2246/1646/1947/755/1455/23
see [10] 10/110/2111/518/1226/1231/17
34/1634/2342/1257/2
seek [3] 25/260/1260/16
seeking [4] 14/714/1619/2346/9
seems [1] 20/9
seen [3] 21/2021/2322/22
seminal [1] 15/3
Senate [7] 10/2522/722/2123/123/14
39/1639/18
Senate's [1] 23/15
Senator [3] 11/311/522/24
senators [2] 11/422/9
sense [2] 35/1835/23

sensible [1] 11/12
sent [6] 5/2010/2211/111/322/1257/7
sentence [1] 42/14
separate [3] 31/1931/2045/17
separation [2] 26/1637/6
serial [1] 50/23
series [1] 39/3
serve [1] 51/25
servers [1] 53/2
Service [1] 18/10
Services [1] 42/19
SESSION [1] 2/1
set [6] 13/2118/2319/623/1751/1154/9
settle [1] 41/2
settlement [22] 11/613/1824/1925/1226/6
26/1026/1327/1131/831/931/1131/13
34/1834/1936/336/1941/1941/2443/24
44/448/1057/11
seven [1] 11/4
several [5] 7/169/1526/2234/834/11
Shall [1] 43/8
share [6] 12/123/428/2435/235/2035/22
shift [3] 8/2435/1447/12
shocking [1] 34/14
short [2] 7/342/13
Shorthand [1] 62/3
shortly [1] 11/2
shotguns [2] 40/856/1
should [3] 32/2536/1454/3
shouldn't [2] 31/2245/15
show [6] 17/517/2419/2041/847/2053/23
sic [1] 33/7
side [1] 23/4
sides [1] 12/2
signed [1] 25/18
significance [1] 38/23
significant [1] 47/15
significantly [1] 50/12
signs [1] 28/24
Similarly [1] 22/20
simple [2] 35/1742/9
simply [3] 6/213/1831/5
since [5] 6/2318/1635/1138/440/1
single [3] 28/736/136/1
single-round [1] 28/7
sir [1] 30/6
Sisters [1] 53/16
site [2] 28/2430/15
sixty [1] 9/6
Skaggs [1] 5/9
skim [1] 42/12
skimmed [1] 6/11
sleep [1] 7/5
so [75]
solicit [1] 22/12
solicited [1] 22/13
soliciting [1] 22/23
solo [1] 39/6
some [19] 12/1113/414/519/1921/17
27/2428/532/1834/1239/339/642/243/23
48/1749/2153/453/753/1454/16
someone [4] 29/829/1733/943/15
something [6] 13/126/427/1743/1158/14
60/9
Sometimes [1] 40/6
soon [2] 32/1059/8
sorry [6] 3/165/26/2010/2123/1643/8
sort [6] 14/1024/224/430/2334/1242/2
sorts [1] 26/15
sought [6] 13/513/1627/131/952/2353/15

S

sound [2] 19/1458/22
South [1] 2/16
speak [5] 3/103/106/344/856/17
speaking [1] 6/4
special [1] 55/14
specific [1] 48/4
specifically [4] 13/1113/2438/1347/18
speculation [1] 36/9
speech [5] 36/1444/744/856/1256/14
spend [1] 14/5
spent [3] 9/79/811/13
spirited [1] 24/4
split [1] 33/19
spousal [1] 19/10
square [2] 58/458/12
squarely [1] 27/3
stability [1] 55/23
staffing [1] 38/25
Stallworth [1] 34/3
stand [1] 42/9
stand-alone [1] 42/9
standard [1] 45/10
standards [2] 45/2056/23
standing [29] 7/117/1314/214/614/914/15
14/2215/115/615/816/1316/1316/14
20/1221/137/2046/746/1146/1547/5
47/1047/1447/1848/1448/1956/2557/1
57/2057/20
standings [1] 16/12
stands [1] 15/3
start [4] 30/334/234/238/16
started [2] 23/332/23
starting [2] 11/523/15
STATE [37] 1/62/910/1710/1813/1216/7
18/1620/1820/2121/422/222/1623/14
23/1624/1825/1126/1127/1027/2529/18
30/1932/235/935/1438/2243/1944/6
44/1145/1650/1550/2452/2355/255/6
55/1156/758/14
stated [3] 19/1320/646/9
statement [8] 28/1228/1930/952/952/17
53/356/1256/16
statements [2] 28/1130/17
states [12] 1/11/62/817/1619/122/21
33/1335/1942/1955/355/2262/11
statue [2] 44/844/16
status [1] 52/1
statute [5] 21/837/1543/545/945/18
statutes [2] 26/1950/20
statutory [1] 37/14
stay [2] 17/232/6
staying [1] 50/21
stenography [1] 1/23
stenotype [1] 62/7
step [7] 9/411/1529/1829/1942/145/11
45/15
stepped [2] 21/1128/1
still [2] 35/2156/4
stop [2] 36/2548/7
strange [1] 34/10
stream [1] 11/17
strengthening [1] 49/15
stricken [1] 39/19
strike [12] 6/196/206/237/228/119/239/24
9/2511/811/2412/1712/21
STUART [2] 1/193/25
studied [1] 43/13
subject [10] 13/2535/1636/236/1442/8
43/844/1244/1644/2247/9

subject-matter [1] 47/9
submit [2] 47/847/18
submitted [2] 47/1748/12
Subsection [1] 42/21
substantial [3] 16/2116/2444/9
substantive [1] 13/4
substantively [1] 15/9
subverts [1] 26/18
such [2] 7/353/21
sued [1] 30/19
suffered [2] 15/1716/17
sufficient [2] 17/2554/4
sufficiently [1] 53/20
suggest [2] 6/2323/7
suit [1] 59/24
supplemental [3] 7/918/2442/4
supplementing [1] 58/25
Support [1] 52/22
suppose [1] 12/14
supposed [2] 21/821/13
Supreme [5] 15/215/1037/257/457/10
sure [9] 3/1013/1217/419/219/919/23
32/459/759/13
surprises [1] 11/18
surrounded [1] 45/3
suspect [1] 8/9
sustain [1] 23/8
switched [1] 24/25
sympathetic [1] 23/19

T

table [2] 3/1114/25
take [9] 9/411/2028/128/1733/1133/21
42/1143/646/5
taken [1] 39/21
takes [3] 24/643/2053/9
taking [3] 29/1242/147/16
talk [11] 12/1812/2412/2413/614/114/11
18/2024/237/1548/1754/19
talking [5] 14/527/1750/1950/2251/20
tangible [1] 51/20
target [1] 7/20
technical [20] 15/2419/1519/2520/521/6
26/1732/1132/1835/935/1536/1449/23
50/1951/1651/1854/1158/558/758/13
59/18
technology [8] 50/2155/155/2155/2456/4
56/556/1358/11
telephone [6] 1/171/191/211/211/224/12
telephonic [1] 2/4
tell [9] 5/218/1927/132/2332/2333/335/24
50/1459/2
telling [2] 3/2039/12
temporary [2] 14/1733/23
ten [2] 31/1438/1
term [1] 46/9
terms [2] 8/2424/7
terrorism [1] 55/24
terrorist [1] 33/9
terrorists [2] 20/320/4
test [5] 16/316/1424/2347/2557/21
testify [1] 39/12
testifying [1] 39/16
tests [1] 17/9
TEXAS [4] 1/12/1716/862/12
than [12] 12/1113/116/2116/2317/724/6
31/1436/1640/742/1651/1456/1
thank [40] 2/192/202/243/33/45/75/13
5/185/246/58/1710/215/1417/1328/18
30/1031/133/1533/2535/335/438/945/23

45/2446/448/2049/749/854/1354/18
56/1556/1856/1937/1457/1557/2458/24
59/1161/361/5
that [338]
that's [43] 3/35/2210/813/213/513/21
14/2015/1025/726/426/726/828/329/6
30/1330/2233/935/1136/236/736/11
36/1536/1537/437/1938/1439/1340/10
41/341/1443/1444/1544/1947/550/3
50/2350/2551/1151/1353/353/2557/21
60/22
their [32] 4/197/127/128/128/158/209/2
9/311/1911/2412/1919/619/1825/21
28/2534/934/1135/2043/2045/447/16
47/2147/2248/248/250/1152/1652/16
52/2253/355/857/12
them [22] 7/198/1310/2312/1814/13
19/1721/2322/1323/824/1426/2328/2
28/229/935/235/1841/1945/450/2352/7
57/2160/12
themselves [2] 4/2332/15
then [21] 14/114/2216/116/320/1325/17
25/2529/929/1329/1331/331/2432/7
32/2246/2049/1451/2454/958/859/961/6
theory [3] 7/1046/1447/16
there [46] 4/178/69/1610/2511/211/713/4
14/314/2315/416/1720/220/220/1324/14
26/2126/2227/527/630/2031/1732/17
32/1834/534/734/1737/1838/744/845/14
47/1248/1348/1449/2151/951/2352/1
52/252/653/1054/554/756/1856/2159/15
60/10
there's [30] 7/1811/1815/1516/317/519/5
20/1726/1426/1528/1534/2336/1037/14
37/1537/2137/2140/441/844/1344/13
48/1351/1751/1952/355/555/1656/156/6
60/560/11
these [42] 9/1915/1215/2415/2418/14
19/1521/1721/2121/2222/622/622/12
23/426/630/731/1832/632/1233/433/18
36/639/639/739/1840/240/1140/1440/16
41/2243/2545/145/645/746/348/149/6
49/2349/2350/651/1451/2254/11
they [114]
they're [23] 11/1418/1519/322/923/25
24/1124/1225/425/626/527/2034/2337/5
40/2240/2541/1443/2544/350/952/656/3
56/356/14
they've [7] 7/157/1511/1311/1415/17
24/1826/1
thing [2] 24/2142/2
things [16] 5/257/188/39/1312/1912/25
13/2017/2426/527/1627/2036/638/20
40/1145/1851/20
think [40] 6/207/228/29/1610/1611/20
11/2112/212/2212/2413/413/1513/22
14/214/214/414/815/115/915/2016/10
16/2318/1219/823/2224/1124/1626/11
32/1932/2236/1736/2038/843/547/11
48/1148/1453/1254/259/4
thirdly [1] 16/1
this [181]
those [26] 3/126/28/78/229/1811/212/9
12/1412/1712/1919/823/2023/2430/24
40/1141/2548/1049/1049/1150/451/21
52/352/454/2455/1758/21
though [2] 8/2153/10
thought [1] 24/24
thoughts [2] 46/357/25
threat [1] 18/2

**T**

threatened [1] 47/4
three [7] 8/715/415/1617/2418/418/14 40/12
threshold [1] 17/6
through [8] 4/116/1627/628/932/2433/5 33/750/6
throw [1] 8/3
time [23] 7/219/910/1112/1312/1512/18 12/2113/314/514/1314/1915/1119/20 25/327/1233/1935/539/441/142/443/2 46/557/5
timeline [3] 10/1627/631/3
timeliness [1] 10/5
timely [1] 17/23
times [1] 34/8
timing [4] 12/213/213/641/5
Tirschwell [1] 5/15
titled [2] 42/1855/21
today [8] 5/65/126/116/1240/2056/657/13 58/25
together [1] 9/10
told [2] 21/1341/14
TOM [3] 1/214/64/7
too [1] 46/5
took [3] 34/1536/542/16
touch [3] 10/914/1831/2
toward [1] 49/10
Town [3] 15/215/946/8
traceability [1] 37/21
traceable [1] 15/18
TRADE [1] 1/7
trafficked [1] 50/18
trained [1] 45/5
transaction [1] 13/25
transcript [2] 1/121/23
transcription [1] 1/24
transfer [7] 38/2243/2544/545/1851/18 55/155/10
transferred [9] 40/1240/2040/2150/15 50/2456/556/556/1056/13
transferring [3] 35/840/2355/3
transfers [2] 40/1440/16
traveled [2] 7/47/5
treated [1] 53/23
treats [1] 25/11
trees [1] 32/5
tremendous [3] 17/517/527/12
trial [1] 10/13
tried [3] 8/1011/1553/8
trifle [3] 16/2216/2417/7
TRO [2] 32/154/10
trouble [1] 6/1
true [3] 27/527/662/8
Trump [1] 36/13
truth [1] 10/15
try [2] 45/1554/10
trying [8] 10/2015/2318/2522/832/435/13 38/553/13
Ts [1] 26/2
Tucson [2] 2/157/5
turn [3] 14/2238/749/25
turns [2] 25/451/18
twenty [5] 6/1512/2314/1240/440/16
twenty-one [2] 40/440/16
two [10] 8/610/2511/213/1818/128/8 33/1844/2245/1748/11
types [1] 35/8
typewritten [1] 62/7

**U**

U.S [12] 10/2519/2322/723/135/736/9 36/1238/2339/244/2151/1352/23
ultimate [2] 47/557/22
ultra [1] 26/16
under [23] 14/717/117/2421/721/821/8 21/925/2527/1127/1228/1731/1235/20 41/1242/2142/2244/145/1946/1051/15 51/1655/2057/23
underlying [1] 28/4
understand [2] 23/1828/6
understanding [1] 6/1
underway [1] 10/6
undetectable [1] 19/18
unfair [1] 7/18
unfortunate [1] 36/8
UNITED [11] 1/11/62/817/1519/122/20 33/1335/1955/355/2362/11
unknown [2] 8/69/19
unless [2] 10/613/1
unlike [1] 56/7
unquestionably [1] 57/6
unregistered [4] 11/1619/1826/2033/10
unregulated [2] 11/1615/24
unring [1] 38/5
until [2] 31/1432/1
untraceable [3] 11/1619/1833/10
unusual [2] 34/534/7
up [20] 2/152/178/1013/2114/2315/11 17/1221/321/1623/1727/328/2028/24 46/550/2154/154/1458/1760/1560/23
upload [1] 28/24
uploading [1] 29/5
uploads [1] 29/9
upon [1] 60/21
upshot [1] 35/15
urgency [1] 35/6
us [19] 6/28/39/2218/921/2422/1222/13 31/2333/1336/538/639/1244/944/1845/8 57/1358/2359/1960/13
use [3] 9/1131/2454/5
used [6] 9/1212/912/1519/319/2434/10
using [3] 1/2433/1048/6
USML [11] 40/240/440/1741/1841/20 42/843/1143/2051/1351/1551/16

**V**

vacated [1] 37/2
various [2] 16/1639/9
versus [2] 2/848/10
very [30] 2/202/243/43/85/246/227/57/21 10/214/2116/923/1524/531/533/1534/10 41/742/946/448/2051/2156/1557/24 58/1058/1558/2459/1160/561/361/5
via [7] 1/171/191/201/211/211/222/4
vice [2] 3/128/12
video [1] 19/19
violated [1] 26/16
violation [1] 26/14
violations [1] 46/22
violative [1] 26/6
violence [8] 1/85/45/55/116/820/1020/23 49/18
vires [1] 26/16
virtuous [1] 24/5
VZ.58 [1] 30/15

**W**

waited [1] 9/21
waiver [1] 8/10
walk [2] 6/1627/5
walked [2] 93/533/7
want [20] 10/912/1112/1812/2414/17 18/1819/930/2231/231/334/346/551/3 52/1053/1156/1257/359/760/1260/16
wanted [2] 7/2530/21
wants [4] 7/2437/2237/2443/11
war [1] 37/2
wary [1] 24/2
was [56] 6/127/97/137/248/68/69/18 13/1316/817/1017/1621/721/721/1322/2 22/1822/2222/2523/1724/2425/1627/2 27/427/628/628/629/2129/2430/330/5 30/1830/2134/1935/635/1035/1235/15 36/238/1938/2239/339/439/540/2341/4 42/243/1546/1446/2147/1252/852/22 53/1054/2560/362/6
wasn't [2] 31/1442/7
watched [1] 29/21
way [7] 13/2119/1520/834/1643/2351/19 54/22
ways [1] 26/22
we [119]
we'd [1] 54/9
we'll [3] 7/659/759/9
we're [20] 5/512/514/315/2017/227/17 30/2231/1532/432/2233/1436/736/11 40/1950/1952/458/1060/460/661/1
we've [10] 3/2210/1210/1914/1216/15 51/857/757/957/1058/4
weak [1] 8/9
weapons [2] 32/1240/9
web [2] 32/1632/18
website [5] 29/929/1129/1232/132/12
Wednesday [2] 8/89/19
weeks [2] 9/2059/24
well [14] 2/183/67/238/2313/814/1914/21 14/2226/938/1739/2047/2451/2258/15
went [2] 32/2439/6
were [26] 2/34/175/209/2020/1122/12 23/327/527/1127/2528/528/1132/15 34/1334/2036/338/2140/140/549/150/22 51/2453/753/1557/857/18
weren't [1] 12/4
WESTERN [2] 1/162/12
what [48] 6/146/218/218/2312/2213/1 13/1013/1313/2214/815/2117/217/3 18/1218/2119/921/321/721/1221/13 21/2224/424/526/927/2028/328/1030/21 39/339/1239/1739/1740/542/843/743/9 43/1944/144/546/1947/1948/950/19 51/1753/1054/2554/2559/9
what's [7] 20/2436/2138/1839/2139/24 45/1156/18
whatever [3] 12/2441/257/22
when [23] 3/106/310/614/1224/926/13 30/1933/133/233/236/1036/2544/11 44/1545/1245/1646/1446/2051/1052/8 53/855/257/18
where [12] 7/2412/517/1921/1430/333/2 34/238/142/243/1549/1252/23
Whereupon [1] 61/6
whether [9] 5/2112/1017/717/823/2425/4 25/529/2243/22
which [27] 11/113/2514/1916/1818/7 26/1827/727/827/1828/1128/2529/23 34/234/2237/840/1040/1440/2342/9 43/1643/2544/1046/1347/247/1052/11 55/17
whichfew [1] 8/16

# W

while [3] 22/1839/440/24
whiz [2] 11/1930/17
who [16] 2/163/13/133/244/184/226/4
20/1420/2224/2127/1928/2436/2243/15
45/148/12
whoever [1] 5/20
whole [2] 19/1251/8
whom [1] 42/20
whose [1] 45/6
why [9] 8/630/2030/2234/1836/236/7
36/1140/2556/6
wild [1] 36/9
will [46] 4/237/111/112/1012/2514/10
14/1814/2316/1717/1118/218/819/25
20/526/2126/2227/129/1829/1930/8
30/1432/332/1333/333/2133/2233/23
40/640/1846/2449/2250/1050/1150/14
54/1756/1356/2058/959/259/259/459/5
59/559/860/1460/17
Wilson [6] 28/1335/2137/2237/2344/6
57/8
Wilson's [3] 28/2128/2530/14
wish [1] 12/3
wishes [2] 46/1248/18
within [4] 7/2221/237/250/25
without [8] 12/2015/1323/1223/1223/13
28/230/734/7
won [1] 35/25
won't [1] 51/24
word [2] 3/234/11
wording [1] 43/10
words [1] 24/22
work [3] 19/636/540/7
worked [1] 51/12
works [2] 34/1935/11
world [1] 19/13
worried [1] 20/23
would [59] 6/46/146/206/248/168/219/11
9/129/1310/310/611/911/2312/2213/22
14/1114/2017/420/1320/1421/1021/16
23/1925/2529/2230/1831/2433/1134/6
35/835/1535/2235/2435/2539/739/9
39/1842/1342/2446/246/1747/147/10
48/1548/1848/2249/149/949/1050/8
51/2552/1854/454/654/1655/2257/22
59/1660/8
wouldn't [1] 50/2
written [4] 59/160/1560/1860/24
wrote [1] 3/20

# X

XI [1] 40/22

# Y

years [1] 35/13
yes [12] 4/104/1610/418/2324/928/5
32/1748/2451/1754/1558/1160/22
yesterday [2] 17/1122/17
yesterday's [1] 27/8
yet [4] 10/119/2432/1041/11
York [1] 10/21
you [155]
you've [4] 8/1913/220/830/6
your [152]
yourself [1] 19/16